82. At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01, on which are present valuable permanent trees.

83. Defendant OKP, by its agents and employees acting within the scope of their employment, took possession of permanent trees, to wit, flame trees, coconut trees, cotton trees, iron trees, bamboo trees, beetlenut trees, shrubs, manicured flowers, and other plants, located on Plaintiff Atalig's land, and converted them to Defendants' own use.

84. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including but not limited to, diminution in property values and loss of prospective economic advantages, and has been damaged in the amount of $500,000, or more, to be proven at trial.

85. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants' conduct as alleged herein, and their conscious disregard of the rights of Plaintiff Atalig, Defendants are liable for punitive damages in the amount of $250,000, or more, to be proven at trial.

86. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

X.
### SIXTH CAUSE OF ACTION
(Conversion—Preexisting Buildings/Improvements)

87. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

88. At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01 on which are present preexisting buildings and improvements.

89. Defendant OKP, by its agents and employees acting within the scope of their employment, took possession of preexisting buildings/improvements, to wit, laundry, storage,

and kitchen facilities, including the stored items, located on Plaintiff Atalig's land, and converted them to Defendants' own use.

90. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including but not limited to, diminution in property values and loss of prospective economic advantages, and has been damaged in the amount of $500,000, or more, to be proven at trial.

91. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants' conduct as alleged herein, and their conscious disregard of the rights of Plaintiff Atalig, Defendants are liable for punitive damages in the amount of $250,000, or more, to be proven at trial.

92. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XI.
## SEVENTH CAUSE OF ACTION
(Negligence—Violation of 1 CMC § 2382(g) and 2 CMC § 4811, *et seq.*)

93. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

94. At all relevant times mentioned, Plaintiff Atalig was the fee simple owner of Lot No. 362 R 01 on which are present historical and cultural artifacts.

95. Defendants willfully removed or took cultural and historic artifacts and/or knowingly destroyed, removed, disturbed, displaced, or disfigured cultural and historical artifacts on Plaintiff Atalig's land without a valid permit from the Historic Preservation Office.

96. Defendants knowingly and willfully violated the historic and cultural preservation laws of the CNMI.

97. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, including but not limited to, property damages and loss of prospective economic advantages, and has been damaged in the amount of $100,000, or more, to be proven at trial.

98. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XII.
## EIGHTH CAUSE OF ACTION
(Negligence—Violation of 2 CMC § 3101, *et seq.*)

99. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

100. At all relevant times mentioned, Plaintiff Atalig was the fee simple owner of Lot No. 362 R 01 on which are present historical and cultural artifacts.

101. Defendants violated the Commonwealth Environmental Protection Act (2 CMC § 3101, *et seq.*) by failing to obtain an earthmoving permit before clearing Plaintiff Atalig's land using heavy equipment, which resulted in the damage, destruction, and mutilation of historical and cultural artifacts.

102. Defendants knowingly and willfully violated the environmental protection laws of the CNMI, which were designed to protect, among other things, "the environmental quality of places and things of cultural and historical significance to contribute to the protection and preservation thereof, in implementation of N.M.I. Const. art. XIV, § 3." 2 CMC § 3111(a)(4).

103. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, including but not limited to, property damages

1  and loss of prospective economic advantages, and has been damaged in the amount of $100,000,
2  or more, to be proven at trial.

3  104.  Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

### XIII.
### NINTH CAUSE OF ACTION
(Negligence)

105.  Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

106.  Defendant OKP had the duty not to commit waste on Plaintiff Atalig's land and to obtain the prior written consent of Plaintiff Atalig before any alterations or changes are done on the leased improvements and the real property.

107.  Defendant OKP breached its duty to Plaintiff Atalig when it violated the laws of the CNMI by damaging and destroying cultural and historical artifacts and other things of value, and when Defendant OKP failed to obtain the prior written consent of Plaintiff Atalig to alter or change the improvements and the real property.

108.  As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, including but not limited to, property damages and loss of prospective economic advantages, and has been damaged in the amount of $2,000,000, or more, to be proven at trial.

109.  Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

### XIV.
### TENTH CAUSE OF ACTION
(Negligent Interference with Prospective Economic Advantage)

110.  Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

111. Plaintiff Atalig has in the past engaged in the business of showing tourists and residents the historical and cultural significance of his land which leads to the Japanese bunkers/complexes.

112. Plaintiff Atalig's land is attractive to residents and visitors alike because it was used by the Japanese as an entrance way to the Japanese bunkers/complexes located in the mountains near Plaintiff Atalig's land.

113. Plaintiff Atalig and Mr. Sukimi Mita have prepared plans to construct a Japanese shrine and memorial by improving the existing Japanese structures in order to make it more attractive to visitors for business purposes.

114. The unlawful destruction and obliteration of the historical and cultural artifacts has interfered with the business and economic plans of Plaintiff Atalig and Mr. Sukimi Mita.

115. Defendants' interference was wrongful and malicious and was done with the conscious disregard of the rights of Plaintiff Atalig.

116. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, including but not limited to, property damages, and has been damaged in the amount of $7,000,000, or more, to be proven at trial.

117. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants' conduct as alleged herein, and their conscious disregard of the rights of Plaintiff Atalig, Defendants are liable for punitive damages in the amount of $3,000,000, or more, to be proven at trial.

118. Wherefore, Plaintiff prays for the relief as set forth herein.

## XV.
## ELEVENTH CAUSE OF ACTION
(Intentional and/or Negligent Infliction of Emotional Distress)

119. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

120. From December 2005, Defendants, knowing that they have no right to damage, destroy, or mutilate cultural and historical artifacts and other structures, or to unlawfully remove soil and minerals, or to unlawfully place a huge fuel tank, or to damage and/or destroy permanent trees, cleared Plaintiff Atalig's land by using heavy equipment without a permit from the proper agencies and without permission from Plaintiff Atalig despite being specifically warned, in advance, about the location and presence of cultural and historical artifacts.

121. Defendants' actions were extreme and outrageous and done intentionally to inflict severe emotional distress upon Plaintiff Atalig and his family.

122. Defendants acted with malice and in the conscious disregard of the rights of Plaintiff Atalig.

123. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig did suffer severe emotional distress including, but not limited to, sleeplessness, headaches, anguish, grief, shame, humiliation, fear, anger and worry, and has been damaged in the amount of $4,000,000, or more, to be proven at trial.

124. Because of the malicious, willful, wanton, vile, outrageous, and intentional nature of Defendants' conduct as alleged herein, and their conscious disregard of the rights of Plaintiff Atalig, Defendants are liable for punitive damages, in the amount of $2,000,000, or more, to be determined at trial.

125. Wherefore, Plaintiff prays for the relief as set forth herein.

# XVI.
# TWELFTH CAUSE OF ACTION
(Unjust Enrichment)

126. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

127. Defendants used and benefited from the use of Plaintiff Atalig's land to build certain structures and to remove certain historical and cultural artifacts and permanent trees, without the prior written consent of Plaintiff Atalig.

128. Defendants used and benefited from the use of certain materials that were taken from the storage, laundry, and kitchen facilities without the prior written consent of Plaintiff Atalig.

129. Defendants knew that they do not have the prior written permission from Plaintiff Atalig to remove preexisting improvements, historical and cultural artifacts, and permanent trees so that they can build other structures, but ignored the applicable provisions of the Lease, i.e., not to commit waste and to obtain the prior written consent of Plaintiff Atalig for any changes or alterations to the leased improvements.

130. Defendant OKP has accepted and enjoyed the benefits of the impermissible use of Plaintiff Atalig's land to further Defendant OKP's business in Rota and the CNMI.

131. The retention of the benefit and enjoyment of the use of Plaintiff Atalig's land without the payment of its value is unfair and unjust.

132. Defendants have been unjustly enriched at the expense of Plaintiff Atalig.

133. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, including but not limited to, property damages, and has been damaged in the amount of $250,000, or more, to be proven at trial.

134. Wherefore, Plaintiff prays for the relief as set forth herein.

## XVII.
## THIRTEENTH CAUSE OF ACTION
### (Nuisance)

135. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

136. At all relevant times mentioned, Plaintiff Atalig was the fee simple owner of Lot No. 362 R 01.

137. Defendants have installed a huge fuel tank with a fuel pump/station on Plaintiff Atalig's land, and on information and belief, without a valid permit from the regulatory agencies.

138. Defendants' conduct in installing a huge fuel tank without the proper authorizations from regulatory agencies constitutes a nuisance. It is injurious and hazardous to Plaintiff Atalig and those living with him, including contaminating the soil and water resources from any spillage that occurs as a result of the operation of a fuel station.

139. Plaintiff Atalig gave notice to Defendant OKP to cure the default, but Defendant OKP, through counsel, argued that Defendant OKP did not violate any of the terms of the Lease. Please see attached Exhibits B and C.

140. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, including but not limited to, property damages, and has been damaged in the amount of $100,000, or more, to be proven at trial.

141. As a further direct and proximate result of the nuisance created by Defendants, Plaintiff Atalig's land has been diminished in value in the sum to be proven at trial. Unless the nuisance created by defendants is abated, Plaintiff Atalig's land will continue to diminish in value.

142. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XVIII.
## FOURTEENTH CAUSE OF ACTION
(Indemnification)

143. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

144. Pursuant to Sections 12 and 12A of the Lease, Defendant OKP "shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation…[o]n the account of or through the use of the demised premise[s] or improvements or any part thereof by Lessee or by any other person acting under the authority, direction, in the interest of, or through the title of the Lessee for any purpose inconsistent with the provisions of this Lease."

145. The destruction of the historical and cultural artifacts and permanent trees, and the removal of soil and other minerals, and other things of value, have diminished the market value of Plaintiff Atalig's land and constitutes waste which is inconsistent with the provisions of the Lease.

146. Pursuant to Sections 12 and 12B of the Lease, Defendant OKP "shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation…[a]rising out of, or directly or indirectly due to, any failure of Lessee in any respect promptly and faithfully to satisfy Lessee's obligations under this [L]ease."

147. Defendant OKP failed to promptly and faithfully satisfy Defendant OKP's obligations under the Lease by failing to obtain Plaintiff Atalig's written consent prior to the unlawful activities, and by destroying invaluable artifacts and other structures and things which constitutes waste.

148. Pursuant to Sections 12 and 12C of the Lease, Defendant OKP "shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation...[a]rising out of directly or indirectly due to any accident or other occurrence causing injury to any person or persons or property resulting from the use of the premises or any part thereof, including the land."

149. Defendants' actions caused the injury to Plaintiff Atalig's land by diminishing its value now and in the future.

150. No such indemnification shall be required with respect to losses or liabilities arising by reason of the affirmative negligence or recklessness of Lessor. See Section 12 of the Lease.

151. Plaintiff Atalig was not, and is not, negligent, much less affirmatively negligent or reckless, in the performance of Plaintiff Atalig's duties and responsibilities under the Lease.

152. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, including but not limited to, property damages, loss of prospective economic advantages, and has been damaged in an amount to be proven at trial.

153. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XIX.
### FIFTEENTH CAUSE OF ACTION
(Attorney's Fees)

154. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Complaint.

155. Pursuant to Section 23 of the Lease Agreement identified above, in the event of a lawsuit by any party to the Lease Agreement "for the recovery of any rent due, or because of any breach of any term, covenant, condition, or provision hereof, the prevailing party shall be entitled to recover from the other party costs of suit and reasonable attorney's fees which shall be fixed by the Court."

156. Plaintiff Atalig has incurred legal fees and continues to incur legal fees as a result of Defendant OKP's breach of the Lease and tortious acts.

157. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XX.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joaquin Q. Atalig prays for judgment against all Defendants, jointly and severally, as follows:

a. General damages, in an amount to be proven at trial, for the destruction and desecration of several priceless and original Latte Stones, other cultural and historical artifacts, and other things of value;

b. Punitive damages, in an amount appropriate to punish Defendants and set an example to others, to be proven at trial, because Defendants knew or should have known that the priceless Latte Stones and other cultural and historical artifacts are forever lost once damaged or destroyed, yet Defendants deliberately destroyed and desecrated the artifacts on Plaintiff Atalig's land, despite being forewarned of the presence of artifacts before clearing, which amounts to cultural and historical "terrorism" against the Chamorro people, pure and simple;

c. An award of restitution to Plaintiff Atalig for the use of the Latte Stones and other valuable artifacts, materials, trees, soil, and minerals, which are forever lost or destroyed, so that

Defendants will not be unjustly enriched at the expense of Plaintiff Atalig in an amount to be proven at trial;

    d. Pre-judgment interest on amounts owed;

    e. Post-judgment interests;

    f. For reasonable attorneys fees and costs as specifically provided by agreement; and

    g. For such other and further relief to which Plaintiff Atalig is entitled under law or equity as the Court deems just and proper.

## XXI.
## DEMAND FOR JURY TRIAL

Plaintiff Joaquin Q. Atalig hereby demands a trial by jury of all issues triable of right by jury.

Respectfully submitted this 22 day of March, 2006.

        LAW OFFICES OF RAMON K. QUICHOCHO, LLC

        */s/ Ramon K. Quichocho*
        Ramon K. Quichocho
        CNMI Bar No. F0243
        Attorney for Plaintiff Joaquin Q. Atalig

## VERIFICATION

I declare under penalty of perjury that I have read the foregoing Complaint and that it is true and correct to the best of my recollection and knowledge and that this declaration is executed on this 22 day of March, 2006, in Saipan, Commonwealth of the Northern Mariana Islands.

        */s/ Joaquin Q. Atalig*
        JOAQUIN Q. ATALIG
        Plaintiff