# VII.
## SECOND CAUSE OF ACTION
### (Waste)

87. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

88. At all relevant times, Plaintiff Atalig was the fee simple owner of Lot No. 362 R 01, on which are present priceless cultural and historical artifacts and other things of value.

89. Defendant OKP leased the improvements situated on Lot No. 362 R 01, and occupied Lot No. 362 R 01 since the commencement of the term of the Lease.

90. During the period of such occupation, Defendants greatly injured the improvements and the land, as follows:

a.  By unlawfully damaging and/or destroying historical artifacts, structures and other valuable relics, including but not limited to, Latte Stone clusters, ancient Chamorro grinding stone, Japanese structures, water tank, washing basin and frame, and areas surrounding Japanese building(s), and removing them from Plaintiff Atalig's land;

b.  By damaging, destroying and/or cutting permanent trees, including but not limited to, flame trees, coconut trees, cotton trees, iron trees, bamboo trees, beetlenut trees, shrubs, manicured flowers, lemon trees, atis trees, and other plants, and removing them from Plaintiff Atalig's land;

c.  By damaging and/or destroying preexisting buildings/improvements to the land, including but not limited to, the laundry, storage, and kitchen facilities, and leaving the stored items exposed;

d.  By placing a hazardous fuel tank on Plaintiff Atalig's land without the proper and necessary safety requirements in place; and

e.  By quarrying, moving, removing, and digging soil and other minerals (about 40' x 50'x 8' hole in the ground and lined by concrete, including other excavations), and removing them from Plaintiff Atalig's property.

91. Defendant OKP did not obtain the necessary permits from the Division of Environmental Quality and the Historic Preservation Office before conducting its wasteful and unlawful activities.

92. Although required under the Lease, Defendant OKP failed to obtain the prior written permission of Plaintiff Atalig before conducting its wasteful and unlawful activities.

93. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, diminution in property values and loss of prospective economic advantages, and has been damaged in the amount of $11,000,000.00, or more, to be proven at trial.

94. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendants are liable for punitive damages in the amount of $5,000,000.00, or more, to be proven at trial.

95. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## VIII.
## THIRD CAUSE OF ACTION
### (Conversion—Historical and Cultural Artifacts)

96. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

97. At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01, on which are present cultural and historical artifacts.

98. Defendant OKP, by its agents and employees acting within the scope of their employment, took possession of historical and cultural artifacts, to wit, Latte Stones, ancient Chamorro grinding stone, Japanese structures, Japanese washing basin and frame, and Japanese water tank, located on Plaintiff Atalig's land, and converted them to Defendants' own use.

99. As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including but not limited to, property damages, diminution in property values, and loss of prospective economic advantages, and has been damaged in the amount of $11,000,000, or more, to be proven at trial.

100. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendants are liable for punitive damages in the amount of $5,000,000.00, or more, to be proven at trial.

101. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## IX.
## FOURTH CAUSE OF ACTION
### (Conversion—Soil and Other Minerals)

102. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

103. At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01, on which are present fertile top soil and minerals.

104. Defendant OKP, by its agents and employees acting within the scope of their employment, took possession of soil and other minerals located on Plaintiff Atalig's land, and converted them to Defendants' own use.

105.    As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, property damages and loss of prospective economic advantages, and has been damaged in the amount of $500,000.00, or more, to be proven at trial.

106.    Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendants are liable for punitive damages in the amount of $250,000.00, or more, to be proven at trial.

107.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## X.
## FIFTH CAUSE OF ACTION
### (Conversion—Permanent Trees)

108.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

109.    At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01, on which are present valuable permanent trees.

110.    Defendant OKP, by its agents and employees acting within the scope of their employment, took possession of permanent trees, to wit, flame trees, coconut trees, cotton trees, iron trees, bamboo trees, beetlenut trees, lemon trees, atis trees, shrubs, manicured flowers, and other plants, located on Plaintiff Atalig's land, and converted them to Defendants' own use.

111.    As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, property damages and loss of prospective economic advantages, and has been damaged in the amount of $500,000.00, or more, to be proven at trial.

112.    Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendants are liable for punitive damages in the amount of $250,000.00, or more, to be proven at trial.

113.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XI.
## SIXTH CAUSE OF ACTION
### (Conversion—Preexisting Buildings/Improvements)

114.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

115.    At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01 on which are present preexisting buildings and improvements.

116.    Defendant OKP, by its agents and employees acting within the scope of their employment, took possession of preexisting buildings/improvements, to wit, laundry, storage, and kitchen facilities, including the stored items, located on Plaintiff Atalig's land, and converted them to Defendants' own use.

117.    As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, property damages and loss of prospective economic advantages, and has been damaged in the amount of $500,000.00, or more, to be proven at trial.

118.    Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendants are liable for punitive damages in the amount of $250,000.00, or more, to be proven at trial.

*Amended Complaint*

119.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XII.
## SEVENTH CAUSE OF ACTION
### (Negligence)

120.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

121.    Defendant OKP had the duty not to commit waste on Plaintiff Atalig's land and to obtain the prior written consent of Plaintiff Atalig before any alterations or changes are done on the leased improvements and the real property.

122.    Defendant OKP breached its duty to Plaintiff Atalig when it violated the laws of the CNMI by damaging and destroying cultural and historical artifacts and other things of value, and when Defendant OKP failed to obtain the prior written consent of Plaintiff Atalig to damage, remove, alter or change the improvements, the real property, and other things of value.

123.    As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, property damages and loss of prospective economic advantages, and has been damaged in the amount of $2,000,000, or more, to be proven at trial.

124.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XIII.
## EIGHTH CAUSE OF ACTION
### (Negligent Entrustment)

125.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

126.    At all relevant times, Defendant OKP is the owner, or else had the complete control, custody, and care, of the heavy equipment and/or motor vehicles, e.g., excavator, bulldozer, motor grader, compactor roller, and dump truck, that were used to damage and destroy the cultural and historical artifacts, permanent trees, soil and minerals, preexisting building, and other things of value on Plaintiff Atalig's land.  A true and correct copy of the Contractor's All Risk Policy is attached hereto, labeled "Exhibit H," and incorporated herein by this reference as if set forth in full.  Exhibit H is attached and incorporated herein for the purpose of proving agency, ownership, control, or, bias or prejudice of a witness, or suing Dongbu Insurance Co., Ltd., if the requirements of 4 CMC § 7101(e) are met.

127.    Defendants Pramuan Jaiphakdee and Wilai Promchai, at the times Plaintiff Atalig's properties were damaged and destroyed, were driving Defendant OKP's heavy equipment and motor vehicles as mentioned above, with the permission and for the benefit of Defendant OKP, during the course and scope of Defendants Jaiphakdee and Promchai's employment.

128.    At the time of the incidents underlying this Amended Complaint, Defendants Jaiphakdee and Promchai were incompetent and reckless drivers, in that Defendants Jaiphakdee and Promchai knew or should have known that the areas where the cultural and historical artifacts lay must not be disturbed, yet they went ahead and damaged and destroyed the clearly visible Latte Stones, Japanese water tank, and other structures and things of value, without inspecting the areas that they illegally cleared.

129.    Defendant OKP acted negligently in entrusting its heavy equipment and motor vehicles to Defendants Jaiphakdee and Promchai, in that Defendant OKP knew or should have known that Defendants Jaiphakdee and Promchai are ignorant of the laws of the CNMI, and would therefore, drive Defendant OKP's vehicles in an incompetent and reckless manner.

130.    As a direct and proximate result of the negligence of Defendant OKP in entrusting the motor vehicles to Defendants Jaiphakdee and Promchai, Plaintiff Atalig suffered damages, including but not limited to, emotional distress, fear, anguish, sleeplessness, and anxiety, property damages and loss of prospective economic advantages, and has been damaged in the amount of $2,000,000, or more, to be proven at trial.

131.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XIV.
## NINTH CAUSE OF ACTION
### (Intentional and/or Negligent Infliction of Emotional Distress)

132.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

133.    From December 2005, Defendants, knowing that they have no right to damage, destroy, or mutilate cultural and historical artifacts and other structures, or to unlawfully remove soil and minerals, or to unlawfully place a huge fuel tank, or to damage and/or destroy permanent trees, cleared and quarried Plaintiff Atalig's land by using heavy equipment without a permit from the proper agencies and without permission from Plaintiff Atalig despite being specifically warned, in advance, about the location and presence of cultural and historical artifacts.

134.    Defendants' actions were extreme and outrageous and done intentionally to inflict severe emotional distress upon Plaintiff Atalig and his family.

135.    As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig did suffer severe emotional distress including, but not limited to, sleeplessness, headaches, anguish, grief, shame, humiliation, fear, anger and worry, and has been damaged in the amount of $4,000,000, or more, to be proven at trial.

1

2

3

4

5

136.    Because of the malicious, willful, wanton, vile, outrageous, and intentional nature of Defendants' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendants are liable for punitive damages, in the amount of $2,000,000, or more, to be determined at trial.

6

137.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

7

8

**XV.**
**TENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

9

10

11

138.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

12

13

14

139.    Defendants used and benefited from the use of Plaintiff Atalig's land to build certain structures and to remove certain historical and cultural artifacts and permanent trees, without the prior written consent of Plaintiff Atalig.

15

16

17

140.    Defendants used and benefited from the use of certain materials that were taken from the storage, laundry, and kitchen facilities without the prior written consent of Plaintiff Atalig.

18

19

20

21

22

23

141.    Defendants knew that they do not have the prior written permission from Plaintiff Atalig to remove preexisting improvements, historical and cultural artifacts, and permanent trees so that they can build other structures, but ignored the applicable provisions of the Lease, i.e., not to commit waste and to obtain the prior written consent of Plaintiff Atalig for any changes or alterations to the leased improvements.

24

25

142.    Defendant OKP has accepted and enjoyed the benefits of the impermissible use of Plaintiff Atalig's land to further Defendant OKP's business in Rota and the CNMI.

26

27

28

143.    The retention of the benefit and enjoyment of the use of Plaintiff Atalig's land and properties without the payment of its value is unfair and unjust.

144.  Defendants have been unjustly enriched at the expense of Plaintiff Atalig.

145.  As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, including but not limited to, property damages, and has been damaged in the amount of $3,500,000, or more, to be proven at trial.

146.  Wherefore, Plaintiff prays for the relief as set forth herein.

## XVI.
## ELEVENTH CAUSE OF ACTION
### (Nuisance)

147.  Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

148.  At all relevant times mentioned, Plaintiff Atalig was the fee simple owner of Lot No. 362 R 01.

149.  Defendants have installed a huge fuel tank with a fuel pump/station on Plaintiff Atalig's land, and on information and belief, without a valid permit from the regulatory agencies.

150.  Defendants' conduct in installing a huge fuel tank without the proper authorizations from regulatory agencies constitutes a nuisance.  It is injurious and hazardous to Plaintiff Atalig and those living with him, including contaminating the soil and water resources from any spillage that occurs as a result of the operation of a fuel station.

151.  Plaintiff Atalig gave notice to Defendant OKP to cure the default, but Defendant OKP, through counsel, refused.

152.  As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, property damages, and has been damaged in the amount of $100,000, or more, to be proven at trial.

29
*Amended Complaint*

153.   As a further direct and proximate result of the nuisance created by Defendants, Plaintiff Atalig's land has been diminished in value in the sum to be proven at trial.  Unless the nuisance created by defendants is abated, Plaintiff Atalig's land will continue to diminish in value.

154.   Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XVII.
## TWELFTH CAUSE OF ACTION
### (Indemnification)

155.   Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

156.   Pursuant to Sections 12 and 12A of the Lease, Defendant OKP "shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation…[o]n the account of or through the use of the demised premise[s] or improvements or any part thereof by Lessee or by any other person acting under the authority, direction, in the interest of, or through the title of the Lessee for any purpose inconsistent with the provisions of this Lease."

157.   The destruction of the historical and cultural artifacts and permanent trees, and the removal of soil and other minerals, and other things of value, have diminished the market value of Plaintiff Atalig's land and constitutes waste which is inconsistent with the provisions of the Lease.

158.   Pursuant to Sections 12 and 12B of the Lease, Defendant OKP "shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation…[a]rising out of, or directly or indirectly due to, any failure of Lessee in any respect promptly and faithfully to satisfy Lessee's obligations under this [L]ease."

159.   Defendant OKP failed to promptly and faithfully satisfy Defendant OKP's obligations under the Lease by failing to obtain Plaintiff Atalig's written consent prior to the unlawful activities, and by destroying invaluable artifacts and other structures and things which constitutes waste.

160.    Pursuant to Sections 12 and 12C of the Lease, Defendant OKP "shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation…[a]rising out of directly or indirectly due to any accident or other occurrence causing injury to any person or persons or property resulting from the use of the premises or any part thereof, including the land."

161.    Defendants' actions caused the injury to Plaintiff Atalig's land by diminishing its value now and in the future.

162.    No such indemnification shall be required with respect to losses or liabilities arising by reason of the affirmative negligence or recklessness of Lessor.  See Section 12 of the Lease.

163.    Plaintiff Atalig was not, and is not, negligent, much less affirmatively negligent or reckless, in the performance of Plaintiff Atalig's duties and responsibilities under the Lease.

164.    As a direct and proximate result of Defendants' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, property damages, loss of prospective economic advantages, and has been damaged in an amount to be proven at trial.

165.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XVIII.
## THIRTEENTH CAUSE OF ACTION
### (Principal-Agent Liability:  Actual Authority)

166.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

167.    Defendant CPA, as the Sponsor of the Project under the Grant Agreement, expressly and intentionally delegated and conferred authority to Defendant OKP to be "fully responsible and

accountable at all times for the Project and for complying with the terms and conditions of [the Construction] Contract." See Section 7 of the Construction Contract.

168.    Defendant OKP was acting within the scope of its agency when Defendant OKP entered into the Lease with Plaintiff Atalig and when Defendant OKP committed the various torts that are set forth herein.

169.    As admitted and acknowledged by Defendant OKP, "all of the work that has been performed at Plaintiff's property has been performed solely for the purpose of supporting the performance of OKP (CNMI) Corporation's obligations under its contract with the Commonwealth Ports Authority for the extension of the Rota Airport Runway." OKP (CNMI) Corporation's Opposition to Plaintiff's Motion for Partial Summary Judgment at 11, lines 10-16.

170.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XIX.
## <u>FOURTEENTH CAUSE OF ACTION</u>
### (Respondeat Superior)

171.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

172.    Plaintiff Atalig was injured as the result of the tortious conduct as set forth herein.

173.    The tortfeasors, Defendants Jaiphakdee, Promchai, Goluguri, and others, are employees of Defendant OKP, and committed the torts set forth herein while they were acting within the scope of their employment.

174.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

**XX.**
## FIFTEENTH CAUSE OF ACTION
**(Punitive Damages)**

175.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

176.    Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig and others, Defendants are liable for punitive damages in the amount as set forth herein, or more, to be proven at trial.

177.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

**XXI.**
## SIXTEENTH CAUSE OF ACTION
**(Violation of the Open Government Meetings and Records Act)**
*Against Defendants CPA and Celis*

178.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

179.    On June 4, 2006, Plaintiff Atalig served, via facsimile and U.S. mail, a second Open Government Act request upon Defendant CPA and Defendant Regino Celis, in his capacity as [Acting] Executive Director of CPA, requesting copies of certain public records in Defendant CPA's possession, custody, or control, pursuant to the Open Government Meetings and Records Act. A true and correct copy of the June 4, 2006 Open Government Act request is attached hereto, labeled "Exhibit I," and incorporated herein by this reference as if set forth in full.

180.    On June 14, 2006, Plaintiff Atalig served, via facsimile and U.S. mail, another Open Government Act request upon Defendant CPA and Defendant Regino Celis, in his capacity as [Acting] Executive Director of CPA, requesting copies of certain public records in Defendant CPA's possession, custody, or control, pursuant to the Open Government Meetings and Records Act. A

true and correct copy of the June 14, 2006 Open Government Act request is attached hereto, labeled "Exhibit J," and incorporated herein by this reference as if set forth in full.

181.     On June 15, 2006, Defendant CPA and Celis, through counsel, responded to Plaintiff Atalig's June 4, 2006 request.  Mr. Douglas F. Cushnie, in his capacity as counsel for Defendant CPA, and on behalf of the Acting Executive Director of CPA, denied Plaintiff Atalig's request by failing to comply with the Open Government Meetings and Records Act.  A true and correct copy of the June 15, 2006 letter from Mr. Cushnie is attached hereto, labeled "Exhibit K," and incorporated herein by this reference as if set forth in full.

182.     On June 15, 2006, Plaintiff Atalig replied and requested, again, that Defendant CPA comply with the Open Government Meetings and Records Act.  A true and correct copy of the June 15, 2006 letter from Plaintiff Atalig's attorney is attached hereto, labeled "Exhibit L," and incorporated herein by this reference as if set forth in full.

183.     On June 22, 2006, Defendant CPA and Celis, through counsel, responded to Plaintiff Atalig's June 4, 2006 request.  Mr. Douglas F. Cushnie denied Plaintiff Atalig's request in large part and provided very few documents for review.  Mr. Cushnie made excuses, such as, "improper request requiring conclusions of law and fact is (*sic*) not a mere request for documents," "improper request requiring fact and legal determination," "the request is currently under review and will be responded to at a later time," "improper request, not being one for public records," "improper request not in conformance with the requirements of the Open Government Act," "will be provided, if available, at a later date," and "improper request not within the scope of Sections 9917 and 9918 of the OGA," in an effort to strangle and suffocate Plaintiff Atalig's right to access public records.  A true and correct copy of the June 22, 2006 letter from Mr. Cushnie is attached hereto, labeled "Exhibit M," and incorporated herein by this reference as if set forth in full.

184.   On June 25, 2006, Plaintiff Atalig, in good faith, attempted one more time to persuade Defendant CPA to make all public records, documents, materials, and information available for inspection in order to try to resolve any disputes without court action.  A true and correct copy of the June 25, 2006 letter from Plaintiff Atalig's attorney is attached hereto, labeled "Exhibit N," and incorporated herein by this reference as if set forth in full.

185.   Defendant CPA failed, refused, neglected, and continues to fail, refuse, and neglect, to make available public records for inspection and copying pursuant to Plaintiff Atalig's repeated requests, and pursuant to the Open Government Meetings and Records Act.

186.   Defendant CPA's conduct in making the above-described responses to Plaintiff Atalig's Open Government Meetings and Records Act request constitutes an unjustified and unlawful denial of Plaintiff Atalig's right to access to public records.

187.   Pursuant to the Open Government Meetings and Records Act (1 CMC § 9916(b)), Plaintiff Atalig, as an aggrieved party whose Open Government Act request has been denied in whole or in part, has the right to immediate judicial review.

188.   Plaintiff Atalig has fulfilled all of his obligations under said Open Government Meetings and Records Act with respect to his Open Government Act request.

189.   Pursuant to 1 CMC 9917(b), Plaintiff Atalig is entitled to recourse from this Court for the Defendants' unlawful denial of access to the requested public records and is entitled also to costs of suit together with reasonable attorney's fees upon prevailing in this action.

190.   Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XXII.
## SEVENTEENTH CAUSE OF ACTION
### (Attorneys' Fees)

191.    Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this Amended Complaint.

192.    Pursuant to Section 23 of the Lease Agreement identified above, in the event of a lawsuit by any party to the Lease Agreement "for the recovery of any rent due, or because of any breach of any term, covenant, condition, or provision hereof, the prevailing party shall be entitled to recover from the other party costs of suit and reasonable attorney's fees which shall be fixed by the Court."

193.    Plaintiff Atalig has incurred legal fees and continues to incur legal fees as a result of Defendant OKP's breach of the Lease and tortious acts.

194.    Furthermore, pursuant to 1 CMC § 9917(b), Plaintiff Atalig is entitled to attorney's fees once he prevails under the cause of action for violation of the Open Government Meetings and Records Act.

195.    Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XXIII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joaquin Q. Atalig prays for judgment against all Defendants, jointly and severally, as follows:

a.    General damages, in an amount to be proven at trial, for the destruction and desecration of several priceless and original Latte Stones, ancient Chamorro grinding stone, other cultural and historical artifacts, and other things of value;

b.    Punitive damages, in an amount appropriate to punish Defendants and set an example to others, to be proven at trial, because Defendants knew or should have known that the priceless Latte

Stones, ancient Chamorro grinding stone, and other cultural and historical artifacts are forever lost once damaged or destroyed, yet Defendants deliberately destroyed and desecrated the artifacts on Plaintiff Atalig's land, despite being forewarned of the presence of artifacts before clearing, which amounts to cultural and historical "terrorism" against the Chamorro people and the people of the CNMI, pure and simple;

c.  Temporary restraining order, preliminary and permanent injunction to prohibit Defendants from damaging, destroying, or removing any cultural or historical artifacts;

d.  An award of restitution to Plaintiff Atalig for the use of the Latte Stones and other valuable artifacts, materials, trees, soil, and minerals, which are forever lost or destroyed, so that Defendants will not be unjustly enriched at the expense of Plaintiff Atalig in an amount to be proven at trial;

e.  Pre-judgment interest on amounts owed;

f.  Post-judgment interests;

g.  To pierce the corporate veil of Defendant OKP CNMI;

h.  An order from this Court compelling Defendants CPA and Celis, including their employees, representatives, legal counsels, to produce the documents demanded in Plaintiff Atalig's June 4, 2006, and June 14, 2006 Open Government Act requests, including those demanded in follow up letters;

i.  For reasonable attorneys fees and costs as specifically provided by agreement and by statute under the Open Government Meetings and Records Act (1 CMC § 9917(b)); and

j.  For such other and further relief to which Plaintiff Atalig is entitled under law or equity as the Court deems just and proper.

37
Amended Complaint

1

2

## XXIV.
## DEMAND FOR JURY TRIAL

3       Plaintiff Joaquin Q. Atalig hereby demands a trial by jury of all issues triable of right by jury.

4       Respectfully submitted this 28th day of July, 2006.

5                                          LAW OFFICES OF RAMON K. QUICHOCHO, LLC

6

7

8                                          /s/Ramon K. Quichocho, Esq.
                                           CNMI Bar No. F0243

9                                          Attorney for Plaintiff Joaquin Q. Atalig

10

11

12

13

14

15                              ## VERIFICATION

16       I declare under penalty of perjury that I have read the foregoing Amended Complaint and

17   that it is true and correct to the best of my recollection and knowledge, as it applies to me, and that

18
     this declaration is executed on this 28th day of July, 2006, in Saipan, Commonwealth of the Northern
19
     Mariana Islands.
20

21

22                                         /s/JOAQUIN Q. ATALIG
                                           Plaintiff
23

24

25

26

27

28