# Exhibit C



Recording requested by                    )
Lessee                                     )
                                           )
                                           )
                                           )
                                           )
                                           )
                                           )

FILED
VI SUPERIOR COURT
E-filed: Oct 29 2007 3:37PM
Clerk Review: Oct 30 2007 2:35PM
Filing ID: 16841227
Case Number: 06-0119-CV
Rosita Aray

(Space above line for Recorder's use only.)

## LEASE AGREEMENT

THIS LEASE AGREEMENT (the "Lease") is made and entered into as of the _2nd_

day of November, 2005, by and between JOAQUIN Q. ATALIG, hereafter referred to as

"Lessor," and OKP (CNMI) CORPORATION, hereafter referred to as "Lessee."

## WITNESSETH:

In consideration of the rent hereinafter reserved and of the covenants herein to be

observed and performed, Lessor hereby demises and leases unto Lessee, and Lessee hereby

leases from Lessor the improvements described in Section I.

1.    PREMISES:   The Premises consist of all improvements situated on the real

property in Northern Part (Area No. 4) Ginalangan, Municipality of Rota, Commonwealth of the

Northern Mariana Islands, as more particularly hereinafter described, together with the right to

use Lessor's easements and appurtenances in adjoining and adjacent land, highways, roads,

streets, lanes, whether public or private, reasonably required for the installation, maintenance,

operation and service of sewer, water, gas, power and other utility lines and for driveways and

approaches to and from abutting highways or streets for the use and benefit of the above-

described improvements and the parcel of real property described below.  Lessee shall also have

the right to use the real property described below where the leased improvements are situated:

Lot No. 362 R 01, containing an area of 49,998 square meters, more or less, as more particularly described in Cadastral Plat No. 362 R 00, the original of which was registered with the Land Registry as Document No. 6503 on September 12, 1978.

The existing improvements and improvements subsequently erected thereon during the term of this Lease and the appurtenances and other incidents associated therewith are collectively referred to in this Lease as the "Premises."

Moreover, Lessee leases, as part of the agreement, furniture, fixtures, appliances, and tools, which are all itemized in the List of Inventory which will be verified and approved by both parties on or before November 30, 2005. The verified and approved List of Inventory shall be incorporated herein and made a part of this Lease by this reference.

2.   TERM OF LEASE:   This Lease shall be for a term of thirteen (13) months, commencing on December 1, 2005, and ending on December 31, 2006, unless sooner terminated as herein provided.

3.   RENT: The total rental fee for the term of this Lease is Thirty-Seven Thousand Five Hundred Dollars ($37,500.00), payable as shown below. As further consideration, Lessee covenants and agrees to pay the full-time salaries of two employees of Lessor, namely, Edita and Esther, at $4.50 per hour and $3.50 per hour, respectively.

4.   PAYMENT SCHEDULE:

4.1 Lessee shall pay Lessor advance rent of Nineteen Thousand Five Hundred Dollars ($19,500.00) upon the execution of this Lease.

4.2 Lessee shall pay the remaining rent of Eighteen Thousand Dollars ($18,000.00) on or before July 1, 2006.

Lease Agreement
Page 2 of 10

5.    OPTION TO RENEW LEASE: Lessee has the option to extend the Lease for a period of one year at the monthly rent of Three Thousand Dollars ($3,000.00) and upon the same remaining terms set forth herein, except that rental payments shall be made, in advance, every quarter. The first quarter rent shall be due and payable on January 1, 2007. Lessee shall exercise the option by giving Lessor 30 days notice, of its intent to renew the Lease for another year, before the expiration of the Lease.

6.    USE OF PREMISES: Lessee may use, improve and develop the Premises or any part thereof for any lawful use or purpose, provided that Lessee does not commit waste. but primarily as office, barracks. equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operation on Rota.

7.    LESSOR'S WARRANTY OF TITLE:    Lessor represents, warrants, and covenants that he is the sole. true owner in fee simple of all the leasehold premises and have the right to lease the same to the Lessee and that the Premises are free and clear of all liens, claims and encumbrances, excepting recorded easements for water, sewer, power, telephone, roadways, and other public utilities, and the Lessor has good and marketable title.

8.    LESSOR'S WARRANTY OF QUIET ENJOYMENT:  Upon Lessee paying the rent for the Premises and observing and performing all of the covenants, conditions and provisions on Lessee's part to be observed and performed hereunder, Lessor shall place Lessee in quiet possession of the Premises for the entire term hereof subject to all the provisions of this Lease.

9.    ASSIGN ABILITY AND SUBLEASING: Lessee may not assign or sublease the premises without the consent of Lessor. Lessor may not unreasonably withhold consent.

*Lease Agreement*
*Page 3 of 10*

10.    TAXES:

10.1    Lessee To Pay Taxes During Lease.    Lessee shall pay and discharge all taxes, assessment, rates, charges, license fees, municipal liens, levies, excises, or imposts, whether general or special, or ordinary or extraordinary, of every name, nature and kind whatsoever, including all governmental charges of whatsoever name, nature, or kind, which may be levied, assured, charged, or imposed, or which may become a lien or charge on or against the premises, or any part thereof, the leasehold of Lessee herein, the premises described herein, any buildings, or any other improvements now or hereafter thereon, or on or against Lessee's estate hereby created which may be a subject of taxation, or on or against Lessor by reason of its ownership of the fee underlying this Lease, during the entire term thereof, excepting only those taxes hereinafter specifically excepted.    All taxes and charges under this Section shall be prorated at the expiration of the term hereof.

10.2    Exceptions.    Anything in this section to the contrary notwithstanding. Lessee shall not be required to pay any estate, gift, inheritance, succession, franchise, income, or excess profits taxes which may be payable by Lessor or Lessor's legal representative, successors, or assigns, nor shall Lessee be required to pay any tax that might become due on account of ownership of property other than the premises herein which may become a lien on the premises or collectible out of the same.

10.3    Tax Contest.    Lessee shall have the right to contest the validity of any tax or special assessment payable by him which Lessee deems to have been illegally or improperly levied or assessed against the premises, and for that purpose shall have the right to institute such proceedings or proceedings in the name of Lessor as Lessee may deem necessary, provided that

the expense incurred by reason thereof shall be paid by Lessee, and provided, further, that it is necessary to use the name of Lessor in carrying on such proceeding.

11.    UTILITIES AND CHARGES: Lessee shall be responsible for the payment of all utilities, assessments, and other public charges arising by reason of the occupancy, use or possession of the Premises.

12.    INDEMNIFICATION OF LESSOR BY LESSEE: Lessee shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation arising prior to the expiration of the term hereof and delivery to Lessor of possession of the premises and use of the land:

A. On the account of or through the use of the demised premised or improvements or any part thereof by Lessee or by any other person acting under the authority, direction, in the interest of, or through the title of the Lessee for any purpose inconsistent with the provisions of this Lease;

B. Arising out of, or directly or indirectly due to, any failure of Lessee in any respect promptly and faithfully to satisfy Lessee's obligations under this lease; or

C. Arising out of directly or indirectly due to any accident or other occurrence causing injury to any person or persons or property resulting from the use of the premises or any part thereof, including the land.

No such indemnification shall be required with respect to losses or liabilities arising by reason of the affirmative negligence or recklessness of Lessor.

13.    LESSEE'S RIGHT TO BUILD:

13.1    Alteration/Building, etc. The Lessee shall have the right during the term of this Lease, to erect, maintain, alter, remodel, reconstruct, rebuild, replace, and remove

*Lease Agreement*
*Page 5 of 10*

building and other improvement on the Premise, and correct and change the contour of the Premises pursuant to the plans and drawings attached hereto as Exhibits "A" and "B"; and incorporated herein as part of this agreement by reference, only with the prior written consent of Lessor. Any other alterations and changes require Lessor's consent in writing.

13.2    Equipment and Fixtures.  Lessee shall have the right at any time during Lessee's occupancy of the Premises to remove any and all equipment and fixtures owned or placed by Lessee or its sublessee upon the Premises only with the prior written consent of Lessor, except that any water heater or air conditioner installed shall become Lessor's equipment after the expiration of the Lease.

13.3    Any items on the Inventory List on Exhibit "A" shall be replaced or repaired, at the sole cost of Lessee, if the item is broken, lost, missing or damaged, except for natural wear and tear.

13.4    Permanent Improvements.  Upon the expiration of the Lease term, Lessee shall be entitled to remove those temporary improvements that Lessee installed, which can be removed without causing harm or damage to the Premises, except fixtures, air conditioners, and water heaters. All other improvements shall become the property of the Lessor.

13.5    Soccer Field.  Lessee is authorized to setup, build, or construct a soccer field on the premises.

13.6    Lessee is hereby authorized to enter the premises on November 1, 2005, to commence repair and other work on the premises.  Lessee shall not disturb the customers and staff of Lessor, who may remain on the premises up to November 30, 2005.

14.    FIRE AND CASUALTY INSURANCE:  Lessee, at Lessee's option and at its own expense, shall keep all improvements erected on the Premises insured against loss or

damage by fire or other casualty or calamity for the value of all improvements. Any insurance proceeds payable with respect to any loss to any improvements on the Premises shall belong to Lessor and Lessee shall have no right, claim or interest therein.

15.    DEFAULT: Lessee shall be in default in the prompt and full performance of any other term, covenant, or condition of the Lease, (except as to payment of rent), and if such default shall continue for a period of thirty (30) days after notice of such default is given by the Lessor to Lessee, unless the default is of such a nature that the same cannot be cured or corrected within said thirty (30) day period and the Lessee shall have promptly and diligently commenced to cure and correct such default and shall have thereafter continued therewith with reasonable diligence and in good faith, in a manner as to cure and correct the same as promptly and as reasonably practicable under the circumstances, and shall have continued therewith until the default shall have been cured or corrected.

Lessee shall be in default in the payment of rent if rent is not paid within 15 days after it is due and such default shall continue for a period of fifteen (15) days after notice of such default and the default is not cured within the 15 days.

16.    LESSOR'S REMEDIES: In the event Lessee breaches this Lease and fails to make correction within the time provided, the Lessor may exercise any of the remedies available to the Lessor at law or in equity, including the right of re-entry without being liable for trespass, and all such remedies shall be cumulative and nonexclusive of any one or more such remedies, and exercise of one remedy shall not be deemed to be an exclusive election of the remedy or remedies exercised or waiver of the remedies not exercised.

17.    ESTOPPEL CERTIFICATES: Lessor shall, at any time from time to time, upon not less than ten days prior notice from Lessee, execute, acknowledge, and deliver to Lessee a

statement in writing certifying that the Lease is unmodified (or in full force and effect as modified and stating the modification(s)) and that there are no defaults existing, or if there is any claimed modification or default, stating the nature and extent thereof. It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by third parties.

18.    NOTICE:  All notices, demands or requests shall be given to each party at their respective addresses, as noted below.  Each party shall have the right, from time to time, to designate in writing a different address by notice given in conformance with this section.

LESSOR:                                              ʼ LESSEE:

Joaquin Q. Atalig                                     OKP (CNMI) CORPORATION
P.O. Box 965                                          P.O. Box 10001, PMB A-25
Rota, MP 96951                                        Saipan, MP 96950.

19. SEVERABILITY:  This Lease embodies the entire agreement between the parties.  If any provision herein is declared invalid by a court of competent jurisdiction, it shall be considered deleted from this Lease, and shall not invalidate the remaining provisions of this Lease which shall remain in full force and effect.

20.    ENTIRE AGREEMENT:  This Lease contains the entire agreements of the parties with respect to the matters covered herein as of the date of execution hereof and no other agreement, statement, or promise made by any party or to any employee, officer or agent of any party prior in time to the date of the execution of this Lease shall be binding or valid.

21.    MODIFICATION:  This Lease is not subject to modification except in writing, signed by the parties herein.

22.    BINDING EFFECT:  This Lease shall inure to the benefit of and bind the Lessor and the Lessee, their respective heirs, successors and assigns, jointly and severally.

*Lease Agreement*
*Page 8 of 10*

23.    ATTORNEYS' FEES:  In the event of any suit by any party to this Lease for the recovery of any rent due, or because of any breach of any term, covenant, condition, or provision hereof, the prevailing party shall be entitled to recover from the other party costs of suit and reasonable attorney's fees which shall be fixed by the Court.

    IN WITNESS WHEREOF, the parties have affixed their signatures below on the dates next to their respective signatures.

JOAQUIN Q. ATALIG
LESSOR

OKP (CNMI) CORPORATION
LESSEE
By:
Duly Authorized Representative

11 · 2 · 05
Date

11/2/05
Date

## ACKNOWLEDGMENT OF RECEIPT

    I, Joaquin Q. Atalig, received the total sum of Nineteen Thousand Five Hundred Dollars ($19,500.00), paid by Check No. 115, from OKP (CNMI) CORPORATION, as payment for rent under Section 4.1 of the Lease.

JOAQUIN Q. ATALIG
Lessor

11 · 2 · 05
Date

*Lease Agreement*
*Page 9 of 10*

COMMONWEALTH OF THE )
NORTHERN MARIANA ISLANDS )
                                                       ) **ss: ACKNOWLEDGMENT**
SAIPAN, MP 96950 )

ON THIS ___ day of _____ 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared JOAQUIN Q. ATALIG, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal the day and year first above written.

NOTARY PUBLIC
FRANCES CANTORIA QUICHOCHO
Notary Public
Commonwealth of the Northern Mariana Islands
My Commission expires

COMMONWEALTH OF THE )
NORTHERN MARIANA ISLANDS )
                                                       ) **ss: ACKNOWLEDGMENT**
SAIPAN, MP 96950 )

ON THIS ___ day of _____ 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared BRIAN M. CHEN, Resident Manager of OKP (CNMI) CORPORATION, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal the day and year first above written.

NOTARY PUBLIC
FRANCES CANTORIA QUICHOCHO
Notary Public
Commonwealth of the Northern Mariana Islands
My Commission expires

*Lease Agreement*
*Page 10 of 10*



FLOOR PLAN—BLDG. "B" and "C"
BUILDING (EXISTING CONDITION)

BLDG. "C"
(TYPICAL NO. 104 AND NO. 105)

BLDG. "B"

UNIT 103

EXHIBIT

B

FLOOR PLAN—BLDG. "D" BAR
(EXISTING CONDITION)

KITCHEN AREA

MEN SHOWER

LOUNGE AREA



NOTE: PROVIDE NEW TIN ROOF ON WOODEN FRAME, NEW DOORS, NEW WINDOWS, NEW WOODEN PARTITIONS, NEW TOILETS & SHOWERS, ETC. REPAIR FLOORS AND INSTALL NEW TILES, PAINTING,ELECTRICAL AND PLUMBING, COMPLETE IN PLACE.

FLOOR PLAN—BLDG. "C"
(NEW LAYOUT)



FLOOR PLAN—BLDG. "A" HOTEL
(EXISTING CONDITION)



FLOOR PLAN—BLDG. "A"
(NEW LAYOUT)