85. The Lease was a valid contract supported by bargained for consideration.

86. Plaintiff Atalig has performed all the conditions and agreements required of Plaintiff Atalig under the terms of the Lease.

87. Defendant OKP, including its agents, representatives, shareholders, principals, and employees, had a duty to act with reasonable care and diligence in performing the Lease so as not to injure a person or property by its performance.

88. Defendant OKP breached the Lease with Plaintiff Atalig, to the detriment of Plaintiff Atalig, in the following respects:

   a. Defendant OKP reneged on the promise to lease furniture, fixtures, appliances, and tools, which forced Plaintiff Atalig to incur storage costs for the furniture, fixtures, appliances, and tools that were not leased by Defendant OKP, in violation of Section 1 of the Lease.

   b. Defendant OKP has failed to pay the full-time salaries of Ms. Carillo and Ms. Langit at the rate of $4.50 per hour and $3.50 per hour, respectively, as agreed, in violation of Section 3 of the Lease;

   c. Defendant OKP, including its agents, representatives, and employees have illegally hunted for deer and fruitbat on Plaintiff Atalig's land in violation of Section 6 of the Lease and in violation of the laws of the CNMI;

   d. On information and belief, Defendant OKP, including its agents, representatives, and employees have stolen rocks and other materials from the Ginalangan Defensive Complex in their attempt to cover up the damage and destruction to the historical Japanese water tank. The stolen rocks are laid and stacked up on the Japanese water tank, which Defendant OKP has re-plastered to pretend that there is no damage. As a result, Defendant OKP violated Section 3 of the Lease, and the laws of the CNMI;

e. Defendant OKP, including its agents, representatives, and employees have committed waste by unlawfully damaging, destroying, and/or mutilating historical artifacts, structures, and other valuable relics, including but not limited to, Latte Stone clusters, ancient Chamorro grinding stone, Japanese structures, water tank, washing basin and frame, and areas surrounding Japanese building(s), in violation of Sections 1 and 6 of the Lease and in violation of CNMI laws and regulations;

f. Defendant OKP, including its agents, representatives, and employees have committed waste by damaging, destroying, and/or mutilating permanent trees, including but not limited to, flame trees, coconut trees, cotton trees, iron trees, bamboo trees, beetlenut trees, shrubs, manicured flowers, lemon trees, atis trees, and other plants, in violation of Sections 1 and 6 of the Lease;

g. Defendant OKP, including its agents, representatives, and employees have committed waste by damaging, destroying, and/or mutilating preexisting buildings/improvements to the land, including but not limited to, laundry, storage, and kitchen facilities, and the stored contents therein, in violation of Sections 1 and 6 of the Lease;

h. Defendant OKP, including its agents, representatives, and employees have committed waste by placing a fuel tank station on Plaintiff's property without the proper permits, in violation of Section 6 of the Lease;

i. Defendant OKP, including its agents, representatives, and employees have committed waste by moving and/or removing soil and minerals without the proper permits or authorization, in violation of Sections 1 and 6 of the Lease and in violation of CNMI laws and regulations;

j. Defendant OKP, including its agents, representatives, and employees failed to obtain Plaintiff Atalig's written consent to erect, maintain, alter, remodel, reconstruct, rebuild, replace and remove building and other improvement on the Premises, and correct and change the contour of the Premises, in violation of Section 13.1 of the Lease.

89. Notwithstanding demand and/or notice to cure the violations, Defendant OKP, including its agents, representatives, and employees have failed, neglected, and refused, and still fail, neglect, and refuse to cure the violations and default.

90. As a direct and proximate result of Defendant OKP, including its agents, representatives, and employees' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, property damages and loss of prospective economic advantages, and have been damaged in an amount to be proven at trial.

91. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendant OKP, including its agents, representatives, and employees' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendant OKP, is liable for punitive damages in an amount to be proven at trial.

92. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

IX.
**SECOND CAUSE OF ACTION**
(Waste)
*Against Defendant OKP*

93. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

94. At all relevant times, Plaintiff Atalig was the fee simple owner of Lot No. 362 R 01, on which are present priceless cultural and historical artifacts and other things of value.

20
*Second Amended Complaint*

95. Defendant OKP leased the <u>improvements</u> situated on Lot No. 362 R 01, and occupied Lot No. 362 R 01 since the commencement of the term of the Lease.

96. During the period of such occupation, Defendant OKP, including its agents, representatives, and employees greatly injured the improvements and the land, as follows:

   a. By unlawfully damaging and/or destroying historical artifacts, structures and other valuable relics, including but not limited to, Latte Stone clusters, ancient Chamorro grinding stone, Japanese structures, water tank, washing basin and frame, and areas surrounding Japanese building(s), and removing them from Plaintiff Atalig's land;

   b. By damaging, destroying and/or cutting permanent trees, including but not limited to, flame trees, coconut trees, cotton trees, iron trees, bamboo trees, beetlenut trees, shrubs, manicured flowers, lemon trees, atis trees, and other plants, and removing them from Plaintiff Atalig's land;

   c. By damaging and/or destroying preexisting buildings/improvements to the land, including but not limited to, the laundry, storage, and kitchen facilities, and leaving the stored items exposed;

   d. By placing a hazardous fuel tank on Plaintiff Atalig's land without the proper and necessary safety requirements in place; and

   e. By quarrying, moving, removing, and digging soil and other minerals (about 40' x 50' x 8' hole in the ground and lined by concrete, including other excavations), and removing them from Plaintiff Atalig's property.

97. Defendant OKP did not obtain the necessary permits from the Division of Environmental Quality and the Historic Preservation Office before conducting its wasteful and unlawful activities.

98. Although required under the Lease, Defendant OKP failed to obtain the prior written permission of Plaintiff Atalig before conducting its wasteful and unlawful activities.

99. As a direct and proximate result of Defendant OKP, including its agents, representatives, and employees' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, diminution in property values and loss of prospective economic advantages, and has been damaged in an amount to be proven at trial.

100. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendant OKP, including its agents, representatives, and employees' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendant OKP is liable for punitive damages in an amount to be proven at trial.

101. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

### X.
### THIRD CAUSE OF ACTION
(Conversion—Historical and Cultural Artifacts)
*Against Defendant OKP*

102. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

103. At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01, on which are present cultural and historical artifacts.

104. Defendant OKP, by its agents and employees acting within the scope of their employment, took possession of historical and cultural artifacts, to wit, Latte Stones, ancient Chamorro grinding stone, Japanese structures, Japanese washing basin and frame, and Japanese water tank, located on Plaintiff Atalig's land, and converted them to Defendant OKP's own use.

105. As a direct and proximate result of Defendant OKP and its agents, representatives and employees' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages,

including but not limited to, property damages, diminution in property values, and loss of prospective economic advantages, and has been damaged in an amount to be proven at trial.

106. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendant OKP and its agents, representatives, and employees' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendant OKP is liable for punitive damages in an amount to be proven at trial.

107. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

### XI.
### FOURTH CAUSE OF ACTION
(Conversion—Soil and Other Minerals)
*Against Defendant OKP*

108. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

109. At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01, on which are present fertile top soil and minerals.

110. Defendant OKP, by its agents and employees acting within the scope of their employment, took possession of soil and other minerals located on Plaintiff Atalig's land, and converted them to Defendant OKP's own use.

111. As a direct and proximate result of Defendant OKP and its agents, representatives and employees' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, property damages and loss of prospective economic advantages, and has been damaged in an amount to be proven at trial.

112. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendant OKP and its agents, representatives and employees' conduct as alleged herein, and their conscious

and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendant OKP is liable for punitive damages in an amount to be proven at trial.

113. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XII.
## FIFTH CAUSE OF ACTION
### (Conversion—Permanent Trees)
### *Against Defendant OKP*

114. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

115. At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01, on which are present valuable permanent trees.

116. Defendant OKP, by its agents and employees acting within the scope of their employment, took possession of permanent trees, to wit, flame trees, coconut trees, cotton trees, iron trees, bamboo trees, beetlenut trees, lemon trees, atis trees, shrubs, manicured flowers; and other plants, located on Plaintiff Atalig's land, and converted them to Defendant OKP's own use.

117. As a direct and proximate result of Defendant OKP and its agents, representatives and employees' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, property damages and loss of prospective economic advantages, and has been damaged in an amount to be proven at trial.

118. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendant OKP and its agents, representatives and employees' conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendant OKP is liable for punitive damages in an amount to be proven at trial.

119. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XIII.
## SIXTH CAUSE OF ACTION
(Conversion—Preexisting Buildings/Improvements)
*Against Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3*

120. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

121. At all relevant times mentioned, Plaintiff Atalig was the owner of Lot No. 362 R 01 on which are present preexisting buildings and improvements.

122. Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3 took possession of preexisting buildings/improvements, to wit, laundry, storage, and kitchen facilities, including the stored items, such as golf ball dispensers, sinks, mattresses, kitchen tools, located on Plaintiff Atalig's land, and converted them to Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3's own use.

123. As a direct and proximate result of Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3's conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, property damages and loss of prospective economic advantages, and has been damaged in an amount to be proven at trial.

124. Because of the willful, wanton, vile, outrageous, and malicious nature of Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3's conduct as alleged herein, and their conscious and reckless disregard and indifference of the rights of Plaintiff Atalig, Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3 are liable for punitive damages in an amount to be proven at trial.

125. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XIV.
### SEVENTH CAUSE OF ACTION
(Negligence)
*Against Defendant OKP*

126. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

127. Defendant OKP had the duty not to commit waste on Plaintiff Atalig's land and to obtain the prior written consent of Plaintiff Atalig before any alterations or changes are done on the leased improvements and the real property.

128. Defendant OKP breached its duty to Plaintiff Atalig when it violated the laws of the CNMI by damaging and destroying cultural and historical artifacts and other things of value, and when Defendant OKP failed to obtain the prior written consent of Plaintiff Atalig to damage, remove, alter or change the improvements, the real property, and other things of value.

129. As a direct and proximate result of Defendant OKP's conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, property damages and loss of prospective economic advantages, and has been damaged in an amount to be proven at trial.

130. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XV.
### EIGHTH CAUSE OF ACTION
(Unjust Enrichment)
*Against Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, Does 1-3*

131. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

132. Defendant OKP is sued under this cause of action in the alternative to the breach of contract cause of action, and for damages for any actions taken by Defendant OKP that were outside of the scope of the Lease.

133. Defendants Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3 are sued under this cause of action for damages for any actions taken by them since they are not parties to the Lease.

134. Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3 used and benefited from the use of Plaintiff Atalig's land to build certain structures and to remove certain historical and cultural artifacts and permanent trees, without the prior written consent of Plaintiff Atalig.

135. Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3 used and benefited from the use of certain materials that were taken from the storage, laundry, and kitchen facilities without the prior written consent of Plaintiff Atalig.

136. Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3 knew that they do not have permission from Plaintiff Atalig to take and remove preexisting improvements, including the stored items such as golf ball dispensers, sinks, mattresses, etc., historical and cultural artifacts, and permanent trees, but they went ahead and took, removed, and benefited from the use of Plaintiff Atalig's properties as set forth herein.

137. Defendant OKP has accepted and enjoyed the benefits of the impermissible use of Plaintiff Atalig's properties to further Defendant OKP's business in Rota and the CNMI.

138. Defendants Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3 have accepted and enjoyed the benefits of the impermissible use of Plaintiff Atalig's properties.

139. The retention of the benefit and enjoyment of the use of Plaintiff Atalig's land and properties without the payment of its value is unfair and unjust.

140. Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3 have been unjustly enriched at the expense of Plaintiff Atalig.

141. As a direct and proximate result of Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3's conduct detailed above and in other respects, Plaintiff Atalig has suffered personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, including but not limited to, property damages, and has been damaged in an amount to be proven at trial.

142. Wherefore, Plaintiff prays for the relief as set forth herein.

## XVI.
## NINTH CAUSE OF ACTION
### (Indemnification)
### *Against Defendant OKP*

143. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

144. Pursuant to Sections 12 and 12A of the Lease, Defendant OKP "shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation...[o]n the account of or through the use of the demised premise[s] or improvements or any part thereof by Lessee or by any other person acting under the authority, direction, in the interest of, or through the title of the Lessee for any purpose inconsistent with the provisions of this Lease."

145. The destruction of the historical and cultural artifacts and permanent trees, and the removal of soil and minerals, and other things of value, have diminished the market value of Plaintiff Atalig's land and constitutes waste which is inconsistent with the provisions of the Lease.

146. Pursuant to Sections 12 and 12B of the Lease, Defendant OKP "shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of

1 litigation...[a]rising out of, or directly or indirectly due to, any failure of Lessee in any respect promptly and faithfully to satisfy Lessee's obligations under this [L]ease."

147. Defendant OKP failed to promptly and faithfully satisfy Defendant OKP's obligations under the Lease by failing to obtain Plaintiff Atalig's written consent prior to the unlawful activities, and by destroying invaluable artifacts and other structures and things which constitutes waste.

148. Pursuant to Sections 12 and 12C of the Lease, Defendant OKP "shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation...[a]rising out of directly or indirectly due to any accident or other occurrence causing injury to any person or persons or property resulting from the use of the premises or any part thereof, including the land."

149. Defendant OKP, including its agents, representatives, and employees' actions caused the injury to Plaintiff Atalig's land by diminishing its value now and in the future.

150. No such indemnification shall be required with respect to losses or liabilities arising by reason of the affirmative negligence or recklessness of Lessor. See Section 12 of the Lease.

151. Plaintiff Atalig was not, and is not, negligent, much less affirmatively negligent or reckless, in the performance of Plaintiff Atalig's duties and responsibilities under the Lease.

152. As a direct and proximate result of Defendant OKP, including its agents, representatives, and employees' conduct detailed above and in other respects, Plaintiff Atalig has suffered damages, including, but not limited to, personal physical injuries and ailments, emotional distress, fear, anguish, sleeplessness, and anxiety, property damages, loss of prospective economic advantages, and has been damaged in an amount to be proven at trial.

153. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XVII.
## TENTH CAUSE OF ACTION
(Violation of the Open Government Meetings and Records Act)
*Against Defendants CPA and Celis*

154. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

155. On June 4, 2006, Plaintiff Atalig served, via facsimile and U.S. mail, a second Open Government Act request upon Defendant CPA and Defendant Regino Celis, in his capacity as [Acting] Executive Director of CPA, requesting copies of certain public records in Defendant CPA's possession, custody, or control, pursuant to the Open Government Meetings and Records Act. A true and correct copy of the June 4, 2006 Open Government Act request is attached to the FAC, labeled "Exhibit I," and incorporated herein by this reference as if set forth in full.

156. On June 14, 2006, Plaintiff Atalig served, via facsimile and U.S. mail, another Open Government Act request upon Defendant CPA and Defendant Regino Celis, in his capacity as [Acting] Executive Director of CPA, requesting copies of certain public records in Defendant CPA's possession, custody, or control, pursuant to the Open Government Meetings and Records Act. A true and correct copy of the June 14, 2006 Open Government Act request is attached to the FAC, labeled "Exhibit J," and incorporated herein by this reference as if set forth in full.

157. On June 15, 2006, Defendant CPA and Celis, through counsel, responded to Plaintiff Atalig's June 4, 2006 request. Mr. Douglas F. Cushnie, in his capacity as counsel for Defendant CPA, and on behalf of the Acting Executive Director of CPA, denied Plaintiff Atalig's request by failing to comply with the Open Government Meetings and Records Act. A true and correct copy of the June 15, 2006 letter from Mr. Cushnie is attached to the FAC, labeled "Exhibit K," and incorporated herein by this reference as if set forth in full.

158. On June 15, 2006, Plaintiff Atalig replied and requested, again, that Defendant CPA comply with the Open Government Meetings and Records Act. A true and correct copy of the June 15, 2006 letter from Plaintiff Atalig's attorney is attached to the FAC, labeled "Exhibit L," and incorporated herein by this reference as if set forth in full.

159. On June 22, 2006, Defendant CPA and Celis, through counsel, responded to Plaintiff Atalig's June 4, 2006 request. Mr. Douglas F. Cushnie denied Plaintiff Atalig's request in large part and provided very few documents for review. Mr. Cushnie made excuses, such as, "improper request requiring conclusions of law and fact is (sic) not a mere request for documents," "improper request requiring fact and legal determination," "the request is currently under review and will be responded to at a later time," "improper request, not being one for public records," "improper request not in conformance with the requirements of the Open Government Act," "will be provided, if available, at a later date," and "improper request not within the scope of Sections 9917 and 9918 of the OGA," in an effort to strangle and suffocate Plaintiff Atalig's right to access public records. A true and correct copy of the June 22, 2006 letter from Mr. Cushnie is attached to the FAC, labeled "Exhibit M," and incorporated herein by this reference as if set forth in full.

160. On June 25, 2006, Plaintiff Atalig, in good faith, attempted one more time to persuade Defendant CPA to make all public records, documents, materials, and information available for inspection in order to try to resolve any disputes without court action. A true and correct copy of the June 25, 2006 letter from Plaintiff Atalig's attorney is attached to the FAC, labeled "Exhibit N," and incorporated herein by this reference as if set forth in full.

161. Defendant CPA failed, refused, neglected, and continues to fail, refuse, and neglect, to make available public records for inspection and copying pursuant to Plaintiff Atalig's repeated requests, and pursuant to the Open Government Meetings and Records Act.

162. Defendant CPA's conduct in making the above-described responses to Plaintiff Atalig's Open Government Meetings and Records Act request constitutes an unjustified and unlawful denial of Plaintiff Atalig's right to access to public records.

163. Pursuant to the Open Government Meetings and Records Act (1 CMC § 9916(b)), Plaintiff Atalig, as an aggrieved party whose Open Government Act request has been denied in whole or in part, has the right to immediate judicial review.

164. Plaintiff Atalig has fulfilled all of his obligations under said Open Government Meetings and Records Act with respect to his Open Government Act request.

165. Pursuant to 1 CMC 9917(b), Plaintiff Atalig is entitled to recourse from this Court for Defendant CPA's unlawful denial of access to the requested public records and is entitled also to costs of suit together with reasonable attorney's fees upon prevailing in this action.

166. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XVIII.
## ELEVENTH CAUSE OF ACTION
### (Attorneys' Fees)
### *Against Defendant OKP*

167. Plaintiff Atalig hereby re-alleges and incorporates by this reference, as if fully set forth under this cause of action, all the allegations contained in this SAC.

168. Pursuant to Section 23 of the Lease Agreement identified above, in the event of a lawsuit by any party to the Lease Agreement "for the recovery of any rent due, or because of any breach of any term, covenant, condition, or provision hereof, the prevailing party shall be entitled to recover from the other party costs of suit and reasonable attorney's fees which shall be fixed by the Court."

169. Plaintiff Atalig has incurred legal fees and continues to incur legal fees as a result of Defendant OKP's breach of the Lease and tortious acts.

170. Wherefore, Plaintiff Atalig prays for the relief as set forth herein.

## XIX.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joaquin Q. Atalig prays for judgment against all Defendants, jointly and severally, as follows:

a. General damages, in an amount to be proven at trial, for the destruction and desecration of several priceless and original Latte Stones, ancient Chamorro grinding stone, other cultural and historical artifacts, and other things of value;

b. Punitive damages, in an amount appropriate to punish Defendants and set an example to others, to be proven at trial, because Defendants knew or should have known that the priceless Latte Stones, ancient Chamorro grinding stone, and other cultural and historical artifacts are forever lost once damaged or destroyed, yet Defendants deliberately destroyed and desecrated the artifacts on Plaintiff Atalig's land, despite being forewarned of the presence of artifacts before clearing, which amounts to cultural and historical "terrorism" against the Chamorro people and the people of the CNMI, pure and simple;

c. Temporary restraining order, preliminary and permanent injunction to prohibit Defendants from damaging, destroying, or removing any cultural or historical artifacts;

d. An award of restitution to Plaintiff Atalig for the use of the Latte Stones and other valuable artifacts, materials, trees, soil, and minerals, which are forever lost or destroyed, so that Defendants will not be unjustly enriched at the expense of Plaintiff Atalig in an amount to be proven at trial;

e. Pre-judgment interest on amounts owed;

f. Post-judgment interests;

g. To pierce the corporate veil of Defendant OKP;

1  h. An order from this Court compelling Defendants CPA and Celis, including their employees, representatives, legal counsels, to produce the documents demanded in Plaintiff Atalig's June 4, 2006, and June 14, 2006 Open Government Act requests, including those demanded in follow up letters;

i. For reasonable attorneys fees and costs as specifically provided by agreement and by statute under the Open Government Meetings and Records Act (1 CMC § 9917(b)); and

j. For such other and further relief to which Plaintiff Atalig is entitled under law or equity as the Court deems just and proper.

## XX.
## DEMAND FOR JURY TRIAL

Plaintiff Joaquin Q. Atalig hereby demands a trial by jury of all issues triable of right by jury.

Respectfully submitted this 18th day of April, 2007.

ATALIG LAW OFFICE

Antonio M. Atalig, Esq.
CNMI Bar No. F0138

O'CONNOR BERMAN DOTTS & BANES

Michael W. Dotts, Esq.
CNMI Bar No. _____

LAW OFFICES OF RAMON K. QUICHOCHO, LLC

/s/Ramon K. Quichocho, Esq.
CNMI Bar No. F0243

*Attorneys for Plaintiff Joaquin Q. Atalig*