c. for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of the grant agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d. in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:
   (i) all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and
   (ii) all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

27. **Use by Government Aircraft.** It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that–

   a. Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

   c. The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

28. **Land for Federal Facilities.** It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein, or rights in buildings of the sponsor as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

29. **Airport Layout Plan.**

   a. It will keep up to date at all times an airport layout plan of the airport showing (1) boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto; (2) the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities; and (3) the location of all existing and proposed nonaviation areas and of all existing improvements thereon. Such airport layout plans and each amendment, revision, or modification thereof, shall be subject to the approval of the Secretary which approval shall be evidenced by the signature of a duly authorized representative of the Secretary on the face of the airport layout plan. The sponsor will not make

or permit any changes or alterations in the airport or any of its facilities which are not in conformity with the airport layout plan as approved by the Secretary and which might, in the opinion of the Secretary, adversely affect the safety, utility or efficiency of the airport.

b. If a change or alteration in the airport or the facilities is made which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary (1) eliminate such adverse effect in a manner approved by the Secretary; or (2) bear all costs of relocating such property (or replacement thereof) to a site acceptable to the Secretary and all costs of restoring such property (or replacement thereof) to the level of safety, utility, efficiency, and cost of operation existing before the unapproved change in the airport or its facilities.

30. **Civil Rights.** It will comply with such rules as are promulgated to assure that no person shall, on the grounds of race, creed, color, national origin, sex, age, or handicap be excluded from participating in any activity conducted with or benefiting from funds received from this grant. This assurance obligates the sponsor for the period during which Federal financial assistance is extended to the program, except where Federal financial assistance is to provide, or is in the form of personal property or real property or interest therein or structures or improvements thereon in which case the assurance obligates the sponsor or any transferee for the longer of the following periods: (a) the period during which the property is used for a purpose for which Federal financial assistance is extended, or for another purpose involving the provision of similar services or benefits, or (b) the period during which the sponsor retains ownership or possession of the property.

31. **Disposal of Land.**

a. For land purchased under a grant for airport noise compatibility purposes, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will, at the discretion of the Secretary, (1) be paid to the Secretary for deposit in the Trust Fund, or (2) be reinvested in an approved noise compatibility project as prescribed by the Secretary, including the purchase of nonresidential buildings or property in the vicinity of residential buildings or property previously purchased by the airport as part of a noise compatibility program.

b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, (1) upon application to the Secretary, be reinvested in another eligible airport improvement project or projects approved by the Secretary at that airport or within the national airport system, or (2) be paid to the Secretary for deposit in the Trust Fund if no eligible project exists.

c.    Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d.    Disposition of such land under (a) (b) or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

**32. Engineering and Design Services.** It will award each contract, or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services with respect to the project in the same manner as a contract for architectural and engineering services is negotiated under Title IX of the Federal Property and Administrative Services Act of 1949 or an equivalent qualifications-based requirement **prescribed** for or by the sponsor of the airport.

**33. Foreign Market Restrictions.** It will not allow funds provided under this grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**34. Policies, Standards, and Specifications.** It will carry out the project in accordance with policies, standards, and specifications approved by the Secretary including but not limited to the advisory circulars listed in the Current FAA Advisory Circulars for AIP projects, dated 7/1/05 and included in this grant, and in accordance with applicable state policies, standards, and specifications approved by the Secretary.

**35. Relocation and Real Property Acquisition.** (1) It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B. (2) It will provide a relocation assistance program offering the services described in Subpart C and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24. (3) It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

**36. Access By Intercity Buses.** The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport, however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

37.    **Disadvantaged Business Enterprises.** The recipient shall not discriminate on the basis of race, color, national origin or sex in the award and performance of any DOT-assisted contract or in the administration of its DBE program or the requirements of 49 CFR Part 26. The Recipient shall take all necessary and reasonable steps under 49 CFR Part 26 to ensure non discrimination in the award and administration of DOT-assisted contracts. The recipient's DBE program, as required by 49 CFR Part 26, and as approved by DOT, is incorporated by reference in this agreement. Implementation of this program is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the recipient of its failure to carry out its approved program, the Department may impose sanctions as provided for under Part 26 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. 3801).

38.    **Hangar Construction.** If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

39. **Competitive Access.**

  a.    If the airport owner or operator of a medium or large hub airport (as defined in section 47102 of title 49, U.S.C.) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that—
  1.  Describes the requests;
  2.  Provides an explanation as to why the requests could not be accommodated; and
  3.  Provides a time frame within which, if any, the airport will be able to accommodate the requests.

  b.    Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six month period prior to the applicable due date

**CURRENT FAA ADVISORY CIRCULARS FOR BOTH AIP and FC PROJECTS**
**Dated: 7/1/05**

| NUMBER | TITLE |
|---|---|
| 70/7460-1and Change 1 | Obstruction Marking and Lighting |
| 150/5000-13 | Announcement of Availability--RTCA Inc., Document RTCA-221, Guidance and Recommended Requirements for Airport Surface Movement Sensors |
| 150/5100-15A | Civil Rights Requirements For The Airport Improvement Program |
| 150/5070-6A | Airport Master Plans |
| 150/5190-5 and Change 1 | Exclusive Rights and Minimum Standards for Commercial Aeronautical Activities |
| 150/5200-28B | Notices to Airmen (NOTAMS) for Airport Operators |
| 150/5210-5B | Painting, Marking and Lighting of Vehicles Used on an Airport |
| 150/5210-7C | Aircraft Fire and Rescue Communications |
| 150/5210-13B | Water Rescue Plans, Facilities, and Equipment |
| 150/5210-14A | Airport Fire and Rescue Personnel Protective Clothing |
| 150/5210-15 | Airport Rescue & Firefighting Station Building Design |
| 150/5210-18 | Systems for Interactive Training of Airport Personnel |
| 150/5210-19 | Driver's Enhanced Vision System (DEVS) |
| 150/5220-4B | Water Supply Systems for Aircraft Fire and Rescue Protection |
| 150/5220-10C | Guide Specification for Water/Foam Type Aircraft Rescue and Firefighting Vehicles |
| 150/5220-13B | Runway Surface Condition Sensor Specification Guide |
| 150/5220-16C | Automated Weather Observing Systems for Nonfederal Applications |
| 150/5220-17A and Change 1 | Design Standards for Aircraft Rescue Firefighting Training Facilities |
| 150/5220-18 | Buildings for Storage and Maintenance of Airport Snow and Ice Control Equipment and Materials |
| 150/5220-19 | Guide Specification for Small, Dual-Agent Aircraft Rescue and Firefighting Vehicles |
| 150/5220-20 and Change 1 | Airport Snow and Ice Control Equipment |
| 150/5220-21B | Guide Specification for Lifts Used to Board Airline Passengers With Mobility Impairments |
| 150/5220-22 and Change 1 | Engineered Materials Arresting Systems (EMAS) for Aircraft Overruns |
| 150/5300-13 and Changes 1 through 8 | Airport Design |
| 150/5300-14 and Changes 1 and 2 | Design of Aircraft Deicing Facilities |
| 150/5320-5B | Airport Drainage |
| 150/5320-6D and Changes 1 through 3 | Airport Pavement Design and Evaluation |
| 150/5320-12C and Changes 1 through 6 | Measurement, Construction, and Maintenance of Skid Resistant Airport Pavement Surfaces |

| NUMBER | TITLE |
|---|---|
| 150/5320-14 | Airport Landscaping for Noise Control Purposes |
| 150/5320-15 and Change 1 | Management of Airport Industrial Waste |
| 150/5320-17 | Airfield Pavement Surface Evaluation and Rating (PASER) Manuals |
| 150/5325-4A and Change 1 | Runway Length Requirements for Airport Design |
| 150/5335-5 and Change 1 | Standardized Method of Reporting Pavement Strength PCN |
| 150/5340-1J | Standards for Airport Markings |
| 150/5340-5B and Change 1 | Segmented Circle Airport Marker System |
| 150/5340-18D | Standards for Airport Sign Systems |
| 150/5340-19 | Taxiway Centerline Lighting System |
| 150/5345-3E | Specification for L821 Panels for Remote Control of Airport Lighting |
| 150/5345-5A | Circuit Selector Switch |
| 150/5345-7E | Specification for L824 Underground Electrical Cable for Airport Lighting Circuits |
| 150/5345-10E | Specification for Constant Current Regulators Regulator Monitors |
| 150/5345-12C | Specification for Airport and Heliport Beacon |
| 150/5345-13A | Specification for L841 Auxiliary Relay Cabinet Assembly for Pilot Control of Airport Lighting Circuits |
| 150/5345-26C | Specification for L823 Plug and Receptacle, Cable Connectors |
| 150/5345-27D | Specification for Wind Cone Assemblies |
| 150/5345-28F | Precision Approach Path Indicator (PAPI) Systems |
| 150/5345-39B and Change 1 | FAA Specification L853, Runway and Taxiway Centerline Retroreflective Markers |
| 150/5345-42D | Specification for Airport Light Bases, Transformer Housings, Junction Boxes and Accessories |
| 150/5345-43E | Specification for Obstruction Lighting Equipment |
| 150/5345-44G | Specification for Taxiway and Runway Signs |
| 150/5345-45A | Lightweight Approach Light Structure |
| 150/5345-46B | Specification for Runway and Taxiway Light Fixtures |
| 150/5345-47A | Isolation Transformers for Airport Lighting Systems |
| 150/5345-49A | Specification L854, Radio Control Equipment |
| 150/5345-50 and Change 1 | Specification for Portable Runway Lights |
| 150/5345-51 and Change 1 | Specification for Discharge-Type Flasher Equipment |
| 150/5345-52 | Generic Visual Glideslope Indicators (GVGI) |
| 150/5345-53B | Airport Lighting Equipment Certification Program |
| 150/5345-54A and Change 1 | Specification for L-1884 Power and Control Unit for Land and Hold Short |
| 150/5345-55 | Lighted Visual Aid to Indicate Temporary Runway Closure |
| 150/5360-9 | Planning and Design of Airport Terminal Facilities at NonHub Locations |
| 150/5360-11 | Energy Conservation for Airport Buildings |

| 1. NUMBER | TITLE |
|---|---|
| 150/5360-12D | Airport Signing & Graphics |
| 150/5360-13 and Change 1 | Planning and Design Guidance for Airport Terminal Facilities |
| 150/5370-2E | Operational Safety on Airports During Construction |
| 150/5370-10B | Standards for Specifying Construction of Airports |
| 150/5370-13 | Offpeak Construction of Airport Pavements Using Hot-Mix Asphalt |
| 150/5380-6A | Guidelines and Procedures for Maintenance of Airport Pavements |
| 150/5380-7 | Pavement Management System |
| 150/5380-8 | Handbook for Identification of Alkali-Silica Reactivity in Airfield Pavements |
| 150/5390-2B | Heliport Design |
| 150/5390-3 | Vertiport Design |
| 150/5395-1 | Seaplane Bases |
| 150/5200-30 | Airport Winter Safety and Operations |
| 150/5200-33 | Hazardous Wildlife Attractants On or Near Airports |
| 150/5300-15 | Use of Value Engineering for Engineering Design of Airport Grant Projects |
| 150/5370-11 | Use of Nondestructive Testing Devices in the Evaluation of Airport Pavements |
| 150/5370-12 | Quality Control of Construction for Airport Grant Projects |
| 150/5370-6 | Construction Progress and Inspection Report-Airport Grant Program |

## THE FOLLOWING ADDITIONAL APPLY to AIP PROJECT ONLY
### Dated: 7/1/05

| NUMBER | TITLE |
|---|---|
| 150/5100-14C | Architectural, Engineering, and Planning Consultant Services for Airport Grant Projects |
| 150/5100-15A | Civil Rights Requirements For The Airport Improvement Program |
| 150/5100-17 and Changes 1 through 4 | Land Acquisition and Relocation Assistance for Airport Improvement Program Assisted Projects |
| 150/5190-5 and Change 1 | Exclusive Rights and Minimum Standards for Commercial Aeronautical Activities |
| 150/5200-30A and Changes 1 through 8 | Airport Winter Safety and Operations |
| 150/5200-33A | Hazardous Wildlife Attractants on or Near Airports |
| 150/5300-15 | Use of Value Engineering for Engineering Design of Airports Grant Projects |
| 150/5320-17 | Airfield Pavement Surface Evaluation and Rating (PASER) Manuals |
| 150/5360-11 | Energy Conservation for Airport Buildings |
| 150/5370-6B | Construction Progress and Inspection Report—Airport Grant Program |
| 150/5370-11A | Use on Nondestructive Testing Devices in the Evaluation of Airport Pavements |
| 150/5370-12 | Quality Control of Construction for Airport Grant Projects |
| 150/5370-13 | Offpeak Construction of Airport Pavements Using Hot-Mix Asphalt |
| 150/5380-7 | Pavement Management System |
| 150/5380-8 | Handbook for Identification of Alkali-Silica Reactivity in Airfield Pavements |

## THE FOLLOWING ADDITIONAL APPLY to PFC PROJECTS ONLY
### Dated: 7/1/05

| NUMBER | TITLE |
|---|---|
| 150/5000-12 | Announcement of Availability—Passenger Facility Charge (PFC) Application (FAA Form 5500-1) |

# EXHIBIT B

 **OKP (CNMI) CORPORATION**

September 30, 2005

**RECEIVED
SEP 30 2005
CPA Admin.**

**Mr. Carlos H. Salas**
**Executive Director/Contracting Officer**
**Commonwealth Ports Authority**
**P. O. Box 501055**
**Saipan, MP 96950**

Dear Mr. Salas:

**Subject: Rota International Airport Runway 09/27 Extension, Phase 1**
                **AIP No. 3-69-003-19**
                **Intend to award**

We refer to your 'Intent to Award' dated September 20, 2005.

We are pleased to submit the performance and payment bonds and insurance for your approval.

In addition, we would like to provide the following information as requested in your letter;

1) Appendix 1 & 1a - List of proposed subcontractors and equipments.
2) Appendix 2 – Financial statement of OKP Holdings Limited, Singapore. The balance sheet shows strong and healthy cash reserves. This project will be funded from Singapore.
3) Appendix 3 – Catalogue of the proposed asphalt plant. Currently, the plant is located in Singapore. The plant is capable of producing 100 ton of asphalt per hour.
4) A comprehensive testing program for soil tests and quality control programs for paving will be submitted during the Pre-construction meeting.

The escalation and de-escalation clause is deleted in Addendum No. 1, issued on May 10, 2005. Please refer to Item 1; Revised legal provision LP-2 Instruction to bidders. It stated the omission of paragraph 26 – Escalation and De-escalation clause entirely.

Thank you.

Yours faithfully,
**OKP (CNMI) CORPORATION**

**TOH WAT OR**
**Vice President**

Add  : P O Box 10001, PMB A-25
        Saipan MP 96950-8901
Tel  : 671-6980798
Email : okpcnmi@okph.com
Website : http://www.okph.com



**E-FILED**
**CNMI SUPERIOR COURT**
E-filed: Jul 31 2006 12:40PM
Clerk Review: Jul 31 2006 2:52PM
Filing ID: 11929652
Case Number: 06-0119-CV
Elsa Duenas

# EXHIBIT C

## CPA Engineering

| | |
|---|---|
| From: | "Or Toh Wat" <ortohwat@okph.com>. |
| To: | "Carlos H. Salas" <cpa.csalas@saipan.com> |
| Cc: | "CPA Comptroller" <cpa.comptroller@vzpacifica.net>; "CPA Engr" <cpa.engr@saipan.com>; "Ed Mendiola" <edmendiola@gmail.com>; "Ralph Hayashi" <rhayashi@ssfm.com>; "Brian Chen" <bmchen@ite.net>; "Daniel Or" <danielor@singnet.com.sg>; "Ong Wei Wei" <ongweiwei@okph.com> |
| Sent: | Wednesday, October 19, 2005 4:29 PM |
| Subject: | Re: Financial Statements per Your Submission |

Dear Mr Carlos,

Please see my relpy in blue.

I would like to emphasize that our Holdings from Singapore has given a strong mandate and commitment to OKP (CNMI) the fullest assistance for this Rota project. All machinery and equipments will be purchase and prepared by OKP Holdings. Thus, the bulk of the cost for this project is being well taken care of and finance by Singapore. This again can be confirm by Mr. Hayashi and Mr. Ed during their visit to our machinery yard yesterday.

Please do not hesitate to contact me at my mobile 65-98362727 for any further clarification.

Regards,

Or Toh Wat
Group Managing Director
OKP Holdings Limited
No 6 Tagore Drive #B1-06
Tagore Industrial Building
Singapore 787623
Tel : (65) 6456 7667
Fax : (65) 6459 7757
e-mail : ortohwat@okph.com

Privileged/Confidential information may be contained in this message. If you are not the addressee indicated in this message ( or responsible for delivery of the message to such person ), you may not copy or deliver this message to anyone. In such case, you should destroy this message and notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of my firm shall be understood as neither given nor endorsed by it.

----- Original Message -----
From: Carlos H. Salas
To: ortohwat@okph.com
Sent: Monday, October 17, 2005 2:37 PM
Subject: Fw: Financial Statements per Your Submission

Mr. OR

I spoke to Mr. Brian Chen about my questions below and he suggested I email you a copy for a reply at your earliest convenience. Look forward to hearing from you.

Carlos H Salas
Executive Director

# EXHIBIT D



# OKP HOLDINGS LIMITED
胡金標控股有限公司



October 24, 2005

Our Ref: OKP/TW/CPA/05-149

Mr. Carlos H. Salas
**Executive Director/Contracting Officer**
**Commonwealth Ports Authority**
P. O. Box 501055
Saipan, MP 96950                                    **By Fax:+(1) (670) 234-5962**

Dear Mr. Salas:

**Subject:  Rota International Airport Runway 09/27 Extension, Phase 1**
**AIP No. 3-69-003-19**
**Financial Statements - Drawdown**

We refer to our email dated 10/19/05 and wish to iterate our commitment and
financial support to OKP (CNMI).

As mentioned in our email reply, the preparation and purchasing of all machinery and
equipments are handled and finance by OKP Holdings, Singapore including shipment
to Rota. We have incurred a cost of approximately of USD$ .2 millions for the all
necessary machinery and equipments. This is one of the major costs for the project.

The machinery will be mobilized to Rota by early or mid December. Thus, our first
progress claim of about $720,000 can be submitted under the Mobilization item. That
represents a net positive cash inflow because the majority of the initial cost is
absorbed by the Holdings Company. We have also prepared another amount of at
least USD$ 1 million to be added in the cash flow. This amount will be funded by
internal source and disburse to OKP (CNMI) when necessary.

We hope that your high office will be convinced and satisfied with our financial
capabilities from the above explanation.

Thank you.

Yours faithfully,
**OKP HOLDINGS LIMITED**

**TOH WAT OR**
**Group Managing Director**

No. 6 Tagore Drive #61-06
Tagore Industrial Building
Singapore 787623
Tel : (65) 6456 7667
Fax: (65) 6459 7757
Email: orkimpeow@pacific.net.sg

# EXHIBIT E

# COMMONWEALTH PORTS AUTHORITY

Main Office: SAIPAN INTERNATIONAL AIRPORT
P.O. BOX 501055 • SAIPAN • MP 96950-1055
Phone: (670) 664-3500 /1     FAX: (670) 234-5962
E-Mail Address: cpa.admin@saipan.com
Wedsite: www.cpa.gov.mp

ENTERED MAR 1 0 2006

## CONSTRUCTION CONTRACT
## FOR ROTA INTERNATIONAL AIRPORT
## RUNWAY 09/27 EXTENSION – PHASE I
## PROJECT NO. CPA-RA-001-03 / AIP NO. 3-69-0003-19

*394-05*

CONSTRUCTION CONTRACT, made and entered into this ___28th___ day of ___October___, 2005 by and between THE COMMONWEALTH PORTS AUTHORITY, a public corporation of the Commonwealth of the Northern Mariana Islands, hereinafter referred to as the "CPA," and OKP (CNMI) Corporation, a corporation incorporated and licensed to do business in the Commonwealth of the Northern Mariana Islands, whose business address and/or mailing address is P.O. Box 10001, PMB A-25, Saipan, MP 96950, hereinafter referred to as the "CONTRACTOR."

### WITNESSETH THAT:

1.     **DESCRIPTION OF PROJECT.** For and in consideration of the payments to be made by CPA for the work to be performed by CONTRACTOR under this Contract, the CONTRACTOR hereby covenants and agrees to construct, build, and complete in place, furnish, and pay for all labor, materials and equipments necessary to carry out the following Project:

Name of Project:          ROTA INTERNATIONAL AIRPORT
                          RUNWAY 09/27 EXTENSION PHASE 1

Project/AIP No.:          CPA-RA-001-03 / 3-69-0003-19

Location of Project:      ROTA, COMMONWEALTH OF THE
                          NORTHERN MARIANA ISLANDS

all in accordance with the Plans and Specification for such Project, and the Contract Documents as described herein.

The Project Plans and Specifications and the General Provisions governing this Contract, together with the notice to bidders, the instructions to bidders, the bid proposal submitted by Contractor, bid bond, payment and performance bond, bid schedule, non-collusion affidavit, non-gratuity affidavit, all alterations, amendments, additions and addenda thereto, are made a part of this Contract and are hereby incorporated herein by reference as if fully set forth herein. All are collectively referred to as the "Contract Documents."

The project in general consists of extension of 1,000 feet of runway, turnarounds at both ends of the Runway 09/27, grading and earth works, and other related works all in accordance with the Plans and Specifications.

2. **CONSIDERATION FOR THE PROJECT.** As consideration for the entire cost of construction for the Project in accordance with the stated Plans and Specifications, CPA agrees to pay the CONTRACTOR the sum of **EIGHT MILLION SIX-HUNDRED SEVENTY-SEVEN THOUSAND DOLLARS ($8,677,000.00)** in lawful money of the United States of America. Such sum of money shall be paid the Contractor in accordance with the payment schedule agreed to by the parties, as work on the Project progresses faithfully and satisfactorily to CPA. Such stated consideration shall be subject to change depending on additions or deductions made to the Project Scope of Work, as hereafter agreed to by the Parties and made in the manner and at the time prescribed in the Contract Documents.

3. **DURATION OF PROJECT CONTRACT.** The CONTRACTOR hereby covenants and agrees to complete the overall work on the Project within the number of calendar days indicated in Technical Specifications Item G-100-3.2 *(as amended in Addendum No. 3)* commencing with the date indicated in the written NOTICE TO PROCEED given by CPA. Such contract duration shall be subject to such extension of time as is permitted or agreed to under this Contract, the Plans and Specifications, Legal Provisions and General Provisions.

4. **LIQUIDATED DAMAGES.** The CONTRACTOR hereby agrees to pay CPA the sum indicated in Technical Specifications Item G-100-3.4 each calendar day, not as penalty but as reasonable liquidated damages, for breach of this Contract by Contractor for failing, neglecting or refusing to complete the work on the Project within the time duration hereinabove specified. Such sum shall be paid CPA for each consecutive calendar day that the CONTRACTOR is in default beyond the time stipulated in the Contract for completing the Project, and ready for use by CPA.

5. **FUNDING FOR THE PROJECT.** The Project, which is the subject of this Contract, is being funded by the Commonwealth Ports Authority, U.S. Department of Interior and Federal Aviation Administration.

6. **CONTRACTOR ASSURANCES.** Contractor hereby certifies that it has available the necessary technical expertise and professional staff needed for the Project; that it has secured the subcontractors and suppliers necessary for carrying out all works on the Project; and that it has or will secure the necessary number of skilled workers to perform the work on the Project. Such assurances shall be continuing in nature and shall remain effective for the duration of the Project. Whenever CPA reasonably determines that Contractor is not meeting any of the foregoing assurances in a manner that affects the quality of work on the Project or adversely affects the progress of work on the Project in accordance with the scheduled progress of work, CPA shall notify the Contractor of such matter and the parties shall meet to discuss the matter so that the same could be amicably resolved.

7. **NON-ASSIGNMENT OF CONTRACT OR ANY INTEREST THEREIN.** This Contract and any interest therein shall not be assigned or transferred by the Contractor; provided that Contractor with the express prior written approval of CPA, may secure such subcontractors and suppliers that are necessary to carry out the work on the Project; and provided further that the Contractor shall remain fully responsible and accountable at all times for the Project and for complying with the terms and conditions of this Contract.

8. **NO LIENS ALLOWED.** It is hereby agreed that the Contractor shall not suffer any mechanic, supplier, labor, or other liens to be made on the Project being constructed under this Contract; and Contractor hereby agrees that any and all payments due to others for labor, materials,

supply, or work performed on or for the Project shall be paid by Contractor when and as the same become due and payable.

9.    **BINDING EFFECT**. This Contract shall bind and inure to the benefit of CPA and the Contractor, and their respective successors and assigns.

10.    **AUDITS BY PUBLIC AUDITOR**. The CNMI Public Auditor, pursuant to 1 CMC § 7845, shall have the right to examine, review, and inspect all books, data, papers and records of the Contractor and all its subcontractors during and after completion of work on the Project, and the same shall be made available to the Public Auditor and CPA for a period of three (3) years after final payment on the Project.

11.    **GRATUITIES AND KICKBACKS**.

(1)    Gratuities. It shall be a breach of ethical standards and this contract for any person to offer, give or agree to give any official or employee or former official or employee of CPA, the Contractor, or any subcontractor, to solicit, demand, accept, or agree to accept from another person, a gratuity or an offer of employment in connection with any decision, approval, disapproval, recommendation, preparation of any part of a program requirement or a purchase request, influencing the content of any specification or procurement standard, rendering of advice, investigation, auditing or in any other advisory capacity in any proceeding or application, request for ruling, determination, claim or controversy, or other particular matter, pertaining to any program requirement or a contract or subcontract or to any solicitation or proposal therefore.

(2)    Kickbacks. It shall be a breach of ethical standards and this contract for any payment, gratuity or offer of employment to be made by or on behalf of CPA, the Contractor or a subcontractor under this Contract.

12.    **PROHIBITION AGAINST CONTINGENT FEE**.

(1)    Contingent fees. It shall be a breach of ethical standards and this contract for a person to be retained by the Contractor or subcontractor, or for the Contractor or subcontractor to retain a person, to solicit or secure government contracts upon an agreement or understanding for a commission, percentage, brokerage or contingent fee, except for retention of bond fide employees or bona fide established commercial selling agencies for the purpose of securing business.

(2)    Representation of contractor. Every person, before being awarded a government contract, shall represent, in writing that such person has not retained anyone in violation of this section. Failure to do so constitutes a breach of ethical standards.

13.    **DEBARMENT AND SUSPENSION**. Any breach of Articles 11 and 12 above shall be cause for debarment or suspension of Contractor or any subcontractor or supplier, and may result in the suspension or termination of this Contract or any subcontract.

14.    **NON-DISCRIMINATION CLAUSE**. The Contractor or subcontractor shall not discriminate on the basis of race, color, national origin, or sex in the performance of this Contract.

The Contractor shall carry out applicable requirements of 49 CFR Part 26 (Disadvantaged Business Enterprises) in the award and administration of DOT assisted contracts. Failure by the Contractor to carry out these requirements is a material breach of this contract, which may result in the termination of this Contract or such other remedy as the CPA deems appropriate.

15.    **PROMPT PAYMENT TO SUBCONTRACTORS.** The Contractor agrees to pay each subcontractor under this prime contract for satisfactory performance of its Contract no later than 15 days from the receipt of each payment the Contractor receives from CPA. The Contractor agrees further to return retainage payments to each subcontractor within 30 days after the subcontractor's work is satisfactorily completed. Any delay of postponement of payment from the above referenced time frame may occur only for good cause, following written approval of CPA. This prompt payment clause applies to both DBE and non-DBE subcontractors.

IN WITNESS WHEREOF, the parties hereto have caused this Contract to be duly executed on the day and year first above entered.

COMMONWEALTH PORTS AUTHORITY                    OKP (CNMI) CORPORATION

By: _____                    By: _____
         CARLOS H. SALAS                                  MR. KIM PEOW OR
    Executive Director/Contracting Officer                   President


APPROVED AS TO FORM AND LEGALITY:

_____
DOUGLAS F. CUSHNIE, ESQ.
CPA Legal Counsel

## REVIEW AND APPROVAL
## BY THE SECRETARY OF PUBLIC WORKS
## AS THE OFFICIAL WITH EXPENDITURE AUTHORITY
## FOR CNMI-APPROPRIATED FUNDS

I, JOSE S. DEMAPAN, the undersigned Secretary of Public Works, as the official of the CNMI Government having expenditure authority for the CNMI Funds appropriated to partially fund the Construction Contract for the Rota International Airport Runway 09/27 Extension Project – Phase I, do hereby declare that the Commonwealth Ports Authority, which is the owner of the Project to be constructed, has duly complied with the required procurement rules and regulations applicable thereto. I further declare, upon review of the foregoing Construction Contract, that the same is for a public purpose and that it does not constitute and will not be a waste or abuse of public funds. I, therefore, hereby approve the foregoing Contract, in my capacity as expenditure authority of such CNMI funds. Finally, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: _3/08/06_

_____
JOSE S. DEMAPAN
Secretary
CNMI Department of Public Works

**SIGNATURE REQUIREMENTS.** No Construction Contract can be formed prior to the approval of all required Government officials, as evidenced by the signature affixed hereto, of each of them. The signature of the Contractor shall be the last in time to be affixed hereto. The Construction Contract shall become effective upon the execution by all required signatories.

## 1. Compliance with CPA Procurement Regulations: Contract Oversight

I hereby certify that to the best of my information and belief, this Contract for Construction by the contractor is in compliance with CPA's Procurement Rules and Regulations, that the Contract is for an Authority purpose and does not constitute a waste or abuse of public funds.

_____
LEE C. CABRERA
CPA Executive Director/Contracting Officer

_____
Date

## 2. Expenditure Authority

I declare that I have complied with the construction procedures of the CNMI Procurement Regulations in the procurement of this Construction Contract, that this Contract is for public purpose, and that the Contract does not waste or abuse public funds. I declare that I, personally, have the authority to obligate the expenditure of funds for this contract. I declare under penalty or perjury that the foregoing is true and correct and that this declaration was executed this day on Saipan, Commonwealth of the Northern Mariana Islands.

_____
JOSE S. DEMAPAN
Secretary of Public Works

_____3/8/06_____
Date

## 3. Department of Finance

ENTERED MAR 1 0 2006

I hereby certify that there are sufficient funds available in the DOI/FY 1996-2002 CIP Covenant Grant Funds Account Numbers **5177-64100-64320** in the amount of **$1,750,000.00** and **5416-64100-64320** in the amount of **$700,000.00** for the execution of this Construction Contract.

_____
ELOY S. INOS
Acting Secretary of Finance

_____3/10/06_____
Date

6

## 4. **Commonwealth Ports Authority**

We hereby certify that there are sufficient funds available in the FAA Account Number **0103-130825** in the amount of **$4,477,000.00** for the execution of this Construction Contract.

_____
LEE C. CABRERA
Executive Director/Contracting Officer

_____
06 March 2006
Date

## 5. **Commonwealth Development Authority (CDA)**    ENTERED MAR 1 0 2006

We hereby certify that there are sufficient funds available in the CNMI/FY 1996-2002 CIP Covenant Grant Funds Account Number **5177-64300-64320** in the amount of **$1,750,000.00** from the proceeds of the CDA Revenue Bond FY 1996-2002 (PL. 12-64) for the execution of this Construction Contract.

_____
OSCAR C. CAMACHO
Acting Chief Executive Officer

_____
3/14/06
Date

_____
for: TOM GLENN QUITUGUA
Chairman, Board of Directors

_____
3/14/06
Date

ANTONIO M. BORJA, Vice-Chairman, CDA Board of Directors

## 6. **Attorney General**

I hereby certify that this Construction Contract has been numbered, reviewed and approved as to form and legal capacity.

_____
MATTHEW GREGORY
Attorney General

_____
4/13/06
Date

7

7. **Governor**

_____     $5/24/06$
BENIGNO R. FITIAL, Governor                Date
Commonwealth of the Northern Mariana Islands

8. **Construction Contractor: OKP (CNMI) Corporation**

On behalf of the Contractor, I represent that I am authorized to bind the Contractor to the terms of this Construction Contract, and by my signature, I do so hereby accept the Contractor, and bind the Contractor to the terms of this Construction Contract. I further represent for the Contractor that no person associated with the Contractor has retained any person in violation of Section 6-205 of the CPA Procurement Regulations.

_____     $6|13|2006$.
Name: MR. KIM PEOW OR                      Date
Title:   President/Duly Authorized Official

## CERTIFICATION OF CONSTRUCTION CONTRACT COMPLETION

I hereby certify that this Construction Contract bears all signatures and is therefore complete.

_____     $6/15/06$
REGINO M. CELIS                                Date
CPA Acting Executive Director/Contracting Officer

## END OF CONSTRUCTION CONTRACT

# EXHIBIT F

Recording requested by
Lessee

FILE NO. 05-3030

'05 NOV -3 A9:04

BOOK 19 PAGE 84

)
)
)
)
)
)
)
)

(Space above line for Recorder's use only.)

## LEASE AGREEMENT

THIS LEASE AGREEMENT (the "Lease") is made and entered into as of the 2nd. day of November, 2005, by and between JOAQUIN Q. ATALIG, hereafter referred to as "Lessor," and OKP (CNMI) CORPORATION, hereafter referred to as "Lessee."

## WITNESSETH:

In consideration of the rent hereinafter reserved and of the covenants herein to be observed and performed, Lessor hereby demises and leases unto Lessee, and Lessee hereby leases from Lessor the improvements described in Section I.

1.    PREMISES: The Premises consist of all improvements situated on the real property in Northern Part (Area No. 4) Ginalangan, Municipality of Rota, Commonwealth of the Northern Mariana Islands, as more particularly hereinafter described, together with the right to use Lessor's easements and appurtenances in adjoining and adjacent land, highways, roads, streets, lanes, whether public or private, reasonably required for the installation, maintenance, operation and service of sewer, water, gas, power and other utility lines and for driveways and approaches to and from abutting highways or streets for the use and benefit of the above-described improvements and the parcel of real property described below. Lessee shall also have the right to use the real property described below where the leased improvements are situated:

Lot No. 362 R 01, containing an area of 49,998 square meters, more or less, as more particularly described in Cadastral Plat No. 362 R 00, the original of which was registered with the Land Registry as Document No. 6503 on September 12, 1978.

The existing improvements and improvements subsequently erected thereon during the term of this Lease and the appurtenances and other incidents associated therewith are collectively referred to in this Lease as the "Premises."

Moreover, Lessee leases, as part of the agreement, furniture, fixtures, appliances, and tools, which are all itemized in the List of Inventory which will be verified and approved by both parties on or before November 30, 2005. The verified and approved List of Inventory shall be incorporated herein and made a part of this Lease by this reference.

2.    TERM OF LEASE:   This Lease shall be for a term of thirteen (13) months, commencing on December 1, 2005, and ending on December 31, 2006, unless sooner terminated as herein provided.

3.    RENT: The total rental fee for the term of this Lease is Thirty-Seven Thousand Five Hundred Dollars ($37,500.00), payable as shown below. As further consideration, Lessee covenants and agrees to pay the full-time salaries of two employees of Lessor, namely, Edita and Esther, at $4.50 per hour and $3.50 per hour, respectively.

4.    PAYMENT SCHEDULE:

4.1 Lessee shall pay Lessor advance rent of Nineteen Thousand Five Hundred Dollars ($19,500.00) upon the execution of this Lease.

4.2 Lessee shall pay the remaining rent of Eighteen Thousand Dollars ($18,000.00) on or before July 1, 2006.

*Lease Agreement*
*Page 2 of 10*

5.    OPTION TO RENEW LEASE:  Lessee has the option to extend the Lease for a period of one year at the monthly rent of Three Thousand Dollars ($3,000.00) and upon the same remaining terms set forth herein, except that rental payments shall be made, in advance, every quarter.  The first quarter rent shall be due and payable on January 1, 2007.  Lessee shall exercise the option by giving Lessor 30 days notice, of its intent to renew the Lease for another year, before the expiration of the Lease.

6.    USE OF PREMISES:  Lessee may use, improve and develop the Premises or any part thereof for any lawful use or purpose, provided that Lessee does not commit waste, but primarily as office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operation on Rota.

7.    LESSOR'S WARRANTY OF TITLE:  Lessor represents, warrants, and covenants that he is the sole, true owner in fee simple of all the leasehold premises and have the right to lease the same to the Lessee and that the Premises are free and clear of all liens, claims and encumbrances, excepting recorded easements for water, sewer, power, telephone, roadways, and other public utilities, and the Lessor has good and marketable title.

8.    LESSOR'S WARRANTY OF QUIET ENJOYMENT:  Upon Lessee paying the rent for the Premises and observing and performing all of the covenants, conditions and provisions on Lessee's part to be observed and performed hereunder, Lessor shall place Lessee in quiet possession of the Premises for the entire term hereof subject to all the provisions of this Lease.

9.    ASSIGN ABILITY AND SUBLEASING:  Lessee may not assign or sublease the premises without the consent of Lessor.  Lessor may not unreasonably withhold consent.

10.   TAXES:

10.1   Lessee To Pay Taxes During Lease.   Lessee shall pay and discharge all taxes, assessment, rates, charges, license fees, municipal liens, levies, excises, or imposts, whether general or special, or ordinary or extraordinary, of every name, nature and kind whatsoever, including all governmental charges of whatsoever name, nature, or kind, which may be levied, assured, charged, or imposed, or which may become a lien or charge on or against the premises, or any part thereof, the leasehold of Lessee herein, the premises described herein, any buildings, or any other improvements now or hereafter thereon, or on or against Lessee's estate hereby created which may be a subject of taxation, or on or against Lessor by reason of its ownership of the fee underlying this Lease, during the entire term thereof, excepting only those taxes hereinafter specifically excepted.   All taxes and charges under this Section shall be prorated at the expiration of the term hereof.

10.2   Exceptions.   Anything in this section to the contrary notwithstanding, Lessee shall not be required to pay any estate, gift, inheritance, succession, franchise, income, or excess profits taxes which may be payable by Lessor or Lessor's legal representative, successors, or assigns, nor shall Lessee be required to pay any tax that might become due on account of ownership of property other than the premises herein which may become a lien on the premises or collectible out of the same.

10.3   Tax Contest.   Lessee shall have the right to contest the validity of any tax or special assessment payable by him which Lessee deems to have been illegally or improperly levied or assessed against the premises, and for that purpose shall have the right to institute such proceedings or proceedings in the name of Lessor as Lessee may deem necessary, provided that

the expense incurred by reason thereof shall be paid by Lessee, and provided, further, that it is necessary to use the name of Lessor in carrying on such proceeding.

11.     UTILITIES AND CHARGES:  Lessee shall be responsible for the payment of all utilities, assessments, and other public charges arising by reason of the occupancy, use or possession of the Premises.

12.     INDEMNIFICATION OF LESSOR BY LESSEE:  Lessee shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation arising prior to the expiration of the term hereof and delivery to Lessor of possession of the premises and use of the land:

A. On the account of or through the use of the demised premised or improvements or any part thereof by Lessee or by any other person acting under the authority, direction, in the interest of, or through the title of the Lessee for any purpose inconsistent with the provisions of this Lease;

B. Arising out of, or directly or indirectly due to, any failure of Lessee in any respect promptly and faithfully to satisfy Lessee's obligations under this lease; or

C. Arising out of directly or indirectly due to any accident or other occurrence causing injury to any person or persons or property resulting from the use of the premises or any part thereof, including the land.

No such indemnification shall be required with respect to losses or liabilities arising by reason of the affirmative negligence or recklessness of Lessor.

13.     LESSEE'S RIGHT TO BUILD:

13.1     Alteration/Building, etc.  The Lessee shall have the right during the term of this Lease, to erect, maintain, alter, remodel, reconstruct, rebuild, replace, and remove

building and other improvement on the Premise, and correct and change the contour of the Premises pursuant to the plans and drawings attached hereto as Exhibits "A" and "B", and incorporated herein as part of this agreement by reference, only with the prior written consent of Lessor. Any other alterations and changes require Lessor's consent in writing.

13.2    Equipment and Fixtures.  Lessee shall have the right at any time during Lessee's occupancy of the Premises to remove any and all equipment and fixtures owned or placed by Lessee or its sublessee upon the Premises only with the prior written consent of Lessor, except that any water heater or air conditioner installed shall become Lessor's equipment after the expiration of the Lease.

13.3    Any items on the Inventory List on Exhibit "A" shall be replaced or repaired, at the sole cost of Lessee, if the item is broken, lost, missing or damaged, except for natural wear and tear.

13.4    Permanent Improvements.  Upon the expiration of the Lease term, Lessee shall be entitled to remove those temporary improvements that Lessee installed, which can be removed without causing harm or damage to the Premises, except fixtures, air conditioners, and water heaters. All other improvements shall become the property of the Lessor.

13.5    Soccer Field.  Lessee is authorized to setup, build, or construct a soccer field on the premises.

13.6    Lessee is hereby authorized to enter the premises on November 1, 2005, to commence repair and other work on the premises.  Lessee shall not disturb the customers and staff of Lessor, who may remain on the premises up to November 30, 2005.

14.    FIRE AND CASUALTY INSURANCE:  Lessee, at Lessee's option and at its own expense, shall keep all improvements erected on the Premises insured against loss or

damage by fire or other casualty or calamity for the value of all improvements. Any insurance proceeds payable with respect to any loss to any improvements on the Premises shall belong to Lessor and Lessee shall have no right, claim or interest therein.

15.    DEFAULT:  Lessee shall be in default in the prompt and full performance of any other term, covenant, or condition of the Lease, (except as to payment of rent), and if such default shall continue for a period of thirty (30) days after notice of such default is given by the Lessor to Lessee, unless the default is of such a nature that the same cannot be cured or corrected within said thirty (30) day period and the Lessee shall have promptly and diligently commenced to cure and correct such default and shall have thereafter continued therewith with reasonable diligence and in good faith, in a manner as to cure and correct the same as promptly and as reasonably practicable under the circumstances, and shall have continued therewith until the default shall have been cured or corrected.

Lessee shall be in default in the payment of rent if rent is not paid within 15 days after it is due and such default shall continue for a period of fifteen (15) days after notice of such default and the default is not cured within the 15 days.

16.    LESSOR'S REMEDIES:  In the event Lessee breaches this Lease and fails to make correction within the time provided, the Lessor may exercise any of the remedies available to the Lessor at law or in equity, including the right of re-entry without being liable for trespass, and all such remedies shall be cumulative and nonexclusive of any one or more such remedies, and exercise of one remedy shall not be deemed to be an exclusive election of the remedy or remedies exercised or waiver of the remedies not exercised.

17.    ESTOPPEL CERTIFICATES:  Lessor shall, at any time from time to time, upon not less than ten days prior notice from Lessee, execute, acknowledge, and deliver to Lessee a

statement in writing certifying that the Lease is unmodified (or in full force and effect as modified and stating the modification(s)) and that there are no defaults existing, or if there is any claimed modification or default, stating the nature and extent thereof. It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by third parties.

18.    NOTICE: All notices, demands or requests shall be given to each party at their respective addresses, as noted below. Each party shall have the right, from time to time, to designate in writing a different address by notice given in conformance with this section.

LESSOR:                                LESSEE:

Joaquin Q. Atalig                      OKP (CNMI) CORPORATION
P.O. Box 965                           P.O. Box 10001, PMB A-25
Rota, MP 96951                         Saipan, MP 96950.

19. SEVERABILITY: This Lease embodies the entire agreement between the parties. If any provision herein is declared invalid by a court of competent jurisdiction, it shall be considered deleted from this Lease, and shall not invalidate the remaining provisions of this Lease which shall remain in full force and effect.

20.    ENTIRE AGREEMENT: This Lease contains the entire agreements of the parties with respect to the matters covered herein as of the date of execution hereof and no other agreement, statement, or promise made by any party or to any employee, officer or agent of any party prior in time to the date of the execution of this Lease shall be binding or valid.

21.    MODIFICATION: This Lease is not subject to modification except in writing, signed by the parties herein.

22.    BINDING EFFECT: This Lease shall inure to the benefit of and bind the Lessor and the Lessee, their respective heirs, successors and assigns, jointly and severally.

23.    ATTORNEYS' FEES:  In the event of any suit by any party to this Lease for the recovery of any rent due, or because of any breach of any term, covenant, condition, or provision hereof, the prevailing party shall be entitled to recover from the other party costs of suit and reasonable attorney's fees which shall be fixed by the Court.

IN WITNESS WHEREOF, the parties have affixed their signatures below on the dates next to their respective signatures.

JOAQUIN Q. ATALIG
LESSOR

OKP (CNMI) CORPORATION
LESSEE
By:
Duly Authorized Representative

11.2.05
Date

11/2/05
Date

## ACKNOWLEDGMENT OF RECEIPT

I, Joaquin Q. Atalig, received the total sum of Nineteen Thousand Five Hundred Dollars ($19,500.00), paid by Check No. 115, from OKP (CNMI) CORPORATION, as payment for rent under Section 4.1 of the Lease.

JOAQUIN Q. ATALIG
Lessor

11.2.05
Date

*Lease Agreement*
*Page 9 of 10*

COMMONWEALTH OF THE )
NORTHERN MARIANA ISLANDS )
)       ss: ACKNOWLEDGMENT
SAIPAN, MP 96950 )

ON THIS _2nd_ day of _November_, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **JOAQUIN Q. ATALIG**, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal the day and year first above written.



_____
NOTARY PUBLIC
FRANCES CANTORIA QUICHOCHO
Notary Public
Commonwealth of the Northern Mariana Islands
My Commission expires: 3/17/07

COMMONWEALTH OF THE )
NORTHERN MARIANA ISLANDS )
)       ss: ACKNOWLEDGMENT
SAIPAN, MP 96950 )

ON THIS _2nd_ day of _November_, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **BRIAN M. CHEN, Resident Manager of OKP (CNMI) CORPORATION**, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal the day and year first above written.

_____
NOTARY PUBLIC
FRANCES CANTORIA QUICHOCHO
Notary Public
Commonwealth of the Northern Mariana Islands
My Commission expires: 3/17/07

FLOOR PLAN—BLDG. "B" and "C"
BUILDING (EXISTING CONDITION)

BLDG. "C"
(TYPHOON DAMAGED AND NO ROOF)

BLDG. "B"

UNIT 109

EXHIBIT
A



FLOOR PLAN—BLDG. "D" BAR
(EXISTING CONDITION)

KITCHEN AREA

BAR COUNTER

LOUNGE AREA



FLOOR PLAN-BLDG. "C"
(NEW LAYOUT)

NOTE: PROVIDE NEW TIN ROOF ON WOODEN FRAME, NEW DOORS,
NEW WINDOWS, NEW WOODEN PARTITIONS, NEW TOILETS &
SHOWERS, ETC. REPAIR FLOORS AND INSTALL NEW TILES,
PAINTING,ELECTRICAL AND PLUMBING, COMPLETE IN PLACE.

ROOM NO.4

ROOM NO.2

ROOM NO.1

ROOM NO.3

FOYER

SHOWER AREA

TOILET AREA

BLDG. "B"
EXISTING

FLOOR PLAN-BLDG. "A" HOTEL
(EXISTING CONDITION)

EXHIBIT
"B"

FLOOR PLAN-BLDG. "A" (NEW LAYOUT)

# EXHIBIT G

January 17, 2006


Mr. Brian M. Chen
Resident Manager
OKP (CNMI), CORPATION
P.O. Box 10001, PMB A-25
Saipan, MP 96950

      Re:  NOTICE OF DEFAULT AND VIOLATIONS re Lease Agreement for improvements
      on Lot No. 362 R 01.

Dear Mr. Chen:

A recent site inspection of my property in Rota, which your company OKP (CNMI) Corporation is leasing, revealed that OKP (CNMI) Corporation has defaulted on certain provisions of the Lease Agreement with me (1) by damaging and/or destroying historical artifacts, structures and other valuable relics, including but not limited to, latte stone clusters, a large Japanese memorial, a Japanese shrine, water tank, washing basin and frame, and areas surrounding Japanese building(s), (2) by damaging and/or destroying permanent trees, including but not limited to, flame trees, coconut trees, cotton trees, iron trees, bamboo trees, beetlenut trees, shrubs, manicured flowers, and other plants, (3) by damaging and/or destroying preexisting buildings/improvements to the land, including but not limited to, the laundry, storage, and kitchen facilities, (4) by placing a fuel tank on my property, and (5) by moving and/or removing soil, without my prior written consent, all in violation of sections 6 and 13 of the Lease Agreement. On information and belief, OKP (CNMI) Corporation may also be in violation of CNMI and Federal laws. As OKP (CNMI) Corporation knows or should know, OKP (CNMI) Corporation is obligated to comply with CNMI and United States laws.

Needless to say, OKP (CNMI) Corporation has caused me tremendous loss, embarrassment, and damages (past, present, and future) due to the intentional violations of the Lease Agreement and OKP (CNMI) Corporation's unlawful activities.

Therefore, OKP (CNMI) Corporation is hereby put on notice, pursuant to section 15 of the Lease Agreement, that OKP (CNMI) Corporation has violated and defaulted on the Lease Agreement. OKP (CNMI) Corporation is hereby given thirty (30) days from the date of this notice to cure the above-noted violations and default which may be cured. Failure to comply with this notice may result in the immediate termination of the Lease Agreement pursuant to section 16 of the Lease Agreement.



Moreover, OKP (CNMI) Corporation is also hereby put on notice, pursuant to section 15 of the Lease Agreement, that the destruction of the historical artifacts, structures, and other valuable relics, and the destruction of permanent trees are of such a nature that the same cannot be cured or corrected within thirty (30) days, thus, OKP (CNMI) Corporation is in automatic default of the Lease Agreement.

As usual, I am open to further discussions in order to come to a reasonable and proper settlement and resolution of this matter, rather than terminating the Lease Agreement at this time or resorting to a lawsuit in the first instance. Therefore, please give me a call as soon as possible in order to resolve this matter quickly and amicably.

Thank you for your anticipated cooperation.

Sincerely,

/s/
JOAQUIN Q. ATALIG



**E-FILED**
**CNMI SUPERIOR COURT**
E-filed: Jul 31 2006 12:40PM
Clerk Review: Jul 31 2006  2:52PM
Filing ID: 11929652
Case Number: 06-0119-CV
Elsa  Duenas

# EXHIBIT H

01/19/2006 13:58 FAX .670 234864    MOYLANS INSURANCE    @002/017

# CONTRACTOR'S ALL RISK POLICY

 **MOYLAN'S INSURANCE UNDERWRITERS, INC.**
102 Julale Center, 424 W. O'Brien Drive, Hagatna, GU 96910
TEL: 671-477-7500/8613/8616 FAX: 671-477-1837

General Agent for

 DONGBU INSURANCE CO., LTD.

Period of Insurance (365 calendar days)

(Subject to the provision concerning the Period of Cover)

: From ~~January 16, 2006 to~~ January 16, 2007

The following endorsements are attached to and forming part of this Policy.

Section 1 - Terms & Conditions
1) Munich Re's CAR Policy Form
2) Special Conditions Concerning Fire-fight Facilities (Limit of Liability: 10% of TSI per storage unit)
3) Special Conditions Concerning the Construction. And/or Erection Time Schedule (Deviation from time schedule: 6 Weeks)
4) Special Conditions Concerning Safety Measures with Respects to Precipitation, Flood and Inundation
5) Special Conditions Concerning Piling Foundation and Retaining Wall Works
6) Exclusion of Loss of or Damage to Crop, Forest and Cultures
7) Millennium Exclusion Clause
8) Existing Structure and/or Surrounding Property

Section II – Third Part Liability
1) Asbestos Exclusion Clause
2) Combined Single Limit Endorsement
3) Pollution Exclusion Clause
4) Communicable Disease Exclusion Clause
5) Punitive Damages Exclusion Endorsement
6) Y2K Exclusion Clause
7) Exclusion of Certified Acts of Terrorism

| Total Premium: | In witness whereof the Undersigned being duly authorized by the |
|---|---|
| (Inclusive of extra premiums for the above mentioned endorsements) | Insurers and on behalf of the insurers had/have hereunto set his/their hand(s) |
| USD 97,560.00 | This 19th day of January 2006 |

DONGBU INSURANCE CO., LTD.

By:

Moylan's Insurance Underwriters Int'l., Inc.
General Agent

Policy No        :    KMCR0015-S00

Endorsement No. :    02

## SPECIAL CONDITIONS CONCERNING
## THE CONSTRUCTION AND / OR ERECTION TIME SCHEDULE

It is agreed and understood that otherwise subject to the terms, exclusions, provisions and conditions contained in the Policy or endorsed thereon, the following shall apply to this Insurance

The construction and/or erection time schedule together with any other statements made in writing by the Insured for the purpose of obtaining over under the Policy as well as technical information forwarded to the Insured is deemed to be incorporated herein.

The Insurers shall not indemnify the Insured in respect of loss or damage caused by or arising out of or aggravated by deviations from construction and/or erection time schedule exceeding the number of weeks stated below unless the Insured had agreed in writing to such a deviation before the loss occurred.

Deviation from time schedule:    6 weeks

Date Issued: 01/16/2006

By: _____
Moylan's Insurance Underwriters Int'l., Inc.
General Agent

01/19/2008 14:00 FAX 670 23486    MOYLANS INSURANCE    MOYLANS AGANA    ☒008/017

Policy No         :    KMCR0015-S00

Endorsement No.  :    04

## SPECIAL CONDITIONS CONCERNING PILING FOUNDATION AND RETAINING WALL WORKS

It is agreed and understood that otherwise subject to the terms, exclusions, provisions and conditions contained in the Policy or endorsed thereon, the Insurers shall not Indemnify the Insured in respect of expenses incurred.

1.  for replacing or rectify piles or retaining wall element,
    -. which have become misplaced or misaligned or jammed during their construction,
    -. which are lost or abandoned or damaged during driving or extraction,
    -. which have become obstructed by jammed or damage pilling equipment or casings ;

2.  for rectifying disconnected or declutched sheet piles.

3.  for rectifying any leakage or infiltration of material of any kind.

4.  for filling voids or for replacing lost betonies.

5.  as a result of any piles or foundation elements having failed pass a load bearing test or otherwise not having reached their designed road bearing capacity.

6.  for reinstating profiles or dimensions.

This endorsement shall not apply to loss or damage caused by natural hazard.

The burden of proving that such loss or damage is covered shall be upon the insured.

Date Issued: 01/19/2006            By:

Moylan's Insurance Underwriters Int'l., Inc.
General Agent

Policy No       :       KMCR0015-S00
Endorsement No. :       06

## MILLENNIUM EXCLUSION CLAUSE

It is agreed and understood that otherwise subject to the terms, exclusions, provisions and conditions contained in the Policy or endorsed thereon, the following shall apply to this insurance:

A. Insurer(s) will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of or, arising from, the failure of any computer, data processing equipment or media, microchip, operating system, microprocessors (computer chip), integrate circuit or similar device, any computer software, or any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manners, any of the items listed above, whether the property of the insured or not , that results from any actual or alleged failure, malfunction or inadequacy due to inability to correctly recognize, process, distinguish, interpret or accept any data as its true calendar date.

B. It is further understood that we will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C. It is further understood that we will not pay for Damage or Consequential Loss arising from the failure, inadequacy or malfunction of any advice, consultation, design evaluation, inspection installation, maintenance, repair or supervision provided or done by Insured or the Insured to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such damage or consequential Loss described in A, B or C above, is excluded regardless or any other cause that contributed concurrently or in any other sequence.

Date Issued: 01/19/2006                    By: _____
                                              Moylan's Insurance Underwriters Int'L, Inc/
                                              General Agent

04/19/2008 14:01 FAX  670 2348    MOYLANS INSURANCE    MOYLANS AGENA    ☒012/017

Policy No          :    KMCR0015-S00
Endorsement No.   :    08

---

## ASBESTOS EXCLUSION CLAUSE

It is hereby understood and agreed that such insurance as is afforded by this policy for personal clearance injury liability and property damage liability is subject to the following exclusion:

This insurance does not apply to any liability for property damage, bodily injury sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time arising out of the manufacture of or mining of, or use, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the Insured to indemnity any party because of damages arising out of such property damage, bodily injury, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time as a result of the manufacture of, use of or exposure to asbestos products, asbestos fibers or asbestos dust.

It is further understood and agreed that the Company shall not be obligated to defend any suit or claim against the Insured alleging personal injury or property damage seeking damages, if such suit or claim arises from personal injury or property damage resulting from or contributed to, by any, and all manufacture of, use of, or exposure to, asbestos products, asbestos fibers or asbestos dust.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

This endorsement is effective as from the Inception of the Policy Period.

Date Issued: 01/19/2006

By: _Tamara Winters_

Moylan's Insurance Underwriters Int'l., Inc.
General Agent

Policy No        :      **KMCR8015-800**

Endorsement No.  :      10

---

## COMMUNICABLE DISEASE EXCLUSION CLAUSE

IT IS HEREBY UNDERSTOOD AND AGREED that no coverage applies to bodily injury or property damage which arises out of the transmission of a communicable disease by a covered person.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as hereinabove set forth.

This endorsement is effective as of inception of the policy of which this form is made a part.

Date Issued: 01/19/2006 .                          By:

Moylan's Insurance Underwriters Int'l., Inc.
General Agent

Policy No     :     KMCR0015-S00

Endorsement No. :    12

## EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

A.  This insurance does not apply to "bodily injury", "Property damage", "personal injury" or advertising injury" arising or "products/completed operations" liability arising directly or indirectly out of:

    1.  Any actual or alleged failure, malfunction or inadequacy of

        a.  Any of the following, whether belonging to any insured or to others
            (a) Computer hardware, including microprocessors;
            (b) Computer application software;
            (c) Computer operating systems and related software;
            (d) Computer networks;
            (e) Microprocessors (computer chips) not part of any computer system; or
            (f) Any other computerized or electronic equipment or components; or

        b.  Any other products, and any services, data or function that directly or indirectly use or rely on, in any manner, any of the items listed in Paragraph A, 1.a. of this endorsement;

        due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

    2.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A. 1, of this endorsement .

Date Issued: 01/19/2006          By:        

                                       Moylan's Insurance Underwriters Int'l., Inc.
                                              General Agent

# Automobile Policy Declarations

Issued by: Dongbu Insurance Company Ltd.

Policy Number : 150230 - 150230 (KMA-09102-S00)

1. Name Insured : OKP(CNMI) Corporation
   Address : P.O. Box 511593, Rota, MP 96951

2. Policy Period From 12/15/2005  To 12/15/2006  at 12:01 A.M. Standard Time

|  |  | Limit of Liability | Premium |
|---|---|---|---|
| 3. Coverage |  | **Per Schedule** | **Per Schedule** |
| A. Bodily Injury | - Each Person/Each Accident | **Per Schedule** | **Per Schedule** |
| B. Property Damage | - Each Accident | **Per Schedule** | **Per Schedule** |
| C. Medical Payments | - Each Person | **Per Schedule** | **Per Schedule** |
| D. Comprehensive | - Deductible | **Per Schedule** | **Per Schedule** |
| E. Collision | - Deductible | **Per Schedule** | **Per Schedule** |
| Optional Coverage |  |  |  |
| Uninsured Motorist | - Each Person/Each Accident | **Per Schedule** | **Per Schedule** |
| Passenger Risk | - Each Person/Each Accident | **Per Schedule** | **Per Schedule** |
| Typhoon | - Deductible | **Per Schedule** | **Per Schedule** |
| Personal Accident | - Each Person/Each Vehicle | **Per Schedule** | **Per Schedule** |
| Loss of Use |  | **Per Schedule** | **Per Schedule** |

**Total Policy Premium:  $16,120.00**

"ACV" means Actual Cash Value
* Minimum Earned Premium: Short Rate, but not less than $30.00.

Discounts Applied:

*** Per Schedule ***

Endorsements Applicable :

*** Per Schedule ***

4. Your Covered Vehicle(s)

| Year Trade Name | Model | Body Type | Engine Vin # | Insured's Estimate of Value Including Accesories thereon |
|---|---|---|---|---|
| | | *** Per Schedule *** | | |

5. Loss Payee:                    *** Per Schedule ***

6. Purpose of Use: Business

7. Geographical Area: This Policy Covers the Commonwealth of the Northern Mariana Islands

8. Notice of Accident or Loss - In the event of accident or loss covered hereunder, immediate notice is to be given to Equitable Adjusting & Service Company at (670)234-6442/6129

By: _[signature]_

Moylan's Insurance Und., [Int'l] Inc.
General Agent

Date Issued:  12/27/2005

## SCHEDULE OF VEHICLES

Policy Number: 150230 - 150230 (KMA-09102-S00)

Name Insured: OKP(CNMI) Corporation

Vehicle No: 3 2004 Kobelco Used SK200 Excavator    Engine No: 6D34-098762

                                           0.00    Vin No: S/N: YN09-36227

Class: Under 25 Included  Insured Estimated Value: $

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Personal Accident | - Deductible | NOT COVERED | $0.00 |
| Loss of Use | - Each Person/Each Vehicle | NOT COVERED | $0.00 |

                                                       PREMIUM: $520.00

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:      None Stated

---

Vehicle No: 4 2004 Kobelco Used SK200 Excavator    Engine No: 6D34-100133

                                             0.00    Vin No: S/N: YN09-36581

Class: Under 25 Included  Insured Estimated Value: $

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Personal Accident | - Deductible | NOT COVERED | $0.00 |
| Loss of Use | - Each Person/Each Vehicle | NOT COVERED | $0.00 |

                                                       PREMIUM: $520.00

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:      None Stated

# SCHEDULE OF VEHICLES

Policy Number:    150230 - 150230 (KMA-09102-S00)

Name Insured:    OKP(CNMI) Corporation

Vehicle No.    7    1991 Caterpilar Used D6H-II Bulldozer        Engine No:  N/A
Class:  Under 25 Included  Insured Estimated Value:  $    0.00    Vin No:    S/N: 4GG-04190

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| | | | $520.00 |
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | |
| B. Property Damage | - Each Accident | $2,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |

PREMIUM:    $520.00

Endorsement Form No    CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:    None Stated

---

Vehicle No:    8    1997 Mitsubishi Dump Truck        Engine No:  8DC9517222
Class:  Under 25 Included  Insured Estimated Value:  $    0.00    Vin No:    Chas# FV415JA43172

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| | | | $520.00 |
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |

PREMIUM:    $520.00

Endorsement Form No    CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:    None Stated

## SCHEDULE OF VEHICLES

Policy Number: **150230 - 150230 (KMA-09102-S00)**

Name Insured: **OKP(CNMI) Corporation**

Vehicle No: **11**　**1998 Isuzu Dump Truck** _Temp114_　Engine No: **10PE1177826**

Class: **Under 25 Included** Insured Estimated Value: $　**0.00**　Vin No: **CXZ81K23003592**

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | **PREMIUM:** | $520.00 |

Endorsement Form No　**CSL ENDT.** **Direct Action Endorsement-CNMI** **Exclusion of Certified Acts of Terr**

Discount Applied:

Loss Payee:　**None Stated**

Vehicle No: **12**　**1997 Mitsubishi Dump Truck** _Temp113_　Engine No: **8DC9516820**

Class: **Under 25 Included** Insured Estimated Value: $　**0.00**　Vin No: **Chas# FV415JA43102**

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | **PREMIUM:** | $520.00 |

Endorsement Form No　**CSL ENDT.** **Direct Action Endorsement-CNMI** **Exclusion of Certified Acts of Terr**

Discount Applied:

Loss Payee:　**None Stated**

## SCHEDULE OF VEHICLES

Policy Number: 150230 - 150230 (KMA-09102-S00)

Name Insured: OKP(CNMI) Corporation

Vehicle No: 15    1997 Mitsubishi Dump Truck = Same as # 14&16    Engine No: 8DC9437365
Class: Under 25 Included   Insured Estimated Value: $   0.00    Vin No:   Chas# FV415JA41486

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | **INCLUDED** |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | **PREMIUM:** | **$520.00** |

Endorsement Form No   CSL ENDT.   Direct Action Endorsement-CNMI   Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:    None Stated

Vehicle No: 16    1997 Mitsubishi Dump Truck = Same as # 15 &15    Engine No: 8DC9437365
Class: Under 25 Included   Insured Estimated Value: $   0.00    Vin No:   Chas# FV415JA41486

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | **INCLUDED** |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | **PREMIUM:** | **$520.00** |

Endorsement Form No   CSL ENDT.   Direct Action Endorsement-CNMI   Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:    None Stated

## SCHEDULE OF VEHICLES

Policy Number: 150230 - 150230 (KMA-09102-S00)

Name Insured: OKP(CNMI) Corporation

Vehicle No: 19  1990 Mitsubishi Dump Truck  *Temp 123*  Engine No: 8DC8361337

Class: Under 25 Included  Insured Estimated Value: $  0.00  Vin No: Chas# FV413JA20535

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | PREMIUM: | $520.00 |

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:  None Stated

---

Vehicle No: 20  1996 Mitsubishi Dump Truck  Engine No: 8DC9437462

Class: Under 25 Included  Insured Estimated Value: $  0.00  Vin No: Chas# FV415JA41545

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | PREMIUM: | $520.00 |

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:  None Stated

# SCHEDULE OF VEHICLES

Policy Number: 150230 - 150230 (KMA-09102-S00)

Name Insured: OKP(CNMI) Corporation

Vehicle No: 23  1988 Mitsubishi Dump Truck  *Temp125*  Engine No: 8M20-003116

Class: Under 25 Included  Insured Estimated Value: $ 0.00  Vin No: FV411J-541236

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | **INCLUDED** |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | PREMIUM: | $520.00 |

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:  None Stated

---

Vehicle No: 24  1988 Nissan Dump Truck  *Temp120*  Engine No: RE10-026525

Class: Under 25 Included  Insured Estimated Value: $ 0.00  Vin No: CW66HE-08284

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | **INCLUDED** |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | PREMIUM: | $520.00 |

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:  None Stated

# SCHEDULE OF VEHICLES

Policy Number:   150230 - 150230 (KMA-09102-S00)

Name Insured:   OKP(CNMI) Corporation

Vehicle No:   27    2002 Caterpilar 10T Compactor Roller      Engine No:  N/A
Class:  Under 25 Included  Insured Estimated Value:  $    0.00     Vin No:    2R200184

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | | |
| | | PREMIUM: | $520.00 |

Endorsement Form No   CSL ENDT.   Direct Action Endorsement-CNMI   Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:       None Stated

Vehicle No:   28    2002 Caterpilar 10T Compactor Roller      Engine No:  N/A
Class:  Under 25 Included  Insured Estimated Value:  $    0.00     Vin No:    2R200572

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | | |
| | | PREMIUM: | $520.00 |

Endorsement Form No   CSL ENDT.   Direct Action Endorsement-CNMI   Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:       None Stated

Policy Number: 150230 - 150230 (KMA-09102-S00)

Name Insured: OKP(CNMI) Corporation

Vehicle No: 31   1992 Bobcat TS200 Tyre Roller    Engine No: 6BD1-717337

Class: Under 25 Included   Insured Estimated Value: $   0.00    Vin No: TTS-11791

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |

PREMIUM:   $520.00

Endorsement Form No   CSL ENDT.   Direct Action Endorsement-CNMI   Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:   None Stated

**Total Policy Premium**   $   16,120.00

Attached to and forming part of Policy No. 150230 - 150230 (KMA-09102-S00)   of the Dongbu Insurance Company Ltd.

Date Issued:   12/27/2005     By: _____

Moylan's Insurance Und., [Int'l] Inc.

Name Insured: OKP(CNMI) Corporation

# DIRECT ACTION ENDORSEMENT

This policy is subject to the provisions of Public Law No. 14-39, amending the Direct Action Provision set forth in 4 CMC § 7502 (e), which is cited in full below:

(e) Liability Policy: Direct Action.   On any policy of liability insurance the injured person or his or her heirs or representatives shall have a right of direct action against the insurer within the terms and limits of the policy, whether or not the policy of insurance sued upon was written or delivered in the Commonwealth, and whether or not the policy contains a provision forbidding the direct action; provided, that the cause of action arose in the Commonwealth and it has been determined that the insured cannot be personally served the summons and complaint and if by affidavit or otherwise the court is satisfied that with reasonable diligence, the defendant cannot be served.  The action may be brought against the insurer alone, or against both the insured and insurer only if it has been determined that the insured cannot be personally served the summons and complaint and if by affidavit or otherwise the court is satisfied that with reasonable diligence, the defendant cannot be served, and that a cause of action arises against the party upon whom service is made, or he is a necessary and proper party to the action, the court may order that the insurer may be named in a direct action lawsuit.

Nothing herein contained shall be held to vary, altar, waive or change any of the terms, limits or conditions of the policy, except as hereinafter set forth.

This endorsement is effective _____

Attached to and forming part of Policy No.  150230 - 150230 (KMA-09102-S00)

of   Dongbu Insurance Company Ltd.

Date Issued: 27-DEC-05

CLT 24856/COV 53/AGT 4/UND 85 /QTR

By: _____
Authorized Representative
Moylan's Insurance Und., [Int'l] Inc.
General Agent

KML1100R-CNMI