# Exhibit 17

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

CARLSMITH BUILDING, CAPITOL HILL
P.O. BOX 5241
SAIPAN, MP 96950-5241
TELEPHONE 670.322.3455   FAX 670.322.3368
WWW.CARLSMITH.COM

JOSBORN@CARLSMITH.COM

OUR REFERENCE NO.:
060927-00004

July 12, 2007

**VIA E-MAIL**
**VIA FACSIMILE**

Thomas E. Clifford
Law Office of Thomas E. Clifford
2nd Floor, Alexander Building
P.O. Box 506514
San Jose, Saipan, MP 96950

    Re:    <u>Dongbu Insurance - OKP (CNMI) Corporation</u>

Dear Tom:

    This letter is a response to the letter of March 5, 2007 addressed to Maya B. Kara related to various coverage issues on liability policies issued by Dongbu Insurance Company, Ltd. to OKP (CNMI) Corporation related to the Rota airport project.

    I have intentionally confined my remarks to the applicability of Dongbu's Automobile Policy to the claim of Joaquin Q. Atalig's suit currently pending in Commonwealth Superior Court, Civil Action No. 06-0119(R).

    Having reviewed the original Complaint and subsequent Amended Complaints[1] and Dongbu's Automobile Policy, I am of the opinion that there currently exists a duty to defend and to indemnify. My thoughts on the various coverage issues raised in the March 5, 20007 letter are as follows:

A.    **TENDER OF DEFENSE**

    The Automobile Policy provides various conditions for coverage. Among those conditions is Condition 3 which reads:

---

[1] It is OKP (CNMI) Corporation's ("OKP") understanding that Dougbu has been provided copies of all of the relevant versions of the complaints, the latest of which in the Atalig case is the Second Amended Complaint.

HONOLULU  ·  KAPOLEI  ·  HILO  ·  KONA  ·  MAUI  ·  GUAM  ·  SAIPAN  ·  LOS ANGELES

Thomas E. Clifford
July 12, 2007
Page 2

> 3. **Notice of Claim of Suit - Coverage A and B:**
>
>> If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

Dongbu has taken the position that because the defense was not tendered until early August, 2006, that the insured as failed to comply with Condition 3 of the Automobile Policy. OKP respectfully disagrees that the defense not being tendered until early August, 2006 constitutes a justifiable basis for Dongbu to decline to provide a defense.

Dongbu's attention is specifically directed to 4 CMC §7505(f) which states:

> (f.) *Waiver of Delay.* Delay in the presentation to an insurer of notice, as preliminary proof of loss, is waived if caused by an act of the insurer, or if the insurer omits **to make objection promptly and specifically** upon that ground. (emphasis supplied.)

Dongbu acknowledges that notice of the claim was submitted in early August, 2006. It was not until approximately seven months later that failure to give "immediate notice" was raised as one basis for Dongbu determining it had no duty to defend. It is interesting to note that Dongbu relies in part on a purported four month delay by OKP to give notice of the suit, yet Dongbu did not advise OKP that it disputes compliance with Condition 3 of the Automobile Policy until seven months after notice of suit was provided. It seems clear that Dongbu did not make an objection promptly to the notice provided by OKP and therefore pursuant to 4 CMC §7505(f) Dongbu has waived any objection based on delay of notification.

Notwithstanding the language of Condition 3 of the Automobile Policy, the majority of jurisdictions hold that delay in giving notification of suit does not relieve the insurer of its obligations under the policy unless the insurer can demonstrate it has been prejudiced by such delay in notification. As stated in Holmes' Appelman on Insurance 2d, §139.4(C):

> In the overwhelming majority of states, an insurer may not raise the failure of an insured to give notice as a valid defense to its obligation to provide coverage under an insurance policy, unless the insurer can demonstrate prejudice from the insured's failure to comply with the policy's notice.

The following case authority supports this majority position:

> An insured's failure to give its liability insurance company timely notice of a claim against it does not automatically excuse the insurance company from its contractual obligations. (citation omitted.) Instead, in order for the insurance company to be relieved of its obligations under the policy, it must prove "both that

Thomas E. Clifford
July 12, 2007
Page 3

> the notice provision was in fact breached and that the breach
> resulted in prejudice to its position." (citation omitted.)

*Managed Health Care Systems, Inc. v. St Paul Fire and Marine Insurance Co.*, 2001 WL 34114949 (D. Mass).

Further, it is our understanding that Dongbu did not undertake any independent investigation of the facts alleged in the Complaint. Failure to do so further negates Dongbu's disclaimer of a duty to defend because of untimely notice:

> After being made aware of a claim or suit against its insured, the
> insurer must do something and if it fails to take appropriate action
> it will be precluded from denying coverage based on any
> potentially applicable coverage defense, including lack of notice,
> untimely notice and defective notice.

Holmes' Appelman on Insurance 2d, §139:6.

A review of the letter of March 5, 2007 discussing Condition 3 does not make mention of Dongbu having undertaken any kind of investigation and makes no mention of any claim that Dongbu has been prejudiced by any delay in providing notice of the lawsuit.

B.  **DUTY TO DEFEND - DUTY TO INDEMNIFY**

As Dongbu is no doubt aware, the duty to defend and the duty to indemnify are separate and distinct obligations under a liability policy. The duty to defend is determined by application of the "eight corners" rule. The insurer is to examine the "four corners" of the Complaint and the "four corners" of the policy. If such examination reveals any possibility of a covered claim, then the insurer is obligated to defend. The following authority is provided:

1.  *Reshamwalla v State Farm fire and Casualty Company*, 112 F.Supp. 2d 1010, 1015, 1019 (2001).

The case involved an incident where chunks of concrete were thrown into automobile traffic. The Court addressed issues related to duty to defend and coverage. The Court stated:

> "An insurer....bears a duty to defend its insured whenever it
> ascertains facts which give rise to the *potential* of liability under
> the policy." (citation omitted.) "Any doubt as to whether the facts
> give rise to a duty to defend is resolved in the insured's favor."
> (citation omitted.)
>
> In determining whether a potential for coverage exists, the
> complaint is to be liberally construed in favor of potential
> coverage. (citation omitted.)

Thomas E. Clifford
July 12, 2007
Page 4

2.  *Park University Enterprises, Inc. v. American Casualty Company of Reading, Pa*, 314 F. Supp. 1094, 1100, 1101 (2004).

> Addressing both duties to defend and to indemnify, the Court said:
>
>> If the court determines that there is a " 'potential of liability,' even if remote," then American has a duty to defend Park in the underlying state court action.
>>
>> An insurer's duty to defend is distinct from the duty to indemnity. (citation omitted.) The insurer bears the duty to defend when there is a "potential of liability" under the policy. (citation omitted.) To determine whether the "potential of liability" exists, the insurer should examine the allegations in the complaint and any other discovered or reasonably discoverable facts. (citation omitted.) While allegations of an intentional act may not be covered, "'[w]here the complaint alleges both a negligent and intentional act, these alleged facts give rise to a potential for liability, and the duty to defend arises.'" (citation omitted.) If the facts, including facts beyond the pleadings, "give rise to a 'potential of liability,' even if remote, under the policy, the insurer bears a duty to defend." (citation omitted.)
>>
>> "[T]he duty to defend rests primarily on the possibility that coverage exists and the possibility of coverage must be determined by a good faith analysis of all information the insurer may know, or could have reasonably ascertained. (citation omitted.) "So long as the insured can show a non-frivolous possibility that the claim against it may fall within the coverage of the insurance contract, the insurer has a duty to defend." (citation omitted.)
>
> Whether there is ultimately a duty to indemnify may not be definitively determinable at this stage of the proceedings, however that does not relieve the insurer of its duty to defend.
>
> Further, it must be kept in mind that if there is a potential of liability for any claim, the insurer is obligated to defend the entire action See: *Federated Mutual Insur. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 726 (2000):
>
>> It is well settled that an insurer's duty to defend is triggered if at least one of the several claims in the Plaintiff's Complaint potentially falls within the scope of coverage, even if the other claims do not.
>
> Regarding duty to indemnify, that duty is determined by adjudicated facts:

Thomas E. Clifford
July 12, 2007
Page 5

> Unlike the duty to defend, which arises when a petition seeking damages alleges facts that *potentially* support claims covered by a liability policy, the duty to indemnify arises from proven, adjudicated facts. *Hartrick v. Great American Lloyds Insurance Company*, 623 S.2. 3d 270, 275 (2001)

See also: *INA v. McCarthy Bros*. 123 F. Supp 2d 373, 377 (S.D. Tex 2000) (In Texas the underlying liability facts, rather than the legal theory of liability, triggers the duty to defend.)

C.  **CAUSED BY ACCIDENT**

In the letter of March 5, 2007 Dongbu's position is that the acts alleged in Plaintiff's Complaints are intentional acts and therefore are non-covered events. Reference is made to Coverage A and Coverage B, the provisions for Bodily Injury Liability and Property Damage Liability respectively. As is noted, both provisions require the injury or damage to have been "caused by accident." The current Complaint alleges both personal injury and property damage.

To my knowledge the CNMI Supreme Court has not interpreted the term "caused by accident" as used in a policy of liability insurance. It is therefore appropriate to examine case law from other jurisdictions. For purposes of the following discussion, OKP would acknowledge that it intended to clear the land. However, what was not intended was the damage claimed by Plaintiff. In that context, the clearing of the land and the unexpected alleged property damage and personal injury were "caused by accident" and therefore are covered events under the terms of the Automobile Policy. Your attention is directed to the following case authority:

1. *Allstate Insurance Company v McCarn*, 466 Mich. 277, 282 645 N.W. 2d 20, 23 (2002).

In this case the insured's grandson pointed a gun at the head of an acquaintance and pulled the trigger; the grandson believed the gun was unloaded. A claim was submitted to Allstate which denied coverage. The Court concluded the shooting was accidental and therefore a covered event. The Court made the following statements:

> Accident was to be evaluated from the standpoint of the insured, not the injured party.
>
> [i]f both the act and the consequence was intended by the insured, the act does not constitute an accident. On the other hand, if the act was intended by the insured, but the consequence was not, the act does constitute an accident, unless the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured.
>
> As to the perspective from which the analysis should be made, the question is not whether a *reasonable person* would have expected

the consequences, but whether the *insured* reasonably should have expected the consequences.

2. *Hartrick v. Great American Lloyds Insurance Company*, 623 S.W. 3d 270, 277 (2001). This was a claim for a construction defect in which the court was asked to determine if there had been an "occurrence", thus providing coverage. Although the court concluded there was no coverage, it made the following statements:

> [d]etermining whether an injury is accidental inquires in *both* the insured's intent *and* the reasonably foreseeable effect, or consequences of the insured's conduct. To be accidental, an effect could not reasonably have been anticipated from the conduct that produced it, and the insured " 'cannot be charged with the design of producing' " the effect (citation omitted.)

3. *Acceptance Insur. Co. v. Lifecare Corp.* 89 S.W. 3d 777, 783 (2002)

> An event is accidental within the meaning of the policy coverage if it is "an effect that cannot be reasonably anticipated from the use of [the means that produced it], an effect the *actor* did not intend to produce and which cannot be charged with the design of producing. (citation omitted.)

4. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1075, 1076 (1998).

> We hold that where the term "accident" in a liability policy is not defined, the term, being susceptible of varying interpretations, encompasses not only "accidental events," but also injuries or damage neither expected nor intended from the standpoint of the insured."

In the letter of March 4, 2007 reference is made to *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W. 2d 633, 635 (Tex. 1973). Your attention is directed to *National Union Fire Insurance of Pittsburgh, PA v. Puget Plastics Corp.* 450 F. Supp. 2d 682, 688, 689-690, 695 (2006) (S.D. Texas). The court in *Puget Plastics* examined the term "accident" and compared the definition of "accident" in the *Maupin* case with the definition of "accident" in *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W. 2d 396 (Tex. 1967) In comparing the two cases the court said the *Maupin* case addresses claims against the insured for damages resulting from intentional torts, while the *Orkin* case deals with claims against an insured that involve intentional torts but are based on negligence. The *Puget Plastics* court made the following statements:

> In *Orkin*, according to the Fifth Circuit, the Supreme Court of Texas "construed the term" ' accident ' to " include negligent acts

Thomas E. Clifford
July 12, 2007
Page 7

> of the insured causing damage which is undesigned and unexpected.'" (citation omitted). Following Orkin, both state and federal courts in Texas have interpreted the terms 'accident' and 'occurrence' to include damage that is the 'unexpected, unforeseen or undesigned happening or consequence' of an insured's behavior. (citation omitted.)
>
> The court concluded by explaining that "[i]n the [*Maupin* line], the damage-causing acts of the tortfeasor are either actually or legally deemed to be intentionally harmful; in the [*Orkin* line], the acts that are performed intentionally are not intended to cause harm but do so as the result of the negligent performance of those acts."
>
> "[a]n obligor who intends his performance to be correct, but who negligently falls short of the appropriate standard and causes unintentional damages is an *Orkin* tortfeasor.

We all understand that insurance policies are generally considered to be adhesion contracts, and as such, any ambiguity in the policy is resolved in favor of the insured. In this particular policy since "caused by accident" is an undefined term, and can be interpreted to have a meaning contrary to the interpretation made by Dongbu, there is an ambiguity and that ambiguity should be resolved in favor of coverage for OKP. As stated in *Acceptance Insur. Co. v. Lifecare Corp.*, 89 S.W. 3d 773, 781 (2002):

> [i]f the insurance policy is susceptible to more than one reasonable interpretation, any ambiguity will be resolved by adopting a construction that favors the insured.

D.    **WILLFUL ACTS: 4 CMC §7505(b)**

With reference to 7 CMC §7505(b), that statute makes reference only to willful acts, not "willful acts and illegal conduct" as stated in the letter of March 5, 2007. In any event, 4 CMC §7505(b) goes to duty to indemnify and has nothing to do with a duty to defend. To the extent that Dongbu is of the opinion that 4 CMC §7505(b) relieves it of a duty to defend, we respectfully suggest such interpretation is incorrect.

E.    **EXCLUSIONS**

It is well recognized that the insurer has the burden to show that an exclusion applies to deny coverage. See: *Federated Mutual Insurance Co. v. Grapevine Excavation, Inc.*, 197 F 3d 720, 723 (2000) ([i]f the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply.)

Regarding Exclusion IX(a), OKP interprets each of the Complaints to allege damage to property which was not within the property covered by the lease agreement. Exclusionary provisions of this nature are to exclude from liability coverage damage to property of the insured.

Thomas E. Clifford
July 12, 2007
Page 8

As such reliance on Exclusion IX(a) would be inappropriate. Further Exclusion IX(a) would be inapplicable to negligence claims.

As to Exclusion V(a) this exclusion operates to deny coverage when the insured assumes responsibility for the conduct of a third party. *Federated Mut. v. Grapevine*, Supra, 726. OKP has not assumed responsibility for the conduct of a third party in its lease agreement with Atalig and therefore Exclusion V(a) does not apply to exclude coverage.

In conclusion, OKP believes that Dongbu has a duty to defend and a duty to indemnify for certain of the claims stated in Atalig's Complaint. OKP asks Dongbu to assume defense of the Atalig lawsuit or come to an agreement with reference to the issues of duty to defend and duty to indemnify which will be mutually beneficial to both parties.

Sincerely,

John D. Osborn

JDO/7rot

cc:   Sean Frink
      Maya Kara
      OKP CNMI

4849-4108-4417.1.060927-00004