# Exhibit 26





**E-FILED**
**CNMI SUPERIOR COURT**
E-filed: Jan 30 2008 10:02AM
Clerk Review: N/A
Filing ID: 18318890
Case Number: 06-0119-CV
N/A

# IN THE SUPERIOR COURT
# OF THE
# COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **JOAQUIN Q. ATALIG**, | CIVIL ACTION NO. 06-0119(R) |
| Plaintiff, | |
| vs. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS OKP and CHEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT and GRANTING DEFENDANTS' MOTION TO STRIKE |
| **OKP (CNMI) CORPORATION, BRIAN M. CHEN and DOES 1-3,** | |
| Defendants. | |

## I. INTRODUCTION

THIS MATTER came for hearing on December 12, 2007 at 10:00 a.m. on defendants OKP [CNMI] Corporation's ("OKP") and defendant Brian M. Chen's ("Chen") motion for partial summary judgment and to strike doe defendants. OKP seeks summary judgment as to certain causes of action brought directly against them and Chen joined in the motion as to the same causes of action asserted against him indirectly via a piercing the corporate veil theory. Defendants also moved to strike all 'Doe' defendants. The Court granted defendant's motion to strike on the record.

Michael W. Dotts and Ramon K. Quichocho appeared on behalf of plaintiff Joaquin Q. Atalig ("Atalig" or "Plaintiff"). Rexford C. Kosack appeared on behalf of defendant Chen. Sean E. Frink appeared on behalf of defendant OKP.

This Court having considered all pleadings, arguments, materials on record, and all relevant rules and case law, enters the following order GRANTING IN PART AND DENYING IN PART defendants OKP [CNMI] Corp. and Brian M. Chen's motion for partial summary judgment.

## II.     MOTION FOR SUMMARY JUDGMENT

   a. Standard

Summary Judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Com. R. Civ. P. 56(c). In bringing a summary judgment motion, the "moving party bears the 'initial and ultimate' burden of establishing its entitlement to summary judgment". *Santos v. Santos,* 4 N.M.I. 206, 210 (1995).

Where the party moving for summary judgment bears the ultimate burden of proof at trial, they must produce affirmative evidence establishing the undisputed material facts to satisfy each element of the cause of action. Where the party moving for summary judgment does **not** bear the ultimate burden of proof at trial, the moving party may demonstrate its entitlement to summary judgment either by showing an absence of evidentiary support in the nonmoving party's case or by showing that the undisputed facts disprove a necessary element of a claim against them or satisfy each element of an affirmative defense. *See generally*, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In bringing a 'defensive' motion for summary judgment, a moving party may satisfy its initial burden by either submitting evidence (affidavits or otherwise) to demonstrate its entitlement or it may merely pinpoint the nonmoving party's lack of evidence. *Id.* Our Commonwealth Supreme Court follows *Celotex*. *In re Estate of Roberto*, 2002 MP 23 ¶ 18, n. 11 (2002).

Once the moving party meets their initial burden, the burden shifts to the opponent to show that a genuine issue of material fact exists to survive summary judgment. *Cabrera v. Heirs of De Castro*, 1 N.M.I. 172, 176 (1990). In opposing a motion for summary judgment, the nonmoving party may not rest simply upon mere allegations or denials of the moving party's pleading, but must "set forth specific facts showing that there is a genuine issue for trial." Com.

R. Civ. P. 56(e); *Eurotex (Saipan), Inc. v. Muna*, 4 N.M.I. 280, 284-85 (1995). "The party opposing summary judgment does not have a duty to present evidence in opposition to a motion under Rule 56 in all circumstances, however …. that obligation does not exist when … when the matters presented fail to foreclose the possibility of a factual dispute. 10A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2727 (2d ed. 1983) (hereinafter "WRIGHT & MILLER") (interpreting Federal Rules of Civil Procedure after which the Commonwealth Rules are modeled). When the party opposing the motion does not offer counter-affidavits or other evidentiary material showing that a genuine issue of material fact remains, or does not show a good reason, in accordance with Rule 56(f), why he is unable to present facts in opposition to the motion, judgment must be entered against him. *Id.* In considering a motion for summary judgment, the trial court must review the evidence and inferences drawn there from in light most favorable to the non-moving party. *Estate of Mendiola v. Mendiola*, 2 N.M.I. 233, 240 (1991).

  b. Discussion

In this partial motion for summary judgment, OKP and Chen challenge certain causes of action brought against them by plaintiff Atalig in the second amended complaint ["SAC"]. Specifically, OKP and Chen seek summary judgment as to causes of action: three [conversion of historical and cultural artifacts], four [conversion of soil and other minerals], part of two [waste claim for fuel tank], seven [negligence per se and ordinary negligence] and, nine [indemnification]. Because the motion was brought and argued jointly by OKP and Chen and any liability against Chen would only be via OKP's liability, the Court will address the motion as to the defendants collectively.

  1. Conversion

The tort of conversion requires: 1) intentional, 2) exercise of dominion or control, 3) over a chattel (personal property) of another, 4) resulting in serious interference with the right of control. RESTATEMENT (SECOND) OF TORTS § 222A (1) (1965). Our Supreme Court has adopted this section of the restatement in *Del Rosario v. Camacho*, 6 N.M.I. 213, 232 (2001). "Conversion is the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the

other the full value of the chattel." *Id. citing* RESTATEMENT (SECOND) OF TORTS § 222A (1) (1965). "Conversion may be committed by intentionally dispossessing of, destroying, using, receiving, disposing of, misdelivering, or refusing to surrender a chattel." *Id.* Conversion only applies to things that are capable of being lost or stolen and thus one cannot convert real property, but only items severable from the same. *Id.*

### A.  Historical and Cultural Artifacts.

Cause of action three of the SAC alleges a conversion claim against Defendant OKP for conversion of historical and cultural artifacts. Defendants' motion is based on a lack of evidence to support the requisite element of intentional exercise of dominion or control to support a cause of action for conversion. Defendant claims the relevant employees of OKP did not have the requisite intent to convert Plaintiff's historical and cultural artifacts and thus OKP could not be held liable. Intent to do an act requires the actor "desires to cause the consequences of his act, or that he believes the consequences are substantially certain to result from it." RESTATEMENT (SECOND) OF TORTS § 8A (1965). In the context of conversion, the requisite intent is the *intent to exercise dominion or control over the chattel* and **not** the *intent to interfere with the property rights of another*. *Id*. § 224 cmt. c (emphasis added). In other words, contrary to Defendants' contentions, there need not be any intent to cause any **damage** to the chattels, only the intent to exercise control over them. [see contra, Defendants' Reply p. 13]. Finally, merely negligent exercise of dominion or control over chattels of another is not sufficient to support a cause of action for conversion, even though it may result in the loss or destruction of the chattel. RESTATEMENT (SECOND) OF TORTS § 224 cmt. b (1965).

There is no evidence the employee, Pramuan Jaiphakdee, who performed the clearing had any knowledge of the existence of the chattels allegedly destroyed. Defendants point out plaintiff's admitted lack of evidence of Jaiphakdee's knowledge and attached a declaration executed by Jaiphakdee denying any knowledge of the artifacts' existence. [Facts N, O, & J in Defendants' statement of uncontroverted facts submitted in support of the motion, hereinafter "Fact or Facts"]. Without knowledge of the existence of the artifacts, Jaiphakdee could not possess the requisite intent to exercise dominion over those artifacts. Had Jaiphakdee known of

the artifacts and been under a belief that they belonged to OKP or that OKP had a right to destroy them, his intentional exercise of dominion over them based on a mistaken belief would be sufficient to support a cause of action for conversion. Absent knowledge of the artifacts, their destruction by Jaiphakdee is merely negligent at best.

Knowledge of the artifacts by other OKP employees/managers alone is not sufficient to support the requisite intent for conversion. Facts undisputed for this motion indicate Edita Carillo told project engineer Reddy Goluguri not to touch an area that allegedly contained the artifacts. [Fact F]. Thus, for purposes of this motion, it is admitted that Goluguri was instructed to not disturb an area of Plaintiff's property during the clearing activities. It is not alleged that Goluguri ever knew of the reason OKP was to avoid the area (existence of the artifacts), but only that a certain area was not to be disturbed. *Id.* Goluguri demarcated corners of a box for Jaiphakdee to clear that would have avoided the 'do not disturb' area. [Fact H]. Goluguri then had Jaiphakdee clear a perimeter for the box for Goluguri's approval. [Fact I]. After Jaiphakdee cleared a three foot perimeter according to the marked corners, Goluguri then obtained final approval from Alan Yee, OKP project manager, to clear the box. *Id.* Goluguri, having obtained approval from Yee, instructed Jaiphakdee to clear the entire box. *Id.* Jaiphakdee, after clearing the box, **independently** made the decision to push the cleared debris piles outside of the box. [Fact J]. The artifacts were allegedly damaged by Jaiphakdee's pushing of the debris piles outside of the box. [Fact K].

Goluguri did not act with the requisite intent for conversion. Had Goluguri *intentionally* instructed Jaiphakdee to clear the area anyway or had he *intentionally* withheld the information so that Jaipahkdee would clear the area, the requisite intent to exercise dominion or control would be present. Goluguri did not. Instead, Goluguri took steps to ensure Jaiphakdee cleared a specific area only that did not include the 'do not disturb' area. Jaiphakdee's decision to push the debris outside the box and into the 'do not disturb' area was independent of Goluguri's knowledge. Absent any evidence of Goluguri's intent to exercise dominion or control over Plaintiff's artifacts, his failure to specifically instruct Jaiphakdee to stay outside the 'do not disturb' area (rather than telling him to stay *within* a different specific area) was negligent at

best. Negligent exercise of dominion or control is not sufficient to support a cause of action for conversion.

OKP resident manager Brian Chen did not act with the requisite intent for conversion. For purposes of this motion, OKP does not dispute that Chen was informed about the existence of the artifacts. [Fact D]. Chen, however, was not involved in the clearing activities on the property. Alan Yee, OKP project manager, managed the clearing of the property. [Fact E]. No evidence exists to show that Chen withheld information from the employees doing the clearing with the *intent* that it would result in the exercise of dominion or control over Plaintiff's artifacts. Chen's failure to instruct other OKP personnel to avoid the area containing the artifacts was negligent at best, and is thus not sufficient to support a cause of action for conversion.

If no employees or managers of OKP possessed the requisite intent for conversion, OKP cannot possess the requisite intent for conversion. Corporations cannot commit a tort independent of actions by their subordinate parts. For OKP to become liable for conversion, liability must be imputed upon them by actions of their agents. If no liability can attach to any agent or actor of OKP for reasons expanded upon above, then no liability may be imputed upon OKP itself. Essential to imputing a particular tort upon a principal for the acts of an agent is that the agent has committed the tort. Defendants have demonstrated above that no agent or employee of OKP possessed the requisite intent for conversion of the artifacts. Accordingly, the tort of conversion based on destruction of the artifacts cannot be sustained against OKP. Likewise, because conversion for the artifacts is brought against Chen only via a piercing the corporate veil theory, no cause of action can survive against Chen in the absence of a cause of action against OKP. Summary judgment is appropriate.

Having pinpointed Atalig's lack of evidence of the requisite intent by any OKP actor to exercise dominion or control over the artifacts, which is essential to sustain his conversion claim, OKP has shifted the burden to Atalig to demonstrate the existence of a material issue of fact to survive summary judgment. In opposition to the motion, Atalig argues (twice) that "What matters is OKP's intent, not that of another person." [Consolidated Opposition, p. 15 &

16]. It is well settled that a corporation cannot act without its subordinate parts. Atalig fails to address the fact that OKP cannot 'intend' anything or commit any tort without an action by one of their agents. Without citing any case that establishes 'corporate intent' to convert property, Atalig claims that the issue of whether Chen had knowledge of the artifacts is sufficient to raise a genuine issue of fact as to the intent of OKP and to require a trial on the merits. This Court disagrees. Defendants have pinpointed Atalig's lack of evidence as to intent for conversion of the artifacts and have executed declarations to demonstrate the same. Atalig has not demonstrated any genuine disputed questions of fact. Summary judgment is entered against Atalig for cause of action three.[1]

### B. Soil and Other Minerals.

Cause of action four states a claim against OKP for conversion of soil and other minerals from Atalig's land. Atalig's cause of action is based on removal of topsoil and the rocks contained therein. [Fact P]. Defendants' motion is brought on the basis that the undisputed facts show topsoil was removed, then later returned (with an additional 18-20 truckloads of soil), thus there was no serious interference with Atalig's right to control over the soil. Defendants argue that replacing the originally stockpiled soil and adding additional soil actually improved Plaintiff's land. Atalig disagrees. Atalig claims the quality of the topsoil returned to his property is poor and thus he has seriously interfered with his rights in the use of the topsoil. At a minimum, there is a dispute as to the quality of the other soil (18-20 truckloads) that was brought in addition to the stockpiled soil. Defendants contend that the additional soil is high quality; Atalig contends it is dirt and mostly clay.

The dispute over the quality of the topsoil is sufficient to prevent summary judgment as to the cause of action for conversion of soil and other minerals. While it is unclear whether Atalig disputes that the original topsoil (stockpiled) was not returned at all, it is clear that he claims the soil brought from the airport project (that OKP willingly admits to placing on the property) is of poor quality. Thus there is a genuine dispute as to the difference in quality of the

---

[1] The Court notes that Atalig's claim for damages relating to the destruction of historical and cultural artifacts survives under his causes of action for waste, negligence, and breach of contract.

soil removed and the overall quality of the soil replaced. Topsoil, once severed from the real property, is considered a chattel and conversion of the same constitutes a tort. *Mendiola v. Commonwealth Utilities Commission*, 2005 MP 2, ¶ 19. The Court is cognizant of Defendants' argument that if topsoil is severed then later returned, no serious deprivation of right to control is an issue, and the argument is well taken so long as the nature of the topsoil returned is similar to that when it is taken. Atalig disputes this fact. Material alteration of the physical condition of a chattel is sufficient to support a cause of action for conversion. RESTATEMENT (SECOND) OF TORTS § 226 (1965) ([o]ne who intentionally destroys a chattel or so materially alters its physical condition as to change its identity or character is subject to liability for conversion). Indeed, even if the value of the chattel is increased by the alteration in its physical condition a cause of action for conversion still lies. *Id*. cmt. d. Thus, while there is no clear dispute that the original topsoil was returned to the Atalig property, there is a material factual dispute as to the difference in quality of the original topsoil and the returned topsoil. Accordingly, summary judgment is not appropriate as to the cause of action for conversion of soil and other minerals.

The Court notes that the issue of severance and reattachment raises novel questions as to whether the reattached chattel (here the soil) remains a chattel for purposes of conversion or whether the chattel once reattached (even if in an altered condition) then becomes part of the realty once again for purposes of conversion. If the latter were the case, the cause of action for conversion could no longer be sustained (assuming the original soil was returned in an altered condition) and the proper tort would be waste or trespass to land. These issues were not addressed in parties' arguments and the Court declines to make any determinations *sua sponte*. Regardless of the legal status of the topsoil once reattached to the realty, the question of fact as to whether the original soil was actually returned to Atalig's property (with the addition of other soil) or whether the soil placed on the property was from an entirely different source, precludes summary judgment as to this legal question.

### 2. Waste

Cause of action two states a claim against OKP for waste for five separate activities allegedly affecting Atalig's reversionary interest in his land. Waste is "an impermissible change

in the physical condition of leased property." *Camacho v. L & T Int'l Corp.*, 4 N.M.I. 323 (1996); RESTATEMENT (SECOND) OF PROPERTY, LANDLORD & TENANT § 12.2 cmt. a (1977). The five separate activities are: destruction of artifacts, destruction of trees and plants, destruction of buildings, placement of hazardous fuel tank and, quarrying/removing soil and other minerals.

OKP seeks summary judgment only as to the waste claim based on the existence of the fuel tank. OKP contends that since undisputed facts indicate the fuel tank was only on the property temporarily and was never filled with fuel that it has done no damage to Atalig's property and thus OKP cannot be liable for waste due to the fuel tank. Atalig responds with two arguments against summary judgment, first that partial summary judgment is not appropriate as to only a portion of the cause of action for waste and, second that there is a factual dispute as to whether the mere existence of a fuel tank on the property, even without ever being filled, devalues the property due to environmental concerns of future lessees or buyers.

Atalig's waste claim for the multiple activities can be characterized as five separate waste claims, and thus summary judgment as to one specific activity is entirely permissible under Com. R. Civ. P. 56 and *Bank of Saipan v. Superior Court (Carlsmith)*, 2001 MP 7. Partial summary judgment may not be brought separately as to a portion of a single claim under Com. R. Civ. P. 56(d). In the present matter, the waste claim is brought as to five separate and distinct activities on Atalig's land each of which he is claiming have distinctly harmed his reversionary interest. As such, Atalig's cause of action can be fairly characterized as separate causes of action each requiring proof as to damages. Defendants' motion as to one of the distinct activities as having no damages to the physical condition of Plaintiff's land is entirely appropriate under Com. R. Civ. P. 56.

There is no material factual dispute as to whether the temporary presence of the fuel tank caused any change in the *physical* condition of Atalig's property. Defendants submitted declarations stating that the fuel tank was placed on the property temporarily and never filled. [Facts Q & R]. Having demonstrated the non-existence of a necessary element (physical change), the burden shifts to the non-moving party to demonstrate the existence of a genuine issue of fact requiring a trial on the merits. Atalig responds by claiming that the mere existence

of the tank injured the property because of the environmental concerns and implications the existence of a large fuel tank (even if never filled) entails.  In support of this contention, Atalig submitted a declaration of David S. Demapan stating "The reason is that any responsible and potential buyer/lessee of the property will insist on an environmental testing to ensure that there are no environmental laws/regulations violated.  Further, a prudent buyer or lessee will require environmental warranties.  Such warranties have to be considered by Mr. Atalig as a cost." [Declaration of David S. Demapan, p. 2].  Essentially, Atalig does not submit evidence to raise any genuine issue of fact as to whether or not fuel was ever placed in the tank or leaked from the tank, but instead attempts to prove there are *economic* implications as a result of the empty tank that has since been removed.  As mentioned above, a claim for waste requires an impermissible *physical* change to the property, not merely a potential *economic* change.  Defendants came forth with evidence that no fuel ever entered the tank and thus no fuel could have ever exited the tank into Plaintiff's soil.  Plaintiff did not present any evidence to dispute whether fuel had entered or escaped the tank and did not raise any issue of fact as to any *physical* change resulting from the fuel tank.  Having demonstrated no material issue of fact as to whether any physical change occurred as a result of the fuel tank, Defendants are entitled to summary judgment as to this cause of action for waste.

          3. Negligence

Cause of action seven of the SAC alleges a negligence claim against Defendant OKP. OKP contends the specifically alleged breaches of duty in the SAC, "not to commit waste" and "to obtain prior written consent before making alterations" do not properly state causes of action for negligence, but would be better categorized as claims for involuntary waste and breach of contract respectively.  Essentially, OKP is not seeking summary judgment based on the lack of disputed material fact or lack of evidence to support a necessary element of the claim, but rather claiming the cause of action as pled are not properly negligence theories.  Atalig claims OKP has overcomplicated his negligence claim, which is really alleging breaches of two separate duties: the "duty to act with reasonable care" (failure to abide by the lease provisions for forbidding waste and requiring consent) and duties of care set by statute (negligence *per se*).

While it may complicate the present lawsuit, Atalig may pursue negligence claims for breach of duty set by contract. This is so even though Atalig is also pursuing causes of action for the identical harm under both property theory (waste) and contract theory (waste and failure to obtain consent) as well. It is well settled that contracting parties may assume a duty of care, a breach of which would become actionable in negligence. *Simon Property Group, L.P. v. Brandt Const., Inc.* 830 N.E.2d 981, 988 (Ind. Ct. App. 2005). *Williams v. R.H. Marlin, Inc.*, 656 N.E.2d 1145, 1155 (Ind.Ct.App.1995); *Michaelis v. Benavides*, 61 Cal.App.4th 681, 687 (Cal. App. 2. 1998); *Duff v. Harrah South Shore Corp.* 52 Cal.App.3d 803, 806 (1975). Breach of a duty assumed by contract can result in liability in both tort and contract law, although double recovery cannot be had. *See generally, id.*

Plaintiff may plead alternative theories under separate causes of action. While Defendants are arguably correct in arguing that Atalig has merely restated his cause of action for involuntary waste (SAC ¶ 96(a)) and for breach of contract (SAC ¶ 88(j)) under the heading of negligence (SAC ¶ 127), where a duty of care is assumed by contract, a breach of that duty may also be stated as a cause of action for negligence. Our rules of pleading allow such alternate theories of recovery. Com. R. Civ. P. 8 (a). Accordingly, summary judgment as to the negligence causes of action for failure to prevent waste and failure to obtain consent is DENIED. The Court will ensure, as will the special verdict forms, that double recovery is not had. Plaintiff would be well suited to streamline and simplify issues for trial so as to limit confusion to the jury.

While Plaintiff may pursue his theories of negligence under the specifically alleged duties arising under contract, he may not now "repackage" his negligence claim as a general failure to act with reasonable care. In his opposition, Atalig admits his cause of action for negligence "could have been better pled." [Opposition, p. 19, n. 4]. After so admitting, he attempts to morph the two specific duties alleged in ¶ 127 of the SAC into a general allegation of failure to act with reasonable care. This shape shift, coupled with the incorporation by reference all allegations of the SAC, Atalig attempts to show his negligence claim really encompasses all activities on the property where OKP fell below the applicable standard of care. *Id.* As OKP

points out, this is not the case. Nowhere does Atalig allege a failure to act with reasonable care[2] with respect to his cause of action for negligence. He specifically alleges a breach of two duties arising out of the contract (forbidding waste and requiring consent) and alleges a breach of two duties arising by statute (discussed below). Having failed to allege a duty to act with reasonable care or a breach of that duty, Atalig cannot now informally amend his complaint to pursue such a general claims to the detriment of Defendants.

In their motion Defendants do not seek summary judgment under Plaintiff's negligence *per se* theories. In fact their motion is entirely silent as to negligence *per se*. Under his cause of action for negligence, Atalig does allege a breach of duty for violation of "the laws of the CNMI" and by incorporation of other allegations of the SAC he does allege a failure to obtain requisite permits from the Division of Environmental Quality and the Historic Preservation Office. [SAC ¶¶ 128, 97, 63, 60]. Defendants do address Plaintiff's claims for negligence *per se* in their opposition to Plaintiff's motion for partial summary judgment. Negligence *per se* will be discussed in the Court's pending order addressing that motion.

### 4. Indemnification

In cause of action nine Atalig seeks indemnification for "all liability, loss, cost, damage or expense of litigation" arising out of any use of the premises or improvements, any failure of lessee to satisfy lessee's obligations, and any accident or occurrence causing injury to persons or property. [SAC ¶¶ 144, 146, 148]. Defendants move for summary judgment claiming that as a matter of law the indemnification clause does not cover losses between the parties, but only between the lessor and third parties. Defendants support their claim twofold: 1) by arguing the rules of contract interpretation require such a conclusion and 2) by arguing the strong presumption against the indemnitee supports such a conclusion. Atalig addresses the first, but not the second argument set forth by Defendants. Additionally, Atalig contends that

---

[2] In ¶ 87 of the SAC Atalig does allege that OKP *et al.* "had a duty to act with reasonable care and diligence *in performing the Lease* so as not to injure a person or property by its performance." (emphasis added). While this allegation is incorporated by reference, it alleges a duty of reasonable care with respect to performance of the lease.

indemnification agreements can address liability between the parties and that if the term of the contract is ambiguous, it should be for the jury to decide.

"The intent of contracting parties is generally presumed to be encompassed by the plain language of contract terms." *Riley v. Public Sch. Sys.*, 4 N.M.I. 85, 88 (1994). "Contract construction is a legal process whereby contract terms are given effect." *Id.* at n. 5. Where contract language need only be given legal effect, or construed, by the court it may be disposed of on summary judgment. *Id.* at 88, *citing Ada v. Sadhwani's, Inc.*, 3 N.M.I. 303, 310 (1992). In the present case parties are offering different legal effect to the term 'indemnify.' Other courts have determined the meaning of the term indemnify on summary judgment in similar contexts as the present. *See generally, Mead Corp. v. ABB Power Generation, Inc.*, 141 F.Supp.2d 914 (D.C. Ohio 2001).

To indemnify means: "To reimburse (another) for a loss suffered because of a third party's or one's own act or default." BLACK'S LAW DICTIONARY (8th ed. 2004). Thus a contract for indemnification **can** apply to losses caused by third parties **or** by the contracting parties. The rules of construction require the contract to be read in its entirety and to give legal effect to terms that would make sense reading the contract as a whole. *See generally, Ito v. Macro Energy, Inc.*, 4 N.M.I. 46, 68 (1993) (terms not ambiguous simply because not defined; terms are to be afforded plain and ordinary meaning *against the background of the entire agreement*).

Plaintiff's construction of indemnify to include liability, loss, cost, damage or expense of litigation arising *between* OKP and Atalig would conflict with other provisions of the contract. As Defendants suggest, Plaintiff's construction would render sections 12 and 23 of the Lease at odds with one another. Under Plaintiff's construction, section 12, the indemnity clause, would hold OKP strictly liable (regardless of who prevails) for all expenses of litigation in this lawsuit. This construction would be in stark conflict to section 23, which provides that costs of suit and reasonable attorney shall be awarded to the prevailing party for any suit for breach of the lease or rent due. Applying Plaintiff's construction of the term, if OKP were a prevailing party of a lease dispute, under section 12 they would *still* be required to compensate Atalig for all expenses of litigation (even an award of OKP's reasonable attorney fees by a court under section 23). In

such an event, section 23 would conflict and would be rendered useless. Reading the contract as a whole forces this Court to construe 'indemnify' as relating only to liability, loss, cost, damage or expense of litigation arising between the lessor and third parties. This is in accord with Restatement provisions regarding contract interpretation. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 202, 203 (1981) (discussing principles of contract interpretation not construction).

Atalig's suggestion that the indemnity clause applies irrespective of a breach of the lease whereas the attorney fee clause applies only for breach of the lease does not change this inherent conflict. While Atalig is correct that the language in the indemnity clause applies also to tort-type liability or loss, it *clearly* applies **also** to losses arising under a failure to satisfy obligations of the lease. In section 12(B) it specifically addresses "arising out of, or directly or indirectly due to, any failure of Lessee in any respect promptly and faithfully to satisfy Lessee's obligations under this lease." Just because the indemnity clause is more expansive than the attorney fee clause does not resolve the inherent conflict (discussed above) created by Atalig's suggested construction of 'indemnify.'

As a general policy rule, indemnity agreements are strictly construed against the indemnitee. *Badiee v. Brighton Area Schools*, 265 Mich.App. 343 (Mich.App. 2005); *Mantilla v. NC Mall Associates*, 770 A.2d 1144 (N.J. 2001); *Keawe v. Hawaiian Elec. Co., Inc.*, 649 P.2d 1149 (Haw. 1982); *Park Pride Atlanta v. City of Atlanta*, 541 S.E.2d 687 (Ga.App. 2000). The purpose of strict construction is because of the sweeping consequences of their application. *See Williams v. White Mountain Contr. Co.*, 749 P.2d 423, 426 (Colo. 1988). For this reason, where the term indemnity could have two constructions, one restricted to indemnifying against losses, liability, etc. arising from third parties and one indemnifying against losses, liability, etc. arising from any activity, the court will construe the term strictly (narrowly) against the indemnitee. In the present situation, given the internal conflict created by the indemnitee's construction of the term, particularly in light of the policy of strictly construing indemnity clauses against the indemnitee, the Court construes the term indemnify to require reimbursement only for liability, loss, cost, damage or expense of litigation arising between the lessor and third parties.

Historically indemnification agreements provide indemnity for third party claims not for claims between the contracting parties. *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 798 (6th Cir. 2003) (citing RESTATEMENT OF RESTITUTION § 76 & cmt. b (1937). While indemnity provisions *can* apply between the contracting parties, their historical scope was to provide for protection to the indemnitee from claims by a third party. *Id.* Such historical application also weighs in favor of limiting the scope of the indemnification clause only to liability, loss, cost, damage or expense of litigation arising between the lessor and third parties. Absent some clear language applying the clause as to liability, loss, cost, damage or expense of litigation arising between the lessor and lessee, and given the conflict created between sections 12 and 23 under Atalig's proposed construction, this Court will construe the clause strictly against Atalig and limit its scope to liability, loss, cost, damage or expense of litigation arising between the Atalig and third parties. Summary judgment in favor of Defendants as to cause of action nine is appropriate.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

### III.    CONCLUSION

For the foregoing reasons defendants OKP [CNMI] Corporation and Brian M. Chen's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART as follows:

GRANTED as to causes of action three [conversion of historical and cultural artifacts],

DENIED as to cause of action four [conversion of soil and other minerals],

GRANTED as to part of cause of action two [waste claim for fuel tank],

DENIED as to cause of action seven [negligence per se and ordinary negligence] and,

GRANTED as to cause of action nine [indemnification].

Defendants OKP [CNMI] Corporation and Brian M. Chen's motion to strike Doe defendants is GRANTED.

**SO ORDERED** this 30th day of January, 2008.

/s/ *Robert C. Naraja*
_____
ROBERT C. NARAJA,
Presiding Judge