JOHN D. OSBORN
SEAN E. FRINK
CARLSMITH BALL LLP
Carlsmith Building, Capitol Hill
P.O. Box 5241
Saipan, MP  96950-5241
Tel. No. (670) 322-3455

Counsel for Defendant OKP (CNMI) Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DONGBU INSURANCE COMPANY, Ltd., | Case No.: 08-0002 |
| Plaintiff, | OKP CNMI CORPORATION'S |
| vs. | STATEMENT OF DISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| OKP (CNMI) CORPORATION & | |
| JOAQUIN Q. ATALIG, | Hearing Date: July 10, 2008, at 1:30 p.m. |
| Defendants. | |

I. **OKP Disputes Some of Dongbu's Undisputed Facts.**

The following section contains the facts Dongbu Insurance Company, Ltd ("Dongbu") asserts as being undisputed in support of its Motion for Partial Summary Judgment and, where applicable, OKP's dispute and the basis for such dispute.

**A. The Rota airport expansion project.**

The CNMI Commonwealth Ports Authority ("CPA") awarded the Rota Airport Runway Extension Project, CPA Contract No. CPA-RA-001-03 (the "Runway Expansion Project") to

OKP.[1]

OKP obtained certain insurance policies from Dongbu in connection with that project. Two of those policies are at issue in this case:  1) a contractors all risk policy (to cover damage to contract works and third party liability claims in direct connection with OKP's construction work at the airport); and 2) an automobile liability policy (to cover automobile accidents).

**B. The Contractors All Risk Policy.**

OKP purchased contractors all risk insurance coverage for the work it contracted to do on Rota in January 2006.  *See* Contractors' All Risk Policy, KMCR0015-S00 (the "CAR policy"), attached hereto as **Exhibit A**.[2]  The CAR policy was issued on January 19, 2006 and was in effect from January 16, 2006 to January 16, 2007 (or when work commenced on the construction project, pursuant to the Period of Cover set forth in the CAR policy form).

**OKP's Dispute:**  *The relevant language from the CAR policy does not state that the period of cover begins when work commenced.  The relevant  language actually reads "The liability of the Insurers shall commence, notwithstanding any date to the contrary specified in the Schedule, directly upon commencement of work or after the unloading of the items entered in the*

---

[1]  OKP is a subsidiary of OKP Holdings Limited (Singapore), an international construction and maintenance company engaged in the construction of roads, expressways, vehicular bridges, flyovers and buildings, airports infrastructure. OKP's maintenance services includes; reconstruction of roads, road reserves, pavements, footpaths and curbs, guardrails, railings, drains, signboards as well as bus bays and shelters. The company operates primarily in Singapore and employs about 440 people. *See* Datamonitor, http://www.datamonitor.com/companies/company/?pid=61C54754-0934-47BE-9DC2-8EA5B1CFA7D1.

   **OKP's Dispute**:  *Fed. R. Civ. P. 56(c)  requires a showing that there is "no genuine issue as  to any material fact…"  OKP fails to see how any of the information contained in Dongbu's footnote  is material and on that basis objects.  In addition, the information  is not supported by affidavit and  is not capable of being subject to judicial notice, and is inaccurate.*

[2]Dongbu believes that there is no dispute regarding the contents of the two policies, and so they are not verified.  If no agreement on this point is reached then Dongbu will file a separate affidavit attesting to the authenticity of the two policies.

   **OKP's Dispute**:  *OKP is forced to dispute the accuracy and completeness of the two policies unless and until Dongbu provides the promised affidavit attesting to their authenticity.  This is because, despite repeated requests for same, Dongbu has never provided OKP with complete copies of the policies.*

*Schedule at the site." CAR Policy, Period of Cover Section, Bates # 000018 of Dongbu's Exhibits.*

The insured is OKP,[3] and the limit of liability for the third party liability coverage is $1,000,000 as stated more particularly in the CAR policy.

The CAR policy provided OKP with protection from earthquake, volcanism, tsunami, storm, cyclone, flood inundation or landslide for all contract work it carried out on the International Airport Project. *Id.*, Schedule, Section I.   The CAR policy also provided OKP with Third Party Liability coverage for personal injury and property damage. *Id.*, Schedule, Section II.

Damages for third party liability are expressly "consequent upon **accidental loss** of or damage to property belonging to third parties." *Id.*, Third Party Liability (*emphasis added*).

**OKP's Dispute:** *The quote is inaccurate.  It should read "The Insurers will indemnify the Insured up to but not exceeding the amounts specified in the Schedule against such sums which the Insured shall become legally liable to pay as damages consequent upon ... accidental loss of or damage to property belonging to third parties."  CAR Policy, Third Party Liability Section, Bates # 000023 of Dongbu's Exhibits.*

The policy also excludes from coverage loss, damage or liability directly or indirectly caused by or raising out of or aggravated by any "willful act or willful negligence of the insured or his representative." *Id.*, General Exclusions, Section C (*emphasis added*).

**OKP's Dispute:** *The quote also is inaccurate.  The relevant potion of the policy reads that "The Insurers will not <u>indemnify</u> the Insured in respect of loss, damage, or liability directly or indirectly caused by or arising out of or aggravated by ...wilful act or wilful negligence of the*

---

[3]  The named insured is OKP (CNMI) Corporation, and this arguably extends to work performed by employees of OKP, but not to any other named defendants.

*Insured or of his representatives..."  (emphasis added).  CAR Policy, General Exclusion Section, Bates # 000017 of Dongbu's Exhibits.*

A number of other terms also apply in this case:

1.  General Condition No. 5 requires immediate notice of claims, and expressly bars any coverage under the CAR Policy where the insured does not provide notice to the insurer within 14 days of the insured being aware of the claim.

**OKP's Dispute:**  *This paraphrased language is inaccurate.  The relevant policy language actually reads: "The Insurers shall not in any case be liable for loss, damage, or liability of which no notice has been received by the Insurers within 14 days of its occurrence."  CAR Policy, General Conditions Section, Bates # 000019 of Dongbu's Exhibits.*

2.  The third party liability coverage only applies to events "occurring in direct connection with the construction" and that also occur on the site.

**OKP's Dispute:**  *The relevant language actually reads: "The Insurers will Indemnify the Insured up to but not exceeding the amounts specified in the Schedule against such sums which the Insured shall become legally liable to pay as damages consequent upon .. accidental loss of or damage to property belonging to third parties occurring in direct connection with the construction or erection of the items insured under Section._ (sic) and happening on or in the immediate vicinity of the site during the Period of Cover.  CAR Policy, Third Party Liability Section, Bates # 000023 of Dongbu's Exhibits.*

3.  Exclusion No. 4(b) to the Third Party Liability section excludes claims in connection with property "held in the care, custody or control" of OKP.

**OKP's Dispute:** *The relevant language actually reads: "The Insurers will not Indemnify the Insured in respect of…liability consequent upon…loss of or damage to property belonging to or held in care, custody or control of Contractor(s), the Principal(s) or any other firm connected with the project …"* *CAR Policy, Special Exclusions to Third Party Liability Section, Bates # 000024 of Dongbu's Exhibits.*

4.  Exclusion No. 4(d) to the Third Party Liability section excludes claims in conne*ction with liability assumed under a contract.*

**OKP's Dispute:** *The relevant policy language actually reads: "The Insurers will not indemnify the Insured in respect of …liability consequent upon …any agreement by the Insured to pay any sum by way of indemnity or otherwise unless such liability would have attached also in the absence of such agreement."* *CAR Policy, Special Exclusions to Third Party Liability Section, Bates # 000024 of Dongbu's Exhibits.*

5.  Endorsement No. 5 to Third Party Liability excludes punitive damages.

6.  Endorsement No. 6 to the Terms and Conditions excludes loss or damage to "crop, forests and/or cultures."

**C.  The Automobile Liability Policy**

OKP purchased automobile insurance coverage for its vehicles on Rota in December 2005.  *See* Automobile Liability Policy, 150230-150230 (KMA-09102-S00) (the "Auto policy"), attached hereto as **Exhibit B**.  The named insured is OKP, and the Auto policy was issued on December 27, 2005 and was in effect from December 15, 2005 to December 15, 2006.  Thirty-one vehicles are listed as covered under that policy with bodily injury limits of $1,000,000.00

per person and $2,000,000.00 per accident and with property damage limits for the scheduled vehicles set at $3,000,000.00 per accident.  *Id*., Declarations Page (*emphasis added*).

Under the insuring agreement, OKP is only covered for bodily injury or property damage "**caused by accident** and arising out of the ownership, maintenance or use of the automobile[s]."  *Id*., Insuring Agreement, page one, "Coverage A:  Bodily Injury Liability & Coverage B:  Property Damage Liability" (*emphasis added*).

A number of other terms also apply:

1.  The Auto Policy's declarations page requires that "immediate" notice of claims be provided to the claims adjusting company indicated.  The Auto Policy's Condition 3 provides that "the insured shall immediately forward to the [insurer] every demand, notice, summons or other process" received.

2.  Exclusion V(a) excludes claims in connection with "liability assumed by the insured under any contract or agreement."

3.  Exclusion IX(a) applies to property damage claims  for "injury to or destruction of property owned by, rented to, in charge of or transported by the insured."

**D.  The Underlying Lawsuit.**

As noted above, the underlying lawsuit arises out of a real property lease entered into between Mr. Atalig and OKP.

**OKP's Dispute:**  *No, the underlying lawsuit arises out of OKP allegedly negligent clearing activities on the Atalig property, of which a portion (the "Premises") were leased by OKP in direct support of obligations under its contract with the CPA.  Atalig Second Amended Complaint, See, e.g. ¶¶28, 45, 46, 48, & 60.*

1. <u>The Lease</u>.

OKP entered a real property lease agreement with Mr. Atalig in November 2005 (the "Lease"), a copy of which is attached hereto as **Exhibit C**.  Under the Lease, OKP was given the right to build, alter, remodel, replace, remove buildings or other improvements on the property "and to correct and change the contour" land pursuant to plans attached to the lease and with written consent of Mr. Atalig.

**OKP's Dispute:**  *This is an inaccurate statement.  According to the Atalig Complaints OKP did not lease the entire Atalig property.  Instead, it leased the "Premises," which is defined as "the existing improvements and improvements subsequently erected thereon during the term of the Lease and the appurtenances and other  incidents  associated therewith."  Atalig Second Amended Complaint, ¶¶46, 48, and 49.*

The leased property is separate and distinct from the Rota airport and its expanded runway.

**OKP's Dispute:**  *As Indicated above, according to the Complaint, OKP leased the "Premises," which is identified as the improvements on the Atalig property, <u>not</u> the entire Atalig property.  In addition, it is unclear what Dongbu intends by the term "separate and distinct."  OKP, leased the Atalig property in direct support of its work on the Rota Runway Project.  Any intent by Dongbu to state otherwise is not supported by the facts and is disputed by OKP.* The airport project is not referred to or mentioned in the Lease.

**OKP's Dispute:**  *This statement is inaccurate as the Lease recognizes that the Premises will be used as an "office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operations on Rota."  Lease, ¶6,*

The Runway Expansion Project contract, the Lease and the two insurance policies at issue in this case are all separate and distinct documents.

The term of the Lease was for thirteen months and the rental amount was $37,500.00. The Lease, Paragraph 2.  As further consideration of the rent, OKP agreed to pay the full-time salaries of two full-time employees of Mr. Atalig's selection.  The Lease, Paragraph 3.

OKP contractually agreed to indemnify Mr. Atalig against all liability, loss, cost, damage or expense of litigation arising out of OKP's possession or use of the property by its employees. The Lease, Paragraph 12.

**OKP's Dispute**:  *This is not a material fact as the Indemnification cause of action was dismissed by Judge Naraja. on January 30, 2008.*

The Lease also contains a provisions regarding insurance:

> Lessee, at Lessee's option and its own expense, shall keep all improvements erected on the premises insured against loss or damage by fire or other casualty or calamity for the value of all improvements.  Any insurance proceeds payable with respect to any loss to any improvements on the Premises shall belong to Lessor and Lessee shall have no right, claim or interest therein.

> The Lease, Paragraph 14.

There is no evidence that OKP ever purchased any insurance to cover the leased premises.

The Lease allowed OKP the full use of the premises and improvements which were as noted above to primarily be used as employee barracks, an office facility, an equipment repair shop, a workstation, a staging area and for parking for heavy and lightweight equipment.  The Lease, Paragraph 6.

The Lease also provided that OKP had the right to "erect, maintain, alter, remodel, reconstruct, rebuild, replace and remove buildings and other improvements on the Premises, and correct and change the contour of the Premises" pursuant to plans

incorporated in the Lease.   The Lease, Paragraph 13.1.   The amount of land work contemplated and agreed to in the Lease agreement was expansive and varied, for example, under one explicit terms of the Lease, OKP enjoyed the right to "setup, build, or construct a soccer field on the premises."  The Lease, Paragraph 13.5.

**OKP's Dispute**:  *Plaintiff has repeatedly mischaracterized the Atalig Lease rather than providing the Court with the actual relevant language.  Plaintiff's characterizations are not material facts and are on that basis objected to.  Furthermore, a review of the Lease makes clear that the amount of anticipated "land work" contemplated by the lease was not "expansive" and "varied."  Indeed, it is hard to understand how plaintiff can attempt to characterize setting up a soccer field as expansive land work.*

## 2. The Underlying Lawsuit.

In March 2006, Mr. Atalig filed a lawsuit against OKP and other defendants in the CNMI Superior Court.  In July 2006, Mr. Atalig filed an amended complaint, which stated seventeen causes of action.  The amended complaint alleged that OKP damaged Mr. Atalig's property by tearing down and altering improvements on the land and by clearing land that OKP had been warned not to clear, all without the written consent allegedly required by the lease, and all in violation of Commonwealth law.  *See* amended complaint, Paragraphs 60 through 69, attached as Exhibit D to OKP's counterclaim, filed on or about March 18, 2008.

In April 2007, Mr. Atalig filed his Seconded Amended Complaint for Breach of Contract and Tort Claims and for Relief under the Open Government Act (and Demand for Jury Trial) (the "SAC") against OKP in CNMI Superior Court, attached hereto as **Exhibit D** (without attachments).

In the SAC, Mr. Atalig alleges that OKP leased his property for employee barracks and office facilities, an equipment repair shop, a workstation, for a staging area and for parking for heavy and lightweight equipment – and for whatever reasons – breached the terms of that contract and thereby *allegedly* caused damages to Mr. Atalig's property (and historical artifacts on his property).[4]

As with the claims in the earlier complaints, **_all_** the causes of action and claims for damages directed in the SAC are based on the contractual relationships and resulting duties created in the Lease, *i.e.* contract.  *See* SAC, Part VIII, First Cause of Action, Breach of Contract (failed to rent certain fixtures in violation of Section 1 of the *lease*; failed to hire/pay employees under Section 3 of the *lease*; illegally hunted on the property in violation of Section 6 of the *lease*; damaged Japanese water tank on the property in violation of Section 3 of the *lease*; damaged and destroyed artifacts/relics in violation of Sections 1 and 6 of the *lease*; destroyed trees and other plants on the property in violation of Sections 1 and 6 of the *lease*; illegally located fuel tank on the property in violation of Section 6 of the *lease*; removed soil and minerals from the property in violation of Sections 1 and 6 of the *lease*; changed the contour of the property in violation of Section 13.1 of the *lease*.[5]

---

[4]  The specific damages complained of are found in paragraph 60 (cultural and historical artifacts); paragraph 61 (an existing kitchen, laundry, storage facilities, and a stove et cetera); paragraph 62 (flame, coconut, bamboo, and beetle nut trees and shrubs, flowers and other plants); paragraph 63 (soil, rocks and minerals); and finally, paragraph 90 (property and other economic damages).

[5]  To be complete, in Part IX of the SAC, the second cause of action is under a real property theory of law for "Waste" under the same facts and claims for damage as contained in the first cause of action -- breach of contract, *i.e* the Lease.  In Part X of the SAC, Mr. Atalig's lists as his Third Cause of Action the intentional tort of "Conversion of Historical and Cultural Artifacts" (found on the property under the Lease).  In Part XI of the SAC, the Fourth Cause of Action is "Conversion of Soil and Other Minerals" (found on the property under the Lease).  In Part XII of the SAC, the Fifth Cause of Action is again "Conversion of Permanent Trees" (claim limited to trees/plants on the property in the Lease).  Part XIII of the Complaint lists Mr. Atalig's Sixth Cause of Action as again "Conversion" and this time for Preexisting Buildings and other Improvements (under the Lease).  In Part XIV,

**OKP's Dispute:** *All of the causes of action and claims for damages are not based upon the contractual relationships and resulting duties created in the Lease. The Second Amended Complaint contains Conversion, Negligence ("violation of the laws of the CNMI by damaging and destroying cultural and historic artifacts"), and Unjust Enrichment causes of action, all of which are not based upon the contractual relationship and resulting duties alleged by Atalig in the Complaints (and strongly disputed by OKP throughout the Atalig litigation).*

The SAC repeats the underlying factual allegations set forth in the amended complaint. *See* SAC, Paragraphs 55-64 (tracking Paragraph 60-69 of the amended complaint). Hence, for example, the SAC alleges that OKP contractually obligated itself not to commit waste (SAC, Paragraph 55), and OKP cleared the land despite having been warned not to do so, without the written consent required by the Lease and without the permits required by Commonwealth law (SAC, Paragraph 60).

**E.  OKP's defense of the underlying case.**

It is undisputed that OKP never reported any "accident" or damage to the leased premises to Dongbu at the time of such alleged damage. The lawsuit was then filed in

---

the Seventh Cause of Action is for Negligent Waste (i.e., claims that OKP failed to obtain permission and give notice as required in Section 13 the Lease) thereby destroying cultural and historical artifacts and other things of value.  Part XV of the SAC contains the Eighth Cause of Action in equity of "Unjust Enrichment."  Part XVI of the SAC contains the Ninth Cause of Action, "Indemnification" which directly relates to Sections 12 and 12B of the Lease.  Part XVII, the Tenth Cause of Action is against CPA and one CPA employee only and relates to claims or violations of Open Government Meetings and Records Act.  And the final cause of action contained in the SAC is found in Part XVIII of that document and concerns an "Attorney's Fees" provision found in Section 23 of the Lease.

**OKP's Dispute.**  *Plaintiff again repeatedly mischaracterized the Atalig Complaint rather than providing the Court with the actual language.  Plaintiff's characterizations are not material facts and are on that basis objected to. Additionally, particularly telling is plaintiff's failure, among all of the causes of action, to even attempt to characterize the unjust enrichment cause of action.  Perhaps plaintiff's apparent attempt to ignore this cause of action is because the unjust enrichment claim unquestionably is not based upon the contractual relationships and resulting duties of the parties, and thus, clearly results in a duty to defend.  See e.g., National Cas. Co. v. Vigilant Ins. Co., 466 F.Supp. 2d 533, 539 (S.D.N.Y. 2006) (if the unjust enrichment claim would exist independent of an underlying act of an excluded activity, insurer has a duty to defend the insured).*

March 2006 and OKP actively defended the case for months without informing Dongbu of the lawsuit.  Instead, as is also undisputed, OKP first informed Dongbu of the litigation in August 2006.

Dongbu and OKP then discussed any possibility of coverage, and eventually, when they were unable to resolve this matter without litigation, Dongbu brought this coverage action.

**OKP's Dispute:**  *This is not material to this motion and is an inaccurate characterization of Dongbu and OKP's discussion and is objected to as such.*

## II.    OKP's Additional Facts that Are Material to This Motion[6]

The Automobile Insurance Policy

1.      Effective December 15, 2006, Dongbu Insurance Company, Ltd. ("Dongbu") issued an insurance policy with named insured OKP (CNMI) Corporation ("OKP"), policy number 150230-130230 (KMA-0912-S00) (the "Auto Policy").  The Auto Policy term was from December 15, 2005 to December 14, 2006.  Dongbu's March 3, 2008 *First Amended Complaint* (the "Dongbu FAC"), ¶ 6, and the  March 18, 2008 *Answer of Defendant OKP (CNMI) Corporation; Counterclaim for Declaratory Judgment and Damages; Demand for Jury Tria*l (the "OKP Answer & Counterclaim"), ¶6.  A true and correct copy of the Auto Policy is attached to the concurrently filed Declaration of Sean E. Frink of May 22, 208 as Exhibit "6."

2.      The Auto Policy is a valid binding insurance contract between Dongbu and OKP. Dongbu FAC, ¶ 7, and OKP Answer & Counterclaim, ¶7.

3.      Dongbu is the insurer and OKP is the named insured under the Auto Policy. Dongbu FAC, ¶¶ 8 & 9, and OKP Answer & Counterclaim, ¶¶8 & 9.

---

[6]  The facts set forth in Section II are identical to those submitted and supported by affidavit by OKP in support of its its May 22, 2008 Motion for Partial Summary Judgment.

The Contractor's All Risk Insurance Policy

  4.  On January 19, 2006, Dongbu issued to OKP policy number (KMCR0015-500) (the "CAR Policy"), the period of insurance from January 16, 2006 to January 15, 2007 subject to the provision concerning the Period of Cover which states in part:

> **PERIOD OF COVER:** The liability of the insurers shall commence, notwithstanding any date to the contrary specified in the Schedule, directly upon commencement of work or after the unloading of the items entered in the Schedule at the Site.  The Insured's liability expires for parts of the insured contract works when taken over or put into service.  At the latest the insurance shall expire on the date specified in the Schedule.  Any extension of the period of insurance are subject to prior written consent of the Insurers.

  5.  OKP Answer & Counterclaim, Counterclaim Section. ¶ 9, *Plaintiff's Answer and Defenses to Defendant OKP's Counterclaim*, filed March 3, 2008 (the "Dongbu Answer")*, ¶9*. A true and correct copy of the CAR Policy is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "7."

  6.  The CAR Policy is a valid binding insurance contract between Dongbu and OKP. Dongbu FAC, ¶ 14, and OKP Answer & Counterclaim, ¶14.

  7.  Dongbu is the insurer and OKP is the named insured under the CAR Policy. Dongbu FAC, ¶¶ 15 & 16, and OKP Answer & Counterclaim, ¶¶15 & 16.

  8.  OKP Resident Manager Brian M. Chen ("Chen") was the person responsible for obtaining the Automobile and Contractor's All Risk insurance policies from Dongbu on behalf of OKP.  Concurrently filed Declaration of Brian M. Chen of May 22, 2008, ¶1.

  9.  Chen obtained the Automobile and Contractor's All Risk insurance policies from Dongbu by approaching Moylan's Insurance Underwriters (Int'l), Inc. ("Moylan's"), Dongbu's

Registered Agent in the CNMI, and presenting it with a copy of the insurance related provisions of OKP's contract with the Commonwealth Ports Authority ("CPA") for the construction of the Rota Runway Extension, and asked Moylan's to find OKP insurance that would meet the requirements of OKP's contract with the CPA.  Concurrently filed Declaration of Brian M. Chen, ¶2.  Attached as Exhibit "1' to the Chen Declaration is a true and correct copy of Dongbu's most recently filed annual corporation report, which indicates that Moylan's is Dongbu's registered agent.

The Rota Runway Project

    10.    OKP went to the island of Rota in connection with an October 28, 2005 contract it had with the Commonwealth Ports Authority for the improvement of the Airport runway.  In connection with that contract among other things OKP purchased the Auto Policy and CAR policy from Dongbu and entered into a lease with Joaquin Q. Atalig ("Atalig" or "Mr. Atalig") for, among other things,  use as a barracks and a parking area for OKP's equipment.  Dongbu FAC, ¶ 24, and OKP Answer & Counterclaim, ¶24 and the concurrently filed Declaration of Sean E. Frink, ¶3.

    11.    Two 2004 Kobelco Used SK200 Excavators, Vin Nos. YN09-36227 and YN09-36581, referred to as Vehicles Nos. 3 and 4 in the Auto policy vehicle schedule, one 1990 Caterpillar Used D6H Bulldozer, Vin No. 1KD-04075, referred to as Vehicle No. 6 in the Auto policy vehicle schedule, one Mitsubishi Dump Truck, Vin No. FV 415JV43168, referred to as Vehicle No. 10 in the Auto policy vehicle schedule, and one 2002 Caterpillar 10T Compactor Roller, Vin No. 2R200184, referred to as Vehicle No. 27 in the Auto vehicle policy schedule (these five vehicles will hereinafter be referred to collectively as the "Heavy Equipment"), among other heavy equipment, were delivered to the Port of Rota on December 20, 2005,

unloaded on the same day, and delivered to the Atalig property between December 20 and 22, 2005. Work on the CPA contract began with OKP's work improving the Atalig property on or about November of 2005. Concurrently filed Declaration of Brian M. Chen, ¶¶6 & 8.

12.   In support of its work on the Rota Runway Project, for use as a staging area and employee barracks, on or about November 2, 2005, OKP entered into a Lease Agreement with Atalig. Many of the terms of the Lease are in dispute between Atalig and OKP but the Lease was for a period of thirteen months. Concurrently filed Declaration of Brian M. Chen, ¶7.

The Clearing of a Portion of the Atalig Property

13.   On December 23 and 24, 2005, a portion of the Atalig property was cleared by OKP employee Pramuan Jaiphakdee using the Heavy Equipment. See, *e.g.* OKP and Chen October 26, 2007 Motion for Partial Summary Judgment, supporting documents and opposition, and the CNMI Superior Court's resulting January 30, 2008 Order, pp. 4-7 and the concurrently filed Declaration of Brian M. Chen, ¶9.

The Atalig Lawsuit is Filed

14.   On or about March 23, 2006, an original complaint was filed by Atalig against OKP and Does 1 through 10. This lawsuit is Commonwealth of the Northern Mariana Islands Superior Court Civil Action No. 06-0119R (the "Lawsuit"). Dongbu FAC, ¶ 21 & OKP Answer & Counterclaim, ¶21. The concurrently filed Declaration of Sean E. Frink, ¶ "2." A true and correct certified copy of the March 23, 2006 original complaint is attached to the Frink Declaration as Exhibit "8."

The Original Complaint set forth the following causes of action:

        1.   Breach of Contract
        2.   Waste
        3.   Conversion -- Historical and Cultural Artifacts
        4.   Conversion -- Soil and Other Minerals

5.    Conversion -- Permanent Trees
6.    Conversion -- Preexisting Buildings/Improvements
7.    Negligence -- Violation of 1 CMC § 2382(g) and 2 CMC § 4811, *et seq.*
8.    Negligence --Violation of 2 CMC § 3101, *et seq.*
9.    Negligence
10.    Negligent Interference with Prospective Economic Advantage
11.    Intentional and/or Negligent Infliction of Emotional Distress
12.    Unjust Enrichment
13.    Nuisance
14.    Indemnification
15.    Attorneys' Fees

Original Complaint, pp. 10-26.

15.    The next day March 24, 2006, articles about the lawsuit appeared in both the Marianas Tribune and Marianas Variety.  Concurrently filed Declaration of Brian M. Chen, ¶11 and Exhibits "2" and "3."

16.    Soon after March 24, 2006, while Mr. Chen was visiting the offices of Moylan's Insurance Underwriters, Inc., to discuss another insurance related matter, Cecelia A. Anas mentioned to Mr. Chen that she had seen at least one of the March 24 newspaper articles discussed in the preceding paragraph and that the claims mentioned in the article(s) sounded ridiculous.  It is Mr. Chen's best estimate that this conversation took place within a week of March 24, 2006.  Concurrently filed Declaration of Brian M. Chen, ¶12

17.    On April 26, 2008, OKP, through its attorneys Mailman & Kara, LLC and the Law Offices of Sean E. Frink, LLC, filed a Motion to Strike portions of the Original Complaint pursuant to Commonwealth Rule of Civil Procedure 12(f).  The concurrently filed Declaration of Sean E. Frink, ¶ "5."

18.    On April 26, 2008, OKP, through its attorneys Mailman & Kara, LLC and the Law Offices of Sean E. Frink, LLC, also filed a Motion to Dismiss the Second, Seventh, Eighth, Ninth, Tenth , and Thirteenth Causes of Action of the Original Complaint pursuant to

Commonwealth Rule of Civil Procedure 12(b)(6).  The concurrently filed Declaration of Sean E. Frink¶ "6."

19.    On May 3, 2006, Mr. Atalig, through his attorney Ramon K. Quichocho, filed a Motion for Partial Summary Judgment, seeking judgment on OKP's liability on the breach of contract, waste, conversion of cultural and historical artifacts, conversion of soil and other minerals, conversion of permanent trees, and conversion of preexisting buildings/improvements causes of action.  The concurrently filed Declaration of Sean E. Frink¶ "7."

20.    Opposition and reply memoranda regarding OKP's motions to strike and to dismiss and Atalig's motion for summary judgment were subsequently filed and the motions were all argued before CNMI Superior Court Associate Judge Kenneth L Govendo on June 9 and 12, 2006. The concurrently filed Declaration of Sean E. Frink¶ "8."

21.    Judge Govendo's decisions regarding the three motions were filed on July 10, 25, and 28, 2006. Judge Govendo denied Atalig's Motion for Summary Judgment entirely, granted OKP's motion to dismiss the Seventh (Negligence in violation of 1 CMC § 2382(g) and 2 CMC § 4811, *et sec.*), Eighth (Negligence in violation of 2 CMC § 3101, *et seq.*), and Tenth (Negligent Interference with Prospective Economic Advantage) Causes of Action, and denied the remainder of OKP's motions.  The concurrently filed Declaration of Sean E. Frink¶ "9."

22.    On July 31, 2006, Atalig filed his Verified First Amended Complaint for Breach of Contract and Tort Claims and for Relief Under the Open Government Meetings and Records Act and Demand for Jury Trial "(the "FAC").   Frink Declaration, ¶8.  A true and correct certified copy of the FAC is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "9."

The Defendants named in the FAC were:

1.      OKP (CNMI) Corporation
2.      OKP Holdings Limited
3.      Kim Peow Or
4.      Toh Wat Or
5.      Eric Nam Oh
6.      He Kheng Soh
7.      Brian M. Chen
8.      Prasada Reddy Goluguri
9.      Pramuan Jaiphakdee
10.    Wilai Promchai
11.    The Commonwealth Ports Authority
12.    Regino M. Celis &
13.    Does 1-3

FAC, pp. 6-10.

The FAC sought to pierce the corporate veil of OKP and set forth the following causes of action:

14.    Breach of Contract
15.    Waste
16.    Conversion -- Historical and Cultural Artifacts
17.    Conversion -- Soil and Other Minerals
18.    Conversion -- Permanent Trees
19.    Conversion -- Preexisting Buildings/Improvements
20.    Negligence
21.    Negligence Entrustment
22.    Intentional and/or Negligent Infliction of Emotional Distress
23.    Unjust Enrichment
24.    Nuisance
25.    Indemnification
26.    Principal-Agent Liability: Actual Authority
27.    Respondeat Superior
28.    Punitive Damages
29.    Violation of the Open Government Meetings and Records Act
30.    Attorneys' Fees

FAC, pp. 17-36.

<u>OKP Tenders the Defense and Demands Representation and Indemnification</u>

23.      OKP formally tendered the defense of the Lawsuit on August 9, 2006. Dongbu FAC, ¶ 27, and OKP Answer & Counterclaim, ¶ 27 OKP Answer & Counterclaim, Counterclaim Section. ¶ 15, Dongbu Answer, ¶ 9 and Concurrently filed Declaration of Brian M. Chen, ¶13.

24.    On September 6, 2006 OKP wrote Dongbu following up on the August 9, 2006 formal defense tender.  Declaration of Brian M. Chen, ¶14 and Exhibit "4."

25.    On September 27, 2006, OKP attorney Maya B. Kara wrote Dongbu's authorized representative, Moylan's Insurance Underwriters, Inc., to follow up on the status of OKP's tender.  Declaration of Brian M. Chen, ¶16 and Exhibit "5."

26.    No Moylan's or Dongbu representative has ever contacted Brian Chen or any OKP employee or officer regarding the allegations made by Mr. Atalig against OKP and its employees.  Dongbu has never taken any steps to contact OKP to investigate the claims or find out the true facts related to the Atalig lawsuit.

Events Subsequent to the Filing of the FAC in the Lawsuit

27.    Subsequent to the filing of the FAC, the Mailman & Kara and Frink law firms, who were then representing OKP and defendants Goluguri, Jaiphakdee, and Promchai, filed motions for summary judgment and motions to dismiss and to strike portions of the FAC. The concurrently filed Declaration of Sean E. Frink¶ "11."

28.    The Law Offices of Rexford C. Kosack noticed its appearance on behalf of the OKP Shareholder defendants (OKP Holdings Limited, Kim Peow Or, Toh Wat Or, Enc Nam Oh, He Kheng Soh, and Brian M. Chen) in August, 2006 and filed a Motion to Dismiss for Lack of Personal Jurisdiction on September 27, 2006.  The Kosack firm also filed a Motion to Dismiss portions of the FAC as against Defendant Brian Chen.  The concurrently filed Declaration of Sean E. Frink¶ "12."

29.    On December 4, 2006, CNMI Superior Court Presiding Judge Robert C. Naraja issued an Order granting in part and denying in part Wilai Promchai's Motion for Summary Judgment; Partially granting Wilai Promchai, Pramuan Jaiphakdee, and Reddy Goluguri's

Motion to Dismiss; Partially granting Brian M. Chen's Motion to Dismiss, and; Granting

Defendants' Motion for a More Definite Statement. The concurrently filed Declaration of Sean

E. Frink¶ "13."

30.    On December 18, 2006, Superior Court Presiding Judge Robert C. Naraja issued

an Order Granting OKP's Motion to Strike and denying Defendants' Motion to Dismiss the

mineral related claims.  The concurrently filed Declaration of Sean E. Frink¶ "14."

31.    On March 28, 2007, Superior Court Presiding Judge Robert C. Naraja issued an

Order Granting Defendants OKP Holdings Limited, Kim Peow Or, Toh Wat Or, Enc Nam Oh,

and He Kheng Soh's Motion to Dismiss for Lack of Personal Jurisdiction.  The concurrently

filed Declaration of Sean E. Frink¶ "15."

Dongbu Refuses to Provide Coverage

32.    Dongbu refused to defend and indemnify OKP for the claims brought in the

Lawsuit.  OKP Answer & Counterclaim, Counterclaim Section. ¶ 17, Dongbu Answer, ¶ 11.

33.    Dongbu's first official response to OKP's tender was the March 5, 2007 letter

from Thomas E. Clifford, on behalf of Dongbu, attached as Exhibit "10" to the Frink

Declaration;  *See also*, Declaration of Brian M. Chen, ¶15..[7]

The Second Amended Complaint

34.    On April 18, 2007, Atalig filed his Verified Second Amended Complaint for

Breach of Contract and Tort Claims and for Relief Under the Open Government Meetings and

Records Act and Demand for Jury Trial "(the "SAC").   A true and correct certified copy of the

FAC is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "11."

The Defendants named in the SAC were:

---

[7]   The Hocog and two Manglona lawsuits referenced in the Clifford letter are not a subject of this lawsuit.

1

2
     1.      OKP (CNMI) Corporation
     2.      Brian M. Chen
3
     3.      Prasada Reddy Goluguri
     4.      Pramuan Jaiphakdee
4
     5.      Wilai Promchai
     6.      The Commonwealth Ports Authority
5
     7.      Regino M. Celis &
     8.      Does 1-3

6
SAC, pp. 6-9.

7
The SAC sought to pierce the corporate veil of OKP as to Defendant Brian Chen and set forth

8
the following causes of action:

9

10
     1.      Breach of Contract (Against Defendant OKP)
     2.      Waste  (Against Defendant OKP)
11
     3.      Conversion -- Historical and Cultural Artifacts  (Against Defendant OKP)
12
     4.      Conversion -- Soil and Other Minerals  (Against Defendant OKP)
     5.      Conversion -- Permanent Trees  (Against Defendant OKP)
13
     6.      Conversion -- Preexisting Buildings/Improvements  (Against Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3)
14
     7.      Negligence  (Against Defendant OKP)
     8.      Unjust Enrichment (Against Defendants OKP, Chen, Goluguri, Jaiphakdee, Promchai, and Does 1-3)
15
     9.      Indemnification (Against Defendant OKP)
16
     10.    Violation of the Open Government Meetings and Records Act (Against Defendants CPA and Celis)
17
     11.    Attorneys' Fees (Against Defendant OKP)

18
SAC, pp. 17-33.

19
Events Subsequent to the Filing of the SAC in the Lawsuit

20
    35.    On May 3, 2007, Dongbu was notified of the filing of the SAC and provided a

21
copy.  Concurrently filed Declaration of Sean E. Frink. ¶ "18."

22
    36.    On May 3, 2007, Dongbu was also notified of and provided copies of the Court's

23
December 4 and 16, 2006 and March 27, 2007 Orders.  Concurrently filed Declaration of Sean E.

24
Frink, ¶¶ "19."

25

37.     On May 8, 2007, OKP Answered the SAC and filed a counterclaim for attorneys fees and costs against Atalig.  Frink Declaration, ¶20.  A true and correct copy of OKP's Answer and Counterclaim is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "12."

38.     On May 8, 2007, OKP employees Goluguri, Jaiphakdee, and Promchai (the "Three OKP Employees") Answered the SAC.  Frink Declaration, ¶21.  A true and correct copy of the Three Employees' Answer is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "13."

39.     On May 8, 2007, Brian M. Chen Answered the SAC and filed a counterclaim for attorneys fees and costs against Atalig.  Frink Declaration, ¶22.  A true and correct copy of Mr. Chen's Answer and Counterclaim is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "14."

40.     On May 29, 2007, Michael W. Dotts, on behalf of Atalig, filed Atalig's Answers to the OKP and Chen Counterclaims.  Frink Declaration, ¶23.  A true and correct copy of Atalig's Answers are attached to the concurrently filed Declaration of Sean E. Frink as Exhibits "15" and "16."

41.     In June, 2007, discovery commenced in the Lawsuit.  The concurrently filed Declaration of Sean E. Frink¶ "24."

42.     On July 12, 2007, OKP, through counsel John D. Osborn, responded to Dongbu's March 5, 2007 letter.  Frink Declaration, ¶25.  A true and correct copy of the Osborn letter is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "17."

43.     On August 2, 2007, Superior Court Presiding Judge Robert C. Naraja issued an Order dismissing the Commonwealth Ports Authority and its Executive Director Regino M.

Celis, from the case and severing the Open Government Meetings and Records Act claims. The concurrently filed Declaration of Sean E. Frink¶ "26."

44.    On October 12, 2007, Mr. Clifford responded to Mr. Osborn's July 12, 2007 letter on behalf of Dongbu and again Dongbu refused to defend or to indemnify OKP related to the Lawsuit.  Frink Declaration, ¶27.  A true and correct copy of the October 12, 2007 Clifford letter is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "18."

45.    On October 16, 2007, OKP, Chen, and the Three OKP Employees filed a motion for summary judgment on all claims of punitive damages brought against them.  The concurrently filed Declaration of Sean E. Frink¶ "28."

46.    On October 23, 2007, Chen filed a motion for summary judgment on the conversion  (sixth cause of action) and  unjust enrichment (eighth cause of action) claims against him.  The concurrently filed Declaration of Sean E. Frink¶ "29."

47.    On October 26, 2007, OKP, Chen, and the Three OKP Employees filed a motion for summary judgment on the breach of contract claim.  The concurrently filed Declaration of Sean E. Frink¶ "30."  A true and correct copy of the Motion and Supporting documents are attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "19A" and "19B."

48.    On October 26, 2007, the Three OKP Employees filed a motion for summary judgment on the conversion  (sixth cause of action) and  unjust enrichment (eighth cause of action) claims against them. The concurrently filed Declaration of Sean E. Frink¶ "31."

49.    On October 26, 2007, OKP and Chen filed a motion for summary judgment on the conversion of artifacts (third cause of action), conversion of soil (fourth cause of action) waste due to fuel tank (part of the second cause of action), negligence (seventh cause of action), and indemnification (ninth cause of action) and moved to strike the Doe defendant allegations.  The

concurrently filed Declaration of Sean E. Frink¶ "32." A true and correct copy of the Motion and Supporting documents are attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "20A" through "20J."

50.    On October 29, 2007, Atalig, through his attorneys Michael Dotts and Ramon K. Quichocho (Atalig is also represented by attorney Antonio Atalig in the Lawsuit), filed a motion for summary judgment on its negligence cause of action and as to OKP's liability. The concurrently filed Declaration of Sean E. Frink¶ "33."

51.    On November 14, 2007, Atalig's attorneys filed Plaintiff's Consolidated Opposition to Multiple Motions for Summary Judgment and/or To Strike. The concurrently filed Declaration of Sean E. Frink¶ "34."

52.    On November 26, 2007, Chen filed a Reply Memorandum in support of his October 23, 2007 Motion for Summary Judgment. The concurrently filed Declaration of Sean E. Frink¶ "35."

53.    On November 26, 2007, OKP filed its Opposition to Atalig's Motion for Summary Judgment. The concurrently filed Declaration of Sean E. Frink¶ "36."

54.    On November 28, 2007, OKP, Chen, and the Three OKP Employees filed a Reply Memorandum and supporting documents in support of their October 16, 2007 Motion for Summary Judgment related to Punitive Damages. The concurrently filed Declaration of Sean E. Frink¶ "37."

55.    On December 3, 2007, OKP, Chen, and the Three OKP Employees filed a Motion to Strike portions of the Declarations and Counterstatement of Facts submitted by Atalig in support of his November 14, 2007 Consolidated Opposition to Multiple Motions for Summary Judgment and/or To Strike. The concurrently filed Declaration of Sean E. Frink¶ "38."

56.     On December 4, 2007, the Three OKP Employees filed a Reply Memorandum and supporting documents in support of their October 26, 2007 Motion for Summary Judgment related to Punitive Damages. The concurrently filed Declaration of Sean E. Frink¶ "39."

57.     On December 4, 2007, OKP, through counsel Osborn, responded to Dongbu's October 12, 2007 letter from Mr. Clifford.  The concurrently filed Declaration of Sean E. Frink¶ "40."  A true and correct copy of the Osborn letter is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "21."

58.     On December 5, 2007, OKP, Chen, and the Three OKP Employees filed their Reply memorandum in support of their October 26, 2007 Motion for Summary Judgment on the Breach of Contract cause of action.  The concurrently filed Declaration of Sean E. Frink¶ "41." A true and correct copy of the Reply is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "22."

59.     On December 5, 2007, Atalig filed his Reply memorandum in support of his October 29, 2007 Motion for Summary Judgment. The concurrently filed Declaration of Sean E. Frink¶ "42."

60.     On December 7, 2007, OKP and Chen  filed their Reply memorandum in support of their October 26, 2007 Motion for Summary Judgment on the conversion of artifacts (third cause of action), conversion of soil (fourth cause of action) waste due to fuel tank (part of the second cause of action), negligence (seventh cause of action), and indemnification (ninth cause of action) and Motion to strike the Doe defendant allegations.  The concurrently filed Declaration of Sean E. Frink¶ "43."  A true and correct copy of the Reply is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "23."

61.     On December 10, 2007, Atalig filed his Opposition to OKP, Chen, and the Three OKP Employees' December 3, 2007 Motion to Strike portions of the Declarations and Counterstatement of Facts submitted by Atalig in support of his November 14, 2007 Consolidated Opposition to Multiple Motions for Summary Judgment and/or To Strike.  The concurrently filed Declaration of Sean E. Frink¶ "44."

62.     CNMI Superior Court Presiding Judge Robert C. Naraja heard argument from the parties on December 11, 2007 regarding OKP, Chen, and the Three OKP Employees' December 3, 2007 Motion to Strike portions of the Declarations and Counterstatement of Facts submitted by Atalig in support of his November 14, 2007 *Consolidated Opposition to Multiple Motions for Summary Judgment and/or To Strike.*  Declaration of Sean E. Frink, ¶ 45.

63.     On December 24, 2007, CNMI Superior Court Presiding Judge Robert C. Naraja issued an Order granting the Three Employees' and Chen's Motions for Summary Judgment. The concurrently filed Declaration of Sean E. Frink¶ "46."

64.     On January 4, 2008, Mr. Frink filed two versions of the Amended Counterstatement of Facts submitted by Atalig in Support of his November 14, 2007 *Consolidated Opposition to Multiple Motions for Summary Judgment and/or To Strike,* that reflected the parties' stipulations and Judge Naraja's rulings during the December 11, 2007 hearing, along with a letter explaining the filing  The concurrently filed Declaration of Sean E. Frink¶ "47."  A true and correct copy of the Amended Counterstatements of Facts and the explanatory letter are attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "24A" through "24C."

65.     On January 24, 2008, CNMI Superior Court Presiding Judge Robert C. Naraja issued a Stipulated Order striking and amending portions of the Declarations of Joaquin Q.

Atalig, Edita Carillo, and David Demapan, submitted by Atalig in Support of his *Consolidated Opposition to Multiple Motions for Summary Judgment and/or To Strike*. The concurrently filed Declaration of Sean E. Frink¶ "48." A true and correct copy of the Order is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "25."

66.    On January 29, 2008, CNMI Superior Court Presiding Judge Robert C. Naraja issued a Stipulated Order dismissing Chen from the Lawsuit with prejudice. The concurrently filed Declaration of Sean E. Frink¶ "49."

67.    On January 30, 2008, CNMI Superior Court Presiding Judge Robert C. Naraja issued an *Order Granting in Part and Denying in Part Defendants OKP and Chen's Motion for Partial Summary Judgment and Granting Defendants' Motion to Strike* (the "January 30, 2008 Order") on the conversion of artifacts (third cause of action), conversion of soil (fourth cause of action) waste due to fuel tank (part of the second cause of action), negligence (seventh cause of action), and indemnification (ninth cause of action). The concurrently filed Declaration of Sean E. Frink¶ "50." A true and correct copy of the January 30, 2008 Order is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "26."

68.    The Court's January 30, 2008 Order set forth *the facts that were undisputed relative to the clearing of the Atalig property* which was alleged to have caused the destruction of the Japanese and Chamorro artifacts, the primary subject matter of the Atalig Lawsuit. The following are the relevant undisputed facts regarding the clearing:

A.    Atalig's hotel manager Edita Carillo told OKP Project Engineer Prasada Reddy Goluguri not to touch an area of the Atalig property that allegedly contained historic artifacts.

B.     It is not alleged that Goluguri ever knew of the reason to avoid the area (the existence of artifacts) but only that a certain area was not to be disturbed.

C.     Goluguri demarcated corners of a box on the Atalig property for OKP heavy equipment operator Pramuan Jaiphakdee to clear that would have avoided the "do not disturb" area.

D.     Goluguri then had Jaiphakdee clear a perimeter for the box for Goluguri's approval.

E.     After Jaiphakdee cleared a three foot perimeter according to the marked corners, Goluguri then obtained final approval from Alan Yee. OKP project manager, to clear the box.

F.     Goluguri, having obtained approval from Yee, instructed Jaiphakdee to clear the entire box.

G.     Jaiphakdee, after clearing the entire box, **independently** made the decision to push the debris piles outside of the box.

H.     The artifacts were allegedly damaged by Jaiphakdee's pushing of the debris outside of the box.

69.     *See,* January 30, 2008 Order, p. 5 (emphasis in original), Goluguri August 31, 2007 deposition transcript, Goluguri October 16, 2007 Declaration, Jaiphakdee October 15, 2007 Declaration, Promchai October 15, 2007 Declaration, Joaquin Q. Atalig August 3, 2007 deposition transcript, Ludivina P. "Edita" Carillo June 27, 2007 deposition transcript, OKP's August, 2007 30(B)(6) deposition transcript, and Brian M. Chen October 26, 2007 Declaration.

70.     On February 5, 2008, CNMI Superior Court Presiding Judge Robert C. Naraja issued an Order denying Atalig's October 29, 2007 Motion for Summary Judgment.  The concurrently filed Declaration of Sean E. Frink¶ "51."

71.    On February 5, 2008, OKP, through counsel Osborn, wrote to Dongbu to notify it of a settlement demand received from Atalig.  The concurrently filed Declaration of Sean E. Frink¶ "52."  A true and correct copy of the Osborn letter is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "27."

72.    On February 11, 2008, CNMI Superior Court Presiding Judge Robert C. Naraja issued an Order granting OKP, Chen, and the Three OKP Employees' October 26, 2007 Motion for Summary Judgment on the Breach of Contract claim except as to one subpart.  The concurrently filed Declaration of Sean E. Frink¶ "53."

73.    On February 14, 2008, CNMI Superior Court Presiding Judge Robert C. Naraja issued an Order denying OKP, Chen, and the Three OKP Employees' October 26, 2007 Motion for Summary Judgment regarding punitive damages claims and clarifying its February 5, 2008 Order.  The concurrently filed Declaration of Sean E. Frink¶ "54."

74.    On February 14, 2008, OKP, through counsel Osborn, wrote to Dongbu to reiterate that OKP Believes it is entitled to coverage under both the Auto and CAR policies.  The concurrently filed Declaration of Sean E. Frink¶ "55."  A true and correct copy of the Osborn letter is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "28."

75.    Since August, 2006, Dongbu, through its counsel Thomas Clifford, has continuously been provided copies of the filings and orders in the Lawsuit by OKP.  Declaration of Sean E. Frink, ¶ 56.

76.    A true and correct copy of the case history of the Lawsuit, as generated by CNMI Superior Court contract service LexisNexis File & Serve, is attached to the concurrently filed Declaration of Sean E. Frink as Exhibit "29."  This case history and the documents it refers to were accessible by Dongbu since at least August of 2006 by simply entering the Lexis Nexis

Website, which every CNMI law firm is required to be a member of in order to file and receive service from in the CNMI Superior and Supreme Courts.  On February 14, 2008, OKP, through counsel Osborn, wrote to Dongbu to reiterate that OKP Believes it is entitled to coverage under both the Auto and CAR policies.  The concurrently filed Declaration of Sean E. Frink¶ "57."

Dated this 11th day of June, 2008.

Respectfully Submitted,


/s/
JOHN D. OSBORN
SEAN E. FRINK

CARLSMITH BALL LLP