Lot No. 362 R 01, containing an area of 49,998 square meters, more or less, as more particularly described in Cadastral Plat No. 362 R 00, the original of which was registered with the Land Registry as Document No. 6503 on September 12, 1978.

The existing improvements and improvements subsequently erected thereon during the term of this Lease and the appurtenances and other incidents associated therewith are collectively referred to in this Lease as the "Premises."

Moreover, Lessee leases, as part of the agreement, furniture, fixtures, appliances, and tools, which are all itemized in the List of Inventory which will be verified and approved by both parties on or before November 30, 2005. The verified and approved List of Inventory shall be incorporated herein and made a part of this Lease by this reference.

2.    TERM OF LEASE:  This Lease shall be for a term of thirteen (13) months, commencing on December 1, 2005, and ending on December 31, 2006, unless sooner terminated as herein provided.

3.    RENT: The total rental fee for the term of this Lease is Thirty-Seven Thousand Five Hundred Dollars ($37,500.00), payable as shown below.  As further consideration, Lessee covenants and agrees to pay the full-time salaries of two employees of Lessor, namely, Edita and Esther, at $4.50 per hour and $3.50 per hour, respectively.

4.    PAYMENT SCHEDULE:

4.1 Lessee shall pay Lessor advance rent of Nineteen Thousand Five Hundred Dollars ($19,500.00) upon the execution of this Lease.

4.2 Lessee shall pay the remaining rent of Eighteen Thousand Dollars ($18,000.00) on or before July 1, 2006.

*Lease Agreement*
*Page 2 of 10*

5.    OPTION TO RENEW LEASE:  Lessee has the option to extend the Lease for a period of one year at the monthly rent of Three Thousand Dollars ($3,000.00) and upon the same remaining terms set forth herein, except that rental payments shall be made, in advance, every quarter.  The first quarter rent shall be due and payable on January 1, 2007.  Lessee shall exercise the option by giving Lessor 30 days notice, of its intent to renew the Lease for another year, before the expiration of the Lease.

6.    USE OF PREMISES: Lessee may use, improve and develop the Premises or any part thereof for any lawful use or purpose, provided that Lessee does not commit waste, but primarily as office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operation on Rota.

7.    LESSOR'S WARRANTY OF TITLE:   Lessor represents, warrants, and covenants that he is the sole, true owner in fee simple of all the leasehold premises and have the right to lease the same to the Lessee and that the Premises are free and clear of all liens, claims and encumbrances, excepting recorded easements for water, sewer, power, telephone, roadways, and other public utilities, and the Lessor has good and marketable title.

8.    LESSOR'S WARRANTY OF QUIET ENJOYMENT:  Upon Lessee paying the rent for the Premises and observing and performing all of the covenants, conditions and provisions on Lessee's part to be observed and performed hereunder, Lessor shall place Lessee in quiet possession of the Premises for the entire term hereof subject to all the provisions of this Lease.

9.    ASSIGN ABILITY AND SUBLEASING:  Lessee may not assign or sublease the premises without the consent of Lessor.  Lessor may not unreasonably withhold consent.

*Lease Agreement*
*Page 3 of 10*

10.    TAXES:

10.1    Lessee To Pay Taxes During Lease.  Lessee shall pay and discharge all taxes, assessment, rates, charges, license fees, municipal liens, levies, excises, or imposts, whether general or special, or ordinary or extraordinary, of every name, nature and kind whatsoever, including all governmental charges of whatsoever name, nature, or kind, which may be levied, assured, charged, or imposed, or which may become a lien or charge on or against the premises, or any part thereof, the leasehold of Lessee herein, the premises described herein, any buildings, or any other improvements now or hereafter thereon, or on or against Lessee's estate hereby created which may be a subject of taxation, or on or against Lessor by reason of its ownership of the fee underlying this Lease, during the entire term thereof, excepting only those taxes hereinafter specifically excepted.  All taxes and charges under this Section shall be prorated at the expiration of the term hereof.

10.2    Exceptions.  Anything in this section to the contrary notwithstanding, Lessee shall not be required to pay any estate, gift, inheritance, succession, franchise, income, or excess profits taxes which may be payable by Lessor or Lessor's legal representative, successors, or assigns, nor shall Lessee be required to pay any tax that might become due on account of ownership of property other than the premises herein which may become a lien on the premises or collectible out of the same.

10.3    Tax Contest.  Lessee shall have the right to contest the validity of any tax or special assessment payable by him which Lessee deems to have been illegally or improperly levied or assessed against the premises, and for that purpose shall have the right to institute such proceedings or proceedings in the name of Lessor as Lessee may deem necessary, provided that

the expense incurred by reason thereof shall be paid by Lessee, and provided, further, that it is necessary to use the name of Lessor in carrying on such proceeding.

11. UTILITIES AND CHARGES: Lessee shall be responsible for the payment of all utilities, assessments, and other public charges arising by reason of the occupancy, use or possession of the Premises.

12. INDEMNIFICATION OF LESSOR BY LESSEE: Lessee shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation arising prior to the expiration of the term hereof and delivery to Lessor of possession of the premises and use of the land:

A. On the account of or through the use of the demised premised or improvements or any part thereof by Lessee or by any other person acting under the authority, direction, in the interest of, or through the title of the Lessee for any purpose inconsistent with the provisions of this Lease;

B. Arising out of, or directly or indirectly due to, any failure of Lessee in any respect promptly and faithfully to satisfy Lessee's obligations under this lease; or

C. Arising out of directly or indirectly due to any accident or other occurrence causing injury to any person or persons or property resulting from the use of the premises or any part thereof, including the land.

No such indemnification shall be required with respect to losses or liabilities arising by reason of the affirmative negligence or recklessness of Lessor.

13. LESSEE'S RIGHT TO BUILD:

13.1 Alteration/Building, etc. The Lessee shall have the right during the term of this Lease, to erect, maintain, alter, remodel, reconstruct, rebuild, replace, and remove

building and other improvement on the Premise, and correct and change the contour of the Premises pursuant to the plans and drawings attached hereto as Exhibits "A" and "B", and incorporated herein as part of this agreement by reference, only with the prior written consent of Lessor. Any other alterations and changes require Lessor's consent in writing.

13.2    Equipment and Fixtures.   Lessee shall have the right at any time during Lessee's occupancy of the Premises to remove any and all equipment and fixtures owned or placed by Lessee or its sublessee upon the Premises only with the prior written consent of Lessor, except that any water heater or air conditioner installed shall become Lessor's equipment after the expiration of the Lease.

13.3    Any items on the Inventory List on Exhibit "A" shall be replaced or repaired, at the sole cost of Lessee, if the item is broken, lost, missing or damaged, except for natural wear and tear.

13.4    Permanent Improvements.   Upon the expiration of the Lease term, Lessee shall be entitled to remove those temporary improvements that Lessee installed, which can be removed without causing harm or damage to the Premises, except fixtures, air conditioners, and water heaters. All other improvements shall become the property of the Lessor.

13.5    Soccer Field.   Lessee is authorized to setup, build, or construct a soccer field on the premises.

13.6    Lessee is hereby authorized to enter the premises on November 1, 2005, to commence repair and other work on the premises.  Lessee shall not disturb the customers and staff of Lessor, who may remain on the premises up to November 30, 2005.

14.    FIRE AND CASUALTY INSURANCE:  Lessee, at Lessee's option and at its own expense, shall keep all improvements erected on the Premises insured against loss or

damage by fire or other casualty or calamity for the value of all improvements. Any insurance proceeds payable with respect to any loss to any improvements on the Premises shall belong to Lessor and Lessee shall have no right, claim or interest therein.

15.    DEFAULT:  Lessee shall be in default in the prompt and full performance of any other term, covenant, or condition of the Lease, (except as to payment of rent), and if such default shall continue for a period of thirty (30) days after notice of such default is given by the Lessor to Lessee, unless the default is of such a nature that the same cannot be cured or corrected within said thirty (30) day period and the Lessee shall have promptly and diligently commenced to cure and correct such default and shall have thereafter continued therewith with reasonable diligence and in good faith, in a manner as to cure and correct the same as promptly and as reasonably practicable under the circumstances, and shall have continued therewith until the default shall have been cured or corrected.

Lessee shall be in default in the payment of rent if rent is not paid within 15 days after it is due and such default shall continue for a period of fifteen (15) days after notice of such default and the default is not cured within the 15 days.

16.    LESSOR'S REMEDIES:  In the event Lessee breaches this Lease and fails to make correction within the time provided, the Lessor may exercise any of the remedies available to the Lessor at law or in equity, including the right of re-entry without being liable for trespass, and all such remedies shall be cumulative and nonexclusive of any one or more such remedies, and exercise of one remedy shall not be deemed to be an exclusive election of the remedy or remedies exercised or waiver of the remedies not exercised.

17.    ESTOPPEL CERTIFICATES:  Lessor shall, at any time from time to time, upon not less than ten days prior notice from Lessee, execute, acknowledge, and deliver to Lessee a

statement in writing certifying that the Lease is unmodified (or in full force and effect as modified and stating the modification(s)) and that there are no defaults existing, or if there is any claimed modification or default, stating the nature and extent thereof. It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by third parties.

18.    NOTICE: All notices, demands or requests shall be given to each party at their respective addresses, as noted below. Each party shall have the right, from time to time, to designate in writing a different address by notice given in conformance with this section.

LESSOR:                                      LESSEE:

Joaquin Q. Atalig                            OKP (CNMI) CORPORATION
P.O. Box 965                                 P.O. Box 10001, PMB A-25
Rota, MP 96951                               Saipan, MP 96950.

19. SEVERABILITY: This Lease embodies the entire agreement between the parties. If any provision herein is declared invalid by a court of competent jurisdiction, it shall be considered deleted from this Lease, and shall not invalidate the remaining provisions of this Lease which shall remain in full force and effect.

20.    ENTIRE AGREEMENT: This Lease contains the entire agreements of the parties with respect to the matters covered herein as of the date of execution hereof and no other agreement, statement, or promise made by any party or to any employee, officer or agent of any party prior in time to the date of the execution of this Lease shall be binding or valid.

21.    MODIFICATION: This Lease is not subject to modification except in writing, signed by the parties herein.

22.    BINDING EFFECT: This Lease shall inure to the benefit of and bind the Lessor and the Lessee, their respective heirs, successors and assigns, jointly and severally.

23.   ATTORNEYS' FEES:  In the event of any suit by any party to this Lease for the recovery of any rent due, or because of any breach of any term, covenant, condition, or provision hereof, the prevailing party shall be entitled to recover from the other party costs of suit and reasonable attorney's fees which shall be fixed by the Court.

IN WITNESS WHEREOF, the parties have affixed their signatures below on the dates next to their respective signatures.

_____
JOAQUIN Q. ATALIG
LESSOR

OKP (CNMI) CORPORATION
LESSEE
By: _____
Duly Authorized Representative

11 . 2 . 05
Date

11 / 2 / 05
Date

## ACKNOWLEDGMENT OF RECEIPT

I, Joaquin Q. Atalig, received the total sum of Nineteen Thousand Five Hundred Dollars ($19,500.00), paid by Check No. 115, from OKP (CNMI) CORPORATION, as payment for rent under Section 4.1 of the Lease.

_____
JOAQUIN Q. ATALIG
Lessor

11 . 2 . 05
Date

COMMONWEALTH OF THE )
   NORTHERN MARIANA ISLANDS )
                        )    ss: ACKNOWLEDGMENT
SAIPAN, MP 96950 )

      ON THIS 2nd day of November, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **JOAQUIN Q. ATALIG**, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the purposes therein set forth.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal the day and year first above written.



                                    NOTARY PUBLIC
                          FRANCES CANTORIA QUICHOCHO
                               Notary Public
            Commonwealth of the Northern Mariana Islands
                  My Commission expires: 3/17/07

COMMONWEALTH OF THE )
   NORTHERN MARIANA ISLANDS )
                        )    ss: ACKNOWLEDGMENT
SAIPAN, MP 96950 )

      ON THIS 2nd day of November, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **BRIAN M. CHEN, Resident Manager of OKP (CNMI) CORPORATION**, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the purposes therein set forth.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal the day and year first above written.

                                      NOTARY PUBLIC
                          FRANCES CANTORIA QUICHOCHO
                               Notary Public
            Commonwealth of the Northern Mariana Islands
                  My Commission expires: 3/17/07

BLDG. "C"
(TYPHOON DAMAGED AND NO ROOF)

25'-8"
11'-8"
43'-10"
3'-5"
16'-0"
11'-4"

CONC. SINK
ROOF/WALL FENCE
CONC. SINK

BLDG. "B"
UNIT 109
CLOSET
SHOWER
TUB
STO. ROOM

25'-6"

FLOOR PLAN—BLDG. "B" and "C"
BUILDING (EXISTING CONDITION)

EXHIBIT
A



KITCHEN AREA
BAR COUNTER
LOUNGE AREA

29'-6"
22'-6"

FLOOR PLAN—BLDG. "D" BAR
(EXISTING CONDITION)



FLOOR PLAN—BLDG. "C"
(NEW LAYOUT)

NOTE:  PROVIDE NEW TIN ROOF ON WOODEN FRAME, NEW DOORS,
NEW WINDOWS, NEW WOODEN PARTITIONS, NEW TOILETS &
SHOWERS, ETC. REPAIR FLOORS AND INSTALL NEW TILES,
PAINTING, ELECTRICAL AND PLUMBING, COMPLETE IN PLACE.

FLOOR PLAN—BLDG. "A" HOTEL
(EXISTING CONDITION)

EXHIBIT "B"

UNIT 108
UNIT 107
UNIT 106
UNIT 105

CONCRETE WALK

MAIN KITCHEN
GIFT COUNTER
FOOD COUNTER

HALL AREA

STAFF ROOM

STORAGE ROOM

SERVICE DOOR

OFFICE
CHECK-IN COUNTER

DINING HALL

MAIN ENTRY

113'—0"
26'—3"
14'—6"
14'—3"
14'—7"
14'—4"
14'—6"
14'—7"
14'—6"
30'—8"
14'—0"
22'—0"
9'—0"
14'—8"

FLOOR PLAN—BLDG. "A"
(NEW LAYOUT)

# EXHIBIT G

P.O. BOX 965 • ROTA, MP • 96951

January 17, 2006

Mr. Brian M. Chen
Resident Manager
OKP (CNMI), CORPATION
P.O. Box 10001, PMB A-25
Saipan, MP 96950

      Re: NOTICE OF DEFAULT AND VIOLATIONS re Lease Agreement for improvements
on Lot No. 362 R 01.

Dear Mr. Chen:

A recent site inspection of my property in Rota, which your company OKP (CNMI) Corporation is leasing, revealed that OKP (CNMI) Corporation has defaulted on certain provisions of the Lease Agreement with me (1) by damaging and/or destroying historical artifacts, structures and other valuable relics, including but not limited to, latte stone clusters, a large Japanese memorial, a Japanese shrine, water tank, washing basin and frame, and areas surrounding Japanese building(s), (2) by damaging and/or destroying permanent trees, including but not limited to, flame trees, coconut trees, cotton trees, iron trees, bamboo trees, beetlenut trees, shrubs, manicured flowers, and other plants, (3) by damaging and/or destroying preexisting buildings/improvements to the land, including but not limited to, the laundry, storage, and kitchen facilities, (4) by placing a fuel tank on my property, and (5) by moving and/or removing soil, without my prior written consent, all in violation of sections 6 and 13 of the Lease Agreement. On information and belief, OKP (CNMI) Corporation may also be in violation of CNMI and Federal laws. As OKP (CNMI) Corporation knows or should know, OKP (CNMI) Corporation is obligated to comply with CNMI and United States laws.

Needless to say, OKP (CNMI) Corporation has caused me tremendous loss, embarrassment, and damages (past, present, and future) due to the intentional violations of the Lease Agreement and OKP (CNMI) Corporation's unlawful activities.

Therefore, OKP (CNMI) Corporation is hereby put on notice, pursuant to section 15 of the Lease Agreement, that OKP (CNMI) Corporation has violated and defaulted on the Lease Agreement. OKP (CNMI) Corporation is hereby given thirty (30) days from the date of this notice to cure the above-noted violations and default which may be cured. Failure to comply with this notice may result in the immediate termination of the Lease Agreement pursuant to section 16 of the Lease Agreement.



Moreover, OKP (CNMI) Corporation is also hereby put on notice, pursuant to section 15 of the Lease Agreement, that the destruction of the historical artifacts, structures, and other valuable relics, and the destruction of permanent trees are of such a nature that the same cannot be cured or corrected within thirty (30) days, thus, OKP (CNMI) Corporation is in automatic default of the Lease Agreement.

As usual, I am open to further discussions in order to come to a reasonable and proper settlement and resolution of this matter, rather than terminating the Lease Agreement at this time or resorting to a lawsuit in the first instance. Therefore, please give me a call as soon as possible in order to resolve this matter quickly and amicably.

Thank you for your anticipated cooperation.

Sincerely,

/s/

JOAQUIN Q. ATALIG



**E-FILED**
**CNMI SUPERIOR COURT**
E-filed: Jul 31 2006 12:40PM
Clerk Review: Jul 31 2006  2:52PM
Filing ID: 11929652
Case Number: 06-0119-CV
Elsa  Duenas

# EXHIBIT H

01/19/2006 13:58 FAX .670 234864    MOYLANS INSURANCE    Ø002/017

# CONTRACTOR'S ALL RISK POLICY



**MOYLAN'S INSURANCE UNDERWRITERS, INC.**
102 Julale Center, 424 W. O'Brien Drive, Hagatna, GU 96910
TEL: 671-477-7500/8613/8616 FAX: 671-477-1837

General Agent for



**DONGBU INSURANCE CO., LTD.**

Period of Insurance (365 calendar days)

(Subject to the provision concerning the Period of Cover)

: From   ~~January 16, 2006~~ to   January 16, 2007

The following endorsements are attached to and forming part of this Policy.

Section I - Terms & Conditions
1) Munich Re's CAR Policy Form
2) Special Conditions Concerning Fire-fight Facilities (Limit of Liability: 10% of TSI per storage unit)
3) Special Conditions Concerning the Construction. And/or Erection Time Schedule (Deviation from time schedule: 6 Weeks)
4) Special Conditions Concerning Safety Measures with Respects to Precipitation, Flood and Inundation
5) Special Conditions Concerning Piling Foundation and Retaining Wall Works
6) Exclusion of Loss of or Damage to Crop, Forest and Cultures
7) Millennium Exclusion Clause
8) Existing Structure and/or Surrounding Property

Section II – Third Part Liability
1) Asbestos Exclusion Clause
2) Combined Single Limit Endorsement
3) Pollution Exclusion Clause
4) Communicable Disease Exclusion Clause
5) Punitive Damages Exclusion Endorsement
6) Y2K Exclusion Clause
7) Exclusion of Certified Acts of Terrorism

| Total Premium: <br><br> (Inclusive of extra premiums for the above mentioned endorsements) <br><br><br> **USD 97,560.00** | In witness whereof the Undersigned being duly authorized by the Insurers and on behalf of the insurers had/have hereunto set his/heir hand(s) <br><br> This   19th day of   **January 2006** |
|---|---|

DONGBU INSURANCE CO., LTD.

By: _____

Moylan's Insurance Underwriters Int'l., Inc.
General Agent

01/19/2006 14:00 FAX 670 234884    MOYLANS INSURANCE    MOYLANS AGENCY    008/017

Policy No        :    KMCR0015-S00
Endorsement No.  :    02

## SPECIAL CONDITIONS CONCERNING
## THE CONSTRUCTION AND / OR ERECTION TIME SCHEDULE

It is agreed and understood that otherwise subject to the terms, exclusions, provisions and conditions contained in the Policy or endorsed thereon, the following shall apply to this Insurance

The construction and/or erection time schedule together with any other statements made in writing by the Insured for the purpose of obtaining over under the Policy as well as technical information forwarded to the Insured is deemed to be incorporated herein.

The Insurers shall not indemnify the Insured in respect of loss or damage caused by or arising out of or aggravated by deviations from construction and/or erection time schedule exceeding the number of weeks stated below unless the Insured had agreed in writing to such a deviation before the loss occurred.

Deviation from time schedule:    6 weeks

Date Issued: 01/16/2006

By: _____
Moylan's Insurance Underwriters Int'l., Inc.
General Agent

01/19/2008 14:00 FAX 670 23488         MOYLANS INSURANCE         MOYLANS AGANA        Ø008/017

Policy No          :       KMCR0015-S00
Endorsement No.  :        04

## SPECIAL CONDITIONS CONCERNING PILING FOUNDATION AND RETAINING WALL WORKS

It is agreed and understood that otherwise subject to the terms, exclusions, provisions and conditions contained in the Policy or endorsed thereon, the Insurers shall not Indemnify the Insured in respect of expenses incurred,

1.   for replacing or rectify piles or retaining wall element,

   -. which have become misplaced or misaligned or jammed during their construction,

   -. which are lost or abandoned or damaged during driving or extraction,

   -. which have become obstructed by jammed or damage pilling equipment or casings :

2.   for rectifying disconnected or declutched sheet piles.

3.   for rectifying any leakage or infiltration of material of any kind.

4.   for filling voids or for replacing lost betonies.

5.   as a result of any piles or foundation elements having failed pass a load bearing test or otherwise not having reached their designed road bearing capacity.

6.   for reinstating profiles or dimensions.

This endorsement shall not apply to loss or damage caused by natural hazard.
The burden of proving that such loss or damage is covered shall be upon the insured.

Date Issued: 01/19/2006                    By:

                                               Moylan's Insurance Underwriters Int'l., Inc.
                                               General Agent

Policy No          :        KMCR0015-S00
Endorsement No.  :        06

## MILLENNIUM EXCLUSION CLAUSE

It is agreed and understood that otherwise subject to the terms, exclusions, provisions and conditions contained in the Policy or endorsed thereon, the following shall apply to this insurance:

A. Insurer(s) will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of or, arising from, the failure of any computer, data processing equipment or media, microchip, operating system, microprocessors (computer chip), integrate circuit or similar device, any computer software, or any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manners, any of the items listed above, whether the property of the insured or not , that results from any actual or alleged failure, malfunction or inadequacy due to inability to correctly recognize, process, distinguish, interpret or accept any data as its true calendar date.

B. It is further understood that we will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C. It is further understood that we will not pay for Damage or Consequential Loss arising from the failure, inadequacy or malfunction of any advice, consultation, design evaluation, inspection installation, maintenance, repair or supervision provided or done by Insured or the Insured to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such damage or consequential Loss described in A, B or C above, is excluded regardless or any other cause that contributed concurrently or in any other sequence.

Date Issued: 01/19/2006                    By: _____
                                            Moylan's Insurance Underwriters Int'L, Inc.
                                                      General Agent

04/19/2008 14:01 FAX 670 23488    MOYLANS INSURANCE    MOYLANS AGNNX    ☑012/017

Policy No        :        KMCR0015-S00

Endorsement No. :        08

---

## ASBESTOS EXCLUSION CLAUSE

It is hereby understood and agreed that such insurance as is afforded by this policy for personal clearance injury liability and property damage liability is subject to the following exclusion:

This insurance does not apply to any liability for property damage, bodily injury sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time arising out of the manufacture of or mining of, or use, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the Insured to indemnity any party because of damages arising out of such property damage, bodily injury, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time as a result of the manufacture of, use of or exposure to asbestos products, asbestos fibers or asbestos dust.

It is further understood and agreed that the Company shall not be obligated to defend any suit or claim against the Insured alleging personal injury or property damage seeking damages, if such suit or claim arises from personal injury or property damage resulting from or contributed to, by any, and all manufacture of, use of, or exposure to, asbestos products, asbestos fibers or asbestos dust.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

This endorsement is effective as from the Inception of the Policy Period.

Date Issued: 01/19/2006                By:    _Tamara Winters_

Moylan's Insurance Underwriters Int'l., Inc.

General Agent

01/19/2008  14:02 FAX  671 2346        MOYLANS INSURANCE                   ☑014/017

Policy No         :        KMCR8015-800
Endorsement No.   :        10

## COMMUNICABLE DISEASE EXCLUSION CLAUSE

IT IS HEREBY UNDERSTOOD AND AGREED that no coverage applies to bodily injury or property damage which arises out of the transmission of a communicable disease by a covered person.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as hereinabove set forth.

This endorsement is effective as of inception of the policy of which this form is made a part.

Date Issued: 01/19/2006                    By: _____
                                           Moylan's Insurance Underwriters Int'l., Inc.
                                                      General Agent

Policy No       :       KMCR0015-S00

Endorsement No. :       12

## EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

A.  This insurance does not apply to "bodily injury", "property damage", "personal injury" or advertising injury" arising or "products/completed operations" liability arising directly or indirectly out of:

   1.  Any actual or alleged failure, malfunction or inadequacy of:

      a.  Any of the following, whether belonging to any insured or to others:
         (a) Computer hardware, including microprocessors;
         (b) Computer application software;
         (c) Computer operating systems and related software;
         (d) Computer networks;
         (e) Microprocessors (computer chips) not part of any computer system; or
         (f) Any other computerized or electronic equipment or components; or

      b.  Any other products, and any services, data or function that directly or indirectly use or rely on, in any manner, any of the items listed in Paragraph A. 1.a. of this endorsement;

      due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

   2.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A. 1. of this endorsement .

Date Issued: 01/19/2006               By: _____

                                         Moylan's Insurance Underwriters Int'l., Inc.
                                         General Agent

## Automobile Policy Declarations

Issued by: Dongbu Insurance Company Ltd.

Policy Number : 150230 - 150230 (KMA-09102-S00)

1. Name Insured : OKP(CNMI) Corporation
   Address      : P.O. Box 511593, Rota, MP 96951

2. Policy Period: From   12/15/2005    To  12/15/2006    at 12:01 A.M. Standard Time

|  |  | Limit of Liability | Premium |
|---|---|---|---|
| 3. Coverage |  |  |  |
| A. Bodily Injury | - Each Person/Each Accident | Per Schedule | Per Schedule |
| B. Property Damage | - Each Accident | Per Schedule | Per Schedule |
| C. Medical Payments | - Each Person | Per Schedule | Per Schedule |
| D. Comprehensive | - Deductible | Per Schedule | Per Schedule |
| E. Collision | - Deductible | Per Schedule | Per Schedule |
| Optional Coverage |  |  |  |
| Uninsured Motorist | - Each Person/Each Accident | Per Schedule | Per Schedule |
| Passenger Risk | - Each Person/Each Accident | Per Schedule | Per Schedule |
| Typhoon | - Deductible | Per Schedule | Per Schedule |
| Personal Accident | - Each Person/Each Vehicle | Per Schedule | Per Schedule |
| Loss of Use |  | Per Schedule | Per Schedule |

Total Policy Premium:   $16,120.00

"ACV" means Actual Cash Value

* Minimum. Earned Premium: Short Rate, but not less than $30.00.

Discounts Applied:

*** Per Schedule ***

Endorsements Applicable :

*** Per Schedule ***

4. Your Covered Vehicle(s)

| Year Trade Name | Model | Body Type | Engine Vin # | Insured's Estimate of Value Including Accesories thereon |
|---|---|---|---|---|
|  |  | *** Per Schedule *** |  |  |

5. Loss Payee:

*** Per Schedule ***

6. Purpose of Use: Business

7. Geographical Area: This Policy Covers the Commonwealth of the Northern Mariana Islands

8. Notice of Accident or Loss - In the event of accident or loss covered hereunder, immediate notice is to be given to Equitable Adjusting & Service Company at (670)234-6442/6129

By: _signature_

Moylan's Insurance Und., [Int'l] Inc.
General Agent

Date Issued:   12/27/2005

## SCHEDULE OF VEHICLES

Policy Number:    150230 - 150230 (KMA-09102-S00)

Name Insured:     OKP(CNMI) Corporation

Vehicle No:   3    2004 Kobelco Used SK200 Excavator          Engine No: 6D34-098762
                                                              Vin No:    S/N: YN09-36227
Class:  Under 25 Included  Insured Estimated Value:  $   0.00

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | NOT COVERED | $0.00 |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | | |
| | | PREMIUM: | $520.00 |

Endorsement Form No    CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:       None Stated

---

Vehicle No:   4    2004 Kobelco Used SK200 Excavator          Engine No: 6D34-100133
                                                              Vin No:    S/N: YN09-36581
Class:  Under 25 Included  Insured Estimated Value:  $   0.00

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | NOT COVERED | $0.00 |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | | |
| | | PREMIUM: | $520.00 |

Endorsement Form No    CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:       None Stated

# SCHEDULE OF VEHICLES

Policy Number: 150230 - 150230 (KMA-09102-S00)

Name Insured: OKP(CNMI) Corporation

Vehicle No: 7 1991 Caterpilar Used D6H-II Bulldozer

Engine No: N/A

Vin No: S/N: 4GG-04190

Class: Under 25 Included  Insured Estimated Value: $ 0.00

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $2,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | | |

PREMIUM: $520.00

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee: None Stated

---

Vehicle No: 8 1997 Mitsubishi Dump Truck

Engine No: 8DC9517222

Vin No: Chas# FV415JA43172

Class: Under 25 Included  Insured Estimated Value: $ 0.00

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | | |

PREMIUM: $520.00

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee: None Stated

## SCHEDULE OF VEHICLES

Policy Number: **150230 - 150230 (KMA-09102-S00)**

Name Insured: **OKP(CNMI) Corporation**

Vehicle No: **11** 1998 Isuzu Dump Truck *Temp(14*  Engine No: 10PE1177826
Class: Under 25 Included Insured Estimated Value: $ 0.00  Vin No: CXZ81K23003592

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |

PREMIUM: $520.00

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee: **None Stated**

---

Vehicle No: **12** 1997 Mitsubishi Dump Truck *Temp(13*  Engine No: 8DC9516820
Class: Under 25 Included Insured Estimated Value: $ 0.00  Vin No: Chas# FV415JA43102

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |

PREMIUM: $520.00

Endorsement Form No  CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee: **None Stated**

# SCHEDULE OF VEHICLES

Policy Number:    150230 - 150230 (KMA-09102-S00)

Name Insured:    OKP(CNMI) Corporation

Vehicle No:    15    1997 Mitsubishi Dump Truck = Same as #14&16    Engine No:  8DC9437365
Class:  Under 25 Included  Insured Estimated Value:  $    0.00    Vin No:    Chas# FV415JA41486

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | **INCLUDED** |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |

PREMIUM:    $520.00

Endorsement Form No   CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:    None Stated

---

Vehicle No:    16    1997 Mitsubishi Dump Truck = Same as #15&15    Engine No:  8DC9437365
Class:  Under 25 Included  Insured Estimated Value:  $    0.00    Vin No:    Chas# FV415JA41486

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | **INCLUDED** |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |

PREMIUM:    $520.00

Endorsement Form No   CSL ENDT.  Direct Action Endorsement-CNMI  Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:    None Stated

## SCHEDULE OF VEHICLES

Policy Number:     150230 - 150230 (KMA-09102-S00)

Name Insured:      OKP(CNMI) Corporation

Vehicle No:    19    1990 Mitsubishi Dump Truck    *Temp123*    Engine No:  8DC8361337

Class:  Under 25 Included    Insured Estimated Value: $    0.00    Vin No:    Chas# FV413JA20535

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| | | | $520.00 |
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | INCLUDED |
| B. Property Damage | - Each Accident | $3,000,000.00 | $0.00 |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | PREMIUM: | $520.00 |

Endorsement Form No    CSL ENDT.   Direct Action Endorsement-CNMI   Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:        None Stated

---

Vehicle No:    20    1996 Mitsubishi Dump Truck    Engine No: 8DC9437462

Class:  Under 25 Included    Insured Estimated Value: $    0.00    Vin No:    Chas# FV415JA41545

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| | | | $520.00 |
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | INCLUDED |
| B. Property Damage | - Each Accident | $3,000,000.00 | $0.00 |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | PREMIUM: | $520.00 |

Endorsement Form No    CSL ENDT.   Direct Action Endorsement-CNMI   Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:        None Stated

# SCHEDULE OF VEHICLES

Policy Number: 150230 - 150230 (KMA-09102-S00)

Name Insured: OKP(CNMI) Corporation

Vehicle No: 23 1988 Mitsubishi Dump Truck TEMP125

Engine No: 8M20-003116
Vin No: FV411J-541236

Class: Under 25 Included Insured Estimated Value: $ 0.00

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | PREMIUM: | $520.00 |

Endorsement Form No CSL ENDT. Direct Action Endorsement-CNMI Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee: None Stated

---

Vehicle No: 24 1988 Nissan Dump Truck TEM120

Engine No: RE10-026525
Vin No: CW66HE-08284

Class: Under 25 Included Insured Estimated Value: $ 0.00

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |
| | | PREMIUM: | $520.00 |

Endorsement Form No CSL ENDT. Direct Action Endorsement-CNMI Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee: None Stated

# SCHEDULE OF VEHICLES

Policy Number: **150230 - 150230 (KMA-09102-S00)**

Name Insured: **OKP(CNMI) Corporation**

Vehicle No: 27    2002 Caterpilar 10T Compactor Roller      Engine No: N/A

Class: Under 25 Included   Insured Estimated Value: $    0.00      Vin No: 2R200184

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | | |

PREMIUM:      $520.00

Endorsement Form No   CSL ENDT.   Direct Action Endorsement-CNMI   Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:      None Stated

---

Vehicle No: 28    2002 Caterpilar 10T Compactor Roller      Engine No: N/A

Class: Under 25 Included   Insured Estimated Value: $    0.00      Vin No: 2R200572

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | **$3,000,000.00** | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | | |

PREMIUM:      $520.00

Endorsement Form No   CSL ENDT.   Direct Action Endorsement-CNMI   Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee:      None Stated

Policy Number: 150230 - 150230 (KMA-09102-S00)

Name Insured: OKP(CNMI) Corporation

Vehicle No: 31 1992 Bobcat TS200 Tyre Roller    Engine No: 6BD1-717337

Class: Under 25 Included   Insured Estimated Value: $   0.00    Vin No: TTS-11791

| COVERAGE | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| A. Bodily Injury | - Each Person/Each Accident | $1,000,000.00 / $2,000,000.00 | $520.00 |
| B. Property Damage | - Each Accident | $3,000,000.00 | INCLUDED |
| C. Medical Payments | - Each Person | NOT COVERED | $0.00 |
| D. Comprehensive | - Deductible | NOT COVERED | $0.00 |
| E. Collision | - Deductible | NOT COVERED | $0.00 |
| Optional Coverage | | | |
| Uninsured Motorist | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Passenger Risk | - Each Person/Each Accident | NOT COVERED | $0.00 |
| Typhoon | - Deductible | NOT COVERED | $0.00 |
| Personal Accident | - Each Person/Each Vehicle | NOT COVERED | $0.00 |
| Loss of Use | | NOT COVERED | $0.00 |

PREMIUM: $520.00

Endorsement Form No CSL ENDT. Direct Action Endorsement-CNMI Exclusion of Certified Acts of Terr

Discount Applied:

Loss Payee: None Stated

Total Policy Premium $ 16,120.00

Attached to and forming part of Policy No. 150230 - 150230 (KMA-09102-S00) of the Dongbu Insurance Company Ltd.

Date Issued: 12/27/2005     By: Moylan's Insurance Und., [Int'l] Inc.

Name Insured: OKP(CNMI) Corporation

# DIRECT ACTION ENDORSEMENT

This policy is subject to the provisions of Public Law No. 14-39, amending the Direct Action Provision set forth in 4 CMC § 7502 (e), which is cited in full below:

(e) Liability Policy: Direct Action.   On any policy of liability insurance the injured person or his or her heirs or representatives shall have a right of direct action against the insurer within the terms and limits of the policy, whether or not the policy of insurance sued upon was written or delivered in the Commonwealth, and whether or not the policy contains a provision forbidding the direct action; provided, that the cause of action arose in the Commonwealth and it has been determined that the insured cannot be personally served the summons and complaint and if by affidavit or otherwise the court is satisfied that with reasonable diligence, the defendant cannot be served.  The action may be brought against the insurer alone, or against both the insured and insurer only if it has been determined that the insured cannot be personally served the summons and complaint and if by affidavit or otherwise the court is satisfied that with reasonable diligence, the defendant cannot be served, and that a cause of action arises against the party upon whom service is made, or he is a necessary and proper party to the action, the court may order that the insurer may be named in a direct action lawsuit.

Nothing herein contained shall be held to vary, altar, waive or change any of the terms, limits or conditions of the policy, except as hereinafter set forth.

This endorsement is effective _____

Attached to and forming part of Policy No.  150230 - 150230 (KMA-09102-S00)

of  Dongbu Insurance Company Ltd.

Date Issued: 27-DEC-05

CLT 24856/COV 53/AGT 4/UND 85 /QTR

By: _____
Authorized Representative
Moylan's Insurance Und., [Int'l] Inc.
General Agent

KMAL1100R-CNMI



E-FILED
CNMI SUPERIOR COURT
E-filed: Jul 31 2006 12:40PM
Clerk Review: Jul 31 2006 2:52PM
Filing ID: 11929652
Case Number: 06-0119-CV
Elsa  Duenas

# EXHIBIT I



# LAW OFFICES OF
# RAMON K. QUICHOCHO, LLC

2ⁿᵈ Floor • V.S. Sablan Building • Chalan Piao
P.O. Box 505621 • Saipan, MP • 96950
Phone: 670.234.8946
Fax: 670.234.8920
E-mail: rayq@vzpacifica.net

## VIA FACSIMILE AND U.S. MAIL

June 4, 2006



Mr. Reno Celis
Executive Director
COMMONWEALTH PORTS AUTHORITY
P.O. Box 501055
Saipan, MP  96950

Re:  Second Open Government Act request.

Dear Mr. Celis:

I am writing to request another inspection of public records. I do apologize, in advance, for any inconvenience this request may cause you, but it is extremely necessary that the requested public documents be produced in light of the repeated and habitual lies, misrepresentations, and misleading statements that your contractor/agent, OKP (CNMI) Corporation ("OKP"), has committed against CNMI Government agencies like the Division of Environmental Quality ("DEQ"), the Historic Preservation Office ("HPO"), and the Superior Court of the Commonwealth of the Northern Mariana Islands in *Joaquin Q. Atalig v. OKP (CNMI) Corporation and Does 1-10*, Civil Action No. 06-0119(R).

As you may know, OKP has leased the improvements on Mr. Atalig's property in Ginalangan, Rota, Lot No. 362 R 01, to house OKP's employees and for OKP's office and other purposes, but specifically for the benefit of the Commonwealth Ports Authority's multi-million-dollar project at the Rota International Airport, which based on CPA documents is partly federally-funded. Subsequently, OKP ignored the laws of the CNMI and the specific provisions of the Lease and damaged, destroyed, and removed artifacts, trees and plants, soil and minerals, and preexisting improvement(s) by using heavy equipment that are insured and used for the CPA extension project. Needless to say, OKP failed to obtain an earthmoving permit from DEQ, HPO, and other regulatory agencies. OKP failed to obtain the prior written consent of Mr. Atalig, as required under the Lease, before OKP conducted the illegal and impermissible activities. Despite Mr. Atalig's good faith efforts to try to resolve the dispute short of litigation, OKP and Mr. Brian M. Chen's dirty tactics retarded any chance of an amicable resolution.

*mailed 6/5/06*

Consequently, on March 23, 2006, Mr. Atalig filed a lawsuit against OKP for the damage, destruction, and removal of original and priceless Chamorro and Japanese artifacts, permanent trees, soil and minerals, and preexisting improvement(s), despite being forewarned at least twice of the presence of the artifacts, i.e., Latte Stones, Japanese water tank, Japanese washing basin, etc.

Throughout the course of litigation, it has become apparent that OKP wants to play dirty.[1] For example, OKP has allowed some of its employees, and counsel, to lie and/or make misleading statements under penalty of perjury.[2] Furthermore, OKP, and its counsel, has encouraged and instructed witnesses that were subpoenaed for a deposition not to show up at the noticed deposition. OKP's counsel, by his own initiative or by instruction, went so far as to lie that he represents all of the subpoenaed witnesses who are OKP employees in order to prevent Mr. Atalig's counsel from communicating with any of them. As will be shown upon completion of the deposition transcript of one of the subpoenaed witnesses who complied with the lawful subpoena, Mr. Frink lied to Mr. Atalig and the Court that Mr. Frink represents all the OKP employees who were subpoenaed.

Although it is unfortunate that CPA has "contracted[3]" with an agent who has no problem lying under penalty of perjury, and who has no problem lying to the Court, and who has no problem interfering with the witnesses who were subpoenaed, and who has no problem violating the laws of the CNMI, and who has no problem violating any provisions of a valid Lease, it is possible that the parent company, Or Kim Peow Contractors (PTE) Ltd., who is apparently the alter ego of OKP (CNMI) Corporation, is different.

Therefore, in light of the foregoing, on behalf of my Client, Mr. Joaquin Q. Atalig, and pursuant to the Open Government Meetings and Records Act, which is codified at 1 CMC § 9901, *et seq.*, I respectfully request that you make available for inspection and/or copying, within 10 days, the following:

1. Any and all change orders, including all accompanying and related documents, to the Construction Contract (the "Construction Contract") between the Commonwealth Ports Authority ("CPA") and OKP (CNMI) Corporation ("OKP") for the Rota International Airport Runway 09/27 Extension (the "Project") -- Phase I Project No. CPA-RA-001-03 / AIP No. 3-69-0003-19. Please include, but do not limit it to, all the documents mentioned in the attached Exhibit A.

2. Any and all fully-executed contract(s) between CPA and OKP. For purposes of this specific request, "fully-executed contract(s)" means a contract that was approved by

---

[1] Mr. Atalig is willing to meet with you and/or provide your office all the pleadings and papers that show OKP's dirty maneuvers, strategies, and tactics. Since CPA is the Sponsor under the Grant Agreement, Mr. Atalig feels that it is important that CPA be informed as much as possible.

[2] Mr. Atalig has, for the most part, addressed all the lies, misrepresentations, and misleading statements in papers submitted to the Court and in correspondences.

[3] On information and belief, there is still no fully-executed construction contract.

7. Any and all information proving that any steel or manufactured products used or to be used for the Project are manufactured in the United States.

8. Part V, Assurances dated 3/2005, which are attached to and made a part of the Grant Agreement in lieu of the Assurances which accompanied the Project Application dated May 4, 2005. Please include the Assurances which accompanied the Project Application dated May 4, 2005.

9. All requests for cash drawdowns pursuant to Section 11 of the Grant Agreement, including but not limited to, all drawdown schedules.

10. All letters, correspondences, and communications with the FAA regarding OKP and/or the Project after March 23, 2006.

11. Any and all letters, correspondences, and communications from the FAA regarding any increase(s) of the grant amount of the Project.

12. All documents proving CPA's fee simple ownership of the land on which OKP is improving pursuant to the Project, including but not limited to, existing fee title and easement interests in the Runway Protection Zone, as required under Section 14 of the Grant Agreement.

13. Any and all construction management program as required under Section 15 of the Grant Agreement.

14. The name of the person representing CPA who has overall responsibility for contract administration for the Project and the authority to take necessary actions to comply with the contract, as required under Section 15.a.1) of the Grant Agreement, including the name of the person currently taking such responsibilities and authority.

15. The names of testing laboratories and consulting engineer firms with quality control responsibilities on the Project, together with a description of the services to be provided, as required under Section 15.a.2) of the Grant Agreement, including the names of testing laboratories and consulting engineer firms who are/were actually retained.

16. Please provide any information whether Mr. Prasada Reddy Goluguri is the person or firm who is responsible for quality control on the Project. As you may know, Mr. Goluguri is a Non-Resident employee of OKP. Mr. Goluguri's position title that was submitted to the Department of Labor, by OKP, is Project Engineer. Although I do not know whether Mr. Goluguri is licensed to practice here in the CNMI, I request that you confirm whether he is the Quality Control person as required under Section 15.a.2) of the Grant Agreement. Please see attached Exhibit B, which shows that Mr. Goluguri is certifying some documents as a Quality Control Administrator. Also, please provide the attachments as mentioned in Exhibit B, i.e., "Submittal No. 006 and 030." If Mr. Goluguri is the person responsible for quality control as required

under Section 15.a.2) of the Grant Agreement, please provide all "submittals" or certifications that have been submitted to CPA.

17. The attached email to OKP's March 27, 2006 letter to Juan C. Tenorio, P.C. Please see attached Exhibit C, which was previously provided by CPA. The email is purportedly from OKP's Airport Lighting Supplier seeking clarification on the specifications related to the L861 and L862 fixture. Please include any and all responses from CPA and Juan C. Tenorio, P.C., to OKP's March 27, 2006 letter.

18. The "Sponsor Certification for Equipment/Construction Contracts, executed October 28, 2005, which certifies the construction contract between the Commonwealth of the Northern Mariana Islands and the selected contractor (OKP CNMI Corporation)," as indicated on the attached Exhibit D.

19. Addendum No. 1 (dated May 10, 2005), Addendum No. 2 (dated May 27, 2005), Addendum No. 3 (dated June 8, 2005), Addendum No. 4 (dated June 15, 2005), Addendum No. 5 (dated July 7, 2005), and any other Addenda, to the Bid Proposal to the Commonwealth Ports Authority for the Project.

20. All documents and information that shows compliance with Title 49 CFR Part 23 with regards to the Project. OKP has assured compliance with Title 49 CFR Part 23 relating to Disadvantaged Business Enterprise Participation. Please see attached Exhibit E. Please provide the percentage of Disadvantaged Business Enterprise participation for this Project.

21. All documents and information relating to Bidder's Statement on Previous Contracts Subject to EEO Clause as indicated on the attached Exhibit F.

22. "Bidder's Qualification Statement" submitted by OKP (CNMI) Corporation, which was incorporated in the CNMI on May 3, 2005, for the Project.

23. Any and all information regarding any other bids submitted by OKP for any other CPA projects.

24. List of all construction contractors that have ever contracted with CPA since January 1, 2000.

25. All documents regarding the paving at the Saipan International Airport.

26. All documents relating to E.M. Chen & Associates (CNMI), Inc., including but shall not be limited to, contracts, agreements, relationship to Mr. Brian M. Chen, who is an officer and shareholder of OKP. Please see attached Exhibit G, which seems to show that Mr. Toh Wat Or faxed OKP's May 20, 2005 letter, among other things, to E.M. Chen & Associates, and then the letter was faxed to CPA. Please include any documents and information whether E.M. Chen & Associates is an agent or contractor of CPA or OKP.

*Ltr. to CPA re: Second OGA request*
*Page 6 of 7*

27. Any and all documents and information relating to the monitoring of OKP for compliance with all the conditions as set forth in the Construction Contract and the Grant Agreement, including all the documents incorporated therein. Please include, but do not limit it to, compliance with minimum wage requirements that "[a]ll mechanics and laborers on the Project shall be paid no less than the current minimum rate established by the CNMI, CNMI Government Directive Order No. 241 effective January 1, 2001 with minimum $6.25 per hour or the U.S. Secretary of Labor, whichever is higher," as provided in the Amended Notice to Bidders, dated June 17, 2005, and whether OKP maintains an affirmative action program.

28. The "Rota EA," the "ROD," as mentioned in Mr. Dashiell's April 3, 2006 email, which is attached as Exhibit H.

29. Any and all documents indicating the amount of liquidated damages in the event that OKP does not complete the Project on time.

30. Any and all documents pertaining to all "local subcontractors on Rota for backfill materials." On information and belief, OKP is paying 40 cents per cubic yard to quarry materials from private and/or public lands. Please include, but do not limit it to, any documents and information regarding how much material has been quarried by OKP from private and/or public lands for the Project.

31. Any and all documents showing whether OKP is subcontracting with the Commonwealth Utilities Corporation for free or charged water. Please see attached Exhibit I.

32. Any and all other documents, materials, and/or things not mentioned above pertaining to OKP that were not previously provided to Mr. Atalig for inspection because either it was exempted before but is not now, or has been received or generated by CPA after Mr. Atalig had inspected the files on April 21, 2006.

//

//

//

//

//

//

//

*Ltr. to CPA re: Second OGA request*
*Page 7 of 7*

Please contact my office to set up the appointment. After inspection, my Client is willing to pay a reasonable charge for duplication of any document or material that he requests to be duplicated.

If you should have any questions, please feel free to contact me. Thank you very much for your time and understanding.

Sincerely,

RAMON K. QUICHOCHO, ESQ.

Cc:     Joaquin Q. Atalig, Client
        Douglas F. Cushnie, CPA Legal Counsel
        Matthew T. Gregory, Attorney General of the CNMI
        Kate Fuller, Assistant Attorney General, DEQ
        Sean Lynch, Assistant Attorney General, HPO
        Faride Komisar, Department of Interior-Office of Insular Affairs
        Ron V. Simpson, Federal Aviation Administration
        Advisory Council on Historic Preservation



# COMMONWEALTH PORTS AUTHORITY
Main Office: SAIPAN INTERNATIONAL AIRPORT
P.O. BOX 501055 • SAIPAN • MP 96950-1055
Phone: (1-670) 664-3500/1    FAX: (1-670) 234-5962
E-Mail Address: cpa.admin@saipan.com    Website: cpa.gov.mp

March 7, 2006

Mr. Juan C. Tenorio, P.E.
President
Juan C. Tenorio P.C. Consulting Engineers
PO Box 500551
Saipan, MP 96950

Dear Mr. Tenorio:

Subject: Rota International Airport Runway 09/27 Extension – Phase I
AIP No. 3-69-0003-19
Proposed Changes and Clarification

We are transmitting herewith the following documents for your review and coordination with the contractor, as follows:

a.  Two (2) Sets of Proposed Change Order No. 1 justification and specifications.
b.  Two (2) Sets of Proposed Change Order No. 2 justification and revised Drawing No. E-3 and E-6.
c.  Response to OKP (CNMI) Corporation's request for clarification dated February 13, 2006.

Please review OKP's proposals for change order nos. 1 and 2 and make recommendation to CPA to reflect as change orders.

Should you require additional information, please do not hesitate to contract our Staff Engineer, Mr. Juan R. Sablan.

Sincerely,

LEE C. CABRERA
Executive Director/Contracting Officer

Enclosures

cc:    FAA Honolulu
       Staff Engineer
       Comptroller
       Rota Ports Manager



PORT OF SAIPAN
P.O. Box 501055, Saipan MP 96950-1055
Tel: (1-670) 664-3550 / 1    Fax: (1-670) 322-4710

ROTA INTERNATIONAL AIRPORT / SEAPORT
P.O. Box 581, Rota MP 96951
Tel: (1-670) 532-9497    Fax: (1-670) 532-9499

WEST TINIAN AIRPORT / SEAPORT
San Jose Village, Tinian MP 96952
Tel: (1-670) 433-9234    Fax: (1-670) 433-6



# OKP (CNMI) CORPORATION

To:        Juan C. Tenorio, P.C.                     Date: March 20, 2006
           P.O. Box 500551
           Saipan, MP 96950

Subject:   Rota International Airport Runway
           09/27 Extension – Phase 1
           AIP Project No. 3-69-0003-19

Gentlemen:

Attached is Submittal No. **006** for your review and approval. This submittal is certified by

Quality Control Administrator Prasada Reddy Goluguri

| Item No. | Reference | Description |
|---|---|---|
| 1 | Item P-152-2.2 | Topographic Survey Drawings **(Resubmission)** |

Sincerely

Yee, Chee Keong
Project Manager



Add :  P O Box 511593
       Rota, MP96951
Tel  : +1(670) - 532 0168
Fax    +1(670) - 532 0169

Add  : P O Box 10001, PMB A-25
       Saipan MP 96950-8801
Tel  : 671-8980798
Email : okpcnml@okph.com
Website : http://www.okph.com

 **OKP (CNMI) CORPORATION**

To:  Juan C. Tenorio, P.C.          Date: March 31, 2006
     P.O. Box 500551
     Saipan, MP 96950

Subject:  Rota International Airport Runway
          09/27 Extension – Phase 1
          AIP Project No. 3-69-0003-19

Gentlemen:

Attached is Submittal No. 030 for your review and approval. This submittal is certified by

Quality Control Administrator Prasada Reddy Goluguri _____

| Item No. | Reference | Description |
|---|---|---|
| 1 | Item P-152-2.2e | Compaction Test Report for 2nd Layer Subgrade Blast Pad West End (Sta. –0+50 to Sta. –2+00) |

Sincerely

Yee, Chee Keong
Project Manager

---

**JUAN C. TENORIO, P. C.**

[X] NO EXCEPTIONS TAKEN   [ ] MAKE CORRECTIONS AS NOTED
[ ] REJECTED              [ ] REVISE SPECIFIED ITEMS
[ ] SUBMIT SPECIFIED ITEM

Corrections or comments made on the shop drawings during this review do not relieve contractor from compliance with requirements of the drawings and specifications. This check is only for review of general conformance with the design concept of the project and general conformance with the information given in the contract documents. The contractor is responsible for confirming and correcting all quantities and dimensions, furnishing equipment and materials as specified, selecting fabrication processes and techniques of construction; coordinating his work with that of all other trades; and performing his work in a safe and satisfactory manner.

Reviewed by: _____   Date: 4/3/06

Add : P O Box 611593          Add : P O Box 10001, PMB A-25
      Rota, MP96951                 Saipan MP 96950-8901
Tel  : +1(670) - 532 0168     Tel  : 671-8980798
Fax  : +1(670) - 532 0169     Email : okpcnmi@okph.com
                              Website : http://www.okph.com

 **OKP (CNMI) CORPORATION**



Our Ref: OKP/ROTA/CPA/06-009

Date: March 27, 2006

To:      Juan C. Tenorio, P.C
         P. O. Box 500551
         Saipan MP 96950

Subject:  Rota International Airport Runway
          09/27 Extension – Phase 1
          AIP Project No. 3-69-0003-19

Gentlemen,

**RE:  Clarification on Specification Section L-125**

1) Attached is an e-mail from our Airport Lighting Supplier seeking clarification on the specifications related to the L861 and L862 fixture.

2) Would appreciate if you could assist us in answering their questions.

3) Thank you.

Yours Faithfully,

Yee, Chee Keong
Project Manager



Add : P O Box 511593,          Add  : P O Box 10001, PMB A-25
       Rota, MP96951                    Saipan MP 96950-8901
Tel  : +1(670) - 532 0168       Tel   : 671-8980798
Fax    +1(670) - 532 0169       Email : okpcnmi@okph.com
                                Website : http://www.okph.com



# COMMONWEALTH PORTS AUTHORITY

Main Office: SAIPAN INTERNATIONAL AIRPORT
P.O. BOX 501055 • SAIPAN • MP 96950-1055
Phone: (1-670) 664-3500/1    FAX: (1-670) 234-5962
E-Mail Address: cpa.admin@saipan.com    Website: cpa.gov.mp

December 22, 2005



Mr. Toh Wat Or
Vice President
OKP (CNMI) Corporation
P.O. Box 501777
Saipan, MP 96950

Dear Mr. Or:

### Subject: Rota International Airport Runway 09/27 Extension - Phase I
AIP No. 3-69-0003-19
Notice to Proceed

The Commonwealth Ports Authority (CPA) has completed the review of your contract submittal for the subject project, which included the construction contract, performance and payment bonds, certificate of insurance liability, list of equipment and confirmed list of subcontractors. We concluded that the submittal is in conformance to the specification requirements and have received FAA's concurrence to issue a Notice to Proceed. The Construction Contract is being routed for signatures through other CNMI government regulatory agencies. An executed copy will be provided to your office upon completion.

CPA hereby issues this official Notice to Proceed (NTP), set for Monday, January 16, 2006. In accordance with the 360-calendar day construction period, the completion date will be Wednesday, January 10, 2007.

A pre-construction conference has been scheduled for Friday, January 20, 2006 at 10:00 a.m. at the Rota International Airport Conference Room to discuss the project in length. Please coordinate with our Staff Engineer if this time and place is unworkable for you.

Should you require additional information, please do not hesitate to call.

Sincerely,

LEE C. CABRERA
Executive Director/Contracting Officer

Enclosures

cc:    Federal Aviation Administration
Department of Public Works
CPA Board of Directors
CPA Staff Engineer
CPA Comptroller



**PORT OF SAIPAN**
P.O. Box 501055, Saipan MP 96950-1055
Tel: (1-670) 664-3550 / 1  Fax: (1-670) 322-4710

*ROTA INTERNATIONAL AIRPORT / SEAPORT*
P.O. Box 561, Rota MP 96951
Tel: (1-670) 532-9497  Fax: (1-670) 532-9499

*WEST TINIAN AIRPORT / SEAPORT*
San Jose Village, Tinian MP 96952
Tel: (1-670) 433-9294  Fax: (1-670) 433-0790

# BIDDER'S ASSURANCE OF COMPLIANCE WITH TITLE 49 CFR PART 23 RELATING TO DISADVANTAGED BUSINESS ENTERPRISE PARTICIPATION

The bidder hereby gives assurance pursuant to the requirements of Title 49 CFR Part 23 that bidder has made a reasonable effort to meet the goals for Disadvantaged Business Enterprise participation of _____%* of the amount of this bid.  Bidder further gives assurance that specifications, including the Listing of Disadvantaged Business Enterprises with which the bidder will subcontract if the contract is awarded and if bidder is unable to meet the contract goals for DBE participation, of the steps bidder has taken to obtain DBE participation.

Toh Wat Or, Vice President
_____

(Name and Title of Signer)

_____          July 22, 2005
Signature                                                   Date

Company Name          OKP (CNMI) Corporation _____

Business Address      P. O. Box 1777, Saipan, MP 96950 _____

_____

* Bidder shall insert the percentage for DBE participation even if the percentage is less than that of the contract goal.



*Rota International Airport*
*Runway 09/27 Extension Phase 1*
*Project No. CPA-RA-001-03*

*LP-9-1 of 1*

*Bidder's Assurance of Compliance with*
*Title 49 CFR Part 23*

## BIDDER'S STATEMENT
## ON PREVIOUS CONTRACTS SUBJECT TO EEO CLAUSE

The Bidder shall complete the following statement by checking the appropriate boxes.

The Bidder has ___ has not _X_ participated in a previous contract subject to the equal opportunity clause prescribed by Executive Order 11246, as amended, of September 24, 1965.

The Bidder has ___ has not _X_ submitted all compliance reports in connection with any such contract due under the applicable filling requirements; and that representations indicating submission of required compliance reports signed by proposed subcontractors will be obtained prior to award of subcontracts.

If the Bidder has participated in a previous contract subject to the equal opportunity clause and has not submitted compliance reports due under applicable filing requirements, the bidder shall submit a compliance report on Standard Form 100, "Employee Information Report EEO – 100 I," prior to award of the contract.

*Certification:* The information above is true and complete to the best of my knowledge and belief.

NAME & TITLE OF SIGNER (Please Type):    Toh Wat Or, Vice President

SIGNATURE:

DATE:                                    July 22, 2005

**NOTE:** *The penalty for making false statements in offers is prescribed in 18 U.S.C. 1001.*

THIS STATEMENT MUST BE COMPLETED AND RETURNED
IN THE ENVELOPE CONTAINING THE BID.

EXHIBIT

Jun-07-2005 02:28pm From-EM CHE. IATES INC    +6716332898    T-008 P.003/010 F-604

 **OKP (CNMI) CORPORATION**

20th May 2005

Mr. Carlos H. Salas
Executive Director/Contracting Officer
Commonwealth Ports Authority
P. O. Box 501055
Saipan, MP 96950

Subject: Rota International Airport Runway 09/27 Extension

Dear Mr. Salas:

There are questions on the subject project as follows. Please provide answers to us.

1.    There is bid item of L-100, but there is no specification. Please provide specification.

2.    On the Pre-Bid Conference Agenda, Item IV, 10, it will add PAPI's PEIL's and a new Windcone, and 35' Shoulder on Addendum No. 1. We received Addendum No. 1, but it did not specify these items.

3.    Regarding lighting fixtures:

    a.    Lighting Fixture L-862 (Elevated Runway Edge Lightings) – What color of lighting fixture will be using for this project?

    b.    Lighting Fixture L-858Y (Signs) – Please be advised what legends we are going to make? Are these locations, as the painted arrows on the attached two (2) sketches, will install signs?

    c.    Lighting Fixture L-850C (Flush Mounted Runway Edge Lights)   What color of lighting fixture will be using for this project?

4.    On Bid Schedule, page LP-5-5 of 5, Item F-162 (ii), there is a line item of Walkway Gate. There is no Walkway Gate on Drawing No. G2 and there is no detail on Drawing No. F1.

Yours faithfully,
OKP (CNMI) CORPORATION

OR TOH WAT
Executive Director

PO Box 1777, Saipan, MP96950
Tel: 671-5385798
Email: orinhwat@okpb.com



## CPA Engineering-PTI

**From:** "Eugene Dashiell" <dashiell.e@hawaiiantel.net>
**To:** "Juan Tenorio" <juanten@tniguam.com>; "Juan Sablan" <cpa.engr@saipan.com>
**Cc:** "AKIHIKOSINOTO@aol. Com" <AKIHIKOSINOTO@aol.com>
**Sent:** Monday, April 03, 2006 12:23 PM
**Attach:** transparent.gif; custID22adID57.jpg
**Subject:** OKP destroys historic sites alledgedly?

Hi all,

Rota EA, the ROD, and the Sec. 106 require all construction activities for the project be covered by the proper governmental authorizations. If this contractor is not complying, even if staging on private or other property, the entire project may be endangered.

Gene

# SAIPANTRIBUNE.COM

Friday March 24, 2006   SUBSCRIBE | ADVERTISE | CONTACTS | ARCHIVES   Volume 16 Issue 83

### Firm allegedly destroyed Latte stones

A Rota landowner filed yesterday a $32.8 million lawsuit against a construction company for allegedly destroying and desecrating original Latte stones and other historical artifacts found on the leased property.

Joaquin Q. Atalig sued OKP (CNMI) Corp. and 10 unnamed co-defendants for breach of contract, conversion, negligence, unjust enrichment, nuisance, and indemnification.

Atalig, through counsel Ramon K. Quichocho, asked the Superior Court to order OKP Corp. to pay $13.3 million in punitive damages and $19.5 million in property and economic damages.

Quichocho alleged that the defendant's action amounts to cultural and historical "terrorism" against the "Chamorro people, pure and simple."

Quichocho said that ancient Chamorros painstakingly carved and created the Latte stones more than 3,000 years ago. He said these stones represent the Chamorro culture, tradition and beliefs.

In December 2005, the lawyer said, several original Latte stones were on what is now the real property of Atalig in Ginalangan, Rota. In January 2006, though, when OKP leased the improvements on Atalig's land, he said the defendant "wiped away a lot of the history, culture and economic advantage" of the property.

This happened, Quichocho said, when OKP used heavy equipment to clear the land containing Latte stone clusters, Japanese structures, and other artifacts without the required permits from the Historic Preservation Office, the Division of Environmental Quality, and other regulatory agencies, and without the written consent of Atalig.

"The destruction, desecration and obliteration of the cultural and historical artifacts and other things of value took less than three months into the lease term," he said.

Quichocho said that, for many decades, the Latte stone clusters and certain Japanese structures, including a Japanese water tank and washing basin, sat serenely on Atalig's land.

OKP was awarded an \$8.6 million contract by the Commonwealth Ports Authority to improve the Rota Airway runway. As part of that operation, OKP leased Atalig's property in November 2005.

Due to the magnitude of OKP's project, the company knew that governmental permits are required before any land clearing activities are conducted, Quichocho said.

The lawyer said that on Nov. 2, 2005, Atalig and OKP executed a lease agreement for the 49,998 square meters of land. The lease was for 13 months commencing in December 2005 and ending on Dec. 31, 2006 at a monthly rate of \$3,000.

In January 2006, Quichocho said that, despite being warned not to clear the areas where the cultural and historical artifacts lay, OKP used heavy equipment to clear the land in order to erect other structures.

OKP allegedly bulldozed valuable trees, he said, adding that on Jan. 17, 2006, his client sent a notice of default and violations to defendant.

OKP, however, argued that it did not violate any of the terms of the agreement, Quichocho said.

Story by Ferdie de la Torre
Contact this reporter



# LAW OFFICES OF
# RAMON K. QUICHOCHO, LLC
2ⁿᵈ Floor • V.S. Sablan Building • Chalan Piao
P.O. Box 505621 • Saipan, MP • 96950
Phone: 670.234.8946
Fax: 670.234.8920
E-mail: rayq@vzpacifica.net

June 1, 2006

Mr. Anthony Guerrero
Acting Executive Director
COMMONWEALTH UTILITIES CORPORATION
P.O. Box 501220
Saipan, MP 96950

and

Mr. Charles Manglona
Deputy Director
COMMONWEALTH UTILITIES CORPORATION
Rota, MP 96951

Re: Open Government Act request.

Dear Messrs. Guerrero and Manglona:

Attached are copies of two photos that were taken yesterday along Route 100, in Ginalangan, Rota. As the picture shows, OKP (CNMI) Corporation appears to be getting water from CUC source. On information, OKP is getting its water from CUC without charge. OKP is perhaps using the (free) water for its multi-million-dollar project with the Commonwealth Ports Authority. Although the truck used is clearly an OKP truck, there is no license plate visible to identify the truck.

On behalf of my Client, Mr. Joaquin Q. Atalig, and pursuant to the Open Government Meetings and Records Act, which is codified at 1 CMC § 9901, *et seq.*, I respectfully request that you make available for inspection and/or copying, within 10 days, the following:

1. All documents, contracts, agreements, permits, licenses, authorizations or any other record regarding the authority or permission given to OKP (CNMI) Corporation, or any of its agents or representatives, to get free water or for a charge.
2. All documents, files, Board minutes, staff minutes and notes, and materials pertaining to OKP (CNMI) CORPORATION.



mailed
6/1/06



*...r. to CUC re: free water for OKP.*
*Page 2 of 2*

3. All correspondences, memoranda, permits, licenses, contracts, and agreements between the Commonwealth Utilities Corporation and OKP (CNMI) CORPORATION or any of OKP's agents or representatives.

4. Any and all other documents, materials, and/or things not mentioned above pertaining to OKP (CNMI) CORPORATION and/or any of its agents or representatives.

Please contact my office to set up the appointment. After inspection, my Client is willing to pay a reasonable charge for duplication of any document or material that he requests to be duplicated. If you should have any questions, please feel free to contact me. Thank you.

Sincerely,

RAMON K. QUICHOCHO, ESQ.

Cc:    Client
       Department of Public Safety, Saipan
       Department of Public Safety, Rota



2006/05/31



2006/05/31



**E-FILED**
**CNMI SUPERIOR COURT**
E-filed: Jul 31 2006 12:40PM
Clerk Review: Jul 31 2006  2:52PM
Filing ID: 11929652
Case Number: 06-0119-CV
Elsa  Duenas

# EXHIBIT J



# LAW OFFICES OF
# RAMON K. QUICHOCHO, LLC
2nd Floor • V.S. Sablan Building • Chalan Piao
P.O. Box 505621 • Saipan, MP • 96950
Phone: 670.234.8946
Fax: 670.234.8920
E-mail: rayq@vzpacifica.net

## VIA FACSIMILE AND U.S. MAIL

June 14, 2006

Mr. Reno Celis
Executive Director
COMMONWEALTH PORTS AUTHORITY
P.O. Box 501055
Saipan, MP 96950

Re: OKP (CNMI) Corporation's "engineer" is not licensed to practice in the CNMI.

Dear Mr. Celis:

Please see the attached letter, from the Board of Professional Licensing for the Commonwealth of the Northern Mariana Islands, which clearly show that Mr. Prasada Reddy Goluguri is not licensed to practice any branch of engineering in the CNMI, yet he is listed as the "Project Engineer" for your contractor/agent OKP (CNMI) Corporation.

Therefore, on behalf of my Client, Mr. Joaquin Q. Atalig, and pursuant to the Open Government Meetings and Records Act, which is codified at 1 CMC § 9901, *et seq.*, I respectfully request that you make available for inspection and/or copying, within 10 days, the following:

1. Any and all documents, records, and information in which Mr. Prasada Reddy Goluguri has practiced any branch of engineering in the CNMI on behalf of CPA's contractor/agent, OKP (CNMI) Corporation, or CPA.

Please contact my office to set up the appointment. After inspection, my Client is willing to pay a reasonable charge for duplication of any document or material that he requests to be duplicated.

If you should have any questions, please feel free to contact me. Thank you very much for your time and understanding.



*Ltr. to CPA re: "engineer" of CPA's contractor/agent.*
*Page 2 of 2*

Sincerely,

RAMON K. QUICHOCHO, ESQ.

Cc:     Joaquin Q. Atalig, Client
        Douglas F. Cushnie, CPA Legal Counsel
        Matthew T. Gregory, Attorney General of the CNMI
        Kate Fuller, Assistant Attorney General, DEQ
        Sean Lynch, Assistant Attorney General, HPO
        Faride Komisar, Department of Interior-Office of Insular Affairs
        Ron V. Simpson, Federal Aviation Administration



**BOARD OF PROFESSIONAL LICENSING**
Commonwealth of the Northern Mariana Islands -
P.O. Box 502078
Saipan, MP 96950
Tel. No.: (670) 234-5897
Fax No.: (670) 234-6040

June 9, 2006

Mr. Ramon K. Quichocho
P.O. Box 505621
Saipan, MP 96950

Re:  Mr. Prasada Goluguri

Dear Mr. Quichocho,

This is to reply to your 6/5/06 inquiry whether Mr. Goluguri is licensed to practice engineering in the CNMI.

We have no record on file showing that Mr. Prasada Reddy Goluguri is licensed to practice any branch of engineering in the CNMI.

We will inform OKP (CNMI) Corporation that Mr. Goluguri should not be using the title "engineer" since he is not licensed to practice that profession.

If you have further inquiries to this regards please do not hesitate to contact our office at 664-4809.

Sincerely,

Florence C. Sablan
Executive Director

xc:  File

6/14/06     2:35

# EXHIBIT K

LAW OFFICES

*Douglas F. Cushnie*

POST OFFICE BOX 949
SAIPAN, MP 96950
TELEPHONES (670) 234-6843 · 234-6890
TELEX: 9102607405
CABLE ADDRESS: "ABOGADOS MN UQ"
FAX: (670) 234-9723

**VIA FACSIMILE**
(670) 234-8920

June 15, 2006

Ramon K. Quichocho
P.O. Box 505621
Saipan, MP 96950

Re: OGA request June 4, 2006

Dear Mr. Quichocho:

The Acting Executive Director of the Commonwealth Ports Authority has requested that I respond to your Open Government Act request dated June 4, 2006, and served June 5, 2006. You refer to OKP (CNMI) Corporation as an "agent" of the Authority. Please be informed that there is no agency relationship between the Authority and OKP (CNMI) Corporation. Accordingly, there are no documents to be produced regarding this aspect of your request. As you seem to be aware, the request is extensive and will require further time to review and secure necessary documents. I shall contact you regarding the remaining as part of your request around June 22, 2006.

Very truly yours,

DOUGLAS F. CUSHNIE

DOUGLAS F. CUSHNIE

DFC/lg

cc: Regino M. Celis
    CPA Engineering Office

# EXHIBIT L



# LAW OFFICES OF
# RAMON K. QUICHOCHO, LLC
2nd Floor • V.S. Sablan Building • Chalan Piao
P.O. Box 505621 • Saipan, MP • 96950
Phone: 670.234.8946
Fax: 670.234.8920
E-mail: rayq@vzpacifica.net


## VIA FACSIMILE
## 670.234.9723

June 15, 2006


Douglas F. Cushnie, Esq.
LAW OFFICES OF DOUGLAS F. CUSHNIE
P.O. Box 500949
Saipan, MP 96950

     Re: Open Government Act request (June 4, 2006).

Dear Mr. Cushnie:

This is in response to your June 15, 2006 letter. First, you said that there is no agency relationship between the Commonwealth Ports Authority ("CPA") and OKP (CNMI) Corporation ("OKP"). Based on my review of the Construction Contract between CPA and OKP, however, it is clear that an agency relationship does exist between CPA and OKP. Specifically, please look at Section 7 of the Construction Contract, which states

> This Contract and any interest therein shall not be assigned or transferred by the Contractor; provided that Contractor with the express prior written approval of CPA, may secure such subcontractors and suppliers that are necessary to carry out the work on the Project; and provided further that the Contractor shall remain fully responsible and accountable at all times for the Project and for complying with the terms and conditions of this Contract. Emphasis added.

Furthermore, the Grant Agreement between the U.S. Department of Transportation—Federal Aviation Administration and the Commonwealth Ports Authority ("CPA") specifically states that

> The Sponsor shall carry out and complete the Project without undue delays and in accordance with the terms hereof, and such regulations and procedures as the Secretary shall prescribe, and agrees to comply with the assurances which were made part of the project application.



*Ltr. to Cushnie re: June 15, 2006 ltr.*
*Page 2 of 2*

It seems clear to me that CPA has effectively made OKP the agent of CPA by requiring OKP to be "fully responsible and accountable at all times for the Project and for complying with the terms and conditions of [the Construction] Contract." Although such sweeping delegation of authority and appointment of an agent may contradict the Grant Agreement, CPA has already made known to the world that OKP is CPA's agent.

Accordingly, please produce any and all documents pursuant to Mr. Atalig's Open Government Act request.

Second, you said that you "shall contact me regarding the remaining as part of [my] request around June 22, 2006." I am surprised that you have not scheduled any date for inspection pursuant to the Open Government Meetings and Records Act. You did not even bother to request for an extension if you needed additional time. Had you requested for additional time, Mr. Atalig would have been willing to grant CPA a reasonable extension to comply on the condition that Mr. Atalig be allowed to start review of whatever documents can be made ready while you continue to prepare other documents, rather than force Mr. Atalig to wait until around June 22, 2006, for you to "contact" me, but without any assurance that inspection will be available on a date certain. Please understand that time is of the essence of Mr. Atalig's Open Government Act request.

As such, Mr. Atalig hereby notifies CPA that CPA is in violation of the Open Government Meetings and Records Act. Therefore, please encourage and advise CPA to comply with the Open Government Meetings and Records Act by no later than **June 19, 2006**, in order to avoid the necessity of further legal action.

Thank you for your cooperation and assistance. If you should have any questions, please feel free to contact me.

Sincerely,

RAMON K. QUICHOCHO, ESQ.

Cc:     Joaquin Q. Atalig, Client
        Faride Komisar, Department of Interior-Office of Insular Affairs
        Ron V. Simpson, Federal Aviation Administration

# EXHIBIT M

LAW OFFICES

*Douglas F. Cushnie*

POST OFFICE BOX 949
SAIPAN, MP 96950
TELEPHONES (670) 234-6843 · 234-6630
TELEX: 9102507408
CABLE ADDRESS: "ABOGADOS MN UQ"
FAX: (670) 234-9723

**VIA FACSIMILE**
(670) 234-8920

June 22, 2006

Ramon K. Quichocho
P.O. Box 505621
Saipan, MP 96950

Re: OGA request June 4, 2006

Dear Mr. Quichocho:

The Acting Executive Director has requested I respond to your Open Government Act request dated June 4, 2006. This response will be addressing the numbered items listed in the request. Before responding to your request however, I do wish to take note of the contents of the request. You have made various assertions and accusations against OKP (CNMI) Corporation and its lawyers. The Commonwealth Ports Authority does not have any comment with respect to your various statements and therefore will not acknowledge whether they do or do not have any basis in fact. Responses contained herein will be directed to only those requests that conform with the requirements of 1 CMC §§9917 and 9918.

1. There are no fully executed Change Orders on this project.

2. The Construction Contract is available for inspection.

3. Plans and specifications will be provided for inspection.

RECEIVED
LAW OFFICES OF
RAMON K. QUICHOCHO, LLC
Date: 6/24/06  Time: 9:03
By: ____
☐ Delivery  ☑ Mail  ☐ Fax

*Douglas F. Cushnie*

PAGE    Two
Ramon K. Quichocho
06/22/06

4. This is an improper request requiring conclusions of law and fact is not a mere request for documents.

5. The application for federal assistance will be provided for inspection. The plans and specifications are included in Request No. 3.

6. The Grant Agreement will be provided for inspection.

7. This is an improper request requiring fact and legal determinations.

8. The Part V assurances are attached to the Grant Agreement which is provided in Request No. 6. In further response there are no assurances which accompanied the project application dated May 4, 2005.

9. These records are available for inspection.

10. Letters and correspondence with FAA regarding the project after March 23, 2006 will be provided for inspection.

11. No public records currently exist.

12. Ownership documents are included in the application for federal assistance responded to in Paragraph 5.

13. This request is currently under review and will be responded to at a later time.

14. This is an improper request, not being one for public records.

15. This request is under review and will be responded to at a later date.

16. This is essentially an improper request not in conformance with the requirements of the Open Government Act. To the extent that the request is for submittals on this project, the submittals will be provided for inspection.

17. This material will be provided, if available, at a later date.

*Douglas F. Cushnie*

Three
Ramon Quichocho
06/22/06

18.  This material will be provided for inspection and is part of Request No. 5.

19.  Addendas Numbered 1 thru 5 will be provided for inspection.

20.  This is request is objectionable and improper in that it does not comply with the provisions of the Open Government Act, factual and legal conclusions being requested.

21.  There is no additional public record aside from the Exhibit F form.

22.  This request is subject to review and a response will be provided at a later time.

23.  This is an improper request not compliance with the Open Government Act.

24.  No such list is maintained.

25.  This request is improper, that it does not identify the paving project requested, thus is not susceptible of a response.

26.  This is an improper request that it is not a request for public records but a request for information.  To the extent that it is a request for public records, none are in the possession of the Authority.

27.  This request is currently being checked and if subject to release will be provided for inspection.

28.  The Rota Environmental Assessment and ROD will be provided for inspection.

29.  Documents relating to liquidated damages have been provided in the plans and specifications previously noted.

30.  This request is subject to further examination and if public records are

*Douglas F. Cushnie*

PAGE    Four
Ramon K. Quichocho
06/22/06

available for release will be provided for inspection at a later date.

31. No such records are held.

32. This is an improper request not within the scope of Sections 9917 and 9918 of the OGA.

The foregoing records may be available for inspection on June 26, 2006 at 9:30 a.m. at the Office of the Engineering Department, Commonwealth Ports Authority, located at Saipan International Airport.

Very truly yours,

DOUGLAS F. CUSHNIE

DOUGLAS F. CUSHNIE

DFC/lg



E-FILED
CNMI SUPERIOR COURT
E-filed: Jul 31 2006 12:40PM
Clerk Review: Jul 31 2006  2:52PM
Filing ID: 11929652
Case Number: 06-0119-CV
Elsa  Duenas

# EXHIBIT N



# LAW OFFICES OF
# RAMON K. QUICHOCHO, LLC
2ⁿᵈ Floor • V.S. Sablan Building • Chalan Piao
P.O. Box 505621 • Saipan, MP • 96950
Phone: 670.234.8946
Fax: 670.234.8920
E-mail: rayq@vzpacifica.net

**VIA FACSIMILE and MAIL**
**670.234.9723**

June 25, 2006

**FAXED**

Douglas F. Cushnie
P.O. Box 500949
Saipan, MP 96950

Re: Open Government Act request (June 4, 2006).

Dear Mr. Cushnie:

This is in response to your June 22, 2006 letter. First, you mentioned that the Commonwealth Ports Authority ("CPA") "does not have any comment with respect to [my] various statements and therefore will not acknowledge whether they do or do not have any basis in fact." Mr. Atalig only thought it appropriate to share some information with CPA as the Sponsor of the project and as OKP's principal. Of course, it is CPA's prerogative to take whatever action or inaction it deems appropriate. Mr. Atalig understands. He, however, merely provided some information that he thought might be helpful to CPA, and others, in understanding the dispute between Mr. Atalig and CPA's agent OKP (CNMI) Corporation ("OKP").

Second, you mentioned that "[r]esponses contained [in your letter] will be directed to only those requests that conform with the requirements of 1 CMC §§ 9917 and 9918." Please see attached copy of sections 9917 and 9918 marked as Exhibit 1. As you can see, the section 9917 and section 9918 "requirements" are requirements that CPA must comply with, not Mr. Atalig or any other citizen requesting for documents and records. Contrary to what you are insinuating, sections 9917 and 9918 do not require that a certain format or form be used by any person requesting for public records. Rather, it is the public entity, in this case CPA, that is required to comply with certain requirements in case CPA wants to withhold public records, i.e., identify the specific exemption and a brief explanation of how the exemption applies to the record withheld. In fact, CPA continues to violate Mr. Atalig's right to access public records in CPA's possession, control, and custody, despite specific warning to comply with the Open Government Meetings and Records Act.

Interestingly, your June 22, 2006 letter is more of an invitation to file a lawsuit against CPA for violation of the Open Government Meetings and Records Act rather than a good faith attempt to comply fully with the requirements of sections 9917 and 9918—the sections that you are trying to use as a "sword" against Mr. Atalig. Unless you know of any amendment to sections 9917 and 9918, all "requirements" are requirements that CPA must comply with or else there will be consequences.

So, for CPA to improperly withhold public records, documents, materials, and information on the misguided belief that sections 9917 and 9918 set forth "requirements" for Mr. Atalig, or any person, to fashion his request is a direct and inexcusable violation of the Open Government Meetings and Records Act. Please review the Open Government Meetings and Records Act, codified at 1 CMC § 9901, *et seq.*

Third, as you know, CPA's responses to the itemized requests below are grossly deficient as follows:

### *Request No. 1*

Mr. Atalig's Request No. 1: Any and all change orders, including all accompanying and related documents, to the Construction Contract (the "Construction Contract") between the Commonwealth Ports Authority ("CPA") and OKP (CNMI) Corporation ("OKP") for the Rota International Airport Runway 09/27 Extension (the "Project") – Phase I Project No. CPA-RA-001-03 / AIP No. 3-69-0003-19. Please include, but do not limit it to, all the documents mentioned in the attached Exhibit A.

CPA's Response: "There are no fully executed Change Orders on this project."

Mr. Atalig's Reply: Please provide any Change Orders that CPA has already executed. CPA failed to mention whether the other requested documents as set forth above will be available or will be withheld. Therefore, please comply with the Open Government Meetings and Records Act with respect to Request No. 1.

### *Request No. 3*

Mr. Atalig's Request No. 3: All contract documents as defined and referred to in the Construction Contract. Please include all documents and information relating to any payment schedule(s) agreed to by CPA and OKP. Also, please provide Technical Specifications Item G-100-3.2 and Technical Specifications Item G-100-3.4.

CPA's Response: "Plans and specifications will be provided for inspection."

Mr. Atalig's Reply: Insofar as all documents and information relating to any payment schedule(s) agreed to by CPA and OKP are included in the "plans and specifications," Mr. Atalig appreciates the opportunity to inspect the plans and specifications. But, if the documents and information relating to any payment schedule(s) agreed to by CPA and OKP are not included in the "plans and specifications," then Mr. Atalig respectfully

requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 3.

### Request No. 4

Mr. Atalig's Request No. 4: Any and all procurement rules, regulations, and policies of CPA, including all other procurement rules, regulations, policies, that CPA is relying on as authority to issue a notice to proceed to OKP despite the fact that the contract was not fully-executed as of at least March 6, 2006.

CPA's Response: "This is an improper request requiring conclusions of law and fact is not a mere request for documents."

Mr. Atalig's Reply: Under 1 CMC § 9918, Mr. Atalig finds no exemption as invoked by CPA. The reason for withholding the records requested that was given by CPA is not supported by the Open Government Meetings and Records Act. Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 4.

### Request No. 6

Mr. Atalig's Request No. 6: Section 9 of the Grant Agreement (the "Grant Agreement") for Project No. 3-69-0003-19, Contract No. DTFA08-05-C-50522 provides that

> Unless otherwise approved by the FAA, the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured products produced outside the United States to be used for any project for airport development or noise compatibility for which funds are provided under this grant. The Sponsor will include in every contract a provision implementing this special condition.

Emphases added. Please provide the FAA approval or else please provide any contracts, agreements, or provisions that shows compliance with Section 9 of the Grant Agreement.

CPA's Response: "The Grant Agreement will be provided for inspection."

Mr. Atalig's Reply: CPA's response is non-responsive. It is very clear that Mr. Atalig is not requesting a copy of the Grant Agreement under Request No. 6, unless, of course, there is any amendment, alteration, or changes to the Grant Agreement, then Mr. Atalig will review any amendments, alteration, or changes. Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 6.

### Request No. 7

<u>Mr. Atalig's Request No. 7</u>:  Any and all information proving that any steel or manufactured products used or to be used for the Project are manufactured in the United States.

<u>CPA's Response</u>: "This is an improper request requiring fact and legal determinations."

<u>Mr. Atalig's Reply</u>: Section 9 of the Grant Agreement expressly requires that

> Unless otherwise approved by the FAA, <u>the Sponsor will not acquire or permit any contractor or subcontractor to acquire any steel or manufactured products produced outside the United States to be used for any project for airport development or noise compatibility for which funds are provided under this grant</u>.  The Sponsor will include in every contract a provision implementing this special condition.

For CPA to now say that Mr. Atalig's request is "improper" is suspect, at best. Furthermore, under 1 CMC § 9918, Mr. Atalig finds no exemption as invoked by CPA. The reason, given by CPA, for withholding the records requested is not supported by the Open Government Meetings and Records Act. It is clear that CPA is playing "hide-the-ball," and/or "delay, derail, and defeat."  Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 7.

### Request No. 10

<u>Mr. Atalig's Request No. 10</u>: All letters, correspondences, and communications with the FAA regarding OKP and/or the Project after March 23, 2006.

<u>CPA's Response</u>:  "Letters and correspondence with FAA regarding the project after March 23, 2006 will be provided for inspection."

<u>Mr. Atalig's Reply</u>: Please also make sure that all letters and correspondence with FAA regarding OKP, not just the project, after March 23, 2006, are provided for inspection. Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 10.

### Request No. 11

<u>Mr. Atalig's Request No. 11</u>: Any and all letters, correspondences, and communications from the FAA regarding any increase(s) of the grant amount of the Project.

<u>CPA's Response</u>: "No public records currently exist."

Mr. Atalig's Reply:    Please be more specific whether there are no letters, correspondences, and communications from FAA regarding any increase(s) of the grant amount of the Project, or there are letters, correspondences, and communications from FAA, but that CPA does not think that it is "public record" subject to the Open Government Meetings and Records Act.   If there are letters, correspondences, and communications that CPA does not believe is subject to disclosure, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 11.

### Request No. 13

Mr. Atalig's Request No. 13:  Any and all construction management program as required under Section 15 of the Grant Agreement.

CPA's Response:  "This request is currently under review and will be responded to at a later time."

Mr. Atalig's Reply:  Although such response is unacceptable and unsupported under the Open Government Meetings and Records Act, please let me know how much time you need to respond to Mr. Atalig's specific request. To force Mr. Atalig to wait indefinitely or until whenever CPA thinks is the right time is unfair, unjust, and ridiculous. Not to mention that it brings back bad memories of how CPA's contractor/agent OKP likes to deal with Mr. Atalig. For example, when Mr. Atalig was trying to set up a deposition, OKP and its counsel objected to the date of deposition, but were unwilling and refused to suggest a date certain. Instead, CPA's contractor/agent OKP wanted Mr. Atalig to wait indefinitely until OKP is ready.  Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 13.

### Request No. 14

Mr. Atalig's Request No. 14:  The name of the person representing CPA who has overall responsibility for contract administration for the Project and the authority to take necessary actions to comply with the contract, as required under Section 15.a.1) of the Grant Agreement, including the name of the person currently taking such responsibilities and authority.

CPA's Response:  "This is an improper request, not being one for public records."

Mr. Atalig's Reply:  Although Mr. Atalig's request is proper, Mr. Atalig wishes to clarify his request since it is apparent that CPA is playing "hide-the-ball."  Please provide any records, documents, and/or materials delegating, assigning, or giving the responsibility to any person for contract administration for the Project, as required under Section 15.a.1) of the Grant Agreement.  Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 14.

### Request No. 15

<u>Mr. Atalig's Request No. 15</u>: The names of testing laboratories and consulting engineer firms with quality control responsibilities on the Project, together with a description of the services to be provided, as required under Section 15.a.2) of the Grant Agreement, including the names of testing laboratories and consulting engineer firms who are/were actually retained.

<u>CPA's Response</u>: "This request is under review and will be responded to at a later date."

<u>Mr. Atalig's Reply</u>: Although such response is unacceptable and unsupported under the Open Government Meetings and Records Act, please let me know how much time you need to respond to Mr. Atalig's specific request. To force Mr. Atalig to wait indefinitely or until whenever CPA thinks is the right date is unfair, unjust, and ridiculous. Not to mention that it brings back bad memories of how CPA's contractor/agent OKP likes to deal with Mr. Atalig. For example, when Mr. Atalig was trying to set up a deposition, OKP and its counsel objected to the date of deposition, but were unwilling and refused to suggest a date certain. Instead, CPA's contractor/agent OKP wanted Mr. Atalig to wait indefinitely until OKP is ready. Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 15.

### Request No. 16

<u>Mr. Atalig's Request No. 16</u>: Please provide any information whether Mr. Prasada Reddy Goluguri is the person or firm who is responsible for quality control on the Project. As you may know, Mr. Goluguri is a Non-Resident employee of OKP. Mr. Goluguri's position title that was submitted to the Department of Labor, by OKP, is Project Engineer. Although I do not know whether Mr. Goluguri is licensed to practice here in the CNMI, I request that you confirm whether he is the Quality Control person as required under Section 15.a.2) of the Grant Agreement. Please see attached Exhibit B, which shows that Mr. Goluguri is certifying some documents as a Quality Control Administrator. Also, please provide the attachments as mentioned in Exhibit B, i.e., "Submittal No. 006 and 030." If Mr. Goluguri is the person responsible for quality control as required under Section 15.a.2) of the Grant Agreement, please provide all "submittals" or certifications that have been submitted to CPA.

<u>CPA's Response</u>: "This is essentially an improper request not in conformance with the requirements of the Open Government Act. To the extent that the request is for submittals on this project, the submittals will be provided for inspection."

<u>Mr. Atalig's Reply</u>: Under 1 CMC § 9918, Mr. Atalig finds no exemption as invoked by CPA. The reason, given by CPA, for withholding the records requested is not supported by the Open Government Meetings and Records Act. It is clear that CPA is playing "hide-the-ball," and/or "defeat, delay, and derail." For CPA's information, please see the attached letter, marked Exhibit 2, from the Board of Professional Licensing confirming

that Mr. Prasada Reddy Goluguri is not licensed "to practice any branch of engineering in the CNMI." Since CPA now knows that Mr. Goluguri should not be responsible for quality control on the Project because he is not licensed to practice in the CNMI, please provide any record, document, material, or information regarding the person or firm responsible for quality control on the Project as required under Section 15.a.2) of the Grant Agreement. Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 16.

### Request No. 17

Mr. Atalig's Request No. 17: The attached email to OKP's March 27, 2006 letter to Juan C. Tenorio, P.C. Please see attached Exhibit C, which was previously provided by CPA. The email is purportedly from OKP's Airport Lighting Supplier seeking clarification on the specifications related to the L861 and L862 fixture. Please include any and all responses from CPA and Juan C. Tenorio, P.C., to OKP's March 27, 2006 letter.

CPA's Response: "This material will be provided, if available, at a later date."

Mr. Atalig's Reply: Although such response is unacceptable and unsupported under the Open Government Meetings and Records Act, please let me know how much time you need to respond to Mr. Atalig's specific request. To force Mr. Atalig to wait indefinitely or until whenever CPA thinks is the right date is unfair, unjust, and ridiculous. Not to mention that it brings back bad memories of how CPA's contractor/agent OKP likes to deal with Mr. Atalig. For example, when Mr. Atalig was trying to set up a deposition, OKP and its counsel objected to the date of deposition, but were unwilling and refused to suggest a date certain. Instead, CPA's contractor/agent OKP wanted Mr. Atalig to wait indefinitely until OKP is ready. Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 17.

### Request No. 20

Mr. Atalig's Request No. 20: All documents and information that shows compliance with Title 49 CFR Part 23 with regards to the Project. OKP has assured compliance with Title 49 CFR Part 23 relating to Disadvantaged Business Enterprise Participation. Please see attached Exhibit E. Please provide the percentage of Disadvantaged Business Enterprise participation for this Project.

CPA's Response: "This is (sic) request is objectionable and improper in that it does not comply with the provisions of the Open Government Act, factual and legal conclusions being requested."

Mr. Atalig's Reply: Under 1 CMC § 9918, Mr. Atalig finds no exemption as invoked by CPA. The reason, given by CPA, for withholding the records requested is not supported by the Open Government Meetings and Records Act. It is clear that CPA is playing "hide-the-ball," and/or "defeat, delay, and derail." Therefore, Mr. Atalig respectfully

requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 20.

### Request No. 21

<u>Mr. Atalig's Request No. 21</u>: All documents and information relating to Bidder's Statement on Previous Contracts Subject to EEO Clause as indicated on the attached Exhibit F.

<u>CPA's Response</u>: "There is no additional public record aside from the Exhibit F form."

<u>Mr. Atalig's Reply</u>: Please be more specific whether there are no documents and information relating to Bidder's Statement on Previous Contracts Subject to EEO Clause, or there are documents and information, but that CPA does not think that it is "public record" subject to the Open Government Meetings and Records Act. If there are documents and information that CPA does not believe is subject to disclosure, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 21.

### Request No. 22

<u>Mr. Atalig's Request No. 22</u>: "Bidder's Qualification Statement" submitted by OKP (CNMI) Corporation, which was incorporated in the CNMI on May 3, 2005, for the Project.

<u>CPA's Response</u>: "This request is subject to review and a response will be provided at a later time."

<u>Mr. Atalig's Reply</u>: Although such response is unacceptable and unsupported under the Open Government Meetings and Records Act, please let me know how much time you need to respond to Mr. Atalig's specific request. To force Mr. Atalig to wait indefinitely or until whenever CPA thinks is the right time is unfair, unjust, and ridiculous. Not to mention that it brings back bad memories of how CPA's contractor/agent OKP likes to deal with Mr. Atalig. For example, when Mr. Atalig was trying to set up a deposition, OKP and its counsel objected to the date of deposition, but were unwilling and refused to suggest a date certain. Instead, CPA's contractor/agent OKP wanted Mr. Atalig to wait indefinitely until OKP is ready. Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 22.

### Request No. 23

<u>Mr. Atalig's Request No. 23</u>: Any and all information regarding any other bids submitted by OKP for any other CPA projects.

<u>CPA's Response</u>: "This is an improper request not (*sic*) compliance with the Open Government Act."

Mr. Atalig's Reply: Under 1 CMC § 9918, Mr. Atalig finds no exemption as invoked by CPA. The reason, given by CPA, for withholding the records requested is not supported by the Open Government Meetings and Records Act. It is clear that CPA is playing "hide-the-ball," and/or "defeat, delay, and derail." Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 23.

### Request No. 24

Mr. Atalig's Request No. 24: List of all construction contractors that have ever contracted with CPA since January 1, 2000.

CPA's Response: "No such list is maintained."

Mr. Atalig's Reply: CPA's response is cute. Mr. Atalig was merely being considerate to CPA by not demanding inspection of the entire files of all construction contractors that have ever contracted with CPA since January 1, 2000. The rationale was that once a listing was provided, both Mr. Atalig and CPA will save a lot of time by narrowing the request as much as possible. Seeing that CPA wants to play "semantic," "hide-the-ball," and/or "delay-derail-defeat" games, Mr. Atalig respectfully requests CPA to make available for inspection and/or copying, pursuant to the Open Government Meetings and Records Act, within 10 days, the following:

1. All records, documents, materials, and information pertaining to any and all construction contractors that have ever contracted with CPA since January 1, 2000, including, but shall not be limited to, construction contracts, bids, and change orders. Please include all CPA projects in the CNMI (Rota, Tinian, and Saipan).

### Request No. 25

Mr. Atalig's Request No. 25: All documents regarding the paving at the Saipan International Airport.

CPA's Response: "This request is improper, that it does not identify the paving project requested, thus is not susceptible of a response."

Mr. Atalig's Reply: Under 1 CMC § 9918, Mr. Atalig finds no exemption as invoked by CPA. The reason, given by CPA, for withholding the records requested is not supported by the Open Government Meetings and Records Act. It is clear that CPA is playing "hide-the-ball," and/or "delay, derail, and defeat." Of course, if you tell me the names of the paving projects, I can pinpoint which paving project Mr. Atalig wants to review. Please do not expect Mr. Atalig, or any other person outside of CPA, to know every paving project that there is. Furthermore, just because Mr. Atalig does not know the names of all the paving projects, it is not grounds for refusal to open CPA's books, files, and records. Fearing CPA's hide-the-ball games, it is probably best to request for all

records, documents, materials, and information regarding all paving projects at the Saipan International Airport. As such, please provide all records, documents, materials, and information regarding all paving projects at the Saipan International Airport. Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 25.

### *Request No. 26*

<u>Mr. Atalig's Request No. 26</u>:   All documents relating to E.M. Chen & Associates (CNMI), Inc., including but shall not be limited to, contracts, agreements, relationship to Mr. Brian M. Chen, who is an officer and shareholder of OKP. Please see attached Exhibit G, which seems to show that Mr. Toh Wat Or faxed OKP's May 20, 2005 letter, among other things, to E.M. Chen & Associates, and then the letter was faxed to CPA. Please include any documents and information whether E.M. Chen & Associates is an agent or contractor of CPA or OKP.

<u>CPA's Response</u>:   "This is an improper request that it is not a request for public records but a request for information. To the extent that it is a request for public records, none are in the possession of the Authority."

<u>Mr. Atalig's Reply</u>:   Mr. Atalig specifically requested for all documents relating to E.M. Chen & Associates (CNMI), Inc., is clear that Mr. Endymion M. Chen and/or E.M. Chen & Associates (CNMI), Inc., is/are the "Project Designer" for CPA. Please see the attached Exhibit 3. Unless Mr. Endymion M. Chen and E.M. Chen & Associates (CNMI), Inc., rendered their services to CPA for free, there should be some kind of contract or agreement, including payment.

Under 1 CMC § 9918, Mr. Atalig finds no exemption as invoked by CPA. The reason, given by CPA, for withholding the records requested is not supported by the Open Government Meetings and Records Act. It is clear that CPA is playing "hide-the-ball," and/or "delay, derail, and defeat." Please understand that Mr. Atalig is not making this request to "investigate" any possible wrongdoing, kickbacks, or any insider information, since Mr. Atalig is not aware of any. If CPA is concerned that disclosure may expose any possible civil or criminal liabilities, Mr. Atalig is willing to execute a confidentiality agreement.

You also mentioned that no public records "are in the possession of the Authority." Please identify the name, address, and telephone number(s) of the person(s) who has/have the public records, including, but not limited to, any information or record why CPA transferred the public records or information to such person(s).

Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 26.

### *Request No. 27*

<u>Mr. Atalig's Request No. 27</u>:　Any and all documents and information relating to the monitoring of OKP for compliance with all the conditions as set forth in the Construction Contract and the Grant Agreement, including all the documents incorporated therein. Please include, but do not limit it to, compliance with minimum wage requirements that "[a]ll mechanics and laborers on the Project shall be paid no less than the current minimum rate established by the CNMI, CNMI Government Directive Order No. 241 effective January 1, 2001 with minimum $6.25 per hour or the U.S. Secretary of Labor, whichever is higher," as provided in the Amended Notice to Bidders, dated June 17, 2005, and whether OKP maintains an affirmative action program.

<u>CPA's Response</u>:　"This request is currently being checked and if subject to release will be provided for inspection."

<u>Mr. Atalig's Reply</u>:　Although such response is unacceptable and unsupported under the Open Government Meetings and Records Act, please let me know how much time you need to respond to Mr. Atalig's specific request. To force Mr. Atalig to wait indefinitely or until whenever CPA thinks is the right date is unfair, unjust, and ridiculous. Not to mention that it brings back bad memories of how CPA's contractor/agent OKP likes to deal with Mr. Atalig. For example, when Mr. Atalig was trying to set up a deposition, OKP and its counsel objected to the date of deposition, but were unwilling and refused to suggest a date certain. Instead, CPA's contractor/agent OKP wanted Mr. Atalig to wait indefinitely until OKP is ready. Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 27.

### *Request No. 30*

<u>Mr. Atalig's Request No. 30</u>:　Any and all documents pertaining to all "local subcontractors on Rota for backfill materials." On information and belief, OKP is paying 40 cents per cubic yard to quarry materials from private and/or public lands. Please include, but do not limit it to, any documents and information regarding how much material has been quarried by OKP from private and/or public lands for the Project.

<u>CPA's Response</u>:　"This request is subject to further examination and if public records are available for release will be provided for inspection at a later date."

<u>Mr. Atalig's Reply</u>:　Although such response is unacceptable and unsupported under the Open Government Meetings and Records Act, please let me know how much time you need to respond to Mr. Atalig's specific request. To force Mr. Atalig to wait indefinitely or until whenever CPA thinks is the right date is unfair, unjust, and ridiculous. Not to mention that it brings back bad memories of how CPA's contractor/agent OKP likes to deal with Mr. Atalig. For example, when Mr. Atalig was trying to set up a deposition, OKP and its counsel objected to the date of deposition, but were unwilling and refused to suggest a date certain. Instead, CPA's contractor/agent OKP wanted Mr. Atalig to wait

Case 1:08-cv-00002    Document 23-14    Filed 06/11/2008    Page 82 of 90
Ltr. to Cushnie re: June 22, 2006 ltr.
Page 12 of 13

indefinitely until OKP is ready.  Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 30.

### Request No. 32

Mr. Atalig's Request No. 32:  Any and all other documents, materials, and/or things not mentioned above pertaining to OKP that were not previously provided to Mr. Atalig for inspection because either it was exempted before but is not now, or has been received or generated by CPA after Mr. Atalig had inspected the files on April 21, 2006.

CPA's Response:  "This is an improper request not within the scope of Sections 9917 and 9918 of the OGA."

Mr. Atalig's Reply:  Although such response is unacceptable and unsupported under the Open Government Meetings and Records Act, please let me know how much time you need to respond to Mr. Atalig's specific request.  To force Mr. Atalig to wait indefinitely or until whenever CPA thinks is the right date is unfair, unjust, and ridiculous.  Not to mention that it brings back bad memories of how CPA's contractor/agent OKP likes to deal with Mr. Atalig.  For example, when Mr. Atalig was trying to set up a deposition, OKP and its counsel objected to the date of deposition, but were unwilling and refused to suggest a date certain.  Instead, CPA's contractor/agent OKP wanted Mr. Atalig to wait indefinitely until OKP is ready.  Therefore, Mr. Atalig respectfully requests that CPA comply with the Open Government Meetings and Records Act with respect to Request No. 32.

Clearly, CPA's responses to Mr. Atalig's requests are calculated to hide as much information as possible.  It might be instructive for CPA to review 1 CMC § 9901, which reads:

The Legislature finds and declares that all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies of this Commonwealth exist to aid in the conduct of the people's business.  It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.

The people of the Commonwealth do not yield their sovereignty to the agencies which serve them.  The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know.  The people insist on remaining informed so that they may retain control over the instruments they have created.

The provisions requiring open meetings and open records shall be liberally construed, and the provisions providing for exceptions shall be strictly construed against closed meetings and nondisclosure of records.

As you know, "all public records shall be available for inspection by any person during established office hours unless public inspection of such records is in violation of any

*Ltr. to Cushnie re: June 22, 2006 ltr.*
*Page 13 of 13*

Commonwealth or federal law;...," within 10 days of a request. 1 CMC § 9917. You have not cited any Commonwealth or federal law prohibiting inspection of the requested records, documents, materials, and information. If there is any applicable law, please let me know.

Furthermore, "[a]gency responses refusing, in whole or in part, inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part thereof) and a brief explanation of how the exemption applies to the record withheld." 1 CMC § 9918(d). You have not invoked any of the listed exemptions under section 9918. Rather, you created a new and unrecognized "exemption" that the request is improper and not in compliance with the Open Government Act. Please stick to the enumerated and recognized exemptions under the law. If what CPA is trying to hide from Mr. Atalig does not fit under any lawful exemptions, it is a good clue that it must be made available for inspection, unless, of course, CPA is gung-ho about paying Mr. Atalig's court costs and attorney's fees.

Furthermore, "[r]ecourse may be had to the Commonwealth Superior Court by any person unlawfully denied access to public records. Cost of suit and reasonable attorney fees shall be awarded to the prevailing party in such a suit." 1 CMC § 9917(b). Mr. Atalig seriously hopes that such recourse to the Commonwealth Superior Court will not be necessary. Mr. Atalig is surprised why CPA complied, for the most part, during the first Open Government Act request, but is now clearly hiding a lot of information and record requested.

Finally, "[a]ny public officer who violates any provision of this section is guilty of a noncriminal infraction, punishable by a fine not exceeding $500. Any person willfully and knowingly violating any of the provisions of this section is guilty of a misdemeanor punishable by a term of imprisonment not exceeding one year, or by a fine of up to $1,000, or both." 1 CMC § 9917(c).

That being said, Mr. Atalig wishes to make one more good faith attempt to persuade CPA to make all public records, documents, materials, and information available for inspection within five days from the date of this letter. This good faith attempt is Mr. Atalig's effort to resolve any disputes without court action. Therefore, Mr. Atalig respectfully requests that CPA fully comply with his Open Government Meetings and Records Act request. In the event that CPA refuses to comply with the Open Government Meetings and Records Act, CPA will force Mr. Atalig to take appropriate legal action.

Thank you for your cooperation and assistance. If you have questions, please contact me.

Sincerely,

RAMON K. QUICHOCHO, ESQ.

Cc:    Joaquin Q. Atalig, Client
       Reno Celis, Acting Executive Director (as to open government act) (670.234.5962)
       Faride Komisar, Department of Interior-Office of Insular Affairs (c/o 670.234.8814)
       Ron V. Simpson, Federal Aviation Administration (1.808.541.3566)

(a) Any person may commence an act either by mandamus or injunction for the purpose of stopping violations or preventing threatened violations of this chapter by members of any governing body.

(b) *Accelerated Hearing; Immediate Compliance.*

(1) Whenever an action is filed to enforce the provisions of this section, the court shall set an immediate hearing, giving the case priority over other pending cases.

(2) Whenever a court orders an agency to open its records for inspection in accordance with this section, the agency shall comply with such order within 48 hours, unless otherwise provided by the court issuing such order, or unless the appellate court issues a stay order within such 48 hour period.

(3) A stay order shall not be issued unless the court determines that there is a substantial probability that opening the records for inspection will result in significant damage.

(4) Upon service of a complaint, counterclaim, or cross-claim in a civil action brought to enforce the provisions of this section, the custodian of the public record that is the subject matter of such civil action shall not transfer custody, alter, destroy, or otherwise dispose of the public record sought to be inspected and examined, notwithstanding the applicability of an exemption or the assertion that the requested record is not a public record subject to inspection and examination under 1 CMC § 9918, until the court directs otherwise. The person who has custody of such public record may, however, at any time permit inspection of the requested record as provided in 1 CMC § 9918 and other provisions of law.

**Source:** PL 8-41, § 17, amended by PL 10-82, § 26).

**Commission Comment** PL. 10-82 took effect on January 6, 1998. PL 10-82(26) added a new subsection (b) to this section. According to PL 10-82,

Section 1. Purpose. The purpose of the Act is to increase the penalty for failure to make public records available upon request and to provide or accelerated court hearings in actions filed under this section.

### § 9917. Public Records; Availability for Inspection; Cost of Copies.

(a) Within 10 days of a request, all public records shall be available for inspection by any person during established office hours unless public inspection of such records is in violation of any Commonwealth or federal law, provided that, except where such records are open under any rule of court, the Commonwealth Attorney General or designated assistant attorney general and the responsible attorney's for federal agencies may deter-

spection which such records pertain to the preparation of the prosecution of the defense of any action or proceeding, prior to its commencement, to which the Commonwealth is a party, or when such records do not relate to a matter in violation of law and are deemed necessary for the protection of the character or reputation of any person.

(b) Copies of public records shall be given by the officer having custody to any person demanding the same and paying a reasonable charge for duplication. Charges shall not exceed the amount necessary to reimburse the agency for its actual cost incident to such copying. No charge or fee shall be charged for the mere inspection of public records. Recourse may be had to the Commonwealth Superior Court by any person unlawfully denied access to public records. Cost of suit and reasonable attorney fees shall be awarded to the prevailing party in such a suit.

(c) *Penalties.* Any public officer who violates any provision of this section is guilty of a noncriminal infraction, punishable by a fine not exceeding $500. Any person who willfully and knowingly violating any of the provisions of this section is guilty of a misdemeanor punishable by a term of imprisonment not exceeding one year, or by a fine of up to $1,000, or both.

**Source:** PL 8-41, § 18, modified, amended by PL 10-82, § 2(a).

**Commission Comment** PL. 10-82 took effect on January 6, 1998. PL 10-82, § 2(a) added a new subsection (c) to this section. According to PL 10-82, § 1:

Section 1. Purpose. The purpose of the Act is to increase the penalty for failure to make public records available upon request and to provide for accelerated court hearings in actions filed under this section.

### § 9918. Certain Personal and Other Records Exempt.

(a) The following are exempt from public inspection and copying:

(1) Personal information in any files maintained for students in public schools, patients or clients of public institutions or public health agencies, welfare recipients, prisoners, probationers, or parolees.

(2) Personal information in files maintained for employees, appointees, or elected officials of any public agency other than names, present and past position titles, grades, salaries and duty stations.

(3) Information required of any taxpayer in connection with the assessment or collection of any tax.

(4) Specific intelligence information and specific investigative records compiled by investigative law enforcement, the Attorney General's office, penology agencies and Commonwealth agencies vested with the responsibility to discipline members of any profession, the

Exhibit 1

the protection of any person's right to privacy.

(5) Information revealing the identity of persons who file complaints with or volunteer information to investigative agencies, law enforcement agencies, the Attorney General's office, or penology agencies, if disclosure would endanger the person's life, physical safety, or property; provided, that if at the time the complaint is filed the complainant indicates a desire for disclosure or nondisclosure, such desire shall govern.

(6) Test questions, scoring keys, and other examination data used to administer a license, employment, or academic examination.

(7) Preliminary drafts, notes, recommendations, and intra-agency memoranda, including lawyer's work product and lawyer legal opinions, in which opinions are expressed or policies formulated or recommended, except that a specific record shall not be exempt when publicly cited by an agency in connection with any agency action.

(8) Records which are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the courts.

(9) Records, maps, or other information identifying the location of archaeological and specially protected environmental sites in order to avoid the looting, destruction or degradation of such sites.

(10) Any library record, the primary purpose of which is to maintain control of library materials, or to gain access to information, which discloses or could be used to disclose the identity of a library user.

(11) The residential addresses and residential telephone numbers of the customers of a public utility contained in the records or lists held by the public utility of which they are customers.

(12) Juvenile, delinquency or dependency records, and any personal information which discloses or could be used to disclose the identity of, or otherwise could identify to the public, a juvenile who is the victim or alleged victim of a violent or abusive crime, including but not limited to rape, sexual molestation of any degree, or assault and battery.

(13) Department of Public Safety internal investigation records.

(b) The exemptions of this section are inapplicable to the extent that the information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought. No exemption may be construed to permit the nondisclosure of statistical information not descriptive of any readily identifiable person or persons.

(c) Inspection or copying of any specific records exempt under the provisions of this section may be permitted if the Commonwealth Superior Court finds, after a hearing with notice thereof to every person in interest and the agency, that the exemption of such records is clearly unnecessary;

to protect any individual's right of privacy or any vital governmental function.

(d) Agency responses refusing, in whole or in part, inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part thereof) and a brief explanation of how the exemption applies to the record withheld.

Source: PL 8-41, § 19, modified; subsection (a)(12) amended by PL 10-70.

§ 2.

Commission Comment: PL 10-70 took effect September 4, 1997. PL 10-70 amended subsection (a)(12) of this section. According to PL 10-70, § 1:

Section 1. Findings. The Legislature finds that minors who are the victims of violent and abusive crimes such as rape, sexual molestation, and assault and battery, among others, should be protected from the release of their names and identifying information from the public record, due to the sensitivity of the issues involved and the serious potential to further traumatize or publicly stigmatize the juvenile.

PL 10-70 contained severability and savings clause provisions as follows:

Section 3. Severability. If any provision of this Act or the application of any such provision to any person or circumstance should be held invalid by a court of competent jurisdiction, the remainder of this Act or the application of its provisions to persons or circumstances other than those to which it is held invalid shall not be affected thereby.

Section 4. Savings Clause. This Act and any repealer contained herein shall not be construed as affecting any existing right acquired under contract. The enactment of this Act shall not have the effect of terminating, or in any way modifying, any liability, civil or criminal, which shall already be in existence at the date this Act becomes effective.



**BOARD OF PROFESSIONAL LICENSING**
**Commonwealth of the Northern Mariana Islands**
P.O. Box 502078
Saipan, MP 96950
Tel. No.: (670) 234-5897
Fax No.: (670) 234-6040

June 9, 2006

Mr. Ramon K. Quichocho
P.O. Box 505621
Saipan, MP 96950

Re:  Mr. Prasada Goluguri

Dear Mr. Quichocho,

This is to reply to your 6/5/06 inquiry whether Mr. Goluguri is licensed to practice engineering in the CNMI.

We have no record on file showing that Mr. Prasada Reddy Goluguri is licensed to practice any branch of engineering in the CNMI.

We will inform OKP (CNMI) Corporation that Mr. Goluguri should not be using the title "engineer" since he is not licensed to practice that profession.

If you have further inquiries to this regards please do not hesitate to contact our office at 664-4809.

Sincerely,

Florence C. Sablan
Executive Director

xc:  File

RECEIVED
LAW OFFICES OF
RAMON K. QUICHOCHO, LLC
Date: 6/14/06    Time: 2:35
By:
☑ Delivery    ☐ Mail    ☐ Fax

Exhibit 2



# COMMONWEALTH PORTS AUTHORITY

Main Office: SAIPAN INTERNATIONAL AIRPORT
P.O. BOX 501055 • SAIPAN • MP 96950-1055
Phone: (670) 664-3500 /1    FAX: (670) 234-5962
E-Mail Address: cpa.admin@saipan.com
Website: www.cpa.gov.mp

# ROTA INTERNATIONAL AIRPORT RUNWAY 09/27 EXTENSION PHASE 1 PRE-BID CONFERENCE

## AGENDA

Date: May 6, 2005
Time: 2:00 PM
Place: Rota International Airport Conference Room

**I.**   **Welcome Remark** -By Mr. Benjamin M. Manglona– CPA Rota Ports Manager

**II.**   **Attendees' Self Introduction**

**III.**   **General Introduction of the project**   By Mr. Juan R. Sablan
                                                    CPA Staff Engineer
                                                    And Mr. Benjamin M. Manglona

1.   This project is funded by Department of Interior and Federal Aviation Administration Project No. CPA-RA-001-03, AIP Project No. 3-69-0003-19.

2.   Section GP 20 –Bid Requirements and Conditions

3.   Bid Date and time is June 17, 2005 no later than 2:00 PM; Bid proposal shall be submitted to the Office of Executive Director, Commonwealth Ports Authority located at Saipan International Airport Terminal Building.

4.   Bid proposal must be submitted in the form (Section LP-5) provided in the bid documents.

     Bid Bond (LP-6) shall be submitted.  Updated US Treasury Listed Surety Companies may be founded at www.fms.treas.gov/c570/c570.html.

     The following shall also be submitted along with Bid Proposal:

     • Bidder's Qualification Statement
     • Non-Collusion Affidavit (LP-7)
     • Non-Gratuity Affidavit (LP-8)


Exhibit 3

- Bidder's Assurance of Compliance with Title 49 CFR Part 23 Relating to Disadvantaged Business Enterprise Participation (LP-9)
- Bidder's Statement on Previous Contracts Subject to EEO Clause (LP-10)
- Certification of Non-Segregated Facilities (Contractors/Subcontractors) (LP-11)
- Designation of Subcontractors (LP-12)

5.    Minimum wage requirement.

6.    Security.

7.    Traffic Control – By Mr. Benjamin Manglona

   a. The requirement of a signal person or vehicular traffic control at point of conflict between aircraft and surface vehicles.
   b. The marking and/or lighting of construction equipment and vehicles
   c. The parking of construction equipment and vehicles when not engaged in construction during nonworking days and at night.
   d. Any required communications between construction or inspection forces and the Air Traffic Control Tower (ATCT) or Flight Service Station (FSS).

8.    Minimum distance restriction for construction vehicles, equipment, workers and materials with relation to runway, taxiway and navigational aids (NAVAIDS) that remain in operational use.   See AC150-5370-2 Operational Safety on Airports During Construction.

9.    Construction Management team will be on-board sometime in June.

10.    Permit Requirements for the project.

11.    Site soil investigation reports are available for review at CPA Saipan Engineering Office and also at Rota International Airport Manger's Office.

## IV.  Project Description by Mr. Endymion M. Chen

E. M. Chen & Associates (CNMI), Inc., Project Designer

1.    Construction time and phasing plan:

   Stage 1 Mobilization
   Stage 2 West-end of Runway 1,000 feet extension
   Stage 3 East-end Turnaround.
   Total construction period: 300 calendar days

Construction time:
> Regular working hours are 7:30 AM to 4:30 PM Mon-Fri
> OT Requirement.

2. Liquidated Damages $2,000 per day (Item G-100-3.4)

3. Borrow Fill.

4. Staging areas.

5. Contractor auto parking access road.   Equipment and truck staging and road, plant.

6. Field office, water and electricity, telephone.

7. Availability of Advisory Circulars.

The following Advisory Circulars are available for the prospective bidders:

- AC 150/5345-53A – Approved Airport Lighting Equipment (Replaced AC 150/5345-1)
- AC 150/5100-6 – Labor Requirements for Airport Improvement Program (AIP).
- AC 150/5100-15 – Civil Rights Requirements for the Airport Improvement Program (AIP).

Bidders may also find it from website at www.airweb.faa.gov/Regulatory

8. Marking and Lights.
   a. Threshold displacement
   b. Temporary of permanent runway closing including marking
   c. Installation and maintenance of marking and lighting for threshold displacement or closing of runway.

9. Environmental – Soil Erosion Control
   - Dust Control

10. Addendum No. 1.
    - Adding PAPI's REIL's and a new Windcone to the project.
    - 35' Shoulders add it to the extension portion as alternative Bid

V.    **Proposed Phase 2 Project.**

VI.    **QC/QA Testing**        **By Patrick McCollom**
                                       **E. M. Chen & Associates**

VII. **Questions must be in written address to:**

         Mr. Carlos H. Salas
         Executive Director/Contracting Officer
         Commonwealth Ports Authority
         PO Box 501055
         Saipan MP 96950

no later than June 3, 2005 at 3:00 PM. Questions may be sent by fax to (670) 234-5962, to speed-up the process, bidders are urged to provide e-mail copies to Mr. Juan R. Sablan at cpa.engr@saipan.com and to Mr. Endymion M. Chen at emchen@ite.net.

VII. **Site Visit Follows**