# Exhibit 10

# THOMAS E. CLIFFORD
## ATTORNEY AT LAW

2nd Floor, Alexander Building, San Jose
P.O. Box 506514
Saipan, MP 96950

Tel. (670) 235-8846
Fax (670) 235-8848
TomClifford@vzpacifica.net

March 5, 2007

Maya B. Kara
Mailman & Kara, LLC
Attorneys at Law
PMB 238 PPP, Box 10000
Saipan, MP 96950
VIA EMAIL

Re: Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project

Dear Maya:

      As you know, I represent Dongbu Insurance Company, Ltd. ("Dongbu") in this matter. This letter is Dongbu's response to any request of OKP (CNMI) Corporation and certain related persons ("OKP") for Dongbu to defend and indemnify OKP in connection with various pending claims made against OKP in connection with OKP's work on the Rota airport expansion. This letter is based on the applicable policies Dongbu issued to OKP, and also on the claims information that OKP has made available to date to Dongbu.

**Background**

      OKP entered into a contract with the Commonwealth Ports Authority ("CPA") to perform certain construction work on the Rota airport. The contract was the Rota International Airport Runway 09/27 Extension Phase I Project No. CPA-RA-001-03 (the "construction contract").

      The construction contract required OKP to obtain certain insurance. As set forth more specifically in the construction contract, OKP was required to obtain the following insurance:

1. Workmen's compensation ("WC") insurance;

2. Comprehensive automobile liability ("Auto") insurance

3. Comprehensive general liability ("CGL") insurance; and

4. Builder's risk insurance to cover natural disasters.

Maya B. Kara
Re: Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project
03/05/07
Page 2

OKP requested that Dongbu issue the required insurance coverage. Dongbu complied, and issued the following policies:

1. WC insurance;

2. Auto insurance, Policy No. 150230 (KMA-09102-S00) (the "Auto policy"), with a separate Inland Floater Policy to cover damage to certain specified heavy equipment (the "heavy equipment floater"); and

3. Contractor's All Risk policy, Policy No. KMCR0015-S00 (the "CAR policy"), which included two coverage parts, one for material damage to provide the builder's risk coverage for specified natural disasters as required by the construction contract, and the other for the CGL coverage as also required by the construction contract.

I do not seem to have the applicable portion of the construction contract, but I believe that the construction contract also required OKP to obtain performance and payment bonds. In any event, Dongbu also issued Bond No. KIC-10229-PF/PM (the "bond") to OKP, which included both performance and payment parts.

With respect to the Bond, I believe that neither of our offices initially had a copy of the usual indemnity agreement that accompanies a bond. Hence, we were unclear regarding any effect the Bond might have in this matter. Enclosed is a complete copy of the Bond, including the indemnity agreement (and cover transmittal page). As you can see, the indemnity agreement executed by OKP makes it clear the Bond in this matter is a typical performance/payment bond. Hence, it is not OKP that would make claims under the Bond. Instead, CPA and possibly certain other third parties such as subcontractors would make claims under the Bond, and then OKP would be required to fully indemnify Dongbu for any payments Dongbu made under the Bond and any fees and expenses incurred by Dongbu in processing any such claims under the Bond.

It is my understanding that OKP agrees that the WC insurance and heavy equipment floater covering damage to heavy equipment are not applicable to the claims that have been made in this matter. It seems that OKP can now agree the Bond is also not applicable to the claims made against OKP in this matter. Please let me know if this is incorrect, or in other words, if OKP believes there is any basis for coverage under the WC insurance, the heavy equipment floater or the Bond for the claims made in this matter.

With respect to the Auto policy and the CAR policy, it is my understanding that OKP is taking the position that there may be coverage for the claims presented. Hence, the following discussion addresses the claims made and those two policies in turn.

Maya B. Kara
Re: Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project
03/05/07
Page 3

## The Claims

It is my understanding that a total for four claims have been made:

1. *Joaquin Q. Atalig v. OKP, et al.*; CNMI Superior Court Civil Action No. 06-0119(R) (the "Atalig claim" or "Atalig lawsuit");

2. *Dr. Paterno B. Hocog v. OKP, et al.*; CNMI Superior Court Civil Action No. 06-0445(R) (the "Hocog claim" or "Hocog lawsuit");

3. The claim of Richard and Zena Manglona as presented in Ramon Quichocho's September 11, 2006 letter (the "Richard Manglona claim"); and

4. The claim of Glenn H. Manglona as presented in Ramon Quichocho's September 15, 2006 letter (the "Glenn Manglona claim").

As stated more specifically in the first amended complaint, the Atalig claim arises out of alleged damage to real property that OKP leased from Mr. Atalig.

The Hocog claim, Richard Manglona claim and Glenn Manglona claim (the three collectively "the Quarry claims") all arise out of the taking of backfill material for the construction work from the land of each of those three claimants.

### 1. The Atalig claim

The Atalig claim was filed on or about March 23, 2006 and OKP's counsel first began to defend OKP and the related defendants within weeks of that time. The first tender of this claim was made months later, in August 2006.

The Atalig lawsuit's current complaint is the first amended complaint. The lawsuit names twelve defendants by name and three unidentified Doe defendants. Two of the named defendants are CPA and a CPA official.

The other ten named defendants are all related to OKP (CNMI) Corporation. In addition to OKP (CNMI) Corporation, the parent of OKP (CNMI) Corporation is named, OKP Holdings Limited ("OKP Singapore"), as are five individuals as shareholders of OKP (CNMI) Corporation: Kim Peow Or, Toh Wat Or, Eric Nam Oh, He Kheng Soh and Brian M. Chen. The other three named defendants are alleged to be employees of OKP (CNMI) Corporation: Prasada Reddy Goluguri, Pramuan Jaiphakdee and Wilai Promchai.

The first amended complaint states seventeen "causes of action:"

1. Breach of contract;
2. Waste;

Maya B. Kara
Re: Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project
03/05/07
Page 4

3. Conversion—Historical and Cultural Artifacts;
4. Conversion—Soil and Other Minerals;
5. Conversion—Permanent Trees;
6. Conversion—Preexisting Building/Improvements;
7. Negligence;
8. Negligent Entrustment;
9. Intentional and/or Negligent Infliction of Emotional Distress;
10. Unjust Enrichment;
11. Nuisance;
12. Indemnification;
13. Principal-Agent Liability: Actual Authority;
14. Respondeat Superior;
15. Punitive Damages;
16. Violation of Open Government Meetings and Records Act; and
17. Attorneys' Fees.

Each cause of action (except those that go to CPA) arises directly out of the core facts in the first amended complaint. The first amended complaint alleges that OKP leased real property from Mr. Atalig for use as a barracks and parking area for OKP's equipment. The first amended complaint alleges that OKP damaged Mr. Atalig's property by tearing down and altering improvements on the land and by clearing land that OKP had been warned not to clear, all without the written consent allegedly required by the lease, and all in violation of Commonwealth law. First Amended Complaint, Paragraphs 60 through 69.

## 2. The Quarry claims

The Hocog claim has resulted in a lawsuit, and I believe that I have read a lawsuit has also been filed in connection with one of the other claims.

Based on the information provided by OKP, each of the Quarry claims appears to have essentially the same operative facts. There were discussions between OKP and the claimant regarding taking backfill material from the claimant's land, those discussions may or may not have become a binding contract, and then in any event OKP quarried backfill materials and damaged the claimant's land by: 1) not paying as agreed for the material; and 2) quarrying in a way that did damage beyond the agreed quarrying and/or not restoring the land to the condition agreed. Additionally, all of the quarrying is claimed to have been done in violation of Commonwealth law.

The only complaint provided to date is the complaint in the Hocog lawsuit. Paragraphs 37 through 42 set forth the basic allegations that OKP damaged Dr. Hocog's land. Again, while it is likely that the precise property damage being alleged in each case may vary, each of the Quarry claims arises out of the same basic operative facts. Based on those facts, the Hocog complaint sets forth fourteen "causes of action:"

1. Breach of contract;

Maya B. Kara
Re:  Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project
03/05/07
Page 5

2. Fraudulent misrepresentation;
3. Waste;
4. Conversion—Soil and Other Minerals;
5. Conversion—Permanent Trees;
6. Negligence;
7. Negligent Entrustment;
8. Intentional and/or Negligent Infliction of Emotional Distress;
9. Unjust Enrichment;
10. Nuisance;
11. Indemnification;
12. Principal-Agent Liability: Actual Authority;
13. Respondeat Superior; and
14. Punitive Damages.

Each of these arises out of the alleged improper quarrying of backfill materials from Dr. Hocog's land.

**The Auto policy**

The Auto policy was issued on December 27, 2005 and was in effect from December 15, 2005 to December 15, 2006. The limits of liability for the thirty-one scheduled vehicles is a combined single limit of $3,000,000 in property damage.

Based on the information provided to date, there does not appear to be any coverage or obligation to defend under the Auto policy in connection with the claims presented.

1. Atalig claim

The following terms and conditions of the Auto policy bar any coverage or duty to defend by Dongbu in connection with the Atalig claim.

First, the Auto policy's declarations page requires "immediate" notice of claims be provided to the claims adjusting company indicated. The Auto policy's Condition 3 provides that "the insured shall immediately forward to the [insurer] every demand, notice, summons or other process" received. The Atalig claim was filed in March 2006 and OKP had knowledge of the lawsuit at least since early April 2006. OKP first provided notice to Dongbu of the claim approximately four months later, in early August 2006. That is not "immediate" notice. Additionally, OKP actively defended the claim during that period. That is contrary to the Auto policy generally, which provides that the insurer and not the insured will defend any lawsuit. Condition 11 expressly prohibits the insured from incurring, except at the expense of the insured, any expense beyond emergency medical care.

Second, Insuring Agreement I, Coverage B, Property Damage Liability, provides:

Case 1:08-cv-00002   Document 23-15   Filed 06/11/2008   Page 7 of 11

Maya B. Kara
Re: Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project
03/05/07
Page 6

> To indemnify the insured for all sums which he shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident* and arising out of ownership, maintenance or use of the automobile.

(emphasis added)

The provision for Coverage A, Bodily Injury Liability, has the same provision regarding "accident" to the extent that any bodily injury claim is being made. The conduct made the basis of the claims is not an "accident" according to the plain meaning of the word. *Ito v. Macro Energy, Inc.*, 4 N.M.I. 46, 68 (1993)(just because a term is not defined does not mean it is ambiguous; terms will be construed according to their plain and obvious meaning). Instead, regardless of the many causes of action stated in the amended complaint, all of the alleged conduct on the part of OKP and its employees and agents is alleged to have been intentional. OKP cleared land and partially tore down and rebuilt improvements. *See especially* first amended complaint, paragraphs 65-67. Again, none of that is an "accident" according to the plain meaning of the word. In fact, this would seem to be precise opposite of an accident, such as where an OKP equipment operator, for example, might have inadvertently struck and damaged a building or vehicle while using a scheduled piece of over-size construction equipment.

The legal authority is in agreement:

> The term "accident" as used in an automobile liability insurance policy means an unexpected happening without intention or design which produces injury or damage. That is, "accident" is generally construed to relate to the cause rather than the effect, not that the cause must be accidental. Conversely, the result is not "accidental" even though it was unexpected.

Couch on Insurance 3rd, § 119.2 (*citations omitted*).

*See also for example Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973)(insured's removal of soil from property under mistaken belief it had authority to do so was not accidental). Hence, the issue is not whether OKP's clearing of the land resulted in unexpected damage (although even that does not appear to be the case). Instead, the issue is whether the clearing itself was intended, which of course is alleged (and apparently undisputed).

The intentional conduct alleged may further be outside the scope of insurable risks pursuant to the Commonwealth Insurance Code and public policy, which provides that willful acts and illegal conduct are not insurable. 4 CMC § 7505(b). In particular, note that the amended complaint alleges that all of the work was done without the agreed advance written consent provided for in the lease or the permits required by Commonwealth law. *See especially* first amended complaint, paragraphs 61-64 (no written consent), 65 (ignored warnings not to clear), and 68-69 (no permits).

Third, the Auto policy has several relevant exclusions. Exclusion IX(a) applies to property damage claims for "injury to or destruction of property owned by, rented to, in charge of or transported

Maya B. Kara
Re: Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project
03/05/07
Page 7

by the insured." This exclusion applies because the claim is that all the damage was to property leased to and in the charge of OKP. *See for example State Farm Fire & Casualty Co. v. Kohen*, 424 N.E.2d 992, 995 (Ill.App. 1981); *and Rose Construction Co. v. Gravatt*, 642 P.2d 569, 571 (Kansas 1982)(exclusion would have applied but did not because of severability of interests clause in that policy). Exclusion V(a) excludes claims in connection with "liability assumed by the insured under any contract or agreement." This exclusion also applies to the extent that the claim is based on OKP's assumed obligations under the lease from Mr. Atalig to OKP.

In addition to the foregoing, coverage will be limited to: 1) losses occurring during the stated policy period; 2) OKP and its employees using the scheduled vehicles as provided in Insuring Agreement IV regarding who is an insured; 3) losses arising out of the use of scheduled (*i.e.* insured) vehicles; 4) the limits of liability stated in the policy; and 5) all other policy terms and conditions.

### 2. The Quarry claims

The same policy provisions apply with respect to the Quarry claims, and as such, Dongbu incorporates herein by reference as if set forth in full all of the foregoing Auto policy terms and conditions that are discussed above in connection with the Atalig claim.

As with the Atalig claim, regardless of the many causes of action stated in the Hocog complaint and whatever claims may be suggested in the demand letters, all of the alleged conduct on the part of OKP and its employees and agents is intentional. All of the alleged harm resulted from intentionally clearing land and quarrying backfill materials. *See especially* Hocog complaint, paragraphs 37-39. Intentionally clearing land without permission is not an "accident" according to the plain meaning of the word and the applicable legal authority.

Additionally, the insurance code provision cited above regarding intentional conduct and the two exclusions referred to above will also bar coverage in connection with the quarry claims. The "liability assumed under contract" exclusion at V(a) will apply to the extent the claims are based on the alleged contracts between OKP and the quarry claimants. The property controlled by the insured at IX(a) will make the policy inapplicable because OKP was, according to the quarry claims, exercising control over the quarried property.

### The CAR policy

The CAR policy was issued on January 19, 2006 and was in effect from January 16, 2006 to January 16, 2007 (or when work commenced on the construction project, pursuant to the Period of Cover set forth in the CAR policy form). The CAR policy has two coverage parts. One is for material damage to the construction works, which is not applicable (please let me know if in fact OKP believes this section is applicable). The other coverage part is for third party liability, and it is my understanding that OKP believes there maybe coverage under this section. The limit of liability for the third party liability coverage is $1,000,000 as stated more particularly in the CAR policy.

Based on the information provided to date, there does not appear to be any coverage or obligation to pay for defense costs under the CAR policy in connection with the claims presented.

Maya B. Kara
Re: Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project
03/05/07
Page 8

1. <u>Atalig claim</u>

The following terms and conditions of the CAR policy bar any coverage by Dongbu in connection with the Atalig claim.

First, General Condition No. 5 requires immediate notice of claims, and expressly bars any coverage under the policy where the insured does not provide notice to the insurer within 14 days of the insured being aware of the claim.

Second, the third party liability coverage is only applicable to "accidental loss of or damage to property." CAR coverage form, Third Party Liability section. As discussed above in connection with the Auto policy, the claims are not based on accidental loss according to the plain meaning of the term or the legal authority that has construed that language. *See also Martin Marietta Materials Southwest, Ltd. v. St. Paul Guardian Ins.*, 145 F.Supp.2d 794, 800 (N.D.Tex. 2001)(general liability insurer had no duty to defend negligence claims where insured intentionally diverted water and resulting damage downstream "naturally and foreseeably resulted"); *NAS Surety Group v. Precision Wood Products, Inc.*, 271 F.Supp.2d 776, 783 (M.D.N.C. 2003)(collateral damage caused by repair to defective work is foreseeable and thus not an "accident" or an "occurrence").

Additionally, while it is true that so-called "all risks" policies are often construed broadly, there are outside limits to what courts allow. First, the CAR policy in this case has the narrower "accident" language in the Third Party liability section, as discussed in the preceding paragraph. Second, even without that express language, courts require that, at a minimum, the loss must be fortuitous, or in other words, that the claimed damage cannot be the natural and foreseeable result of the insured's intentional acts. There is a lengthy discussion of this concept in *University of Cincinnati v. Arkwright Ins.*, 51 F.3d 1277 (6th Cir. 1995). The *Arkwright* court discusses a number of decisions and frankly, after extensive research, I cannot find any authority that would support coverage in this matter (for the Atalig claim or the Quarry claims). This is because OKP intentionally cleared the Atalig land and did the other work there, and OKP intentionally quarried the other properties that resulted in the Quarry claims—and then all of the alleged resulting damage was the natural and foreseeable result of the alleged actions (assuming only for the purposes of this matter that the claims are even true).

The intentional conduct alleged may further be outside the scope of insurable risks pursuant to the Commonwealth Insurance Code and public policy, which provides that willful acts and illegal conduct are not insurable. 4 CMC § 7505(b). In particular, note that the amended complaint alleges that all of the work was done without the agreed advance written consent provided for in the lease or the permits required by Commonwealth law. *See especially* first amended complaint, paragraphs 61-64 (no written consent), 65 (ignored warnings not to clear), and 68-69 (no permits).

Third, the third party liability coverage only applies to events "occurring in direct connection with the construction" that also occur on the site. CAR coverage form, Third Party Liability section. The Atalig claim arises out of events that occurred in indirect connection with the construction project, and that did not occur on the construction site.

Maya B. Kara
Re: Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project
03/05/07
Page 9

Fourth, Dongbu is not liable for OKP's defense costs or any other costs in connection with the claims unless incurred with the written consent of Dongbu, and any amounts paid would reduce the available policy limits. CAR coverage form, Third Party Liability section.

Fifth, a number of exclusions and endorsements may also apply to bar any coverage:

1. General Exclusion (c) excludes willful acts and willful negligence.

2. Exclusion No. 3 to the Third Party Liability section bars any coverage in connection with damage resulting from the removal of support from property.

3. Exclusion No. 4(b) to the Third Party Liability section excludes claims in connection with property "held in the care, custody or control" of OKP.

4. Exclusion No. 4(c) to the Third Party Liability section will apply to any claims arising from equipment licensed for road use (it is not clear whether the alleged property damage was done exclusively by heavy equipment not licensed for road use).

5. Exclusion No. 4(d) to the Third Party Liability section will apply to the extent that the Atalig claim is based on the contract entered into by OKP.

6. Endorsement No. 6 to the Terms and Conditions excludes loss or damage to "crop, forests and/or cultures", which will exclude claims to damage of the trees, plants, etc.

7. Endorsement No. 3 to Third Party Liability excludes pollution related damage.

8. Endorsement No. 5 to Third Party Liability excludes punitive damages.

In addition to the foregoing, coverage will be limited to: 1) losses occurring during the stated policy period; 2) only those claims made against the "insured" under the CAR policy; 3) the limits of liability stated in the policy; and 4) all other policy terms and conditions.

### 2. The Quarry claims

The same policy provisions apply with respect to the Quarry claims, and as such, Dongbu incorporates herein by reference as if set forth in full all of the foregoing CAR policy terms and conditions that are discussed above in connection with the Atalig claim.

### Conclusion

Dongbu provided the insurance coverage that OKP requested pursuant to its contact with CPA to perform the Rota airport construction project. If a natural disaster had damaged the construction works, then the CAR policy's Material Damage coverage part would have provided cover. If a third party

Maya B. Kara
Re:  Reservation of rights—claims against OKP (CNMI) Corporation and related parties in connection with Rota airport project
03/05/07
Page 10

visitor to the construction site had been injured, for example, by falling over or into the construction works, then the CAR policy's Third Party Liability coverage part would have been applicable. If there had been an automobile accident, then the Auto policy would have provided liability coverage. If any of the scheduled heavy equipment had been damaged, then the Auto policy's heavy equipment rider would have provided coverage.

In contrast, OKP did not request coverage in connection with the leasing and use of the Atalig land as a staging area, nor did OKP request coverage for its off-site quarrying work. Additionally, the Atalig claim and the Quarry claims are not, fundamentally, about any form of accident or fortuitous loss, and so neither the Auto policy nor the CAR policy is applicable. As set forth above in more detail, a number of other terms and conditions also bar coverage in whole or in part.

Based on the above, coverage litigation would seem to be a needless expense for both sides. However, if OKP disagrees, then Dongbu requests that the parties attempt to resolve the matter by agreement, or if that is not possible, by coverage litigation that is modeled to minimize the costs to both sides (without waiver or limitation of the policy provisions regarding dispute resolution).

Finally, Dongbu hereby reserves all of its rights under all policies that it issued to OKP without limitation to or by the foregoing, and Dongbu hereby confirms that it is not requesting that OKP waive any of its rights under those policies.

Please let me know if you have any questions on any of the above. Thank you for your consideration in this matter.

Very truly yours,

Thomas E. Clifford

cc:    Bruce L. Mailman (w/enc)(via email)
       Sean E. Frink (w/enc)(via email)