# TABLE OF CONTENTS

I. INTRODUCTION ............................................................. 1

II. APPLICABLE LEGAL STANDARDS ...................................... 5

    A. The burden of proof is on OKP, and the duty
       to defend is not unlimited ...................................... 5

    B. The insurance policies are not ambiguous .......................... 6

    C. The Court should not consider extrinsic evidence
       in determining the duty to defend ............................. 8

       1. The general rule: no extrinsic evidence..................... 9

       2. OKP agreed with this general rule long after it finally
          tendered the defense of this case to Dongbu ......... 9

       3. Even the cases cited by OKP point to a number of
          limitations on the use of extrinsic evidence ...........11

III. THERE WAS NO ACCIDNET UNDER THE POLICIES ...............13

    A. The actions underlying the Atalig claims are not
       accidental according to the plain meaning of the word ...... 14

    B. Review of the case law cited by the parties further shows
       that the actions underlying the Atalig claims are not
       accidental under the two policies .............................. 18

       1. The cases cited by OKP tend to support the same legal
          standard as advocated by Dongbu- foreseeability of
          results; but they are distinguishable on their facts ... 19

       2. *Maupin* and *McAllister* show there was no accident
          in this case ................................................. 22

       3. The majority approach is that the expected extent of
          harm is irrelevant ....................................... 24

IV. OTHER TERMS AND CONDITIONS BAR ANY
     OBLIGATION TO DEFEND ……………………………………….. 26

  A. The alleged damage to the Atalig Property is outside the
       scope of the CAR policy ………………………………….. 27

  B. The alleged damage occurred to property held in the care,
       custody and control of OKP, and as such, is excluded
       from coverage ……………………………………………….. 30

  C. The claims arise out of the lease, which is liability
       assumed under a contract and is therefore excluded
       from coverage ………………………………………………..34

V. OKP FAILED TO COMPLY WITH THE POLICIES'
     NOTICE REQUIREMENTS …………………………………….. 35

  A. OKP failed to comply with the policies' notice requirements …35

  B. OKP's late notice is not excused under the circumstances …….37

       1. OKP provided late notice …………………………….37

       2. The Insurance Code provisions are inapplicable ………. 40

       3. There is no basis to apply the notice prejudice
           rule in this case …………………………………….. 41

VI. OTHER ISSUES WHERE DISCOVERY MAY BE NEEDED ……… 42

  A. Intentional acts …………………………………………….. 43

  B. Punitive Damages …………………………………………. 43

V. CONCLUSION …………………………………………………. 44

TABLE OF AUTHORITIES

**CNMI Cases**
*Ito v. Macro energy, Inc.,* 4 N.M.I. 46, 68 (1993)                                                6,7,15,30,31


**Other Cases**
*Adobe Systems Inc. v. St. Paul Fire and Marine Ins. Co.,*
    2007 WL 3256492 (N.D. Cal. Nov. 05, 2007)                                   6
*American Motorists Ins. Co. v. General Host Corp.,* 919 F. Supp. 1506
    (D. Kan. 1996)                                                              41
*American States Ins. co. v. Dastar Corp.,* 318 F.3d 881 (9th Cir. 2003)          36
*Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633 (Tex. 1973)               22
*Allstate Insurance Co. v. McCarn,* 645 N.E.2d 20 (2002)                           5,19,20,24
*Allstate Ins. Co. v. Steinemer,* 723 F.2d 873, 875 (11th cir. 1984)             25,26
*Atmel Corp. v. St. Paul Fire & Marine Ins. Co.,*
    2006 WL 1009011 (N.D., Cal., 2006)                                          5
*Bankers Ins. Co. v. Macias,* 475 So. 2d 1216, 1218 (Fla. 1985)                   41
*Boeing Co. v. Aetna Cas. & Sur. Co.,* 113 Wash.2d 869, 877,
    784 P.2d 507 (1990)                                                         7
*Butler v. Clarendon Am. Ins. Co.,* 494 F. Supp. 2d 1112 (N.D. Cal. 2007)          5,6
*Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 860
    [13 Cal. Rptr. 2d 318])                                                      8
*Chief Indus. v. Great N. Ins. Co.,* 268 Neb. 450, 461 (Neb. 200)                 36
*Collin v. American Empire Ins. Co.,* supra, 21 Cal.App.4th at pp. 804–805         7
*County Mut. Ins. Co. v. Livorsi Marine Inc.,* 358 Ill.App. 3d 880,
    888 (Ill. App. Ct. 1st dist. 2004)                                        42
*Cutler-Orosi Unified School Dist. v. Tulare County School, etc.*
    *Authority* (1994) 31 Cal. app. 4th 617 [37 Cal. Rptr. 2d 106])           5
*Diamaco, Inc. v. Aetna Casualty and Surety Co.,* 97 Wn. app. 335, 337,
    983 P.2d 707 (1999)                                                         5
*Dryden Oil Co. v. Travelers Indem Co.,* 91 F.3d 278, 284 (1st Cir. Mass 1996)   34
*Farmers Ins. Co. v. Miller,* 87 Wash.2d 70, 73, 549 P.2d 9 (1976)                7
*Fid. Cas. Co.. v. Wrather,* 652 S.W.2d 245 (Mo. App. 1983)                        22
*Gulf Ins. v. State,* 43 Colo. App. 360, 607 P. 2d 1016, 1018 (1979)              28
*Gunderson v. Fire Ins. Exch.,* 37 Cal. App. 4th 1106, 1115
    (Cal. App. 1st Dist. 1995)                                                  11,12
*Haynes v. American Cas. Co.,* 179 A2d 900 (Md. App. 1962)                         22
*Herrera v. C.A. Seguros Catatumbo,* 844 So.2d 664 (Fl. App. 2003)                21
*Makarka v. Great Am. Ins. Co.,* 14 P.3d 964, 970 (Alaska 2000)                   15

*Marez v. Dairyland Ins. Co.*, 638 P. 2d 286, 289 (Colo. banc 1982)    28

*Martin Marietta Materials Southwest, Ltd. v. St. Paul Guardian Ins.*,
145 F. Supp. 2d 794, 800 (N.D. Tex. 2001)    19

*Martinez v. Hawkeye-Security Ins. Co.*, 195 Colo. 184, 576 P. 2d 1017,
1019 (1978)    29

*McAllister v. Hawkeye-Security Ins. Co.*, 215 N.E.2d 477 (Ill. App. 1966)    23

*McGroarty v. Great Am. Ins. Co.*, 36 N.Y.S. 2d 358,
329 N.E.2d 172, 364 (N.Y. 1975)    20

*Meyer v. Pacific Employers Ins. Co.*, 233 Cal.App.2d 321 (Cal. App. 1965)    22

*Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205,
11 Cal.Rptr.2d 918 (Cal.App. 3 Dist. 1992)    6, 7

*Mid-Century Ins. Co. v. Liljestrand*, 620 P. 2d 1064, 1067 (Colo. banc 1980)    7,28

*Miller v. Dilts*, 463 N.E.2d 257, 265-67 (Ind. 1984)    40

*Modern Development Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932,
940 (Cal. App. 2d Dist. 2003)    5,7,8

*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287
[24 Cal. Rptr. 2d 467, 861 P.2d 1153]    11,12

*Morner v. Giuliano*, 856 N.E.2d 602 (OH. App. 2006)    24

*Nas Surety Group v. Precision Wood Products, Inc.*,
271 F. Supp. 2d 776, 783 (M.D.N.C. 2003)    19

*Nationwide Insurance v. Board of Trustees of the University of Illinois*,
116 F/3d 1154, 1158 (7th Cir. 1997)    25

*Nationwide Ins. v. Zavalis, 52 F3d 689, 695 (7th Cir. 1995)*    13

*North Pacific Ins. Co. v. Christensen* 143 Wash.2d 43,
17 P.3d 596 (Wash., 2001)    7

*Ohio Cas. Inc. Co. v. Carman Cartage Co.*,  262 Neb. 930,
636 N.W.2d 862 (2001)    36

*Ohio Casualty Ins. Co. v. Guaranty Nat'l. Ins. Co.*, 197 Colo. 264,
592 P. 2d 397, 398 (1979)    29

*Parry v. Maryland Casualty Co.* (1930), 228 App. Div. 393, 395,
240 N.Y.S. 105, 107    33

*Quincy Mutual Fire Ins. Co. v. Abernathy*, 469 N.E.2d 797 (Mass. 1984)    21

*St. Paul Fire & Marine Ins. Co. v. Sup. Ct. (County of Yuba)* (1984)
161 Cal. App. 3d 1199, 1202 [208 Cal. Rptr. 5]    7

*Shelby Cas. Ins. Co. v. H.T.*, 391 N.J. Super. 406 (App.Div. 2007)    21

*Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164,
192 (D.Conn. 1984)    29

*State Farm Gen. Ins. Co. v. Emerson*, 102 Wash.2d 477, 480,
687 P.2d 1139 (1984)    7

*State Farm Fire & Casualty Company v. Kohen*, 424 N.E.2d 992,
994, 995 (1981)    31-34

*Stevens v. United General Title Ins. Co.*, 801 A.2d 61 (D.C., 2002)    9
*United States v. Conservation Chem. Co.,* 653 F.Supp. 152,
      199 (W.S. Mo. 1986)    34

**Other Authority**
*Couch on Insurance* (3.Ed) § 172.33    44
*Couch on Insurance* (3.Ed) § 200:19    8, 12
*Couch on Insurance* (3.Ed) § 209.9    12

Thomas E. Clifford
Attorney at Law
2nd Floor, Alexander Building, San Jose
P.O. Box 506514
Saipan, MP 96950
Tel: (670)235-8846
Fax: (670)235-8848

*Attorney for Defendant Dongbu Insurance Company, Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DONGBU INSURANCE COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> OKP (CNMI) CORPORATION and JOAQUIN Q. ATALIG, <br><br> Defendants. | Civil Action No. 08-0002 <br><br> **DONGBU'S CONSOLIDATED:** <br> **1) REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT; and** <br> **2) OPPOSITION TO OKP'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> **Date: July 10, 2008** <br> **Time: 1:30 p.m.** <br> **Judge: Hon. Alex R. Munson** |

### I.
### INTRODUCTION

The issue before the Court is straightforward: whether Dongbu has a duty to defend OKP in the Atalig lawsuit. Dongbu has no duty to defend OKP in the Atalig lawsuit. The various complaints in the Atalig lawsuit all allege that OKP cleared land with a bulldozer despite being warned not to clear the land and why, and all in violation of Commonwealth law. That is

Page 1 of 46 pages

1   intentional conduct with foreseeable results.  It is not an accident under either of the two policies.

2       OKP responds that it's not so simple, that it all comes down to a single bulldozer driver

3   independently deciding to bulldoze debris into another area on his own.  OKP argues that this is

4   intentional conduct, but with unintended results, and that this is the standard for an accident

5   under the policies.  OKP attempts several big leaps to reach that far.  First, OKP claims that the

6   policy provisions are ambiguous because they are not defined.  Second, OKP broadly claims that

7   extrinsic evidence is generally admissible, and apparently for any purpose and regardless of

8   whether such alleged evidence was developed well after the various complaints were filed, and

9
10  with this Court in the coverage case being asked to make broad findings of fact when such issues

11  remain open in the underlying lawsuit.  OKP also ignores the extrinsic evidence that does not

12  favor it.  Third, OKP argues for a legal standard where there would always be a duty to defend in

13  that an insured would always simply claim that, never mind those allegations in the complaint,

14
15  our actions were intentional but we did not intend the results.  OKP's leaps fall short.

16      First, as the CNMI Supreme Court has ruled, policy provisions are not ambiguous just

17  because they are not defined, but instead, they should be interpreted according to their plain and

18
19  obvious meaning.  Second, extrinsic evidence is not admissible as a general rule to determine

20  whether there is a duty to defend.  Even if extrinsic evidence is allowed, the insured cannot

21  simply rely on its own interpretation and claims about that evidence.  In fact, even if this Court

22  looks to the narrow slice of extrinsic evidence submitted by OKP as exhibits to its briefs, there is

23  nothing in that evidence to rebut the allegations that OKP was warned not to clear land because

24
25
26

of historical artifacts.   Just the opposite—the evidence shows that OKP knew the land had

artifacts on it, that it knew it was not to allowed to clear the land, and that it did so anyway

without obtaining the various permits required by Commonwealth law.   Third, and regardless of

the language used by various courts in the case law, the great majority of cases require that the

results of the intended act be unforeseeable.   Here, OKP could of course have foreseen that when

it intentionally bulldozed into the 'do not disturb' area the land and anything on it (again, that

was not to be disturbed) would be damaged.   The results are even more predictable given that

OKP knew the land had historical artifacts on it and OKP still failed to obtain the required permit

from the Commonwealth Historic Preservation Office ("HPO") and the other permits required by

law.   Review of the cases cited by both parties supports this conclusion.

Even OKP itself never thought of the bulldozing as an occurrence under the policies.

OKP never reported the damage when it allegedly occurred in late 2005, and OKP never reported

that any claims were being made against it in January 2006 as a result of that damage.   OKP

never tendered the original complaint, and instead OKP hired counsel to defend OKP and the

other defendants and then that counsel began the active defense of OKP in the Atalig lawsuit.

Indeed, OKP never even requested any insurance coverage in connection with the lease of the

Atalig land, and this is so even though OKP had already entered into the Atalig lease when it

went to Moylan's to request insurance coverage in connection with the OKP contract with CPA.

From the very first meeting of counsel forward, Dongbu always took the position that it

could not see how it had any obligation under the policies for the claims being presented and that

it was reserving all rights under the policies and not asking OKP to waive any of its rights, but that it would work with OKP to resolve the matter by agreement if possible. OKP seemed in no particular hurry in the coverage discussions with Dongbu, and of course this was not surprising since it had already been defending itself for months in the Atalig lawsuit. Then, once the parties eventually determined that they could not resolve the matter by agreement, Dongbu brought this coverage action (and then the complaint was amended to include the second policy when OKP essentially changed its position and made an issue of that policy as well).

Hence, OKP's failure to provide notice as required by the policies is an issue under the policies, and it also demonstrates its own thinking about what happened and whether the policies applied. Additionally, a number of other policy provisions apply, either to bar or limit Dongbu's obligations under the policies, and those are addressed below.

Finally, Dongbu will separately respond to OKP's two statement of fact submissions. OKP submitted one in support of its motion for summary judgment and one in support of its response to Dongbu's motion. OKP's two statement of fact submissions parallel each other and so, as with this consolidated brief, it is most efficient to submit a consolidated response. However, it is important to note that the operative facts regarding the basic duty to defend are undisputed:

> 1. Dongbu issued the two policies at issue to OKP and the contents of those policies are undisputed (*see* Declaration of Tamara L. Hunter, also filed separately on this date, which authenticates the two policies; *and see also* the forms submitted by OKP as Exhibits 6 and 7, which match, by Dongbu bates number, the forms submitted by OKP); and

2.  There have been three complaints filed in the Atalig case and their contents are undisputed.[1]

## II.
## APPLICABLE LEGAL STANDARDS

**A.  The burden of proof is on OKP, and the duty to defend is not unlimited.**

OKP bears the initial burden of proof to establish whether a duty to defend exists. *See Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 1009011 (N.D., Cal., 2006)(even if it is determined that insurer breached its duty to defend, *insured still bears burden of proving coverage*).[2]  As explained in *Butler v. Clarendon Am. Ins. Co.*, 494 F. Supp. 2d 1112 (N.D. Cal. 2007):

> Insurance policies generally have two parts: (1) the insuring agreement which defines the type of risks covered under the policy; and (2) the exclusions, which remove coverage for certain risks which initially fall within the insuring clause. Exclusions serve two purposes: They avoid coverage for risks the insurer elects not to insure and limit coverage for risks normally covered by other insurance. Most policy forms contain numerous exclusions which limit or take away coverage provided by the insuring clause. Croskey,  supra § 3:127. Some exclusions also have related exceptions which give back coverage taken away by the exclusion. Thus, the exception's effect is somewhat analogous to a coverage

---

[1] There do appear to be fact issues regarding other issues, as is discussed below.  For example, the parties agree that the scope of any indemnity obligation cannot be determined until the facts in the underlying case are established.  As another example, regarding the Auto policy, there may be fact issues regarding the chain of tender and responses.  *See also* Clifford Declaration, Rule 56(f) sections.

[2] *See also*, *Diamaco, Inc. v. Aetna Casualty and Surety Co.*, 97 Wn. App. 335, 337, 983 P.2d 707 (1999)(determination of coverage is a two-step process: the insured must first establish that the loss falls within the scope of the policy; the insurer then has the burden of showing that the loss is excluded by specific language in the policy); *and*, *Modern Development Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 942 (Cal. 2d Dist. 2003)(the policyholder bears the initial burden of proving the potential for coverage) (*citing Cutler-Orosi Unified School Dist. v. Tulare County School, etc. Authority* (1994) 31 Cal.App.4th 617 [37 Cal. Rptr. 2d 106]).

provision. ***The burden is on the insured to prove the claim is within the basic scope of coverage, whereas the insurer bears the burden of proof on exclusions.***

*Butler v. Clarendon Am. Ins. Co.*, 494 F. Supp. 2d at 1126 (emphasis added).

Dongbu agrees, generally, with the common law contained in OKP's briefs, and the same basic principles of law are contained and listed in Dongbu's motion.[3]  The duty to defend is broader than the duty to indemnify, and there is typically a duty to defend if there is any potential for coverage.  However, the duty is not unlimited.  Where, as here, the allegations in the complaint do not fall within the scope of coverage of the policies, there is no duty to defend.

Additionally, as discussed below, the CAR policy does not contain any language requiring Dongbu to defend OKP, and instead the policy merely requires Dongbu to reimburse OKP for its reasonable defense costs where incurred with Dongbu's written consent.

**B. The insurance policies are not ambiguous.**

OKP claims that because the terms "caused by accident" in the Auto Policy and "accidental loss" in the CAR Policy are undefined, they are therefore ambiguous.  OKP supports this argument in part with reference to the CNMI Supreme Court's *Ito v. Macro Energy*, 4 N.M.I. 46 (1993).  However, OKP fails to point out that in *Ito* the court was just citing general

---

[3] Note that Adobe Systems, Inc. v. St. Paul Fire and Marine Ins. Co., cited by OKP in support of its proposition that this court should compare the complaint with the policy language <u>and any relevant extrinsic evidence submitted by the insured to see if there is a possibility of coverage</u> is not valid law as that decision has been vacated.  See Adobe Systems, Inc. v. St. Paul Fire and Marine Ins. Co., 2007 WL 3256492 (N.D. Cal. Nov. 05, 2007), Order Vacated by Adobe Systems Inc. v. St. Paul Fire and Marine Ins. Co., 2008 WL 1743879 (N.D. Cal., Apr. 08, 2008).  As discussed below, there is no general rule allowing extrinsic evidence in the determination of whether there is a duty to defend.

principles, and that the court actually stated in the very next paragraph:

> Simply because a term is not defined does not render it "ambiguous," as the plaintiff asserts. It will be afforded its plain and ordinary meaning "against the background of a layman's understanding of the entire policy."

*Ito*, 4 N.M.I. at 68, *citations omitted.*

The CNMI Supreme Court's approach in *Ito* is consistent with general insurance principles. *Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 11 Cal.Rptr.2d 918 (Cal.App. 3 Dist. 1992)(a court will give undefined terms the meaning that a reasonable person would ordinarily give them). As explained by the State of Washington Supreme Court in *North Pacific Ins. Co. v. Christensen* 143 Wash.2d 43, 17 P.3d 596 (Wash., 2001):

> The interpretation of insurance policy language is a question of law. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wash.2d 477, 480, 687 P.2d 1139 (1984). Undefined terms in an insurance policy "must be given a fair, reasonable, and sensible construction as would be given by an average insurance purchaser." *Mid-Century Ins. Co. v. Henault*, 128 Wash.2d 207, 213, 905 P.2d 379 (1995).

> "The terms of the policy must be understood in their plain, ordinary, and popular sense." *Farmers Ins. Co. v. Miller*, 87 Wash.2d 70, 73, 549 P.2d 9 (1976). "To determine the ordinary meaning of an undefined term, our courts look to standard English language dictionaries." *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wash.2d 869, 877, 784 P.2d 507 (1990).

This general approach has been repeatedly applied to the applicable terms in this case. For example, as explained in *Modern Development Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 940 (Cal. App. 2d Dist. 2003), unless the term "accident" is otherwise defined in an insurance policy, it is given a commonsense interpretation: i.e., an "unintentional, unexpected, chance occurrence." (*Citing St. Paul Fire & Marine Ins. Co. v. Sup. Ct. (County of Yuba)* (1984) 161 Cal. App. 3d 1199, 1202 [208 Cal. Rptr. 5]; *See also, Collin v. American Empire Ins. Co.*,

supra, 21 Cal.App.4th at pp. 804–805, *Chatton v. National Union Fire Ins. Co.* (1992) 10

Cal.App.4th 846, 860 [13 Cal. Rptr. 2d 318]).[4]

In sum, there is no legal basis to support the idea that the undefined policy terms,

generally, or the terms "caused by accident" and "accidental loss" in particular, are ambiguous

merely because they are not defined. To the contrary, established CNMI law shows that the

terms should be afforded their common sense meaning.

**C. The Court should not consider extrinsic evidence in determining the duty to defend.**

The general rule is that the duty to defend should be determined from a comparison of the

policy and the complaint. There are of course a number of exceptions to this rule. However,

there is no legal authority in support of OKP's approach, which is basically to make the

determination by comparing the policy to what the insured claims really happened. If that were

truly the standard, then of course there would essentially always be a duty to defend. The insured

would simply deny the allegations that defeated the duty to defend. In this case, the general rule

should apply, and the Court should not consider extrinsic evidence.

---

[4] Moreover, in *Modern Development Co.*, the trial court held that the commercial general liability policy did not provide coverage in the underlying action, as that complaint did not allege an "occurrence" within the meaning of the policy. On appeal, the appellate court agreed and concluded that the insurer did not owe a duty to defend. The court reasoned that the alleged underlying injuries were caused by the architectural configuration of the swap meet and the alleged failure to remove architectural barriers was not by an accident. The swap meet intended for the bathrooms to be configured as they were, and therefore the complaining party's inability to access the restroom facilities did not constitute an "accident" or "occurrence" and was not a covered event. *Modern Development Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932 (Cal. App. 2d Dist. 2003).

1. The general rule:  no extrinsic evidence.

The general rule is that courts do not consider extrinsic evidence in determining the duty

to defend, and instead they rely on the policy compared to the complaint.  This is known as the

"eight corners" rule.  *Stevens v. United General Title Ins. Co.*, 801 A.2d 61 (D.C., 2002) (the

**"majority of jurisdictions follow the eight corners rule"**)(emphasis added).  As explained in

*Couch on Insurance* (3.Ed) § 200:19. Duty Based on Complaint Only:

> Although there are exceptions, as a **general rule**, an insurer's duty to
> defend the insured is determined primarily by the pleadings in the
> underlying lawsuit, without regard to their veracity, what the parties
> know or believe the alleged facts to be, the outcome of the
> underlying case, or the merits of the claim.  It is the factual
> allegations instead of the legal theories alleged which determine the
> existence of a duty to defend.

(emphasis added).

It is surprising to hear OKP claim this is not the general rule, because it was OKP who

first advocated the "eight corners" rule.

2. OKP agreed with this general rule long after it finally
tendered the defense of this case to Dongbu.

OKP agreed with the general rule that extrinsic evidence is not available long after it

finally tendered the underlying case to Dongbu.  Dongbu provided its first written coverage

position to OKP via the March 5, 2007 letter of Dongbu's counsel.  *See* Declaration of Thomas

E. Clifford, filed separately, *and see* the letter at OKP Exhibit 10.  The letter invited OKP to let

Dongbu know if it disagreed with Dongbu's coverage position.

Consistent with the unhurried pace of the tender and discussions regarding whether there

was any coverage, OKP first responded back four months later via the July 12, 2007 letter of

OKP's coverage counsel, John D. Osborn.  OKP Exhibit 17.  OKP's counsel first confirmed that

OKP was only concerned with the Auto policy and the Atalig lawsuit, and then it continued:

> As Dongbu is no doubt aware, the duty to defend and the duty to indemnify are
> separate and distinct obligations under a liability policy.  The duty to defend is
> determined by application of the "eight corners" rule.  The insurer is to examine
> the "four corners" of the Complaint and the "four corners" of the policy.

OKP Exhibit 17, page 3.[5]

Additionally, following receipt of OKP's July 12, 2007 letter, Dongbu sent a follow up

inquiry to determine what claims and what policies remained in dispute.  *See* October 12, 2007

letter of Dongbu's counsel, OKP Exhibit 18.  In response, OKP informed Dongbu that it agreed

the CAR policy did not apply to the Atalig lawsuit:

> Unless we discover additional information or facts to the contrary we would agree
> that the W.C. insurance, CAR policy, bonds and heavy equipment floater are not
> applicable to the Atalig claim or the other three claims.

December 4, 2007 letter, OKP Exhibit 21.

These OKP letters clearly indicate:  1) OKP took the position that the "eight corner" rule

applied, which meant that no investigation was necessary; and 2) based on all facts available to

OKP as late as December 2007, there was nothing for Dongbu to be investigating in regard to the

---

[5] To be clear, some of the authority that OKP went on to cite does refer to the insurer's duty to consider facts reasonably ascertainable at the time, but none of that refutes the basic points that the "eight corners" rule is the general rule, and that in no case, as discussed below, is it the rule that the insurer must simply rely on the insured's version of events, judicial rulings that are issued months later or even more unworkable, consult with the underlying case's plaintiff regarding what evidence is being developed

[Footnote continued on next page]

Atalig lawsuit and the CAR policy, because OKP agreed the CAR policy did not apply. This is of course relevant in a number of ways in this case, but it also tends to impeach OKP's broad claims about investigating and the admissibility of extrinsic evidence.

### 3. Even the cases cited by OKP point to a number of limitations on the use of extrinsic evidence.

Even where courts allow the use of extrinsic evidence, there are a number of exceptions, and these are recognized by the cases that OKP cites.

First, there is no requirement to somehow be aware of facts that are only developed later and there is no continuing duty to investigate. Instead, the standard is what was reasonably available to the insurer at the time the claim was first tendered. In *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1115 (Cal. App. 1st Dist. 1995), the court held that the insurer's refusal to defend the third-party suit was properly made on the basis of the facts presented to it at the time appellants tendered the claim and that respondent did not have a continuing duty to investigate whether potential for coverage existed. *Gunderson*, 37 Cal. App. 4th at 1114. *Gunderson* explained that *Montrose Chemical Corp. v. Superior Court*, 861 P.2d 1153 (Cal. 1993), which is cited by OKP in its briefs, was controlling and speaks directly to an insurer's duty to investigate facts and allegations extrinsic to the face of the underlying complaint in determining its duty to defend. As explained in *Gunderson*:

---

[Footnote continued from previous page]

against the insured's version of events.

In *Montrose*, the California Supreme Court reviewed the "familiar principles governing adjudication of the insurer's duty to defend." It reaffirmed the rules established in *Gray v. Zurich Insurance Co.* (1966) 65 Cal. 2d 263 [54 Cal. Rptr. 104, 419 P.2d 168] that the duty to defend is broader than the duty to indemnify, that a liability insurer must defend a suit which potentially makes claims within the coverage of the policy, and that facts extrinsic to the allegations of the complaint may give rise to a duty to defend when they reveal a possibility that the claim may be covered by the terms of the insurance policy. On the other hand, the Supreme Court also reaffirmed that the extrinsic facts which may create a duty to defend must be known by the insurer ***at the inception of the third party lawsuit***; and that the duty to defend ceases as soon as it has been shown that there is no potential for coverage.

*Gunderson*, 37 Cal. App. 4th at 1113.

Thus, contrary to OKP's position, an insurer does not have a continuing duty to investigate whether there is a potential for coverage.  If it has made a decision on the basis of the third party complaint and the extrinsic facts knowable to it at the time of tender that there is no potential for coverage, the insurer may refuse to defend the lawsuit.

Further, extrapolating out what the facts might turn out be misconstrues the principle of "potential liability" under an insurance policy.  "Although an insurer's duty to defend is broader than the duty to indemnify, the duty to defend depends upon facts known to the insurer at the inception of the suit....Our Supreme Court, anticipating imaginative counsel and the likelihood of artful drafting, has indicated that a third  party is not the arbiter of the policy's coverage." *Id*, *citations omitted*.

Additionally, as set forth in *Couch on Insurance (3Ed.)*, §209.9:  Frivolous Defenses Distinguished:

> An insured cannot assert a frivolous defense to establish a liability insurer's duty to defend. It is only if an insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial, that evidence to support the insured's assertion be used to establish a potentiality of coverage under an insurance