Exhibit "A1"



**E-FILED**
**CNMI SUPERIOR COURT**
E-filed: Nov 26 2007 10:20PM
Clerk Review: Nov 27 2007 4:42PM
Filing ID: 17391364
Case Number: 06-0119-CV
Dora Decena

1  REXFORD C. KOSACK
   GLENN A. JEWELL
2  DOUGLAS DALEY
   LAW OFFICES OF REXFORD C. KOSACK
3  Bank of Hawaii Bldg., Third Floor
   P.O. Box 410
4  Saipan, MP 96950
   Telephone: (670) 322-8800
5  Fax: (670) 322-7800

6  Attorneys for Defendant Brian M. Chen

7  BRUCE L. MAILMAN
   MAYA B. KARA
8  Mailman & Kara, LLC
   PMB 238 PPP, Box 10,000
9  Saipan, MP  96950
   Tel: (670) 233-0081
10 Fax: (670) 233-0090

11 CARLSMITH BALL, LLP
   SEAN E. FRINK
12 Carlsmith Building, Capitol Hill
   P.O. Box 5241
13 Saipan, MP  96950-5241
   Tel: (670) 322-3455

14
   Attorneys for Defendants:
15 OKP (CNMI) Corporation
   Prasada Reddy Goluguri
16 Pramuan Jaiphakdee
   Wilai Promchai

17

18         IN THE SUPERIOR COURT OF THE COMMONWEALTH
                OF THE NORTHERN MARIANA ISLANDS
19

20
   JOAQUIN Q. ATALIG,                    )    Civil Action No. 06-0119(R)
21                                       )
               Plaintiff,               )
22                                       )
         vs.                             )
23                                       )    **OPPOSITION TO MOTION**
                                         )    **FOR PARTIAL**
24 OKP (CNMI) CORPORATION,               )    **SUMMARY JUDGMENT**
   BRIAN M. CHEN, PRASADA REDDY         )
25 GOLUGURI, PRAMUAN JAIPHAKDEE,         )    Presiding Judge Robert C. Naraja
   WILAI PROMCHAI,  AND DOES 1-3,        )    Date: December 10, 2007
26                                       )    Time: 10:00 a.m.
               Defendants.              )
27
28

1
2
**Introduction**

Plaintiff has sued defendant OKP (CNMI) Corporation ("OKP") for negligence. Plaintiff has now brought a motion for partial summary judgment on his negligence claim. Plaintiff purports that he is entitled to summary judgment on two bases: negligence *per se* and traditional negligence based on a duty under a contract.

Summary judgment is not proper on either basis. Summary judgment is not proper based on a negligence *per se* theory for several reasons, most notably because there is no evidence to support a finding that there was a violation of an applicable statute. Likewise, summary judgment is not proper based on a traditional negligence theory for several reasons, most notably because there are genuine issues of material fact regarding whether OKP breached any duty it owed to plaintiff. For these reasons, the motion must be denied.[1]

**I.**

**THE ACTUAL STANDARD FOR SUMMARY JUDGMENT MOTIONS**

Commonwealth Rule of Civil Procedure 56(c) states in relevant part that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, **show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.**

Emphasis added.

In his Memorandum, plaintiff claims that if the "evidence presented in opposition to a motion for summary judgment is of 'insufficient caliber' or 'quality' to allow a rational finder of fact to find for the opponent [OKP] **by clear and convincing evidence**, there is no genuine issue of material fact." Memorandum, p. 9, ll. 9 - 14 (emphasis added). Must OKP really show that there are genuine issues of material fact by "clear and convincing evidence." No.

Plaintiff cites *Concepcion v. American International Knitters Corp.*, 2 CR 940, 942

---

[1] This motion is brought against OKP only, but plaintiff is also seeking to hold Chen liable for OKP's conduct as a shareholder of OKP. Chen has motions pending which, if granted, would result in judgment in his favor and his removal from the case. As of today, however, Chen remains in the case. Therefore, he has joined in this Opposition.

- 1 -

1  (D.N.M.I. 1986) for this proposition. *Concepcion*, in turn, relies on *Anderson v. Liberty Lobby*, 477

2  U.S. 242 (1986). Plaintiff's reliance on *Concepcion* is misguided in two respects. First, *Anderson*

3  applied the test to the *proponent* of the motion [plaintiff], not the *opponent* [OKP]. Second, the

4  standard to be used in deciding the summary judgment motion is the same as the standard that will

5  be applied at trial. 477 U.S. at 252, 255-56. Here, that standard is preponderance of the evidence.

6  In *Anderson*, it was clear and convincing evidence, as it was a libel case. Hence, plaintiff's

7  suggestion that clear and convincing evidence is required here is wrong.

## II.

## STATEMENT OF DISPUTED FACTS

For OKP and Chen's Statement of Disputed Facts, please see the document filed contemporaneously herewith.

## III.

## SUMMARY JUDGMENT MUST BE DENIED ON THE NEGLIGENCE *PER SE* CLAIM

### A.    The Elements of a Negligence *Per Se* Claim

All negligence claims are premised on the theory that the defendant has failed to adhere to a specified duty of care. Usually that duty of care is established by referring to the common law. In the case of a negligence *per se* claim, however, the duty of care is supplied by the legislature when it passes a statute prohibiting certain conduct. The Supreme Court of Minnesota did a good job of summarizing negligence *per se* when it stated the following:

> Although negligence per se may be pleaded separately from negligence, the two causes of action are inseparably intertwined. "Negligence per se is a form of ordinary negligence that results from violation of a statute." "A per se negligence rule substitutes a statutory standard of care for the ordinary prudent person standard of care, such that a violation of a statute * * * is conclusive evidence of duty and breach."

*Anderson v. Dept. of Natural Resources*, 693 N.W.2d 181, 189-90 (Minn. 2005) (citations omitted).

*Anders*on also made clear that not everyone may rely on a statute in order to assert a

negligence *per se* claim. That is, only certain people may utilize a statute in bringing a civil claim. "For a statutory violation to satisfy the duty and breach elements, the person harmed by the violation must be among those the legislature intended to protect, and the harm must be of the type the legislature intended to prevent by enacting the statute." *Id.* at 190.

In the CNMI we look to the RESTATEMENT in order to determine the applicable law when the CNMI Code is silent on an issue. 7 CMC § 3401. The RESTATEMENT (SECOND) OF TORTS sets out the rules for a negligence *per se* claim. Section 286 is entitled "When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted" and states:

> The court **may adopt** as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> (a) **to protect a class of persons which includes the one whose interest is invaded**, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) **to protect that interest against the particular hazard from which the harm results**.

Emphases added. These standards can be summarized to mean that a statute may serve to provide the standard of care, but only with respect to certain persons and, for those persons, only with respect to certain harms. Furthermore, as the word "may" suggests, especially when the statute provides only for criminal liability, the Court need not adopt the standard suggested by the statute.

> The enactment or regulation may . . . provide only for criminal liability, and not for civil liability . . . . In such cases the initial question is whether the legislation or regulation is to be given any effect in a civil suit. Since the legislation has not so provided, **the court is under no compulsion to accept it as defining any standard of conduct for purposes of a tort action**.

- 3 -

§ 286, cmt. "d" (emphasis added).

Now we will examine the statute and evidence plaintiff is relying on. In doing so, we will show that there is no basis for summary judgment in plaintiff's favor.

**B.    No Summary Judgment in Favor of Plaintiff May Be Granted**

There are four reasons why plaintiff is not entitled to summary judgment on a negligence *per se* theory. First, the statute was not violated because even if something was destroyed, which is disputed, it was not done "knowingly." Second, the statute protects the public at large, not private landowners like plaintiff. Third, there is a genuine issue of material fact as to whether any artifacts were destroyed at all. Fourth, plaintiff has failed to show that any allegedly damaged artifact was designated, or eligible for designation, by the Historic Preservation Office as cultural or historic property.

        1.    <u>The Statute Was Not Violated – There is No Evidence an Artifact Was "Knowingly" Destroyed</u>

We must begin by examining the statute upon which plaintiff is basing his negligence *per se* claim. Plaintiff makes clear that he is relying on 2 CMC § 4841. *See* Memorandum, p. 12, ll. 16 - 22. Here is what that statute provides:

> It is unlawful for any person, partnership, business, corporation or other entity to **willfully remove or take** any artifact that is of historic or cultural significance to the people of the Commonwealth, or **knowingly destroy, remove, disturb, displace, or disfigure** any cultural or historic property on public or private land or in the water surrounding the Commonwealth as designated by or eligible for designation by the Historic Preservation Office as a cultural or historic property, unless the activity is pursuant to a permit issued under 1 CMC § 2382(g) and 2 CMC § 4831.

Emphases added.

There is no evidence of any remov[al] or tak[ing] of any artifact, so we are concerned here with the language relating to the verbs "destroy, remove, disturb" etc. What is most notable about

- 4 -

these verbs? They are preceded by the adverb "**knowingly**." In other words, the statute only prohibits a person or entity from *knowingly* destroying, removing, disturbing, displacing, or disfiguring certain cultural or historic property. There is absolutely no evidence that OKP "knowingly" engaged in any such conduct. In fact, the evidence is quite to the contrary. The state of the evidence is best shown by the "Declaration of Pramuan Jaiphakdee in Support of Motion for Summary Judgment" (filed October 26, 2007). That Declaration states in part:

> 3.    Reddy instructed me to first clear a border around the perimeter of the 100' x 150' box for him to check. I scraped a 3' wide boundary line around the area to be cleared. Reddy inspected the boundary line and found it was in the right location and had the right dimensions. Reddy later communicated to me that Mr. Yee had approved the clearing. I then proceeded to perform the clearing.
>
> 4.    At the time that I performed the clearing I knew I was to clear within the box. **I was not told of the existence of any cultural or historical artifacts or any other items of value on the Atalig property. Additionally, I had no other knowledge of any cultural or historical artifacts or any other items of value existing on the property.**

Emphasis added.

Jaiphakdee, who cleared the site, was not aware of the presence of any artifacts (if, indeed, any were present). As such, he could not have "knowingly" destroyed any artifacts. Thus, he could not be found guilty of violating 2 CMC § 4841 because he did not knowingly destroy any artifact. Knowing destruction of an artifact is the linchpin of plaintiff's case – yet, he has failed to prove it.

Quite simply, plaintiff does not even get to first base on his negligence *per se* claim. Nonetheless, we will show that there are three additional and independent reasons plaintiff's motion for summary judgment on his negligence *per se* claim must be denied.

2.    <u>The Statute Protects the Public at Large – Not Private Landowners Like Plaintiff</u>

- 5 -

Plaintiff's negligence *per se* claim also fails because plaintiff is not a person protected by the statute he is relying on.

It is black letter law that for a person to assert a negligence per se claim based on a statute, he must be within the class of persons protected by the statute. The Restatement makes this clear.

> A statute, ordinance, or administrative regulation may, because of its title, preamble, detailed provisions, history, or other reasons, be found to be intended for the protection of the interests of only a particular class of persons. If so, **a violation of the provision will be held to be negligence toward persons who are included within the particular class, but not toward those who do not fall within it**.

§ 286, cmt. "f" (emphasis added).

In the CNMI, the Government has virtually total authority and control over historic and cultural sites. This authority begins with the Constitution. The heading of Article XIV identifies places and things of cultural and historical significance as "Natural Resources." Article XIV, Section 3 goes on to state that such places "shall be protected and preserved and public access to these places shall be maintained *as provided by law*" (emphasis added).

The Legislature then enacted Public Law No. 3-39, the Commonwealth Historic Preservation Act of 1982 (the "Act"), declaring "a policy of the Commonwealth government to promote and preserve historic and cultural properties in the Commonwealth." 2 CMC § 4813.[4] To enforce that policy and "to implement the requirement of Section 3 of Article XIV of the Constitution," the Act created the Historic Preservation Office ("HPO"). HPO is required:

> (1) to "carry out the responsibilities and adhere to standards set forth for state historic preservation officers by the United States National Historic Preservation Act of 1966," 1 CMC § 2382 (a);

---

[4] The Historic Preservation Act is codified at 1 CMC §§ 2381-82, 2 CMC §§ 4831-32, and 2 CMC §§ 4841-42.

(2) to "conduct a comprehensive survey to identify all sites, structures, buildings, objects and areas of value in archaeology, history, architecture, engineering, and cultures of the Northern Mariana Islands," 1 CMC § 2382(d);

(3) to "**protect, preserve and regulate access to** places, **artifacts** and things of historic significance as required by N.M.I. Const. art. XIV, § 3," 1 CMC § 2382(f); and

(4) to "**issue or deny permits**, after review by the Review Board, **for use, access, and development of land containing cultural and historic properties**, and for the **taking of any artifact of historic or cultural significance from the Commonwealth** for cultural exchange, scientific identification, or donation to a nonprofit organization recognized on the basis of its cultural significance to the Commonwealth," 1 CMC § 2382(g).

Emphases added.

The Act, and all of its strict enforcement obligations, expressly apply to sites on *private* as well as public land. The Review Board is tasked with reviewing "all requests for permits upon *private land* and all proposed public land leases or uses in which the areas to be leased or used are determined by the board to contain cultural and historic properties[.]" 2 CMC § 4822(a). Similarly, § 4831 states: "Permits shall not be issued for similar activities [*i.e.* activities that might damage cultural and historic properties] on *private lands* until the Historic Preservation Office's survey of the subject lands is complete" and specified requirements are satisfied.

Under the law, a private landowner with a historic or cultural site on his property cannot do anything with the land that might damage the site without first getting a permit:

If a cultural or historic property is discovered during the course of construction or other land use, all work that may damage the historic property *shall cease in its vicinity* and the Historic Preservation Office shall be consulted in accordance with subsections (a), (b) and (c) of this section.

2 CMC § 4831(d) (emphasis added).

Thus, the Legislature clearly intended the Government, not private citizens, to be responsible for cultural and historic sites and artifacts. This governmental exclusivity is further evidenced by

- 7 -

two key difference between CNMI law and comparable statutes elsewhere. First, as Judge Govendo previously ruled in this case, there is no private cause of action or remedy under the Act. Opinion, filed July 25, 2006, at 4-5. Judge Govendo ruled that the language of the Act "is indicative of government enforcement, not a private remedy. The statute clearly provides a government agency with the means to review and issue permits, inspect land, and enforce the Historical Preservation Act for the benefit of the Commonwealth. However, the Court does not find a private remedy implicit in the statute." By contrast, some state statutes expressly provide for a private civil remedy.[5]

Second, as quoted above, the Act requires private landowners to get permits to use their own lands in the vicinity of historic or cultural sites, and subjects them to punishment if they fail to do so. Some state laws, however, provide exactly the opposite, *i.e.,* that landowners can do whatever they want with their lands, despite the presence of historic or cultural properties.[6] Thus, unlike other jurisdictions, under CNMI law, the *Government* - not private landowners - has near total authority and control over historic and cultural sites and artifacts, even when located on private property.

Given the CNMI's statutory scheme, it is clear that the government and the public at large, not an individual landowner like plaintiff, was intended to be the "class" protected by the statute at issue. The fact that plaintiff has no basis for asserting a negligence *per se* claim is shown by the very language of the Restatement. It states:

---

[5] *See, e.g.,* Nev. Rev. Stat. § 383.190 ("[i]n addition to the imposition of any criminal penalty, an Indian tribe or an enrolled member of an Indian tribe may bring a civil action to secure and injunction, damages and other appropriate relief against a person who violates" Nevada law prohibiting disturbance of burial remains).

[6] *See, e.g.,* Md. Code, State Fin. & Procurement, § 5A-345 ("Archaeological historic property on privately owned land") (statute regulating use of historic property "does not: (1) limit the use of the land by the owner or the owner's guest; or (2) require the owner or guest to hold a permit before conducting any activity on the land").

- 8 -

Many legislative enactments and regulations are intended only for the protection of the interests of the community as such, or of the public at large, rather than for the protection of any individual or class of persons. **Such provisions create an obligation only to the state**, or to some subdivision of the state, such as a municipal corporation. **The standard of conduct required by such legislation or regulation will therefore not be adopted by the court as the standard of a reasonable man in a negligence action brought by the individual.**

§ 288, cmt. "b" (emphases added).

As plaintiff is not within the class of persons intended to be protected by the statute he relies upon, summary judgment must be denied.[7]

3.    There is a Genuine Issue of Material Fact Regarding Whether Artifacts Were Destroyed or Damaged

As demonstrated in our Statement of Disputed Facts, there is extensive evidence to support a finding that, other than the water tank that OKP repaired,[8] none of the alleged artifacts existed. *See* Section 2.C. This means that there is a genuine issue of material fact regarding an essential element of plaintiff's case. As such, summary judgment must be denied.

This is a deceptively simple argument, but its logic cannot be denied. If there is a dispute as to whether the items plaintiff claims were destroyed actually existed, how can summary judgment

---

[7] Even if plaintiff *were* in the protected class, he would not be in a position to claim negligence per se for at least two reasons. First, plaintiff admits that he never obtained HPO approval to farm his land or build his hotel (thus he would be estopped from relying on the statute). Second, HPO, the agency charged with protecting these resources, found no damage had been done to any artifacts beyond the water tank. Report and Findings of HPO Investigation, Rota Lot No. 362-R-01 (OKP Clearing) dated July 19, 2006 (attached to Statement of Disputed Facts).

[8] In candor, OKP and Chen acknowledge that there is no evidence to dispute that one water tank may have been damaged. Therefore, this argument will not cover the water tank, nor will the parallel argument in the section dealing with traditional negligence. However, the presence of all of the other arguments prevent plaintiff from obtaining summary judgment with respect to the water tank.

- 9 -

be granted in his favor?  Quite simply, it cannot.

        4.    <u>Plaintiff Has Failed to Prove Any Item Allegedly Destroyed Was Designated, or Eligible for Designation, as Cultural or Historic Property</u>

Two CMC § 4841 states that it is unlawful to "knowingly destroy, remove, disturb, displace, or disfigure any cultural or historic property . . . as designated by or eligible for designation by the Historic Preservation Office as a cultural or historic property[.]"  Thus, plaintiff must prove the property at issue either: (1) has been designated by HPO as cultural or historic property; or, (2) is eligible for designation by HPO as such.  Here, plaintiff has done neither.

First, the evidence is that the property at issue has **not** been designated by HPO as cultural or historic property.  Deposition of Leon I. Taisacan, pp. 138-39; May 3, 2006 Declaration of Leon I. Taisacan, ¶ 16; Deposition of Joaquin Q. Atalig, p. 472.  Second, plaintiff has not met his burden of showing that the property is  eligible for designation by HPO as cultural or historic property.  There is simply no evidence on this point.  An absence of evidence on an essential element of a movant's claim requires that the motion be denied.

**IV.**

**SUMMARY JUDGMENT MUST BE DENIED ON THE "TRADITIONAL"**

**NEGLIGENCE CLAIM**

There are different ways to create a "duty" upon which a negligence claim can be based.  Plaintiff has attempted to create a duty in two different ways.  Initially, he tried to create a duty by relying on the language of a statute.  We have shown four different reasons why that attempt failed.

Next, plaintiff tries to create a duty based on the language of the Lease Agreement.  Specifically, plaintiff claims that Section 6 of the Lease Agreement created a duty for OKP not to commit waste.  As we will show below, there are two major reasons plaintiff's  attempt to create a

- 10 -

duty based on Section 6 of the Lease Agreement fails.

First, there is a genuine issue of material fact regarding whether Section 6, as it appears in the Lease Agreement, is enforceable. OKP has alleged fraud in the inducement regarding several sections of the Lease Agreement, including Section 6, and seeks reformation of these provisions. Based upon the version of the Lease Agreement actually agreed to by the parties, the conduct OKP is accused of engaging in was permitted. In summary, the very provision plaintiff relies upon may be found by the jury not to be enforceable. Thus, summary judgment is not appropriate.

Second, even if plaintiff's version of the Lease Agreement is enforced, plaintiff *still* does not have an actionable claim for negligence. This is because even the tortured language of the Lease Agreement as drafted by plaintiff's own counsel allows the conduct OKP is accused of engaging in. Thus, for this second reason, summary judgment is inappropriate.

Lastly, there is still a genuine issue of material fact on the issue of whether any of plaintiff's property was improperly damaged or destroyed. This is because there is evidence upon which the jury may base a ruling that no such damage or destruction occurred.

**A.  Summary Judgment Must Be Denied as There is a Genuine Issue of Material Fact Regarding the Very Section on Which Plaintiff Relies**

There is a genuine issue of material fact regarding whether Section 6 of the Lease Agreement may be enforced as presently written.

The Evidence That Section 6, and Other Provisions, Were Procured By Fraud

In order to show that plaintiff may not rely on the language of Section 6 of the Lease Agreement as the basis for creation of a duty, we will show how that section, and others, were

- 11 -

1  procured by fraud.

2      Brian Chen, on behalf of OKP, and plaintiff, on behalf of himself, reached what might be
3
4  described as an agreement in principle for OKP to lease the former Sunrise Hotel on Rota.  Both
5  men recognized that the agreement needed to be reduced to writing.  Attorney Perry Inos was hired
6  to prepare a draft.  May 16, 2006 Declaration of Brian M. Chen, ¶ 8.

7      Inos prepared a draft, which was given to OKP and plaintiff.  May 16, 2006 Declaration of
8
9  Brian M. Chen, ¶10.  They both agreed that certain changes were needed to the draft.  *Id.*, ¶ 11.  The
10  changes included: the stated month and year were wrong, the reference to an inventory list would
11  need to be deleted, the rent to be paid for an exercised option would be paid in three month
12
13  increments, the tax section needed to be changed so that both parties were responsible for their own
14  taxes, and references to exhibits "B" and "C" would need to be changed to "A" and "B."  *Id.*.  They
15  attempted to meet with Inos to have him make the changes.  Apparently, Inos was busy with his
16  father's political campaign in Rota and was not available to meet with Chen and plaintiff.  *Id.*, ¶ 12.

17      Plaintiff was anxious to resolve the matter in large part because he wanted to receive the
18
19  lease payment.  *Id.*  He recommended that attorney Ray Quichocho be utilized to make the changes.
20  *Id.*  Plaintiff retained Quichocho for this purpose.  *Id.*; October 26, 2007 Declaration of Brian M.
21  Chen, ¶ 7.  OKP was not represented by counsel with respect to the negotiation of the Lease
22  Agreement.  May 16, 2006 Declaration of Brian M. Chen, ¶ 14.
23
24      Plaintiff and Chen met with Quichocho to confirm that the desired changes had been made.
25  *Id.*  Quichocho produced a new document, which was provided to Chen and plaintiff.  *Id.*  Chen
26  reviewed the document that Quichocho produced.  *Id.*, ¶ 15.  It appeared to be acceptable as it was
27  the Inos draft with the changes that had been requested.  *Id.*

28

- 12 -

The next day, Chen and plaintiff met with Quichocho in the morning. *Id.*, ¶ 16. Quichocho asked for Chen's draft back and Chen complied. Then, Chen, on behalf of OKP and plaintiff, on behalf of himself, executed the new Lease Agreement. *Id.* Chen did not review the new Lease Agreement that he signed before he signed it because Quichocho assured him nothing had been changed from the version Chen was given before. *Id.* Quichocho said he would have the document recorded and give Chen a copy afterwards. *Id.* The next day, Chen received a copy of the file-stamped version of the Lease Agreement. *Id.*

<u>Key Changes to the Lease Agreement</u>

There are notable differences between the Inos draft ("Original Draft") and signed version ("Quichocho Draft") of the Lease Agreement that are **not** among the changes that OKP and plaintiff had requested that Quichocho make. *Id.*, ¶ ¶ 11, 17. The unauthorized changes include, among others, the following:

• Change to the Definition of "Premises"[9]

**Original Draft**:

In consideration of the rent hereinafter reserved and of the covenants herein to be observed and performed, Lessor hereby demises and leases unto Lessee, and Lessee hereby leases from Lessor **the real property** described in Section 1.

1. PREMISES: The Premises **consist of real property** in Northern Part (Area No. 4) Ginalangan, municipality of Rota, Commonwealth of the Northern Mariana Islands, as more particularly hereinafter described . . . including any improvements now or hereafter situated thereon . . . . The above-described parcel of real property, together with any existing improvements and improvements subsequently erected thereon during the term of this Lease and the appurtenances and other incidents associated therewith are collectively referred to in this Lease as the "Premises".

---

[9] In this section, all emphasis (other than underscoring of section titles) is added.

- 13 -

**Quichocho Draft:**

In consideration of the rent hereinafter reserved and of the covenants herein to be observed and performed, Lessor hereby demises and leases unto Lessee, and Lessee hereby leases from Lessor **the improvements** described in Section 1.

1.      PREMISES: The Premises **consist of all improvements situated on the real property** in Northern Part (Area No. 4) Ginalangan, Municipality of Rota, Commonwealth of the Northern Mariana Islands, as more particularly hereinafter described . . . . The existing improvements and improvements subsequently erected thereon during the term of this Lease and the appurtenances and other incidents associated therewith are collectively referred to in this Lease as the "Premises."

**Comment:**

In the Original Draft the "Premises" included the improvements *and* the real property as is the usual practice in lease agreements. Subsequently, the real property was removed from the definition of the "Premises." Thus, in the Quichocho Draft, the "Premises" only includes the improvements and not the real property.[10]

•     Change to "Use of Premises" Clause

**Original Draft:**

6.      USE OF PREMISES: Lessee may use, improve and develop the Premises or any part thereof for any lawful use or purpose, but primarily as office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operation on Rota.

**Quichocho Draft:**

---

[10] Although real property was removed from the definition of "Premises," the following sentence was added to the Quichocho draft: "Lessee shall also have the right to use the real property described below where the leased improvements are situated[.]" Apparently the drafter was trying to solve the problem created by claiming the Premises only included improvements – how does one lease improvements without leasing the real property they are situated on? This "solution" shows the awkwardness of trying to lease only the improvements on a 5 hectare parcel of land.

- 14 -

6.    USE OF PREMISES: Lessee may use, improve and develop the Premises or any part thereof for any lawful use or purpose, **provided that Lessee does not commit waste,** but primarily as office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operation on Rota.

**Comment**:

The Original Draft allowed nearly unfettered use of the "Premises." The Quichocho Draft purports to limit the use of the "Premises" by creating a condition to usage, specifically that waste is not allowed. This unapproved change to Section 6 is the linchpin to plaintiff's motion for summary judgment. He claims this language creates a duty of care not to commit waste. Because we have shown this language was agreed to, the summary judgment motion must be denied.

•    Deletion of Original Paragraph 13

**Original Draft**:

13.    REMOVAL OF IMPROVEMENTS, SOIL, ETC. NOT TO CONSTITUTE WASTE:

Lessee shall have the right in connection with any development of the property to remove vegetation and to excavate and to remove sand, soil, and other materials from the Premises. **In no event shall any such action constitute waste and the Lessor hereby releases Lessee from any obligation to restore the Premises to the condition existing upon the commencement date of this Lease**. . . .

**Quichocho Draft**:

Paragraph 13 of the Original Draft was **deleted in its entirety** and does not appear in the Quichocho Draft.
**Comment**:

Given the fact that a prohibition on waste was added to section 6, it is hardly surprising that this section, which specifically *allows* waste, was removed from the Quichocho Draft. There is a genuine issue of material fact regarding whether the Lease Agreement must be reformed to re-insert

- 15 -

this language which was removed without OKP's permission.[11]

- Change to "Lessee's Right to Build" Clause

**Original Draft:**

14.1.  Alteration/Building, etc. **The Lessee shall have the right** during the term of this Lease, **to erect, maintain, alter, remodel, reconstruct, rebuild, replace, and remove buildings and other improvement** on the Premise, and correct and change the contour of the Premises **pursuant to the plans and drawings attached hereto as Exhibits "B" and "C"**, and incorporated herein as part of this agreement by reference.  **Any other alterations** and changes **requires Lessor's consent**.

**Quichocho Draft:**

13.1.  Alteration/Building, etc. **The Lessee shall have the right** during the term of this Lease, **to erect, maintain, alter, remodel, reconstruct, rebuild, replace, and remove building and other improvement** on the Premise, and correct and change the contour of the Premises **pursuant to the plans and drawings attached hereto as Exhibits "A" and "B"**, and incorporated herein as part of this agreement by reference, **only with the prior written consent of Lessor**.  **Any other alterations** and changes **require Lessor's consent in writing**.

**Comment:**

It is obvious that OKP indicated in lease negotiations that it wanted to make the changes reflected in the two exhibits to the Lease Agreement, otherwise the documents would not have been made exhibits.  It is equally obvious that this is something the parties had agreed to.  Thus, the

---

[11] We know that plaintiff is attempting to claim negligence based on statute and negligence based on a lease provision.  At this late date, plaintiff has still not made clear if he is trying to allege negligence which is based on a common law duty without relying on the Lease Agreement.  Even if he is, the genuine issue of material fact regarding whether the original section 13 must be read back into the lease prevents him from prevailing on summary judgment on *any* theory of negligence with respect to any allegedly destroyed items.  This is because Section 13 allows waste, thereby abrogating any common law duty.

- 16 -

Original Draft indicated that (1) the changes in the exhibits could be made without the need for further consent; and (2) any other changes would have to be consented to by the Lessor.

This was changed in the Quichocho Draft to provide that (1) **the changes in the exhibits** could only be made *with the prior written consent of Lessor*; and (2) **any other changes** (not in the exhibits) could only be made *with the prior written consent of Lessor*.

Obviously, this makes absolutely no sense. The revisions in the Quichocho Draft make the two exhibits and the reference to them meaningless. Instead of having the language presently in section 13.1 of the Quichocho Draft, it could simply have read: "**Any** alterations or changes to the Premises require Lessor's consent." Why specifically mention the exhibits, when the changes contained in the exhibits would require consent just like any other changes?

The absurd result caused by the changes reflected in the Quichocho Draft is strong evidence in support of OKP's assertion that these changes were made at the 11th hour without OKP's consent or knowledge.

<u>Summary</u>

This history shows that OKP did not get what it bargained for. It shows that OKP bargained for the use of real property and improvements to conduct its business related to its construction work at the Rota airport. Based on Original Draft, it is clear that OKP expected to have essentially free run of the real property to conduct its business. Instead, 11th hour changes were made to the draft of which OKP was not made aware.

This evidence means there are genuine issues of material fact regarding whether the very provisions that plaintiff relies upon in the Lease Agreement were procured by fraud. If the trier of fact agrees with us and determines that such provisions were procured by fraud, those provisions

will have to be reformed.  Reformation is a remedy that is supported by the Restatement.  *See* RESTATEMENT (SECOND) OF CONTRACTS, § 166 ("When a Misrepresentation as to a Writing Justifies Reformation") and § 167 ("When a Misrepresentation is an Inducing Cause").  Upon reformation, plaintiff will have no basis for his negligence claim.

The evidence shows the following provisions – among others – were procured by fraud: 1, 6, and 13.1.  We have already set out the facts showing the factual basis for a finding that fraud occurred.  Plaintiff may dispute our version of the facts, but then we are left with just that: a dispute.  A dispute means that there exists a genuine issue of material fact.  In such a case, there can be no summary judgment.  Here is why.  If the trier of fact believes our version of the facts:

- Section 1 of the Lease Agreement will be reformed and the "Premises" will include the real property, not just the improvements.

- Section 6 of the Lease Agreement will be reformed and waste will no longer be prohibited.  (Likewise, section 13 of the Original Draft will be restored and waste will specifically be allowed in certain important situations.)

- Section 13.1 of the Lease Agreement will be reformed, meaning OKP did not need permission to make the renovations reflected on the exhibits to the Lease Agreement.

With these provisions properly reformed, plaintiff would have no basis for his summary judgment claim.  As such, his motion must be denied.

**B.    Even Under the Quichocho Draft, There is No Breach of Any Duty**

Above, we showed that plaintiff may not rely on Section 6 as it appears in the Quichocho Draft.  In this section, we will show that even if the Quichocho Draft of the Lease Agreement controls, plaintiff's motion must still be denied.  This is because even under the Quichocho Draft,

OKP did not breach any duty it owed to plaintiff.

Plaintiff claims that pursuant to the Lease Agreement, OKP had a general duty not to commit waste. *See* Memorandum, p. 12, ll. 27-28. Actually, that is not what the Lease Agreement says.

Section 6 states:

> USE OF PREMISES: Lessee may use, improve and develop the ***Premises*** or any part thereof for any lawful use or purpose, **provided that Lessee does not commit waste,** but primarily as office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operation on Rota.

Thus, the Quichocho Draft added a condition that OKP may not commit waste on the "Premises." But, one must also remember that the Quichocho Draft also changed the definition of "Premises" *to include only improvements and to exclude the real property*. Thus, due to plaintiff's own tinkering with the language of the Lease Agreement, there is a condition prohibiting OKP from committing waste with respect to the improvements, but *there is no condition prohibiting OKP from committing waste with respect to the real property*, or any other item on plaintiff's property.

In fact, despite plaintiff's best efforts to alter the language of the Lease Agreement, even the language in the Quichocho draft permits OKP to clear the real property. Section 13.5 is entitled "Soccer Field" and states that, "Lessee is authorized to setup, build, or construct a soccer field on the premises." There is no limitation regarding where the clearing for the soccer field may, or may not, take place or the extent thereof.

The Quichocho Draft authorized OKP to clear the real property to construct a soccer field. And, in fact, much of the clearing that is at issue in this case was for the purpose of constructing a soccer field. Statement of Disputed Facts, § 6. Furthermore, the additional clearing that occurred was for equipment parking and storage, a use that, again, was contemplated even by the Quichocho

- 19 -

Draft. *See* Section 6 ("primarily as office, barracks, equipment repair shop and workstation, **heavy and lightweight equipment parking and storage**, and as staging area related to Lessee's business and operation on Rota") (emphasis added).

What does this evidence mean? It means, at best for plaintiff, OKP had duty not to commit waste with regard to the *Premises* which, as defined by plaintiff's counsel, means only the improvements. As the drafter of this provision, it must be construed against plaintiff. *See* RESTATEMENT (SECOND) OF CONTRACTS § 206 ("In choosing among the reasonable meanings of a promise or agreement or term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.").

From a legal standpoint, this evidence means that OKP did not have a duty not to commit waste on plaintiff's real property or, at the very least, had been excused from such duty. As such, OKP did not breach any duty to plaintiff.

**C.    There is a Genuine Issue of Material Fact Regarding Whether Property Was Improperly Damaged or Destroyed**

We have noted that there is extensive evidence to support a finding that, other than the water tank that OKP repaired, none of the alleged artifacts existed. Likewise, with respect to the other items that plaintiff claims were damaged, there is extensive evidence that no such damage occurred.

For example, although paragraph 15 of plaintiff's statement of undisputed facts claims OKP "bulldozed down valuable trees" plaintiff makes no mention of trees in his negligence cause of action upon which his motion is supposedly premised. Regardless, OKP has adduced evidence that no such trees were destroyed. Statement of Disputed Facts, § 5.

Similarly, although paragraph 16 of plaintiff's statement of undisputed facts claims that OKP

"removed soil, rocks and minerals" plaintiff makes no mention of the same in his negligence cause of action. Regardless, OKP has repeatedly denied that it removed soil, rocks and minerals from plaintiff's property. Instead, it stockpiled the existing topsoil and returned it to its original site, along with significantly higher quality topsoil from off of the plaintiff's property. Statement of Disputed Facts, § 6. [12]

### Conclusion

To make out a claim for negligence, a plaintiff must be able to point to an applicable duty of care. Plaintiff claims that the applicable duty of care can be found in two places: first, in a CNMI statute and, second, in the Lease Agreement he entered into with OKP. He is wrong on both counts.

We have shown four reasons why the statute plaintiff points to does not provide a duty of care here, any one of which requires denial of plaintiff's summary judgment motion. First, the statute was not violated because nothing was "knowingly" destroyed. Second, the statute protects the public at large, not private landowners like plaintiff. Third, there is a genuine issue of material fact as to whether any artifacts were destroyed at all. Fourth, plaintiff has failed to show that any allegedly damaged artifact was designated, or eligible for designation, by the Historic Preservation Office as cultural or historic property. Thus, plaintiff has failed to show a violation of the statute and that he is protected by it.

We have shown three reasons why plaintiff is not entitled to summary judgment on his theory that the Lease Agreement provided the appropriate duty of care. First, there is a genuine

---

[12] Although plaintiff also alleges damages to structures such as the kitchen, any such damage was consented to by him. Statement of Disputed Facts, § 2.B. In addition, OKP, pursuant to the Lease Agreement, offered to repair any such harm and its offer was never responded to by plaintiff. Statement of Disputed Facts, § 4.

issue of material fact regarding whether Section 6, the section plaintiff relies upon to create a duty, is enforceable as it was inserted into the Lease Agreement by fraud. Second, even if plaintiff's version of the Lease Agreement is enforced, plaintiff *still* does not have an actionable claim for negligence because even the language of the Lease Agreement as drafted by plaintiff's counsel allows the conduct OKP is accused of engaging in. Third, there is a genuine issue of material fact on the issue of whether any of plaintiff's property was improperly damaged or destroyed. There is sufficient evidence for the jury to rule that no such damage or destruction occurred.

For all of these reasons, plaintiff's motion for partial summary judgment on his negligence claim must be denied.

Date: November 26, 2007.

Respectfully submitted,


/s/_____
Rexford C. Kosack, CNMI Bar No. F0140
Glenn A. Jewell, CNMI Bar No. F0176



/s/_____
Sean E. Frink, CNMI Bar No. F00212