# Exhibit "B"



E-FILED
CNMI SUPERIOR COURT
E-filed: May 16 2006 11:37PM
Clerk Review: May 17 2006  8:32AM
Filing ID: 11289675
Case Number: 06-0119-CV
Elsa Duenas

1     BRUCE L. MAILMAN(CNMI Bar Assoc. #F0153)

    MAYA B. KARA (CNMI Bar Assoc. #F0169)

3     Mailman & Kara, LLC

    PMB 238 PPP, Box 10,000

5     Saipan, MP 96950

    Tel:(670)233-0081

7     Fax: (670)233-0090

9     SEAN E. FRINK (CNMI Bar Assoc. #F0212)

    The Law Offices of Sean E. Frink, LLC

11     Second Floor, Tan Marakita Building, Garapan,

    PMB 161, Box 10003

13     Saipan, MP  96950

    Telephone: (670)233-2889

15     Sean.Frink@Saipan.Com

17     Attorneys for Defendant

    OKP (CNMI) Corporation

19

21                     **IN THE SUPERIOR COURT**

23                           **FOR THE**

25      **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

27

|  |  |  |
|---|---|---|
| **JOAQUIN Q. ATALIG,** | ) | Civil Action No. 06-0119 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-v-** | ) | **OKP (CNMI) CORPORATION'S** |
| | ) | **OPPOSITION TO PLAINTIFF'S** |
| **OKP (CNMI) Corporation, _et al.,_** | ) | **MOTION FOR PARTIAL** |
| | ) | **SUMMARY JUDGMENT** |
| | ) | |
| | ) | Hearing: June 12, 2006 at 9:00 a.m. |
| | ) | Judge:    Hon. Kenneth L. Govendo |
| **Defendant.** | ) | |
| | ) | |

43       Plaintiff's motion would have the Court believe that there is no genuine issue as to any

45 material fact.   In reality, the parties in are in complete disagreement as to all material facts.

47 Defendant disputes that it damaged or destroyed the items Plaintiff claims were damaged or

49 destroyed, and disputes that most of the items were even on the leased property.  Defendant

further disputes that it violated the contract. Moreover, the terms of the contract relied upon by Plaintiff for his motion are not enforceable because they were inserted by Plaintiff through misrepresentation. In sum, Plaintiff's Motion for Partial Summary Judgment, filed before Defendant has even answered the Complaint (and had an opportunity to assert additional defenses), should be summarily denied.

## I.
## Standard of Review

A motion for summary judgment, of course, can be entered only "if there is no genuine issue as to any material fact and …the moving party is entitled to judgment as a matter of law." Com. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court will never weigh the evidence or find the facts. Instead, the court's role is narrowly limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1999). Thus, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Hunt v. Cromartie,* 526 U.S. 541, 550-55, 119 S.Ct. 1545, 1551-52, 143 L.Ed.2d 731 (1999); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 199 L.Ed.2d 265 (1992); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1999); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970); *Furuoka v. Dai-Ichi Hotel*, 202 MP 5 P22, 6 NMI 374. 379 cited in *Rayphand v. Tenorio,* 2003 MP 12 P90, 6 NMI 575,599.

"Reasonable" inferences are inferences reasonably drawn from all of the facts then before the court, after sifting through the universe of all possible inferences the facts could support.

"Reasonable" inferences are not necessarily more probable or likely than other inferences that might tilt in the moving party's favor. Instead, so long as more than one reasonable inference can be drawn, and one inference creates a genuine issue of material fact, the trier of fact is entitled to decide which inference to believe and summary judgment is not appropriate. *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 1552, 143 L.Ed.2d 731 (1999); *Patterson v. Wilder Const. Co., Inc. v. United States,* 226 F.3d 1269, 1273 (11th Cir. 2000); *In Re Estate of Roberto,* 2002 MP 23 P16, 6 NMI 508, 512.

Additionally, summary judgment should not be granted if issues are raised regarding the state of mind of any of the contracting parties are raised. *Mendocino Envt'l Ctr. V. Mendocino County,* 192 F.3d 1283, 1302 (9th Cir. 1999). A typical problem involving state of mind in contract actions arises when the contract terms are ambiguous so that it is necessary to determine the intent of the parties to the contract. *Experimental Engineering, Inc. v. United Technologies, Corp.,* 614 F. 1244 (9th Cir. 1980); *Sure-Trip, Inc. v. Westinghouse Engineering,* 47 F.3d 526 (2nd Cir. 1995). Ambiguity may be present in various circumstances including when determining whether certain terms and conditions were omitted intentionally or by accident, *Heheman v. E.W. Scripps Co.,* 661 F.2d 1115 (6th Cir. 1981); whether the conduct of one of the parties can be deemed to have waived some of the contract rights, *Westinghouse Credit Corp. v. Shelton,* 645 F.2d 869 (10th Cir. 1981); and when there is a factual dispute as to the existence of a valid and binding contract in circumstances such as when there are allegations of fraud, *Centronics Financial Corp. v. El Conquistador Hotel Corp.,* 573 F.2d 779 (2nd Cir. 1978).

Finally, Rule 56(e) requires statements in affidavits to be based on personal knowledge and not based on information and belief; *Richardson v. Oldham,* 12 F.3d 1373 (5th Cir. 1994);

statements "based on information and belief ... [are] struck as not based on personal knowledge and therefore fail[] the requirements of Fed.R.Civ.P. 56(e)"; *Automatic Radio Mfg. Co. v. Haxeltime Research, Inc.,* 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950). Moreover, in order to be considered as a part of a summary judgment, documents submitted in support must be properly authenticated. *Citizens for Better Forestry v. United States Dep't of Agric.,* 341 F.3d 961, 972 n.7 (9th Cir. 2003); *Rayphand v. Tenorio,* 2003 MP 12 P95, 6 NMI 575, 600.

## II.
## The Material Facts Could Not Be More In Dispute

The declarations of Pramuan Jaiphakdee, Antonio K. Mesgnon, Yee, Chee Keong, Prasada Reddy Goluguri, and Brian M. Chen, submitted in support of this Opposition Memorandum and made a part hereof, demonstrate that the numerous "facts" alleged by Plaintiff[1] are clearly in dispute:

1.      Defendant disputes that the lease attached to the *Declaration of Joaquin Q. Atalig in Support of Plaintiff's Motion for Partial Summary Judgment* ("Plaintiff's Declaration") as Exhibit "B" is a valid and legally binding contract because Defendant's representative was induced by Plaintiff to execute it through fraudulent misrepresentation;

2.      Defendant disputes that it or any representative of it was ever informed by Plaintiff or any representative of Plaintiff of the alleged existence of the Chamorro and Japanese artifacts that Plaintiff alleges were destroyed and or damaged;

---

[1] Footnote 4 of Plaintiff's Declaration, paragraph 12 of Felipe Q. Atalig's declaration, and paragraph 11 of William T. Atalig's declaration are all made on information and belief. Statements made in support of motions for summary judgment upon information and belief are not based upon personal knowledge as required by Com. R. Civ. 56 and therefore should not be relied upon by the Court and should be stricken. *Automatic Radio Mfg. Co. v. Haxeltime Research, Inc.,* 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950). In addition, besides having been made upon information and belief, the allegations contained in footnote 4 of Plaintiff's Declaration, that Defendant is hunting on Plaintiff's property, are not mentioned at all in the Complaint, and therefore, are not appropriate for summary judgment. Defendant moves that the portions of the foregoing declarations cited above be stricken.

3.    Defendant disputes that any Chamorro artifacts, other than the latte stones aside Room 108 of the Hotel, exist on the area of the property that is related to this lawsuit. Plaintiff is not alleging that such latte stones aside Room 108 have been damaged in any manner whatsoever;

4.    Defendant disputes that it damaged, destroyed or otherwise injured in any way any latte stones, other Chamorro artifacts, or any Japanese artifacts (other than a portion of a small rock wall around a cement box that could be the "Japanese water tank" that Plaintiff's motion refers to);

5.    Defendant asserts that it immediately cured the damage to the small rock wall referred to in the foregoing paragraph when it was determined that it had been slightly damaged;

6.    Each of the individuals who apparently[2] submitted Declarations in support of Plaintiff's Motion for Summary Judgment, Felipe Q. Atalig, William T. Atalig, and Leon Taisacan are all very close family members of Plaintiff and thus, their statements should be viewed with deep suspicion because of probable bias;

7.    Documents drafted by Plaintiff before the dispute covered by this lawsuit arose, while they clearly put Defendant on notice as to the latte stones aside Room 108 of the Hotel (which Plaintiff does not allege have been damaged in any manner), fail to mention any other alleged Chamorro or Japanese artifacts on the property;

8.    Documents cited in Plaintiff's Declaration, while they make reference to WW II era Japanese artifacts on Plaintiff's property, and make reference to numerous ancient

---

[2] The Declarations of Felipe Q. Atalig, William T. Atalig, and Leon Taisacan were not submitted in compliance with Com. E-Filing R. 6.5.c, so we have no way of verifying that they, in fact, "signed" their declarations. Thus, each of these declarations should be stricken. Defendant hereby moves the Court the Declarations of Felipe Q. Atalig, William T. Atalig, and Leon Taisacan be stricken for the foregoing reason.

Chamorro latte and other sites throughout other parts of Rota, fail to make reference to any Chamorro artifacts or sites on Plaintiff's property;

9.    Defendant disputes that the latte stones that are now on Plaintiff's property and which Plaintiff does not allege have been damaged, are original to that site;

10.    Defendant denies that any trees, other than possibly a few small trees, very few in number and none taller than five feet, consisting of primarily baby coconuts that were not planted in any pattern, none of which are fruit or manicured trees, were removed by Defendant;

11.    Defendant denies that written consent from Plaintiff was required in order for Defendant to make any of the improvements/changes to the property that Defendant allegedly made; and

12.    Defendant asserts that Plaintiff gave his prior approval for Defendant to make all of the improvements/changes to the property that Defendant made, and that such improvements/changes cost Defendant more than $60,000 and caused a substantial increase in the value of Plaintiff's property.

13.    Defendant asserts that Plaintiff himself recognized that Defendant's work on the property was a substantial improvement to the property, and expressed his satisfaction and approval of that work.

### III.
### Argument

Plaintiff's Motion for Partial Summary Judgment claims that summary judgment is appropriate regarding the causes of action: (1) breach of contract, (2) waste, (3) conversion of cultural and historical artifacts, (4) conversion of soil and other minerals, (5) conversion of permanent trees, and (6) conversion of preexisting buildings/improvements because there is no

genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law.[3]  Even a cursory examination of the facts and law makes clear that Plaintiff could not be further from the truth.

**A.**  **There is No Breach of Contract Because Defendant Was Induced to Assent the Lease By Plaintiff's Misrepresentation and Because, Even If This Were Not So, The Acts That Defendant Agrees It Has Taken Were Authorized**

        1.      Plaintiff's Misrepresentation Induced Defendant's Assent to the Lease

As set forth in the Declaration of Brian M. Chen, Plaintiff played a "bait and switch" game on him with the lease.  Terms of the lease were negotiated, agreed to, and largely put in writing.  Mr. Chen was then deprived of legal counsel, and at the last minute, a new lease with completely new provisions both detrimental and undisclosed to Defendant, was placed in front of Mr. Chen to sign.  He was assured that the new lease contained the agreement that had previously been reached.  Of course, the new lease was not anything of the sort.  Instead, Plaintiff at the last second had inserted the very material provisions that are now in contention into the lease, and deleted at least one very material provision.  *Chen Declaration*, ¶¶ 8-17.

Legally speaking, what do these facts mean for Plaintiff's Summary Judgment motion? First and foremost, it means that if the facts set forth in Mr. Chen's Declaration are proven, the contract may be void.  Section 163 of the Restatement (Second) of Contracts, addresses this precise issue:

> If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent.[4]

---

[3] Defendant's motion for dismissal of Plaintiff's Second, Seventh, Eighth, Ninth, Tenth and Thirteenth causes of action is pending, and is scheduled for argument May 26, 2006.  If the Court grants Defendant's motion as to any of these causes, Plaintiff's motion for summary judgment will be mooted for each cause of action on which the Court grants dismissal.

[4] Identification of the premises to be leased is an essential term.  *Ada v. Sadhwani's, Inc.,* 3 N.M.I. 303.  Thus, Plaintiff's significant changes to the premises' identification constituted a change to the essential terms of the lease.

Illustration 2 in the same section addresses the present situation squarely:

> A and B reach an understanding that they will execute a written contract containing terms on which they have agreed. It is properly prepared and is read by B, but A substitutes a writing containing essential terms that are different from those agreed upon and thereby induces B to sign it in the belief that it is the one he has read. *B's apparent manifestation of assent is not effective.*

Emphasis added.

The facts set forth in the Mr. Chen's declaration are squarely on point with the illustration. Thus, Mr. Chen's declaration in itself establishes a valid defense to the breach of contract claim as set for in Plaintiff's Motion for Partial Summary Judgment.[5]

Moreover, even if the facts as alleged in Mr. Chen's Declaration were found eventually by a trier of fact to not be quite as egregious as stated, the lease would be voidable by Defendant. Illustration 3 in Section 163 of the Restatement (Second) of Contracts explains:

> A and B reach an understanding that they will execute a written contract containing terms on which they have agreed. A prepares a writing containing essential terms that are different from those agreed upon and induces B to sign it by telling him that it contains the terms agreed upon and that it is not necessary for him to read it. B's apparent manifestation of assent is effective if B had a reasonable opportunity to read the writing. *However, the contract is voidable by B under the rule stated in 164. See, Illustration 3 to § 164. In the alternative, at the request of B, the court will decree that the writing be reformed to confirm to their understanding under the rule stated in § 166. See, Illustration 1 to §166.*

Emphasis added.

Section 166, states, in relevant part:

> If a party's manifestation as assent is induced by the other party's fraudulent misrepresentation as to the contents or effect of a writing evidencing or embodying in whole or in part an agreement, the court at the request of the recipient may reform the writing to express the terms of the agreement as

---

[5] Of course, as Plaintiff brought its Motion before Defendant had an opportunity to answer, none of Defendant's defenses have yet been filed with the Court.

1    asserted.[6]

3         Thus, if, eventually, a trier of facts concludes that the Chen Declaration is accurate, the

5    lease will be void.  Alternately, if for instance the factual conclusion is that rather than a

7    misrepresentation as to the character or essential terms it is instead determined that the

9    misrepresentation was as to the contents or effect, the court would then reform the Lease to

11   express the terms as set forth in Exhibit "C" to the Chen Declaration with the changes set forth

13   in paragraph 11 of the Chen Declaration.

15        Either way, the Lease on which Plaintiff bases its request for summary judgment for

17   alleged breach of contract, does not stand.  For this reason alone, summary judgment is not

19   appropriate on the breach of contract claim.

21

23        2.   Even Absent Plaintiff's Misrepresentation, The Lease Allowed Defendant to Use
             and Improve the Property In the Manner That it Did

25

         Plaintiff claims that Defendant breached Sections 6 and 13.1 of the Lease attached to

27   Plaintiff's Declaration as Exhibit B.  Plaintiff's Memorandum, P. 11, ln.12.  Section 6 and 13.1

29

31   read:

33   6.   USE OF PREMISES: Lessee may use, improve and develop the Premises or any
          part thereof for any lawful use or purpose, provided that Lessee does not commit

35        waste, but primarily as office, barracks, equipment repair shop and workstation,
          heavy and lightweight equipment parking and storage, and as staging area related

37        to Lessee's business and operation on Rota.

39   13.1  Alteration/Building, etc.  The Lessee shall have the right during the term of this
           Lease, to erect, maintain, alter, remodel, reconstruct, rebuild, replace, and

41         remove building (sic) and other improvements on the Premise (sic), and correct
           and change the contour of the Premises pursuant to the plans and drawings

43         attached hereto as Exhibits "A" and "B", and incorporated herein by reference,
           only with the prior written consent of Lessor.  Any other alterations and changes

45         require Lessor's consent in writing.

47

49
_____

[6] Again, as Defendant has not yet had an opportunity to file its Answer, along with possible Crossclaims, it has not
yet had an opportunity to make a choice of remedies

OKP's Opposition to Plaintiff's Partial Summary Judgment Motion – Pg. 9

These are the very lease sections cited by Plaintiff as having been violated by Defendant, yet they clearly contradict each other in a very material manner. Section 6 allows lessee "to use, improve and develop" the Premises or any part thereof for any lawful purpose. Noticeably absent is any requirement of additional prior approval for such actions from Plaintiff. Section 13.1 contends to allow Defendant to "erect, maintain, alter, remodel, reconstruct, rebuild, replace, and remove building and other improvements, [and] change the contour," according to plans and possibly only with the approval of Plaintiff.

Of course, a written lease is a contract, subject to the same rules of construction as contracts. *Camacho v. L&T Int'l Corp*, 4 N.M.I. 323, 325-26 (1996). Where the language of a writing is plain and precise, the court can, as a matter of law, establish the parties' intent from the writing. *Ada v. Case at Juanny's Inc.*, 3 N.M.I. 303, 310 (1992); see also *Sablan Enterprises v. New Century Inc.*, 1997 MP 32, 5 N.M.I. 144. *Cabrera v. Young*, 2001 MP 19, ¶2. But where a lease contains ambiguities, it is axiomatic that the ambiguity is interpreted according to the meaning most favorable to the party that did not draft the contract. RESTATEMENT (SECOND) CONTRACTS, § 206.[7]

The Chen Declaration makes clear that it had to have been Plaintiff's counsel that drafted these sections of the Lease (Chen Declaration, ¶17). Thus, the clear contradiction of requiring prior written approval from Plaintiff (or not) should be construed against Plaintiff. No prior written consent was required. Thus, Defendant's alleged failure to obtain such written consent cannot constitute a breach of contract.

---

[7] Leases and other contracts frequently contain a clause purporting to govern construction of the contract to avoid or negate any presumption that might otherwise apply against the drafter of the document. The Lease has no such provision.

As to the apparent allegation that Defendant's alleged actions were unlawful because HPO and CRM permits were not obtained before hand, plaintiff is confusing manner and purpose, and the Lease only deals with purpose.  Section 6 clearly allows lessee "to use, improve and develop the Premises or any part thereof *for any lawful use or purpose...*" (Emphasis added).   As set forth in ¶ 18 of the Chen Declaration, all of the work that has been performed at Plaintiff's property has been performed solely for the purpose of supporting the performance of OKP (CNMI) Corporation's obligations under its contract with the Commonwealth Ports Authority for the extension of the Rota Airport Runway. As explained by Restatement (Second) Property: Landlord & Tenant, § 12.5, comment c:

> *When leased property is used for an illegal purpose.* The leased property is not used for an illegal purpose merely because an illegal act is committed on the leased property.  The use of the leased property for an illegal purpose connotes continuous illegal conduct being carried on with the leased property being used as the base of operations.

Even if true, Plaintiff's allegations of violation of CRM and HPO requirements by Defendant by not obtaining necessary permits do not connote continuous illegal activity. Plaintiff's use of the property is lawful and thus, in compliance with the contract.

Please see footnote 1 above, moving to strike Plaintiff's new and unsupported hunting allegations, and the sections below regarding allegations of waste and conversion, for Defendant's explanation that the actions Defendant agrees occurred do not constitute contractual breaches.

For the foregoing reasons, Plaintiff's request for summary judgment for alleged breach of contract should be denied.

**B.    Summary Judgment is Not Available for Waste**

The Restatement (Second) of Prop: Landlord & Tenant, § 12.2(1), *Tenant's Rights and*

*Obligations as to Changes in the Physical Condition of the Leased Property*, states as a general rule that:

> Except to the extent the parties to a lease validly agree otherwise, *the tenant is entitled to make changes in the physical condition of the leased property which are reasonably necessary in order for the tenant to use the leased property in a manner that is reasonable under all the circumstances.*

Emphasis added.

Comment c. further explains that the term *use of leased property in a manner that is reasonable under all the circumstances* is keyed to the uses of the leased property that are reasonable under all the circumstances. The assumption is that in the absence of a valid agreement otherwise, the parties intend that the tenant is to be free to make those changes in the leased property that are reasonably necessary to enjoy those uses.

As explained above, even the Lease signed by the parties, (as opposed to the lease that defendant thought it was signing)[8] clearly recognized that the purpose of the lease was for large scale commercial activities:

> Lessee may use, improve and develop the Premises or any part thereof for any lawful use or purpose, provided that Lessee does not commit waste, *but primarily as office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operation on Rota.*

Emphasis added.

Plaintiff cites *Camacho v. L&T Intl. Corp.,* 4 N.M.I. 323, 328 for its definition of waste, "[A]n impermissible 'change in the physical condition of ...leased property' <u>may</u> constitute waste." Emphasis added.  Of course, in order for the Court to grant Plaintiff's Motion for

---

[8] Defendant reiterates his argument in the foregoing section that the Mr. Chen's assent to the Lease attached to Plaintiff's Declaration as Exhibit "A" was induced by Plaintiff's misrepresentations.  Thus, any arguments made by Plaintiff regarding interpretation of that Lease included in the sections regarding allegations of Waste and Conversion, cannot be relied upon by the Court in deciding those portions of Plaintiff's Motion for Summary Judgment.

Summary Judgment, "may" just will not do it.  Instead, Plaintiff must be *clearly* "entitled to

judgment as a matter of law."  Com. R. Civ. P. 56.

In addition, Plaintiff's citation to *Camacho* leaves out the language in that case most

pertinent to this lawsuit.  The *Camacho* court, reviewing Lease language remarkably similar to

the Lease in this case, found that the defendant had not committed waste and explained the

facts that led to that decision:

> Here, *although L & T expressly agreed not to commit waste*, the terms of the
> lease agreement also authorized L & T to use the leased premises "*for any lawful
> purpose.*" The lease also entitled L & T "*to make improvements and alterations
> to the premises.*"  .  Such alterations, if made, were to "*remain on the premises
> after the termination of . . . [the] Lease Agreement* and . . . become the property
> of [Camacho] unless agreed to otherwise in writing by [Camacho]."

(Citations omitted and Lease language nearly identical emphasized).

Plaintiff also cites *Camacho* and the Restatement (Second) of Property: Landlord and

Tenant § 12.2(2) for the proposition that under certain circumstances, even a permissible change

to the property by a tenant may constitute waste and provides the following quote in support:

> Except to the extent the parties to a lease validly agree otherwise, there is a
> breach of the tenant's obligation [not to commit waste] if he makes permissible
> changes in the leased property and does not, when requested by the landlord,
> restore, where restoration is possible, the leased property to its former condition .
> . . .

Plaintiff's quote is significantly remiss.  Left out is the following Restatement (Second)

of Property: Landlord and Tenant subsection, subsection 12.2(3), which clearly explains:

> (3)  Duty of tenant to restore in case of permissible changes -- Except to the
> extent the parties to a lease validly agree otherwise, there is a breach of the
> tenant's obligation if he makes permissible changes in the leased property and
> does not, when requested by the landlord, restore, where restoration is possible,
> the leased property to its former condition **within the time provided in § 12.3 or
> within a reasonable time after the request to restore, whichever is later,**

Section 12.3 allows:

When the time specified in this section is controlling under the rules stated in §
12.2, in regard to the restoration of the leased property to its former condition by
the tenant, or in regard to the removal by the tenant of annexations he has made to
the leased property,
> (1) *that time is a reasonable time after the lease terminates*, if the
> termination of the lease is not due to a breach by the tenant of his
> obligation and the date of termination is not foreseeable by the tenant
> sufficiently far in advance to enable him to make the restoration or to
> accomplish the removal on or before the date the lease terminates;

The application of the facts, as set forth in Defendant's declarations, to the forgoing

law, make it abundantly clear that there has been no waste.  First and foremost, Defendant

denies vociferously that it destroyed, damaged, or otherwise caused injury in any way to latte

stones, other Chamorro artifacts, or any Japanese artifacts, other than possibly the Japanese

water tank referred to by Plaintiff.[9]  Regarding the item that Plaintiff apparently claims is a

Japanese water tank,  Plaintiff admits that it damaged the approximately one foot wall around

the tank when it was clearing the area that Plaintiff agreed should be used for the

equipment/recreation yard, but Plaintiff also makes clear that is immediately repaired the

damage to the wall as soon as it was learned of.  Declaration of Pramuan Jaiphakdee, ¶5.  Of

course, the lease provides a 30 days cure period and Plaintiff does not complain that the wall

repairs were not effectuated within the 30 days.

Further, although Defendant admits to removing a very few small trees and a very small

amount of covering brush and soil when it was clearing the area that Plaintiff agreed should be

used for the equipment/recreation yard, all of the trees were under five feet tall, and consisting

of primarily baby coconuts that were not planted in any pattern and were not fruit trees,

---

[9] Chen Declaration, ¶¶5 and 7 and Exhibits "A" and "B";  Declaration of Pramuan Jaiphakdee ("Jaiphakdee
Declaration") ¶¶4 & 5; Declaration of Antonio M. Mesgnon ("Mesgnon Declaration") ¶¶ 5-10; Declaration of Yee,
Chee Keong ("Yee Declaration") ¶5; Declaration of Prasada Reddy Goluguri ("Goluguri Declaration") ¶¶ 3-9.

manicured, or betelnut trees.[10]  The brush that was removed was nothing more than covering weeds close to the ground and moving the small amount of soil was necessary, expected, and agreed to by Plaintiff for the creation of the equipment/recreation yard.

The comments to Restatement (Second) of Prop: Landlord & Tenant, § 12.2  also explains that the removal by the tenant of reasonable amounts of timber for use on the leased property for repairs, for firewood, or for other reasonable purpose is reasonably necessary in order for the tenant to use the property in a reasonable manner.  This right of removal of timber is referred to as the tenant's right of estovers and the right to removal of grass is referred to pasture.  Another example cited in the same section is if the use of the leased property contemplated by the parties is for farming, trees of no special value that interfere with this use may be removed by the tenant.

As explained earlier in this brief, the law clearly allows that:

> Except to the extent the parties to a lease validly agree otherwise, *the tenant is entitled to make changes in the physical condition of the leased property which are reasonably necessary in order for the tenant to use the leased property in a manner that is reasonable under all the circumstances.*

Emphasis added.

Even as executed, the Lease clearly recognized that the Plaintiff's activities would require work such as clearing brush, removing small non-fruit or ornamental trees, and moving soil as:

> Lessee may use, improve and develop the Premises or any part thereof for any lawful use or purpose, provided that Lessee does not commit waste, *but primarily as office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operation on Rota.*

---

[10]  Jaiphakdee Declaration, ¶4; Mesgnon Declaration, ¶¶ 7, 9, & 10; Yee Declaration, ¶4; Goluguri Declaration, ¶ 3-9.

and

13.5 <u>Soccer Field</u>.  Lessor is authorized to setup, build, or construct a soccer field on the premises.

These Lease provisions make clear that it was fully expected that ground would have to be cleared for the yard and the soccer field.  Exhibit "A" to the Chen Declaration make clear that Plaintiff fully anticipated large scale commercial use and clearing of many areas throughout the property.  *E.g.* "your company is committed to build a soccer field, tennis court, basketball court, and other recreational facility... The entire lot #362 R 01 may be used and will be assigned to your company for this purpose," and "proposed repair shop for heavy equipment will be aligned with hotel ... not less than 100 feet from latte formation near room 108." Necessary to such clearance was the removal of small trees, brush, and the movement of minor amounts of soil.

Finally, even if the Court finds that the removal/movement of the trees, brush, and soil, although permitted, constitutes waste, all of these types of trees, brush, and soil can easily be replaced by Defendant before the lease terminates, as allowed by Restatement (Second) of Property: Landlord and Tenant §12.3.  There was no waste.  More importantly for now, the relevant facts are clearly disputed and plaintiff is not entitled to summary judgment.

**C.     Summary Judgment is Not Available in These Circumstances for Conversion Either**

Plaintiff claims that Defendant converted: 1) the alleged Chamorro and Japanese artifacts, 2) the "permanent" trees, 3) soil and minerals, and 4)  preexisting improvements, and that Plaintiff is entitled to summary judgment regarding these claims.  As explained above, defendant denies damage to the artifacts and states that the lease allowed it to take the actions that it admits to regarding the trees and soil.  The same applies to the improvements complained

of by Plaintiff related to his Conversion claim.[11]  As such, just as in the case of Plaintiff's waste

allegations,[12] summary judgment is not appropriate as to Plaintiff's Conversion allegations.

Plaintiff relies heavily on the Restatement (Second) of Torts §§ 222, 223 and 242 for his

definitions of Conversion.  Plaintiff readily admits no less than four times that "Conversion is

the act of willfully interfering with any chattel *without lawful justification*, whereby any person

*entitled to the chattel* is deprived of the possession of it."  Plaintiff's  memorandum, pp. 15, 17,

18, and 20.  Yet, Plaintiff fails to acknowledge that at least during the term of the lease, which

has not yet ended, Defendant has the right to possess and use the alleged chattels.  A section of

the Restatement (Second) of Torts, Section 252, makes this fact clear:  "One who would

otherwise be liable to another for trespass to a chattel or for conversion *is not liable to the extent

that the other has effectively consented to the interference with his rights*" (Emphasis added).

According to the facts alleged by Defendant in this Opposition memorandum and its

supporting declarations, Plaintiff has consented to Defendant's right to possess and use the

trees, soil,[13] and preexisting improvements during the term of the lease.[14]  The lease term has

not yet expired.

### IV.
### Discovery

Plaintiff rushed to file his motion for partial summary judgment before Defendant filed

an Answer and before an discovery was conducted.  As the owner of the property for many

---

[11]  Chen Declaration, ¶¶3, 4, 5, 6, 10, 17, 18, 19 and Exhibits "A," "B," and "C;" Yee Declaration, ¶3; Goluguri Declaration, ¶ 9.
[12]  The arguments made in the foregoing section regarding Waste are equally applicable to Conversion and , as such are included herein by reference.
[13]  Plaintiff proevides no explanation, nor is one feasible, of what "minerals" Defendant is alleged to have taken.
[14]  Furthermore, "One who uses a chattel with the consent of another is subject to liability in trespass for any harm to the chattel which is caused by or occurs in the course of any use exceeding the consent, even though such use is not a conversion."  Restatement (Second) of Torts, Section 256.  Of course, the Complaint in this lawsuit and Plaintiff's Motion for Summary Judgment make no allegation of trespass.

years before Defendant began using it, Plaintiff is likely in possession of information regarding the property. Unfortunately, Plaintiff has provided absolutely no documentary evidence to support his claims that there were Chamorro and Japanese artifacts and fruit and other trees o the property that Defendant allegedly destroyed.

Defendant is entitled to discovery regarding these and other allegations made by Defendant. To the extent the Court determines that any of Plaintiff's summary judgment claims seem to have any merit, Defendant requests that it be allowed to conduct discovery before the Court rules pursuant to Com. R. Civ. P. 56 (f) so that adequate information solely in the possession of Plaintiff due to his rush to summary judgment, can be discovered. Courts routinely grant such requests filed very early in the litigation before a realistic opportunity for discovery has been provided. *Burlington No. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003).

**Conclusion**

For the foregoing reasons, it is respectfully submitted that Plaintiff's Motion for Partial Summary Judgment should be denied.

Dated: May 16, 2006

Respectfully submitted,

_____/s/_____
SEAN E. FRINK
CNMI Bar Assn. # F0212
Attorney for Defendant OKP (CNMI)
Corporation

1

3

5

## COM. E-FILING R. 6.5.c ATTESTATION

7    I, Sean E. Frink, an EFSP user, attest that signatories Pramuan Jaiphakdee, Antonio K.

9 Mesgnon, Yee, Chee Keong, Prasada Reddy Goluguri, and Brian M. Chen, concur in the filing

11 of each of their individual declarations, with their signatures submitted in electronic format, as

13 filed concurrently herewith.

15

17                                        Respectfully submitted,

19

21

                                          _____/s/_____
23                                         SEAN E. FRINK
                                           CNMI Bar Assn. # F0212
25

27

29

31

33

35

37

39

41

43

45

47

49

**Certificate of Service**

I, Sean E. Frink, declare that I am over the age of eighteen years and not a party to this action. My business address is Law Offices of Sean E. Frink, LLC, PMB 161, Box 10003, Saipan MP 96950.

On May 16, 2006, I served OKP (CNMI) CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT by Lexis/Nexis electronic filing on:

> Ramon K. Quichocho, F0243
> P.O. Box 505621
> Saipan, MP 96950

I declare under penalty of perjury that the foregoing is true and correct. Executed May 16, 2006 at Saipan, Northern Mariana Islands.

           /s/_____
           SEAN E. FRINK