Exhibit "C"

Recording requested by                    )
Lessee.                                    )
                                           )
                                           )
                                           )
                                           )
_____
             (Space above this line for Recorder's use only.)


## LEASE AGREEMENT

THIS GROUND LEASE AGREEMENT, made and entered into as of the _____ day of September, 2004, by and between **JOAQUIN Q. ATALIG**, hereafter referred to as "Lessor," and **OKP (CNMI) CORPORATION**, hereafter referred to as "Lessee."


## WITNESSETH:

In consideration of the rent hereinafter reserved and of the convents herein to be observed and performed, Lessor hereby demises and leases unto Lessee, and Lessee hereby leases from Lessor the real property described in Section 1.

1.    PREMISES:  The Premises consist of real property in Northern Part (Area No. 4) Ginalangan, municipality of Rota, Commonwealth of the Northern Mariana Islands, as more particularly hereinafter described, together with Lessor's easements and appurtenances in adjoining and adjacent land, highways, roads, streets, lanes whether public or private, reasonably required for the installation, maintenance, operation and service of sewer, water, gas, power and other utility lines and for driveways and approaches to and from abutting highways or streets for the use and benefit of the above-described parcel of real property, including any improvements now or hereafter situated thereon:

> Lot No. 362 R 01, containing an area of 49,998 square meters,
> more or less, as more particularly described in Cadastral Plat No.
> 362 R 00, the original of which was registered with the Land
> Registry as Document No. 6503 on September 12, 1978.

The above- described parcel of real property, together with any existing improvements and improvements subsequently erected thereon during the term of this Lease and the

appurtenances and other incidents associated therewith are collectively referred to in this Lease as the "Premises".

Moreover, Lessee leases as part of the agreement, furniture, fixtures, appliances, and tools, all itemized in the List of Inventory attached hereto as exhibit "A", and made a part of this agreement by reference.

2.    <u>TERM OF LEASE</u>:  This Lease shall be for a term of thirteen (13) months, commencing on December 1, 2005, and ending on December 31, 2006, unless sooner terminated as herein provided.

3.    <u>RENT</u>:   The rent for the Lease shall be Three Thousand Dollars ($3,000.00) per month.

4.    <u>PAYMENT SCHEDULE:</u>

4.1.    Lessee shall pay Lessor advance rent of Nineteen Thousand Five Hundred Dollars ($19,500) upon the execution of this agreement.

4.2    Lessee shall pay the remaining rent of Eighteen Thousand ($18,000) on or before July 1, 2006.

5.    OPTION TO RENEW LEASE:    Lessee has the option to extend the lease agreement for a period of one year at the same rent and terms set forth herein, except that the first three months of rent shall be advanced and due on January 1, 2007.  Lessee shall exercise the option by giving Lessor notice of its intent to renew the lease for another year 30 days before the

expiration of the lease agreement.

6.    USE OF PREMISES:    Lessee may use, improve and develop the Premises or any part thereof for any lawful use or purpose, but primarily as office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Lessee's business and operation on Rota.

7.    LESSOR'S WARRANTIES OF TITLE:    Lessor represents, warrants, and covenants that he is the sole, true owner in fee simple of all the leasehold premises and have the right to lease the same to the Lessee and that the Premises are free and clear of all liens, claims and encumbrances, excepting recorded easements for water, sewer, power, telephone, roadways, and other public utilities, and that the Lessor has good and marketable title.

8.    LESSOR'S WARRANTY OF QUIET ENJOYMENT:    Upon Lessee paying the rent for the Premises and observing and performing all of the covenants, conditions and provisions on Lessee's part to be observed and performed hereunder, Lessor shall place Lessee in quiet possession of the Premises for the entire term hereof subject to all the provisions of this Lease.

9.    ASSIGN ABILITY AND SUBLEASING:    Lessee may not assign or sublease the premises without the consent of Lessor.   Lessor may not unreasonably withhold consent.

10.    <u>TAXES</u>:

10.1.    <u>Lessee To Pay Taxes During Lease</u>.  Lessee shall pay and discharge all taxes, assessment, rates, charged, license fees, municipal liens, levies, excises, or imposts, whether general or special, or ordinary or extraordinary, of every name, nature and kind whatsoever, including all governmental charges of whatsoever name, nature, or kind, which may be levied, assured, charged, or imposed, or which may become a lien or charge on or against the premises, or any part thereof, the leasehold of Lessee herein, the premises described herein, any buildings, or any other improvements now or hereafter thereon, or on or against Lessee's estate hereby created which may be a subject of taxation, or on or against Lessor by reason of its ownership of the fee underlying this Ground Lease, during the entire term thereof, excepting only those taxes hereinafter specifically excepted.   All taxes and charge under this Section shall be prorated at the expiration of the term hereof.

10.2.    <u>Exceptions</u>.   Anything in this section to the contrary notwithstanding, Lessee shall not be required to pay any estate, gift, inheritance, succession, franchise, income, or excess profits taxes which may be payable by Lessor or Lessor's legal representative, successors, or assigns, nor shall Lessee be required to pay any tax that might become due on account of ownership of property other than the premises herein leased which may become a lien on th premises or collectible out of the same.

10.3.    <u>Tax Contest</u>.  Lessee shall have the right to contest the validity of any tax or special assessment payable by him which Lessee deems to have been illegally or improperly levied or assessed against the premise, and for that purpose shall have the right to institute such proceeding or proceedings in the name of Lessor as Lessee may deem necessary, provided that the expense incurred by reason thereof shall be paid by Lessee, and provided, further, that it is

4

necessary to use the name of Lessor in carrying on such proceeding.

11.    <u>UTILITIES AND CHARGES</u>:  Lessee shall be responsible for the payment of all utilities, assessments, and other public charges arising by reason of the occupancy, use or possession of the Premises.

12.    <u>INDEMNIFICATION OF LESSOR BY LESSEE</u>:  Lessee shall, at all times during the Lease Term, indemnify Lessor against all liability, loss, cost, damage, or expense of litigation arising prior to the expiration of the term hereof and delivery to Lessor of possession of the premises:

A.    On account of or through the use of the demised premises or improvements or any part thereof by Lessee or by any other person acting under the authority, direction, in the interest of, or through the title of the Lessee for any purpose inconsistent with the provisions of this lease;

B.    Arising out of, or directly or indirectly due to, any failure or Lessee in any respect promptly and faithful to satisfy Lessee's obligations under this lease; or

C.    Arising  out of directly or indirectly due to any accident or other occurrence  causing injury to any person or persons or property resulting from the use of the premises or any  part  thereof.

No such indemnification shall be required with respect to losses or liabilities arising by reason of the affirmative negligence or recklessness of Lessor.

13.    <u>REMOVAL OF IMPROVEMENTS, SOIL, ETC, NOT TO CONSTITUTE</u>

<u>WASTE</u>:

Lessee shall have the right in connection with any development of the property to remove vegetation and to excavate and to remove sand, soil, and other materials from the Premises.  In no event shall any such action constitute waste and the Lessor hereby releases Lessee from any obligation to restore the Premises to the condition existing upon the commencement date of this Lease.  Lessee may also build, alter, demolish or remove improvements which cross one or more boundary lines of the Premises, provided that Lessee first obtains any required governmental or regulatory approval.

14.    <u>LESSEE'S RIGHT TO BUILD</u>:

14.1.    <u>Alteration/Building, etc.</u>    The Lessee shall have the right during the term of this Lease, to erect, maintain, alter, remodel, reconstruct, rebuild, replace, and remove buildings and other improvement on the Premise, and correct and change the contour of the Premises pursuant to the plans and drawings attached hereto as Exhibits "B" and "C",  and incorporated herein as part of this agreement by reference.   Any other alterations and changes requires Lessor's consent.

14.2.    <u>Equipment and Fixtures</u>.  Lessee shall have the right at any time during Lessee's occupancy of the Premises to remove any and all equipment and fixtures owned or placed by Lessee or its sublease upon the Premises, except that any water heater or air conditioner installed shall become Lessor's equipment after the expiration of the lease.

14.3    Any items on the Inventory List on Exhibit "A" shall be replaced or repaired if the item is broken, lost, missing or damaged, except for natural wear and tear.

6

14.4.   <u>Permanent Improvements</u>.  Upon the expiration of the Lease term, Lessee shall be entitled to remove those improvements which can be removed without causing harm or damage to the Premises.  All other improvements shall become the property of the Lessor.

14.5.   Soccer Field: Lessee is authorized to setup, build, or construct a soccer field on the premises.

14.6.   Lessee is hereby authorized to enter the premises on November 1, 2005, to commence repair and other work on the premises.  Lessee shall not disturb the customers and staff of Lessor, who may remain on the premises up to November 30, 2005.

15.   <u>FIRE AND CASUALTY INSURANCE</u>:   Lessee, at Lessee's option and at its own expense, may keep all improvements erected on the Premises insured against loss or damage by fire or other casualty.  Any insurance proceeds payable with respect to any loss to any improvements on the Premises shall belong to Lessee and Lessor shall have no right, claim or interest therein.

16.   <u>DEFAULT</u>:   Lessee shall be in default in the prompt and full performance of any other term, covenant, or condition of the Lease, (except as to the payment of rent) and such default shall continue for a period of thirty (30) days after notice of such default is given by the Lessor to the Lessee, unless the default is of such a nature that the same cannot be cured or corrected within said thirty (30) day period and the Lessee shall have promptly and diligently commenced to cure and correct such default and shall have thereafter continued therewith with reasonable diligence and in good faith, in a manner as to cure and correct the same as promptly as reasonably practicable under the circumstances, and shall have continued therewith until the

1  default shall have been cured or corrected.

2       Lessee shall be in default in the payment of rent if rent is not paid within 15 days after it

3  is due and such default shall continue for a period of fifteen (15) days after notice of such default

4  and the default is not cured.

5

6

7       17.    LESSOR'S REMEDIES:  In the event Lessee breaches this Lease and fails to

8  make correction within the time provided, the Lessor may exercise any of the remedies available

9  to the Lessor at law or in equity, including the right of reentry and all such remedies shall be

10  cumulative and nonexclusive of any one or more such remedies, and exercise of one remedy shall

11  not be deemed to be an exclusive election of the remedy or remedies exercised or waiver of the

12  remedies not exercised..

13

14

15

16       18.    ESTOPPEL CERTIFICATES:   Lessor shall, at any time from time to time, upon

17  not less than ten days prior notice from Lessee, execute, acknowledge, and deliver to Lessee a

18  statement in writing certifying that the Lease is unmodified (or in full force and effect as

19  modified and stating the modification and modifications) and that there are no defaults existing,

20  or if there is any claimed default, stating the nature and extent thereof.  It is expressly understood

21  and agreed that any such statement delivered pursuant to this section may be relied upon by third

22  persons.

23

24

25

26

27

28

8

19.   <u>NOTICE</u>: All notices, demands or requests shall be given to each party at their respective addresses, as noted below.  Each party shall have the right, from time to time, to designate in writing a different address by notice given in conformance with this section.

LESSOR:

Joaquin Q. Atalig
P.O. Box 965
Rota, MP 96951

LESSEE:

OKP (CNMI) CORPORATION
P.O. BOX 10001, PMB A-25
Saipan, MP 96950

20.   <u>SEVERABILITY:</u>   This lease embodies the entire agreement between the parties.  If any provision herein is invalid, it shall be considered deleted from this Lease, and shall not invalidate the remaining provisions of this Lease.  The only terms the parties consider essential to this Lease are the rent , the description of the premises, and the length of the lease term.

21.   <u>ENTIRE AGREEMENT</u>: This Lease contains the entire agreements of the parties with respect to the matters covered herein as of the date of execution hereof and no other agreement, statement or promise made by any party or to any employee, officer or agent of any party prior in time to the date of this Lease shall be binding or valid.  Specifically, no person has been authorized to make representation, promises, or any statements on behalf of the Lessee; all agreements and promises of the Lessee are contained within this Lease Agreement.  No other representations, agreements, waivers or promises have been authorized , intended, made, or may be relied upon.

22.    <u>MODIFICATION:</u> This Lease is not subject to modification except in writing, signed by the parties to be charged thereunder.

23.    <u>BINDING EFFECT:</u> This shall inure to the benefit of and bind the Lessor and the Lessee, their respective heirs, successors and assigns jointly and severally.

24.    <u>ATTORNEYS' FEES:</u> In the event of any suit by any party to this lease for the recovery of any rent due, or because of any breach of any term, covenant, condition or provision hereof, the prevailing party shall be entitled to recover from the other party costs of suit and a reasonable attorney's fee which shall be fixed by the Court.

Wherefore, the parties have affixed their signatures below on the dates notes next to their respective signatures.

_____
JOAQUIN Q. ATALIG
LESSOR

_____
OKP (CNMI) CORPORATION
LESSEE
By: _____
Duly Authorized Representative

10

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS)

On November _____, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, came Joaquin Q. Atalig, to me personally known to be the identical person who executed the above and the foregoing Lease and who acknowledged the execution of the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above-written.

_____
Notary Public

My Commission Expires:

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS: ss

On November _____, 2005, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, came _____, to me personally known to be the identical person who executed the above and the foregoing Lease and who acknowledged the execution of the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above-written.

_____
Notary Public

My Commission Expires:

11

E-FILED
CNMI SUPERIOR COURT
E-filed: May 16 2006 11:37PM
Clerk Review: May 17 2006 8:32AM
Filing ID: 11289675
Case Number: 06-0119-CV
Elsa Duenas

1  BRUCE L. MAILMAN(CNMI Bar Assoc. #F0153)
   MAYA B. KARA (CNMI Bar Assoc. #F0169)
3  Mailman & Kara, LLC
   PMB 238 PPP, Box 10,000
5  Saipan, MP 96950
   Tel:(670)233-0081
7  Fax: (670)233-0090

9  SEAN E. FRINK (CNMI Bar Assoc. #F0212)
   The Law Offices of Sean E. Frink, LLC
11 Second Floor, Macaranas Building, Garapan,
   PMB 161, Box 10003
13 Saipan, MP  96950
   Telephone: (670)233-2889
15 Facsimile: (670)234-3230
   Sean.Frink@Saipan.Com
17
   Attorneys for Defendant
19 OKP (CNMI) Corporation

21

23                        **IN THE SUPERIOR COURT**

25                              **FOR THE**

27     **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

29 JOAQUIN Q. ATALIG,              )      Civil Action No. 06-0119
                                   )
31           Plaintiff,            )
                                   )
33        -v-                      )      **DECLARATION OF**
                                   )      **PRASADA REDDY GOLUGURI**
35 OKP (CNMI) Corporation, *et al,*)
                                   )
37           Defendant.            )
                                   )
39 _____)

41     I, Prasada Reddy Goluguri, a person aged over eighteen years, and being of sound mind,

43 state:

45     1.      I am employed by OKP as a project engineer and was requested to handle the

47 clearing of the area behind the Sunrise Hotel to be used as an equipment/recreation area.

49

2.    In order to do so, on or about December 22 or 23, 2005, I was instructed by my Project Manager Mr. Yee, Chee Keong to invite Mr. Atalig's then site manager, Ludivina "Edita" Pacho Carillo, to walk the yard with me and show me the area that would be permissible to clear for the creation of OKP's equipment/recreation yard.

3.    Ms. Carillo and I walked out to the area that was to become the equipment yard. At that time it consisted of weeds and grass. It appeared to me to have recently been a livestock grazing area.

4.    I told Ms. Carillo that OKP was going to clear the area in the next couple of days and asked her what area would be permissible. Ms. Carillo walked with me to the northwestern corner of the lot and pointed out a much larger area than OKP needed and said that it would be fine to clear that area. I told her that we only needed 150 feet by 100 feet.

5.    The only warning that Ms. Carillo provided was that I should watch out where I walk in one area since there was a hole there that I could fall into. Ms. Carillo never mentioned any Chamorro or Japanese artifacts being in the area. Nor did she say not to clear any particular areas.

6.    The area that OKP cleared was well within the boundaries that Ms. Carillo indicated would be permissible to clear.

7.    At no time have I ever seen any Japanese or Chamorro artifacts in the area that was cleared.

8.    At no time did I see any trees in the area that was cleared.

9.    Mr. Joaquin Q. Atalig ("Mr. Atalig") came by the site soon after it was cleared and spoke with me. He told me that he was extremely pleased with the work that had been done. Specifically, he said that we had done a good job on the equipment/recreation yard, that he had never seen his property look better, and asked if OKP would leave the workshop shed for him to use after we vacated the property. I told him that he would have to talk with my

boss about that.  Mr. Atalig made no mention to me or to anyone else that I am aware of at that time or before then of OKP disturbing or destroying any Japanese or Chamorro artifacts or any trees.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on May 16, 2006 at Saipan, Commonwealth of the Northern Mariana Islands.

Respectfully submitted,

PRASADA REDDY GOLUGURI

E-FILED
CNMI SUPERIOR COURT
E-filed: May 16 2006 11:37PM
Clerk Review: May 17 2006 8:32AM
Filing ID: 11289675
Case Number: 06-0119-CV
Elsa Duenas



1  BRUCE L. MAILMAN(CNMI Bar Assoc. #F0153)
   MAYA B. KARA (CNMI Bar Assoc. #F0169)
3  Mailman & Kara, LLC
   PMB 238 PPP, Box 10,000
5  Saipan, MP 96950
   Tel:(670)233-0081
7  Fax: (670)233-0090

9  SEAN E. FRINK (CNMI Bar Assoc. #F0212)
   The Law Offices of Sean E. Frink, LLC
11 Second Floor, Tan Marakita Building, Garapan,
   PMB 161, Box 10003
13 Saipan, MP 96950
   Telephone: (670)233-2889

15

17 Attorneys for Defendant OKP (CNMI) Corporation

19                    **IN THE SUPERIOR COURT**

21                        **FOR THE**

23  **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

25 **JOAQUIN Q. ATALIG,**              )    Civil Action No. 06-0119
                                        )
27          **Plaintiff,**             )
                                        )
29          **-v-**                    )    **DECLARATION OF**
                                        )    **PRAMUAN JAIPHAKDEE**
31 **OKP (CNMI) Corporation,** *et al.,*  )
                                        )
33          **Defendant.**             )
   _____      )

35

37        I, Pramuan Jaiphakdee, a person aged over eighteen years, and being of sound mind,

39 state:

41        1.    I am employed by OKP (CNMI) Corporation as a heavy equipment operator.  I

43 was responsible for operating the bulldozer used to clear the area of Mr. Joaquin Q. Atalig's

45 property for the equipment/recreation yard.  I have extensive experience operating a bulldozer.

47        2.    Using a bulldozer I cleared the area delineated by my immediate supervisor,

49 Mr. Goluguri.  The area that I cleared with the bulldozer is approximately 150 feet long by 100

   feet wide.

3.      I was also the operator of the excavator that was used to scoop the debris that had been collected from the bulldozer's use in the area.

4.      The area that I cleared consisted of dried bush and vegetation.  There were no trees, rocks (other than very small rocks that could not have been latte stones or other artifacts and a few—maybe three -- very small trees about three to five feet tall that could not have been fruit trees), or boulders in the area that I cleared.  Nor were there any Chamorro or Japanese artifacts, other than an approximately four foot high by 20 foot wide rock wall, which I made sure was left untouched, and a nearby approximately six by eight feet wide by five feet deep cement box in the ground, which I was not aware was there when operating the bulldozer because it was covered by bush.

5.      During my operation of the bulldozer some bush and soil was pushed into the cement box.  While the cement box itself was undamaged, portions of the approximately one foot high rock wall around it, were pushed into the hole.  Upon learning of the existence of the cement box and that portions of the small rock wall were pushed into the cement box, we immediately repaired the wall by taking the portions of the wall out of the box and the surrounding area, replacing them to their original positions, and cementing them in place.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on May 16, 2006 at Saipan, Commonwealth of the Northern Mariana Islands.

Respectfully submitted,


Pranan

PRAMUAN JAIPHAKDEE

1  BRUCE L. MAILMAN (CNMI Bar Assoc. #F0153)
   MAYA B. KARA (CNMI Bar Assoc. #F0169)
3  Mailman & Kara, LLC
   PMB 238 PPP, Box 10,000
5  Saipan, MP 96950
   Tel:(670)233-0081
7  Fax: (670)233-0090

9  SEAN E. FRINK (CNMI Bar Assoc. #F0212)
   The Law Offices of Sean E. Frink, LLC
11 Second Floor, Macaranas Building, Garapan,
   PMB 161, Box 10003
13 Saipan, MP 96950
   Telephone: (670)233-2889
15 Facsimile: (670)234-3230
   Sean.Frink@Saipan.Com
17
   Attorneys for Defendant
19 OKP (CNMI) Corporation

E-FILED
CNMI SUPERIOR COURT
E-filed: May 16 2006 11:37PM
Clerk Review: May 17 2006  8:32AM
Filing ID: 11289675
Case Number: 06-0119-CV
Elsa Duenas

21

23                   IN THE SUPERIOR COURT

25                          FOR THE

27       COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

29  JOAQUIN Q. ATALIG,                 )     Civil Action No. 06-0119
                                       )
31          Plaintiff,                 )
                                       )
33          -v-                        )     DECLARATION OF
                                       )     ANTONIO K. MESGNON
35  OKP (CNMI) Corporation, et al,     )
                                       )
37          Defendant.                 )
                                       )
39  _____)

41       I, Antonio K. Mesgnon, a person aged over eighteen years, and being of sound mind,

43 state:

45       1.      I am employed by OKP as its chief of security and am a native of Rota, having

47 lived here for more than 59 years.  I am a former Director of the Department of Public Safety

49 on Rota.

2.      As Rota has a relatively small population, I am familiar with the family relationship that exists between Plaintiff Joaquin Q. Atalig ("Mr. Atalig") and affiants Felipe Q. Atalig, William T. Atalig, and Leon Taisacan.

3.      Felipe Q. Atalig is Mr. Atalig's brother through their shared mother, William T. Atalig is Mr. Atalig's nephew, and Leon Taisacan is Felipe Atalig's half brother

4.      I am familiar with the Atalig land in Gingalangan that is involved in this lawsuit, Lot No. 362 R 01, and have hunted in the area many times over the years.

5.      Although I distinctly recall seeing what Mr. Atalig refers to as the Japanese water tank on the property, I have never seen nor been made aware of any latte stones or other Chamorro artifacts on the Atalig land (other than the latte stones outside of room 108 of the hotel which are clearly visible to anyone and which I understand Mr. Atalig does not claim have been disturbed).

6.      It appears to me that the latte stones outside of room 108 of the hotel are not native to the site. Instead, they appear to have been moved there relatively recently and cemented into place. I do not believe that the Atalig property was the site of any Chamorro artifacts. Rather, anything that is or was on the site has been moved there relatively recently.

7.      A week or so prior to the arrival of the OKP heavy equipment to Rota, in December, 2005, I personally walked the yard in the back of the hotel (the area that is now the OKP CNMI, Inc. equipment yard/ recreation field). At that time, I saw a few pumpkins and taro growing in a small part of the area, but the rest was open grazing area where a few cattle were present.

8.      I did not observe any latte stones or other Chamorro artifacts at that time. I did, however, observe, the small wall that is near to what Mr. Atalig refers to as the Japanese water tank. That wall remains standing in the same place now that I observed it that day.

9.  During my December, 2005 walk of the site, I also did not observe any trees in the area that was cleared for the equipment/recreation yard.

10.  I seriously doubt that OKP disturbed any latte stones, other Chamorro artifacts, or trees when it cleared the property for the equipment yard/ recreation field.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on May 16, 2006 at Saipan, Commonwealth of the Northern Mariana Islands.

Respectfully submitted,

ANTONIO K. MESGNON

1 | BRUCE L. MAILMAN(CNMI Bar Assoc. #F0153)
MAYA B. KARA (CNMI Bar Assoc. #F0169)
3 | Mailman & Kara, LLC
PMB 238 PPP, Box 10,000
5 | Saipan, MP 96950
Tel:(670)233-0081
7 | Fax: (670)233-0090

E-FILED
CNMI SUPERIOR COURT
E-filed: May 16 2006 11:37PM
Clerk Review: May 17 2006 8:32AM
Filing ID: 11289675
Case Number: 06-0119-CV
Elsa Duenas

9 | SEAN E. FRINK (CNMI Bar Assoc. #F0212)
The Law Offices of Sean E. Frink, LLC
11 | Second Floor, Macaranas Building, Garapan,
PMB 161, Box 10003
13 | Saipan, MP 96950
Telephone: (670)233-2889
15 | Facsimile: (670)234-3230
Sean.Frink@Saipan.Com

17 |

Attorneys for Defendant
19 | OKP (CNMI) Corporation

21 |

23 | **IN THE SUPERIOR COURT**

25 | **FOR THE**

27 | **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

29 | **JOAQUIN Q. ATALIG,**       )     Civil Action No. 06-0119

              )
31 |       **Plaintiff,**         )

              )
33 |         -v-           )     **DECLARATION OF**

              )     **YEE, CHEE KEONG**
35 | **OKP (CNMI) Corporation,** *et al,*   )

              )
37 |       **Defendant.**       )

39 | _____ )

41 |      I, Yee, Chee Keong, a person aged over eighteen years, and being of sound mind, state:

43 |      1.     I am employed by OKP (CNMI) Corporation as a site supervisor.

45 |      2.     On September 29, 2005, I met with Mr. Joaquin Q. Atalig, and others, at his

47 | property on Rota.

49 |

3.    At that meeting Mr. Atalig was informed that OKP would need to build a workshop and equipment/recreation yard at the area it is at now.  Mr. Atalig was also informed that the former bar/store on his property would be converted into a kitchen.  Mr.  Atalig said, "no problem, do whatever you want" or words to that effect.

4.    The area that was cleared for the workshop and equipment/recreation yard was a piece of livestock grazing land.  No trees were on the site other than a few small trees, numbering no more than five and no more than five feet in height.   The trees primarily consisted of baby coconut trees that were not dispersed in any pattern as if they were planted by hand.  There were not any betelnut or flame trees that I can recall and I am not familiar with what cotton and iron trees look like so I do not know.

5.    Mr. Atalig never mentioned the presence of any latte stones or other Chamorro or Japanese artifacts on the site to me or anyone else that I am aware of and I have never seen any such items.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on May 16, 2006 at Saipan, Commonwealth of the Northern Mariana Islands.

Respectfully submitted,

_____
YEE, CHEE KEONG