F I L E D
Clerk
District Court

JUL 21 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DONGBU INSURANCE COMPANY, Ltd., | Civil Action No. 08-0002 |
| Plaintiff, | |
| v. | ORDER DENYING DONGBU'S MOTION FOR SUMMARY JUDGMENT AND GRANTING OKP'S PARTIAL MOTION FOR SUMMARY JUDGMENT |
| OKP (CNMI) CORPORATION, *et al.*, | |
| Defendants. | |

NOW BEFORE the Court is Plaintiff Dongbu Insurance Company, Ltd.'s ("Dongbu") Motion for Summary Judgment and Defendant OKP (CNMI) Corporation's ("OKP") Cross-Motion for Partial Summary Judgment. The matter came before the Court on Thursday, July 10, 2008. Plaintiff appeared by and through its attorneys Thomas E. Clifford and Wesley Bogdan. Defendant appeared by and through its attorneys John D. Osborn and Sean E. Frink. Having carefully reviewed the parties' briefs and the relevant legal authority, and having had the benefit of oral argument, the Court hereby DENIES Dongbu's motion and GRANTS OKP's motion.

### BACKGROUND

This is a declaratory judgment action arising out of a dispute over insurance coverage. OKP (CNMI) Corporation entered into a contract with the Commonwealth Ports Authority to repair the runway of the Rota International Airport on the island of Rota in the Commonwealth of the Northern Mariana Islands ("CNMI") ("Rota Airport Project"). (OKP Mot., Frink Decl.

¶ 3.) On November 2, 2005, in connection with the Rota Airport Project, OKP entered into a lease with Mr. Joaquin Q. Atalig to lease the improvements on Mr. Atalig's real property situated nearby the Rota Airport. (*Id.*, Ex. 8.) The lease provided that the improvements were to be used "primarily as office, barracks, equipment repair shop and workstation, heavy and lightweight equipment parking and storage, and as staging area related to Defendant OKP's business and operation on Rota." (*Id.*, Ex. 8 at 7–8.) In addition, the lease provided that OKP could only alter the improvements or "correct or change contour of premises" with the prior written consent of Mr. Atalig. (*Id.*, Ex. 8 at 8.) On January 19, 2006, OKP obtained two insurance policies with Dongbu in connection with the Rota Airport Project. (*Id.*, Exs. 6, 7.) The first policy was an Automobile Policy ("Auto Policy") effective from December 15, 2005 through December 15, 2006 that listed thirty-one covered vehicles involved in the Rota Airport Project. (*Id.*, Ex. 6.)[1] The second policy was a Contractor's All Risk Policy ("CAR Policy") that provided coverage for the "Rota Int'l. Airport Project" located on "Rota, Commonwealth of the Northern Marianas." (*Id.*, Ex. 7 at 2.) OKP acquired the insurance policies through Dongbu's general agent, Moylan's Insurance Underwriters, Inc. ("Moylan's") on Guam.[2]

On March 23, 2006, Mr. Atalig filed suit against OKP in the CNMI Superior Court alleging that OKP used heavy equipment to tear down structures, clear land, build structures, and build a parking lot on the leased premises, all of which damaged or destroyed myriad historical and cultural artifacts and vegetation. (*Id.*, Ex. 8. at 7–10.) The complaint asserts claims for breach of contract, waste, conversion, negligence, unjust enrichment, indemnification, and violation of CNMI law.

---

[1] The terms of the insurance policies are not in dispute. (Dongbu's Consolidated Response to OKP's Two Statement of Fact Submissions ¶ 2.)

[2] Dongbu does not dispute that Moylan's was its general agent. (*See* July 10, 2008 Hearing.)

On January 11, 2008, Dongbu filed a complaint in this Court seeking declaratory relief that it does not have a duty to defend OKP under either the Auto Policy or the CAR Policy. The Court will discuss additional specific facts as required in the analysis.

## ANALYSIS

**A.   Rule 56 Summary Judgment Legal Standard.**

Pursuant to Federal Rule of Civil Procedure 56(c), a moving party is entitled to a judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of establishing that there is no genuine issue of material fact, "that is, pointing out to the district court []that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Only where the moving party meets its burden of establishing that there is an absence of evidence to support the nonmoving party's case does the burden shift to the nonmoving party to present more than a scintilla of evidence in support of its position. Fed. R. Civ. P. 56(e) (once the moving party has met its burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

**B.   Duty to Defend Legal Standard.**

Both motions before the Court seek to determine whether Dongbu has a duty to defend OKP in the underlying suit. Dongbu argues that it has no duty to defend OKP with respect to

AO 72
(Rev. 08/82)

any of the underlying claims.³ A liability insurer's duty to defend arises whenever there is a *possibility*, however remote, that coverage exists under the terms of the policy. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (applying California law); *Tri-S Corp. v. W. World Ins. Co.*, 110 Hawai'i 473, 488 (2006) (applying Hawai'i law). If there is a possibility of coverage of *any* of the underlying claims, the insurer has a duty to defend the entire action. *Manzarek*, 519 F.3d at 1032; *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 798 (Cal. 1993).

The factual allegations in the complaint are initially compared with the terms of the insurance policy to determine whether there is a possibility of coverage. *Manzarek*, 519 F.3d at 1031; *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 324 (5th Cir. 2001). "The court must focus on the factual allegations that show the origin of the damages rather than the legal theories alleged." *Am. Nat'l Gen. Ins. Co.*, 274 F.3d at 324. In addition, facts extrinsic to the complaint may give rise to a duty to defend if they were available to the insurer at the time of tender and reveal a possibility that a claim may be covered.⁴ *Manzarek*, 519 F.3d at 1031.

---

³ The CNMI Supreme Court has not addressed an insurer's duty to defend. This Court has two options when it is required to make a ruling based on an issue of CNMI law that has not been addressed by the CNMI Supreme Court: (1) the Court may certify the question for the high court to rule on; or (2) the Court may use controlling precedent as a guide to determine what it thinks the CNMI Supreme Court *would* decide if it did rule on the issue. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 958 (9th Cir. 2005) ("We decline to exercise our discretion to certify these questions because 'controlling precedent,'... is available to guide us."). Here, the Court will apply "the rules of common law, as expressed in the restatements of law [and] as generally understood and applied in the United States, . . . ." 7 C.M.C. § 3401.

⁴ The parties dispute whether the Court may look to extrinsic evidence, in addition to the allegations of the complaint, to determine whether a duty to defend exists. The traditional rule, still followed by many jurisdictions, is that a Court may *only* look to the allegations within the complaint and the terms of the policy (the "eight corners" rule). *See Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247, 249 (Me. 1977). Modernly, however, courts look to extrinsic facts that were available to the insurer and that should have notified the insurer that there was a possibility of coverage under the policy terms. *See Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 553 (5th Cir. 1998) (applying Mississippi law);

The insured bears the initial burden to demonstrate that there is a *possibility* of coverage under the policy. *Manzarek*, 519 F.3d at 1032; *Lowenstein Dyes & Cosmetics, Inc. v. Aetna Life and Cas. Co.*, 524 F. Supp. 574, 576 (D.C.N.Y. 1981). To defeat such a showing, the insurer must demonstrate that there is *no possibility* of coverage under the policy. *Manzarek*, 519 F.3d at 1032; *Lowenstein Dyes & Cosmetics*, 524 F. Supp. at 576. Insurance policies are contractual agreements and their terms are given their plain and ordinary meaning in accord with the terms and conditions of the entire policy. *Ito v. Macro Energy, Inc.*, 1993 WL 614805, * 25 (N. Mar. I. 1993). However, where the meaning of a term is ambiguous, it is interpreted in favor of coverage. *Id.* A term "is ambiguous if it is susceptible to two or more reasonable constructions." *E.M.M.I., Inc. v. Zurich Am. Ins. Co.*, 84 P.3d 385, 389 (Cal. 2004); *see also Ito*, 1993 WL 614805, * 25 ("Simply because a term is not defined does not render it 'ambiguous . . . . It will be afforded its plain and ordinary meaning against the background of a layman's understanding of the entire policy.'"). "Any doubts as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Manzarek*, 519 F.3d at 1031 (citation omitted); *see also Tri-S Corp.*, 110 Hawai'i at 488. Finally, the scope of coverage is interpreted broadly while exclusionary provisions are strictly construed to protect the reasonable expectations of the insured. *Manzarek*, 519 F.3d at 1032; *Tri-S Corp.*, 110 Hawai'i at 489; *see Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 270 (Cal. 1966).

C.  **There is a Possibility of Coverage Under The Auto Policy.**

OKP asserts that there is a possibility that the Auto Policy encompasses at least some of the underlying claims brought against it and, therefore, Dongbu has a duty to defend the

---

*Coregis Ins. Co. v. Camico Mut. Ins. Co.*, 959 F. Supp. 1213, 1219 (C.D. Cal. 1997) (applying California law). Consideration of extrinsic facts is consistent with the general insurance principle that the terms of a policy are interpreted broadly in favor of coverage. Accordingly, the Court will follow the modern trend and consider extrinsic facts available to Dongbu at the time of tender.

underlying action. The Auto Policy basic coverage includes property damage liability "which [the insured] shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of ownership, maintenance or use of the automobile." (OKP Mot., Ex. 6 at 25.)

The underlying complaint alleges, in pertinent part, that there were historical and cultural artifacts on Mr. Atalig's property; that OKP had been instructed not to disturb the artifacts; that OKP ignored those instructions and destroyed the artifacts when an OKP employee "used heavy equipment to clear [Mr. Atalig's] land." (*Id.*, Ex. 11, ¶ 11.) The complaint alleges causes of action for breach of contract, waste, conversion, negligence, unjust enrichment, indemnification, and violation of CNMI law. (*Id.*, Ex. 11.)

First, the alleged damage was caused by covered vehicles during the coverage period.[5] However, the parties contest whether the alleged damage was "caused by accident" within the meaning of the Auto Policy's coverage. The term "caused by accident" is not defined in the Auto Policy. Damage or injury may be "caused by accident," even if caused by an intentional act, where the results of that act were unforeseen and unintended. *Shelby Cas. Ins. Co. v. H.T.*, 918 A.2d 659, 661 (N.J. Super. Ct. App. Div. 2007) ("It is by now well settled that 'the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, then the resulting injury is 'accidental, even if the act that caused the injury was intentional.'") (citation omitted); *Herrera v. C.A. Seguros*

---

[5] The Auto Policy lists thirty-one covered vehicles including Vehicle Nos. 3, 4, 6, 10, and 27. (OKP Mot., Ex. 6.) OKP asserts that these vehicles constitute the "heavy equipment" that Mr. Atalig claims caused the damage. (*Id.*, Chen Decl. ¶ 6.) Dongbu does not offer any evidence to refute the assertion but argued at the hearing that it may dispute the claim after more discovery has been conducted. In addition, the Auto Policy was effective from December 15, 2005 through December 15, 2006. (*Id.*, Ex. 6.) The damage allegedly occurred in late December 2005. (*Id.*, Ex. 11 ¶ 11.) Again, Dongbu does not offer any evidence otherwise. These facts are resolved in favor of OKP for purposes of determining Dongbu's duty to defend because disputed facts are resolved in favor of the insured.

*Catatumbo*, 844 So. 2d 664, 667 (Fl. Dist. Ct. App. 2003) ("if the resulting damages are unintended, the resulting damage is 'accidental even though the original acts were intentional.'") (citation omitted); *Am. Alternative Ins. Corp. v. Superior Court*, 37 Cal. Rptr. 3d 918, 926 (Cal. Ct. App. 2006) ("'Accidental' in an insurance policy ordinarily means unintended and unexpected by the insured.") (citing *Merced Mutual Ins. Co. v. Mendez*, 261 Cal. Rptr. 273 (Cal. Ct. App. 1989)); *Meyer v. Pac. Employers Ins.*, 43 Cal. Rptr. 542, 542 (Cal. Ct. App. 1965) (if "damage or injury [caused by an intentional act] is not intentional and is unexpected it is accidental in character.") (citation omitted); *McGroarty v. Great Am. Ins. Co.*, 36 N.Y.2d 358, 364–65 (N.Y. 1975) ("if the resulting damage could be viewed as unintended by the fact finder the total situation could be found to constitute an accident."); *Merced Mutual Ins. Co.*, 261 Cal. Rptr. at 273 ("an 'accident' exists when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity.").[6]

---

[6] Dongbu argues that an intentional act can never result in injury "caused by accident." (Dongbu Mot. at 12–17 citing *Quan v. Truck Ins. Exch.*, 67 Cal. App. 4th 583 (Cal. Ct. App. 1998); *City of Atlanta v. St. Paul Fire & Marine Ins.*, 498 S.E.2d 782 (Ga. Ct. App. 1998); *Merced Mutual Ins. Co.*, 261 Cal. Rptr. 273; *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex. 1973)).

In *Quan* and *Merced Mutual Ins. Co.*, the defendants were accused of sexual assault and admitted to engaging in all of the alleged sexual acts. 67 Cal. App. 4th at 593; 261 Cal. Rptr. at 275–76. However, the defendants argued that any resultant injury was an "accident" because they believed that the sexual acts were consensual. Both courts held that an injury is not "accidental" where the defendant did exactly what he intended to do absent some unforeseen, unexpected, independent happening. *Quan*, 67 Cal. App. 4th at 599; *Merced Mutual Ins. Co.*, 261 Cal. Rptr. at 279.

Similarly, in *City of Atlanta* and *Argonaut Southwest Ins. Co.*, the defendants were sued for trespass when they entered the land of another without the consent of the rightful landowners. 498 S.E.2d at 783; 500 S.W.2d at 634. Both courts held that the injuries were not "caused by accident" where the defendants did exactly what they intended to do and their failure to get permission was not an unforeseen or unexpected happening. 498 S.E.2d at 785; 500 S.W.2d at 634.

The cases are distinguishable. In the cases cited above, the defendants admittedly engaged in every alleged act but claimed that they did not know that the act was harmful. The courts held that absent some unforeseen, unexpected, independent happening, the results of

Here, the complaint alleges that the damage was caused by OKP's intentional act of "clearing" Mr. Atalig's land. OKP disputes that they were ever told or warned about the artifacts or even that the artifacts ever existed. Dongbu concedes that they "have always been aware" that OKP denied the allegations in the complaint. In addition, the lease does not make any mention of the artifacts or designate any area on the premises that should not be disturbed. (*See* Dongbu Mot., Ex. C.) At minimum, the lease was available to Dongbu at the time of tender and tends to support OKP's assertion that it had no knowledge of the artifacts. Thus, the alleged facts in the complaint in combination with the language of the lease create *the possibility* that any alleged damage to the artifacts was "caused by accident" because OKP may not have expected or foreseen the presence of the artifacts and had no intention of destroying them. Accordingly, there is at least a possibility that the negligence claim will be covered by the Auto Policy and Dongbu has a duty to provide a defense in the underlying suit.[7]

**D.   Other Exclusions and Conditions Do Not Render Coverage Impossible.**

Dongbu also argues that even if the negligence claim falls within the basic scope of the Auto Policy coverage, other conditions and exclusions preclude coverage. The Court finds that none of the exclusions necessarily preclude coverage here.

**1.   Notice.**

First, Dongbu argues that OKP failed to give Dongbu timely notice under the terms of the

---

such intentional acts could not be accidental. In contrast, here, although OKP intended to bulldoze, the presence of the artifacts was, at least arguably, an unforeseen, unexpected happening. Therefore, even under the sexual assault and trespass cases, a reasonable jury could find that any damage caused to the alleged artifacts was "caused by accident." Moreover, the Court notes that "[accident] is a word employed by an insurer in the contract and should be given the construction most favorable to the insured." *McGroarty*, 36 N.Y.2d at 364.

[7] An insurer has a duty to defend *all* claims where there is a possibility that *any* claim is covered. *Manzarek*, 519 F.3d at 1032; *Horace Mann Ins. Co.*, 846 P.2d at 798. Accordingly, the Court need not address the possibility of coverage under the CAR Policy.

policy, and thus, there is no coverage. To avoid coverage based on untimely notice, an "overwhelming majority of states" require that an insurer demonstrate that the delay caused them to be prejudiced. Appleman Vol. 22 § 139.4, p.321 (2003).

Here, the Auto Policy provides for two conditions that require the insured to provide notice to Dongbu: (1) "Notice of Accident[]: When an accident occurs written notice shall be given by or on behalf of the insured to the company . . . *as soon as practicable*. . . ."; (2) "Notice of Claim of Suit[]: If claim is made or suit is brought against the insured, the insured shall *immediately* forward to the company every demand, notice, summons or other process received by him or his representative." (OKP Mot., Ex. 6 at 49 (emphasis added).) Dongbu argues that there is no possibility of coverage under the Auto Policy because OKP did not notify Dongbu of any potential claim until August 9, 2006, eight months after the alleged accident occurred and approximately four and a half months after the original complaint was filed. (*Id.*, Chen Decl. ¶ 9–10; Ex. 8.) However, even assuming that Dongbu did not receive notice until August 9, 2006, there has been no showing of prejudice. Accordingly, even if notice was untimely, coverage is not necessarily precluded.

2.   **Care, Custody, Control.**

Next, Dongbu asserts that coverage is impossible because the allegedly damaged property was "owned by, rented by, in charge of, or transported by the insured." The Auto Policy Exclusion IX(a) provides that "[This Policy Does Not Apply] to injury to or destruction of property owned by, rented to, in charge of or transported by the insured." (*Id.*, Ex. 6 at 49.)

Dongbu argues that any damage caused to the artifacts is excluded because OKP was renting the premises or at a minimum, in charge of the artifacts. However, the crux of the complaint is that OKP was not allowed to disturb the artifacts. In addition, the leased premises does not include any right to use or control the alleged artifacts. A strict construction of this exclusion does include the damaged property because OKP could not have owned, rented, or

been in charge of property that it was not authorized to disturb. Accordingly, this exclusion does not render coverage under the Auto Policy impossible.

### 3. Liability Assumed Under Contract.

Finally, Dongbu argues that coverage is excluded under Exclusion V(a) of the Auto Policy which provides "[This Policy Does Not Apply] to liability assumed by the insured under any contract or agreement." Dongbu argues that because any liability arising out of the underlying suit would arise out of a contract that OKP entered into with Mr. Atalig, there is no coverage. However, "'Liability assumed by the insured under any contract' refers to liability incurred when one promises to indemnify or hold harmless another, and does not refer to the liability that results from breach of contract." *Olympic, Inc. v. Providence Wash. Ins. Co. of Alaska*, 648 P.2d 1008, 1011 (Alaska 1982). Accordingly, the exclusion does not preclude coverage here.

### CONCLUSION

In sum, the factual allegations in the underlying complaint create the possibility that at least some of the claims will come within the scope of the Auto Policy's coverage. Accordingly, Dongbu has a duty to provide a defense for OKP in the underlying suit. Dongbu's motion for summary judgment is DENIED and OKP's cross-motion for partial summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: July 21, 2008

                                                                _____
                                                                ALEX R. MUNSON
                                                                UNITED STATES DISTRICT JUDGE